UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JATOON MOSS, as Personal
Representative for the ESTATE
OF CRAIG RIDLEY, on behalf of the
Estate and Survivors Jatoon Moss
and Gary Ridley,

       Plaintiff,

v.                                   Case No. 3:21-cv-1026-MMH-MCR

RICKY D. DIXON, et al.,

       Defendants.

_____

**<u>ORDER</u>**

**I.    Status**

Craig Ridley was an inmate of the Florida penal system at the time of his death. Ridley's daughter, Jatoon Moss, filed this case on behalf of Ridley's estate and his survivors: Moss and her brother, Gary Ridley. Moss is proceeding on a First Amended Complaint for Damages against Ricky Dixon, in his official capacity as the Secretary of the Florida Department of Corrections (FDOC), and the following nineteen individuals who worked at the Reception and Medical Center (RMC) at the time of the incident forming the basis of Moss's claims: Captain William Jeffrey Jerrels, Sergeant John E.

Nettles, Captain Jacob Anderson, Captain Daniel Klein, Lieutenant Jason Livingston, Sergeant John Nyitray, Sergeant Aaron Lewis, Sergeant Jon Eberlein, Sergeant Richard Flynn, Sergeant Steven Potosky, Officer Daniel Greene, Registered Nurse Amanda Corey, Licensed Practical Nurse Stephanie Winningham, Dr. Jean Dure, and five John Does. Moss raises the following claims:[1] (1) wrongful death against Defendants Nettles and Jerrels under Florida Statutes § 768.16, et seq.; (2) conspiracy under 42 U.S.C. § 1983 against all Defendants except Dixon; (3) excessive use of force/failure to intervene under 42 U.S.C. § 1983 against Defendants Nettles and Jerrels; (4) deliberate indifference to excessive force under 42 U.S.C. § 1983 against Defendants Jerrels, Anderson, and Klein;[2] (5) failure to protect under 42 U.S.C. § 1983 against all Defendants except Dixon; (6) failure to treat under 42 U.S.C. § 1983 against Defendants Dure, Corey, and Winningham; (7) violations of the Americans with Disabilities Act (ADA) and Rehabilitation Act against Defendant Dixon; (8) outrageous conduct against all Defendants except Dixon; and (9) pre-death damages under Florida's Survival Statute against all

---

[1] The Court identifies the claims as titled by Moss.

[2] Moss lists "Smith" as a Defendant in this count but does not name "Smith" as a Defendant in the First Amended Complaint. See Doc. 30 at 19.

Defendants except Dixon. As relief, Moss seeks monetary damages and attorney's fees and costs.

Defendant Dixon filed an Answer (Doc. 31), while the remaining Defendants filed Motions to Dismiss (Docs. 33, 34, 35, 62). Defendants' main argument in their Motions to Dismiss is that Moss's claims are barred by the statute of limitations. Moss filed Responses to the Motions to Dismiss (Docs. 40, 41, 42, 64). With the Court's permission, Defendants Corey and Dure filed a Reply (Doc. 51); they also filed a request for oral argument (Doc. 52).

Subsequently, Moss filed a Motion for Leave to File a Second Amended Complaint (Doc. 63) and attached a proposed second amended complaint (Doc. 63-1; Proposed SAC). Defendants Corey and Dure filed a response in opposition (Doc. 65), with which Defendants Anderson, Jerrels, Klein, Livingston, Nyitray, and Potosky joined (Doc. 66). Defendants Eberlein, Flynn, Greene, Lewis, and Nettles also responded in opposition (Doc. 67). Defendant Dixon filed a Notice of Joinder in the other Defendants' Responses (Doc. 68). All motions are ripe for review.

## II.    Moss's Allegations in the First Amended Complaint

On September 8, 2017, Ridley was housed at RMC, where he worked in the kitchen. Doc. 30 at 4. Early that morning, Defendant "Nettles failed to pull Ridley from his cell for kitchen duty then was verbally abusive to Ridley for

'being late.'" Id. at 5. "Ridley reminded Nettles that he was supposed to come get him," which angered Nettles. Id. Defendants Nettles and Jerrels then moved Ridley "to an area near A Dorm where there were no cameras in order to use excessive force." Id. These two Defendants "violently assaulted Ridley, battering him and slamming him into the ground face first, causing severe injuries to his neck," which resulted in Ridley being paralyzed from the neck down. Id.

A hand-held video recording shows Ridley not moving and "lying in a partial fetal position with his face down in the grass outside Dorm A" at 3:32 a.m. Id. Defendant Jerrels advised the camera that "Nettles was counseling Ridley 'about his attitude about getting up to go to work' when Ridley struck Nettles and he [(Jerrels)] and Nettles had to 'place Ridley on the ground.'" Id.

According to Moss, Jerrels and Nettles "agreed to pretend Ridley was just refusing to walk," despite it being clear to them that Ridley "had no control of his body below his neck." Id. at 6. They did not summon medical to the scene; rather, "Ridley was loaded into a wheelchair and wheeled to the medical department." Id. One of the individuals escorting Ridley in the wheelchair was holding onto Ridley's shirt to keep him from falling out of the chair. Id. While being pushed in the wheelchair, Ridley stated, "'My neck is broke'" and "'I'm

paralyzed.'" Id. While medical staff examined him, Ridley asked a guard to "'push [his] head up,'" and Ridley advised that he "'can't move.'" Id.

Moss contends that "the medical staff tacitly agreed to pretend Ridley could move his arms and hands and that nothing was wrong with him," although "[n]o testing was done to determine whether Ridley was paralyzed." Id. at 7. Moss alleges that Defendant "Corey falsely claimed" Ridley "could move his fingers in a way that she considered resistance," and later she admitted that "she should have taken off Ridley's shoes and done a pin prick test on his feet to see if he could feel pain but did not do so." Id. Corey also stated that "she called the main unit hospital and spoke to Dr. David Rodriguez." Id. at 7-8. Defendant Anderson indicated that Dr. Rodriguez cleared Ridley to be placed in confinement. Id. at 8. However, Dr. Rodriguez denied seeing Ridley that day and advised that if he had seen Ridley, "he would have sent him directly to the Shands Trauma Center without delay." Id.

"[G]uards with no medical training" placed Ridley into a transport van, and "Ridley did not appear to move his arms or legs under his own power." Id. at 8-9. "At no time did prison staff seek professional help moving Ridley or use a backboard or stretcher but simply lifted him up by his arms and legs." Id. at 9.

Ridley was then placed in confinement without the proper paperwork. Id. Defendant "Lewis oversaw Ridley's DC-221 paperwork which was supposedly signed by Ridley though Ridley could not have done so." Id. Ridley's signature on the form "did not appear to match Ridley's known signatures." Id. Defendants Nyitray and Greene placed Ridley on a toilet in a confinement cell and removed his handcuffs. Id. Ridley "fell to the floor face-first and lay in a pool of blood for hours." Id.

"Eventually, Ridley was taken to Urgent Care for injuries to his head." Id. Nurse Kirkland indicated in her notes "that Ridley had walked to the clinic," because an officer told her so. Id. Defendant Dure saw Ridley and concluded that his "neurological tests were normal," Ridley "was able to grab Dr. Dure's fingers and Dure saw him walk." Id. "Dure cleared Ridley as fit to return to confinement." Id. Defendants Lewis and Eberlein "returned Ridley to a confinement cell and arranged his body on the bed so it looked like he was sitting up." Id. "Ridley was placed in the bottom bunk with his head and torso resting against the cell wall and his legs hanging off the bunk and his feet on the floor," which is how he "remained during the several days he was in confinement." Id. at 9-10.

For five days, Ridley was in that position, "never moving, without food or drink as officers left trays of food and took them away again untouched." Id.

at 10. Defendant "Winningham was supposed to bring Ridley prescribed Ensure dietary supplement but fabricated the Medication Administration Record (MAR) to falsely show she came to the cell when she hadn't." Id. Other inmates reported Ridley's condition to officers, but the reports "were ignored" and the inmates were "threatened." Id.

"On September 12 or 13, 2017, Ridley was transported to Memorial Hospital in Jacksonville, Florida for tests and treatment." Id. He died on October 12, 2017. Id. The next day, an autopsy was conducted. Id. Ridley's cause of death was listed as "'complications of quadriplegia due to dislocation of the C4-C5 vertebrae with spinal cord contusions due to blunt impact to the head and neck,'" and the manner of death was "'homicide.'" Id.

The Florida Department of Law Enforcement (FDLE) conducted an investigation, including interviews of several inmates who reported witnessing Ridley's condition. See id. at 11-13. Moss alleges that after Ridley's injury, "corrections and medical staff conspired to hide his paralysis." Id. at 16. Moss further asserts that "[t]he FDLE investigation was a confidential criminal investigation," and the FDOC has kept its investigation "active to prevent full disclosure." Id.

### III.    Moss's Motion to Amend

Moss requests leave to amend to "clarify and reorganize some of the facts," add facts based on recently obtained evidence, "replead her claims concerning injury not resulting in death implicated by section 46.021, Florida Statutes," add more facts regarding the alleged conspiracy, and "correct the mistake of dropping Royce Givens from her amended complaint." Doc. 63 at 2-3. Notably, Moss also dropped as Defendants Daniel Klein and John Does 3-5 from the Proposed SAC. Moss's causes of action listed in the Proposed SAC are as follows: (1) wrongful death against Nettles and Jerrels; (2) excessive force/failure to intervene against Nettles and Jerrels; (3) conspiracy to violate the Eighth Amendment against Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein, Flynn, Potosky, Greene, Corey, Winningham, Dure, and Does 1-2; (4) deliberate indifference to excessive force against Jerrels and Anderson; (5) failure to protect against Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein, Flynn, Potosky, Green, Givens, and John Does 1-2; (6) failure to treat against Dure, Corey, and Winningham; (7) violations of the ADA and Rehabilitation Act against Dixon; (8) abuse or neglect of a vulnerable adult against Jerrels, Anderson, Livingston, Nyitray, Lewis, Greene, Eberlein, Potosky, Flynn, and Givens; (9) intentional infliction of emotional distress against Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein,

Flynn, Potosky, Greene, Givens, Corey, Winningham, Dure, and John Does 1-2; (10) negligent infliction of emotional distress against Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein, Flynn, Potosky, Greene, Givens, Corey, Winningham, Dure, and John Does 1-2;[3] and (11) battery against Jerrels and Nettles.

Acknowledging that most Defendants have moved to dismiss based on a statute of limitations defense, Moss argues that "[t]he Proposed SAC is not subject to dismissal and the equities weigh in favor of amendment." Id. at 6 (emphasis omitted). Moss contends that she "now has additional (but not all) of the information needed to understand more fully what happened to Mr. Ridley and how the defendants fabricated evidence and lied to attempt to exculpate themselves." Id. at 5. She asserts that "[t]he facts in the Proposed SAC indicate that [Moss] can avoid a statute-of-limitations bar or, at a minimum alert the Court of the possibility of a tolling argument." Id. at 7. She argues that "the date of accrual of [Moss's] causes of action under section 1983 and state law is muddied by the defendants' cover-up and by a question as to whether Mr. Ridley was under a disability that prevented him from asserting his rights." Id. Moss asserts that the "additional pleaded facts gleaned from

---

[3] In claims nine and ten, Moss does not list the John Doe Defendants in the heading, but she lists them in the body of the claims. See Doc. 63-1 at 44, 45.

sworn testimony from the family undercut the defendant[s'] argument that [Moss] knew the who, what, when, and why of Mr. Ridley's death to foreclose tolling." Id. at 8.

Defendants argue that Moss's proposed amendment is futile because the claims are barred by the statute of limitations.[4] See Doc. 65 at 3-7; Doc. 67 at 3-8. Defendants contend that based on Moss's own allegations, Ridley knew or should have known of his injuries and who caused them by September 12 or 13, 2017, at the latest. See Doc. 65 at 6; Doc. 67 at 5. Thus, according to Defendants, when Moss filed this case on October 12, 2021, the statutes of limitations governing her various claims had expired.

Given the posture of the case and Defendants' opposition, Moss may only amend with the Court's leave. See Fed. R. Civ. P. 15(a). "'Although [l]eave to amend shall be freely given when justice so requires, a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the defendants, and futility of the amendment.'" Haynes v. McCalla Raymer, LLC, 793 F.3d 1246, 1250 (11th Cir. 2015) (quoting Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ., 342 F.3d 1281, 1287 (11th Cir. 2003)).

---

[4] The parties' positions relating to the statute of limitations defense are fully briefed in their Motions to Dismiss, Responses, and Reply, all of which the Court has reviewed.

At this juncture, the Court finds that permitting Moss to amend is not futile. Whether Moss filed each claim beyond the relevant statute of limitations, and if so, whether Moss is entitled to equitable tolling are factual inquiries. At this juncture, taking Moss's allegations as true, Ridley thought at the time of the incident that he was paralyzed, but he was told by medical and correctional staff that he was not. He was left for five days in his cell unable to move, eat, drink, or engage in personal hygiene. He was also unable to communicate with any family members "who could champion his rights after his death." Walton for Est. of Smith v. Fla. Dep't of Corr., No. 3:16-cv-1130-J-39JRK, 2019 WL 462844, at *3 (M.D. Fla. Feb. 6, 2019). Additionally, "to the extent Defendants intentionally withheld information or misled [Moss] as to the cause of her [father's] death, fairness dictates [Moss] be afforded an opportunity to sufficiently present her arguments as to whether she timely filed her claims considering all relevant facts and applicable legal and equitable principles." Id.

Accordingly, it is

**ORDERED**:

1.    Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 63) is **GRANTED**. The **Clerk** shall file the proposed second amended

complaint (Doc. 63-1) as of the date of this Order and update the parties on the docket accordingly.

2.     Defendants shall respond to Plaintiff's Second Amended Complaint by **November 14, 2022**.

3.     Defendants' Motions to Dismiss (Docs. 33, 34, 35, 62) are **DENIED as moot**.

4.     Defendants Corey and Dure's Motion to Stay Discovery (Doc. 36) and Request for Oral Argument (Doc. 52) are **DENIED as moot**.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of October, 2022.

MARCIA MORALES HOWARD
United States District Judge

JAX-3 10/12
c:
Counsel of Record