UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JATOON MOSS, as Personal
Representative for the Estate of
Craig Ridley, on behalf of the
Estate and Survivors Jatoon Moss
and Gary Ridley,
    Plaintiff,
vs.                              Case No.: 3:21-cv-1026-MMH-MCR

RICKY D. DIXON, et al.,
    Defendants.
_____/

**JERRELS DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pursuant to this Court's Order [ECF 103], Defendants JACOB ANDERSON, WILLIAM JEFFREY JERRELS, JASON LIVINGSTON, JOHN NYITRAY, and STEVEN POTOSKY (collectively "Defendants" or "Jerrels Defendants") hereby file their Reply to Plaintiff's Response in Opposition to Jerrels Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (hereinafter referred to as "Plaintiff's Response") [ECF 99], and state:

**THE MOTION TO DISMISS IS NOT ONE FOR RECONSIDERATION**

Contrary to Plaintiff's implication [ECF 99, pp. 2-3], this Court allowed the filing of the Second Amended Complaint ("SAC") so Plaintiff could "be afforded an opportunity to sufficiently present her arguments as to whether she timely filed her claims considering all relevant facts and applicable legal principles." This

1

Court's order did not evaluate or rule upon Plaintiff's allegations in the SAC but allowed those additional "relevant facts" and "legal principles" to be alleged. Id. Defendants' Motion to Dismiss [ECF 80] is therefore not a motion for reconsideration as characterized by Plaintiff [ECF 99, p.3].

## THE COURT CAN PROPERLY CONSIDER THE FIVE DOCUMENTS

That Plaintiff filed five (5) documents asking this Court to consider them in opposition to a prior motion to dismiss, but now states, "The Court need not and should not consider those documents filed… [because] the Jerrels Defendants ask the Court to use those documents to resolve the parties' competing factual question of when the statute of limitation accrued [which] is not permitted at this stage" [ECF 99, p. 5] is incredulous. In April 2022 [ECF 40], Plaintiff did not (and cannot now be heard to) challenge their relevance (or authenticity) to the evaluation of a motion to dismiss her complaint. To the extent Plaintiff alleged they were relevant to their complaint to support denial of the prior motion to dismiss on statute of limitations grounds, they continue to be relevant. Further, as shown in the Motion to Dismiss [ECF 80, pp. 5-6] (and **not disputed by the Plaintiff** in her Response [ECF 99]), these documents are discussed and central to the "Common Allegations of Fact" in the SAC. Accordingly, the Court should consider these documents in evaluating whether Plaintiff timely filed her claims.

## WRONGFUL DEATH ACT ABATES/SUBSUMES COUNTS PREMISED ON PERSONAL INJURIES TO MR. RIDLEY

As shown herein, all claims in the SAC which seek compensation or relief for Mr. Ridley's personal injuries, pain and suffering are subsumed by the Wrongful Death Act, section 716.16 et seq., Florida Statutes.  Thus, the cause of action for Battery (Count XI) is one reserved for Mr. Ridley under which the request for relief would be for his pain and suffering and therefore subsumed. Count VIII under section 415.1111, Florida Statutes, is for Mr. Ridley's personal "actual and punitive damages for such abuse, neglect, or exploitation" (see paragraph 267 which states "As a direct and proximate result of Defendants' breach of duty to [Mr. Ridley], [Mr. Ridley] suffered severe physical and mental injuries") and therefore they are likewise subsumed by and barred by the wrongful death act.  The counts for Negligent Infliction of Emotional Distress ("NIED") (Count X)  and Intentional Infliction of Emotional Distress (Count IX) likewise seek damages for Mr. Ridley's personal emotional distress (see ¶¶ 276, 280-82) and therefore are also subsumed by and therefore barred by the wrongful death act. The Count II §1983 claim for excessive force seeks compensation for Mr. Ridley's "brutal and severe physical injuries resulting in his untimely death" which are also personal to Mr. Ridley and therefore subsumed by the wrongful death act.  Count III (conspiracy), at paragraph 222, alleges "The injury to Ridley due to the conspiracy, was his death or murder or physical pain and suffering and mental distress for injuries that did not cause his death," such injuries which are not

alleged other than in a total conclusory fashion. Thus, these injuries are personal to Mr. Ridley and are subsumed by the wrongful death act. In Count IV for deliberate indifference, paragraph 231 states, "As a direct, proximate, and foreseeable result of the Defendants' deliberate indifference, Mr. Ridley suffered severe physical injuries and/or death." Accordingly, relief is sought again for Mr. Ridley's pain and suffering and therefore the count is subsumed by the wrongful death act. Same holds true for Count V Failure to Protect through paragraph 236.

As found in Hinson v. Warren, 2017 WL 1319657, *2 (S.D. Fla. Apr. 10, 2017), "There is ample case law providing that personal injury claims seeking recovery for pain and suffering, medical malpractice, battery and negligence must be abated under Florida Statute § 768.20. See Cone v. Orosa, No. 13–cv–24674–JLK, 2014 WL 1383028, at * 2-3 (S.D. Fla. Apr. 8, 2014) (battery and negligence); Shehada v. Tavss, 965 F. Supp. 2d 1358, 1378 (S.D. Fla. 2013) (battery); Martin v. United Sec. Svcs., Inc., 314 So. 2d 765, 770 (Fla. 1975) (pain and suffering); Salfi v. Columbia/JFK Med. Ctr. Ltd. Partnership, 942 So. 2d 417, 420 (Fla. Dist. Ct. App. 2006) (pain and suffering); Taylor v. Orlando Clinic, 555 So. 2d 876, 879 (Fla. Dist. Ct. App. 1989) (medical malpractice)." Claims for the decedent's injuries, pain and suffering are extinguished and replaced by pain and suffering claims of the survivors by the Wrongful Death Act because "the party claiming damage for the pain and suffering [the survivor] is available to testify, while the

claim formerly permitted under section 46.021 for the decedent's pain and suffering had to be based upon the testimony of others." Martin v. United Sec. Svcs., Inc., 314 So. 2d 765, 771 (Fla. 1975); see also Knowles v. Beverly Enterprises-Fla., Inc., 898 So. 2d 1, 8-9 (Fla. 2004).

Plaintiff plainly alleges "This lawsuit is about an attack on Craig Ridley by prison guards…and the tragic death that resulted." [ECF 70, p.1]. Plaintiff repeats these allegations throughout her SAC. Plaintiff alleges that "on September 8, 2017," Mr. Ridley suffered "an injury to the upper spinal cord resulting in quadriplegia." [ECF 70, ¶ 205]. Plaintiff fails to allege any specific injury to Mr. Ridley which Plaintiff does not connect or lead to his death. All allegations of his "brutal and severe physical injuries" (e.g. ECF p. 1 introduction, ¶¶ 211b, 212) resulted in his "untimely death." Thus, contrary to Plaintiff's SAC allegation in paragraph 276 that "To the extent any acts caused [Mr. Ridley] injury but did not cause or contribute to his death, Plaintiff is entitled to recover damages for those intentional acts pursuant to §46.021, Fla. Stat.," Plaintiff (nor Mr. Ridley) has no such cause of action. Thus, the only proper cause of action based upon the alleged injuries which caused or resulted in Mr. Ridley's death is a wrongful death claim. See Groover v. Polk County Bd. Of County Comm'rs, 570 F. Supp. 3d 1134, 1153-54 (M.D. Fla. 2021); see also Mucciolo v. Boca Raton Reg'l Hosp., Inc., 824 F. App'x 639, 643-44 (11th Cir. 2020).

The elements for Count IX's claim of intentional infliction of emotional distress under Florida law require a plaintiff to prove: (1) The wrongdoer's conduct was intentional or reckless, that is, he intended his behavior and he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous, that is, it went beyond all bounds of decency, and is regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. Malverty v. Equifax Info. Svcs., LLC, 407 F. Supp. 3d 1257, 1263 (M.D. Fla. 2019) (quoting LeGrande v. Emmanuel, 889 So. 2d 991, 994 (Fla. 3d DCA 2004) (citation omitted)).  And evaluating whether the conduct is outrageous, "the subjective response of the person who is the target of the actor's conduct does not control…Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is atrocious, and utterly intolerable in a civilized community," and such is a **question of law**, not a question of fact for the factfinder.  Id. (quoting Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). The conduct alleged by Plaintiff does not rise to this level and therefore the count should be dismissed.

Further, under Count X's negligent infliction of emotional distress (NEID), the elements are:  "(1) the plaintiff must suffer a physical injury; (2) the plaintiff's physical injury must be caused by the psychological trauma; (3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and

6

(4) the *plaintiff must have a close personal relationship to the directly injured person*." See Zell v. Meek, 665 So. 2d 1048, 1054 (Fla. 1995)." Geidel v. City of Bradenton Beach, 56 F. Supp. 2d 1359, 1368 (M.D. Fla. 1999).  Thus, NIED is reserved not to a directly injured person but someone with a close relationship to a directly injured person (only the survivors in this case).  And if plaintiff (in this case, the survivors) has not suffered an impact, the complained-of mental distress must be manifested by a physical injury, the plaintiff must be involved in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment within a short time of the incident.  Id. (quoting Willis v. Gami Golden Glades, LLC, 967 So. 2d 846, 850 (Fla. 2007)); see also Seybold v. Clapis, 966 F. Supp. 2d 1312, 1315 (M.D. Fla. 2013).  Plaintiff alleges no "impact" or any physical injury nor that they were present when it occurred, or saw or heard it.  Allegations of "psychic trauma" (e.g., increased blood pressure, sleeplessness, anxiety, etc.) are not enough.  Id.  Plaintiff only conclusorily alleges in Count IX that "Plaintiff's survivors have suffered severe injuries," without any other explanation.  [ECF 70, p. 44, ¶ 274].  No similar allegation is present in the NIED count (Count X) [ECF No 70, pp. 45-46].  Therefore, the NIED count should also be dismissed on the ground of failure to allege a cause of action.

## THE DEATH CERTIFICATE NEGATES FRAUDULENT CONCEALMENT

Plaintiff's inclusion of allegations of fraudulent concealment is not sufficient to make it a "question of fact" to defeat a motion to dismiss in the face of the exhibits and allegations of the SAC.  Plaintiff admits and Ms. Gatewood (an attorney with 32 years of experience) attests that the cause of death on the death certificate was "homicide" which put Ms. Gatewood, as "the family," on notice that there was either wrongful negligent or intentional conduct which lead to Mr. Ridley's death (as opposed to natural causes).  This death certificate clearly nullifies Plaintiff's allegations and shows that "the family" had sufficient knowledge that Mr. Ridley had likely been harmed by the defendants' conduct which is all that is required to find the alleged multiple causes of action accrued. See Jackson v. Georgopolous, 552 So. 2d 215, 216 (Fla. 2d DCA 1989)(finding no basis for finding of fraudulent concealment on medical malpractice action when death certificate attributed death to injuries "due to or as a consequence of…sepsis from duodenal cutaneous fistula due to or as a consequence of repaired abdominal exploration secondary to bowel obstruction due to adhesions"); see also Raie v. Cheminova, Inc., 336 F.3d 1278 (11th Cir. 2003) and cases cited in ECF 80, p. 17.

Additionally, Plaintiff's allegation of "active concealment" is a legal conclusion which is not a "well pleaded" allegation which must be taken as true.

Plaintiff states "due to defendants' misrepresentations[1] [the "family"] were never told what happened to him while he was alive." [ECF 99, p. 10]  Such legal conclusions do not override or excuse the Plaintiff from acknowledging other facts and circumstances which are actually known or constructively known not only by the "family," but by a reasonable person.  Case law is clear that the "family" need not know every specific fact to a certainty.  It was not necessary that the "family" get the information from Mr. Ridley or wait until the FDLE report which only then Ms. Gatewood alleges gave her a "fairly comprehensive picture" of what happened to Mr. Ridley [2] -- it is what an objective reasonable person knew or could have known given certain facts.  Ms. Gatewood's sworn statements that on December 10, 2017 when she received the death certificate that she "was still not informed who caused Craig's death or how it happened," and that after speaking with FDLE investigators she still "did not receive sufficient information to provide a clear idea of what happened to Craig," belie the burden that Plaintiff and the "family" must meet for failing to file a wrongful death case two years after the expiration of the statute of limitations.  The "family's" ability to access information, medical records, and other incarceration records were in no way hindered by any conduct

---

[1] Plaintiff fails to identify which of the 17 named defendants made the particular "misrepresentations" nor does Plaintiff explain how such collective misrepresentations nullify the information on the death certificate or how such misrepresentations actively concealed or excused the "family" from the knowledge that only FDC, its employees, or the medical professionals were the only individuals involved in Mr. Ridley's day to day activities.
[2] See McGinley v. Mauriello, 682 Fed. App'x 868 (11th Cir. 2017) (holding parents' §1983 action against state highway officers on wrongful death claim accrued when they had access to information which "cast serious doubt" on facts of death, which at that point they "knew or should have known" that facts were misleading).

9

of the defendants or was only available from the FDLE report. To the extent that Plaintiff alleges that "There remain significant issues about…what Mr. Ridley's family knew and when" [ECF 99, p. 11], Ms. Gatewood's sworn affirmation fills in those gaps regarding Mr. Ridley's emergency medical contact, his sister, as well as his family. The sworn facts establish that they were or should have been on notice such that the causes of action accrued either before or shortly after Mr. Ridley's death, and because the wrongful death act subsumes the other causes of action, all counts against the Jerrels' defendants should be dismissed.

WHEREFORE, Defendants request that the Court dismiss Plaintiff's claims against them and for any further relief this Court deems necessary and/or proper.

Respectfully submitted,
ASHLEY B. MOODY
ATTORNEY GENERAL

*/s/ Anthony Dean Johnson*
Anthony Dean Johnson
Assistant Attorney General
Florida Bar No.: 12084

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
Anthony.Johnson@myfloridalegal.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed through the Court's CM/ECF system which will provide electronic service to all counsel of record this 11th day of January 2023.

*/s/ Anthony Dean Johnson*
Anthony Dean Johnson