**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**JATOON MOSS, as Personal**
**Representative for the Estate of**
**Craig Ridley, on behalf of the**
**Estate and Survivors Jatoon Moss**
**and Gary Ridley,**
     **Plaintiff,**
**vs.**                       **Case No.: 3:21-cv-1026-MMH-MCR**

**RICKY D. DIXON, et al.,**
     **Defendants.**
_____/

## **DEFENDANTS' JOINT MOTION TO STAY DISCOVERY**

Defendants JACOB ANDERSON, WILLIAM JEFFREY JERRELS, JASON LIVINGSTON, JOHN NYITRAY, ROYCE GIVENS, and STEVEN POTOSKY (collectively "Defendants" or "Jerrels Defendants"), by and through their undersigned counsel,  joined by the remaining Defendants, hereby move this Honorable Court for the entry of an Order Staying Discovery pending resolution of the multiple Motions to Dismiss filed by the several defendants, and in support thereof, state:

1.     Plaintiff filed this action against 15 defendants as a result of the death of Craig Ridley.  Three defendants have been dismissed pursuant to an Acceptance of Offer of Judgment.  All remaining defendants have filed motions to dismiss the Second Amended Complaint.

2.     Each motion to dismiss has as a ground for dismissal that Plaintiff's claims are barred by the appropriate statute of limitations.

3.     If the court finds that the Plaintiff's claims are untimely as to the statute of limitations and grants the motions to dismiss, it will terminate the entire proceeding.

4.     On January 9, 2023, Plaintiff has propounded upon each of the Jerrels' 6 defendants discovery consisting of 33 broad requests to produce, 11 interrogatories, and 124 Requests for Admission (131 for Jerrels), for a total of 66 interrogatories, 198 requests to produce, and at least 764 Requests for Admission. A copy of the discovery propounded on Defendant Jerrels is attached as **Exhibit A**.

5.     Plaintiff has made similar voluminous discovery requests against the Nettles 5 defendants as well as against Defendant Ricky Dixon.

6.     Pursuant to the Case Management and Scheduling Order [ECF 84], the deadline for discovery is currently January 19, 2024, over ten months out, with the trial scheduled for September 2024, over 19 months out.

7.     Requiring the each of the 12 remaining defendants to have to respond to at least 168 discovery requests (many of which are multitiered requests) and then to have the Court possibly grant the motions to dismiss upon statute of limitations grounds would result in an unnecessary waste of defense counsel's time, effort, and resources.

8.     The Plaintiff's Second Amended Complaint and its exhibits, as well as the other documents filed into the record of this Court by the Plaintiff, provide sworn facts regarding this issue.  This is not a case where there are vague unsworn allegations and/or dates in the complaint which must be fleshed out by further discovery to ensure a proper determination of what "the family" knew or had access to during the decedent's hospitalization prior to his death, or even after his death.

9.     The question of the statute of limitations should be decided earlier in the litigation rather than later as such a finding would terminate the litigation or significantly narrow Plaintiff's claims.  Staying this extensive discovery until the issues raised in the motions to dismiss are resolved alleviates unnecessary time, effort, and resources of both the Court and the parties.

## **Memorandum of Law**

As shown below, Defendants can show good cause for this court to issue a stay of discovery pending resolution of the multiple motions to dismiss in this matter.  Case law shows that in evaluating motions to dismiss, neither the court nor the parties require any discovery as the motions are decided on questions of law based upon the pleadings and sworn testimony therein.  Motions to dismiss should ideally be resolved before any discovery begins.  Plaintiff will not be prejudiced by any such stay as the discovery deadline is 10 months away, with the trial being

scheduled 19 months from now in September 2024.  [ECF No. 84].  The discovery which has been propounded upon the defendants is expansive and would be unnecessary if the motions to dismiss based on the statute of limitations is granted, or if a ruling would likely narrow and focus the scope of Plaintiff's claims. Further, staying such discovery as propounded by Plaintiff prior to rulings on the motions to dismiss which will either eliminate or narrow such claims would avoid an unnecessary waste of an enormous amount of judicial and private resources and fulfill a proper responsibility of this court.

In <u>Rivas v. The Bank of New York Mellon</u>, 676 Fed. App'x 926, 932 (11th Cir. 2017), in evaluating and affirming a district court's imposition of a stay of discovery pending ruling upon motions to dismiss, the Eleventh Circuit stated:

> We "emphasize[ ] the responsibility of trial courts to manage pretrial discovery properly in order to avoid a massive waste of judicial and private resources and a loss of society's confidence in the courts' ability to administer justice." <u>Id.</u> (internal quotation marks omitted). Granting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of that responsibility. Motions to dismiss for failure to state a claim "always present[ ] a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. Therefore, neither the parties nor the court ha[s] any need for discovery before the court rules on the motion." <u>Chudasama v. Mazda Motor Corp.</u>, 123 F.3d 1353, 1367 (11th Cir. 1997) (citation omitted). Indeed, motions to dismiss should, ideally, "be resolved before discovery begins." <u>Id.</u>

In <u>Brexendorf v. Bank of America, N.A.</u>, 2018 WL 7252955 at *5 (M.D. Fla. 2018), this Court reiterated this standard when it granted a stay pending resolution of motions to dismiss and found:

> Trial courts have a responsibility to properly manage pretrial discovery in order to avoid a waste of resources. <u>Rivas v. Bank of N.Y. Mellon</u>, 676 F. App'x 926, 932 (11th Cir. 2017). "Granting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of that responsibility." <u>Id.</u> at 932. However, there is no general rule that discovery must be stayed while a dispositive motion is pending. <u>United States v. Infilaw Corp.</u>, 2018 U.S. Dist. LEXIS 24102, at *7-8 (M.D. Fla. Feb. 14, 2018). Instead, the movant has the burden of showing good cause and reasonableness in conjunction with the request for a stay of discovery. <u>Nyquist v. Grp. Health Ben. Plan for Assocs. of Publix Supermarkets</u>, 2018 U.S. Dist. LEXIS 40521, at *4 (M.D. Fla. Mar. 13, 2018).

In <u>Koock v. Sugar & Felsenthal, LLP</u>, 2009 U.S. Dist. LEXIS 81153, at *5 (M.D. Fla. Aug. 19, 2009), the Court explained the standard to be utilized when determining whether a stay is warranted:

> In deciding whether to stay discovery pending resolution of a motion to dismiss, the court must balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery. <u>McCabe v. Foley</u>, 233 F.R.D. 683, 685 (M.D. Fla. 2006) (citation omitted). To this end, the court must take a "preliminary peek" at the merits of the dispositive motion to see if it "appears to be clearly meritorious and truly case dispositive." <u>Id.</u> (citation and internal quotation marks omitted). Thus, the Court must balance the harm to the non-moving party from the stay against the likelihood that the motion to dismiss will be granted and, in order to determine whether a stay should be

imposed in this case, "must take a 'preliminary peek' at the merits" of the Motion to Dismiss. Id. at *6

In Zarnesky v. Adidas Am., Inc., 2021 WL 3729230, at *3 (M.D. Fla. June 10, 2021), this Court granted a motion to stay discovery pending ruling on a motion to dismiss, holding:

> The discovery Defendant is asking the Court to stay appears on its face to be expansive and far reaching (Doc. 33 at 4). For example, Plaintiff wants Defendant to identify every visit to its website from any Florida internet protocol address, including the date, length, data captured, associated internet protocol address and geographic location, and the visitor's internet service provider (Doc. 33 at 21). Plaintiff does not deny that the discovery it seeks is expansive but, it argues that a motion to stay discovery in a similar case pending in this district was denied by endorsed order on June 2, 2021. Swiggum v. EA Services, LLC, Case No. 8:21-cv-00493-TPB-CPT (M.D. Fla. Jun. 2, 2021). This Court does not find the endorsed order in Swiggum to be persuasive authority on the issue presented in this case.
>
> After due consideration, the Court finds that this is the rare situation in which a movant has shown good cause to stay discovery. Plaintiff's claim is unlike any the Court has seen before. The motion to dismiss appears to have serious merit, such that there is a real possibility it will be granted. If granted, the motion will dispose of this case entirely or, at a minimum likely narrow and focus the scope of Plaintiff's claim.
>
> Waiting for a ruling on the motion to dismiss will not prejudice Plaintiff because the information it seeks is being preserved by Defendant (Doc. 33 at 11). On the other hand, if discovery is not stayed, and Defendant prevails on its motion, then the time, effort and cost to comply with Plaintiff's voluminous discovery requests may have been wasted. In sum then, the balance of

interests weighs in favor of a stay. Now, for good cause
shown, the motion to stay is GRANTED.

The same policies that this Court applied in Zarnesky apply here.  The
discovery propounded upon the defendants in this matter by the Plaintiff is
"expansive and far reaching."  A copy of such discovery propounded upon each of
the six Jerrels Defendants is attached hereto for the Court's reference.  It consists
of 33 multilayered requests to produce, 11 expansive interrogatories, and at least
124 requests for admission per defendant—a total of 1,012 discovery requests for
just the six Jerrels defendants.  Including the Nettles' defendants and Ricky Dixon,
the discovery requests exceed 2,100.  Just as the <u>Zarnesky</u> court remarked on the
expansiveness of the discovery therein where defendants were "to identify every
visit to its website from any Florida internet protocol address, including the date,
length, data captured, associated internet protocol address and geographic location,
and the visitor's internet service provider," the Plaintiff in this matter seeks the
defendants to answer and produce the following, among others:

> • "all documents, including…models, plats, maps,
> drawings, photos, film, audio or video recordings,
> transcripts, correspondence, memos, journals, logs,
> notebooks, notes, investigative reports, communications,
> notes, letters, text messages, direct messages, SMS
> messages, internet or social media posts, and emails, not
> privileged, relating to the Incident, Confinement,
> Ridley's death, or any of the facts identified in the
> Complaint" (RTP No. 12)

• "all communications with the other individual defendants related to Plaintiff or Ridley that were made…from January 1, 2017 through present, including texts and emails," (RTP No. 14)

• "if you ever used a cell phone, whether personal or agency-issued, for work purposes, all your phone call records for September 7, 2017 through October 31, 2017," (RTP No. 25)

• "all social media posts posted …for all social media in which you have been involved … in which you have expressed opinions or attitudes relating to prisons, prisoners, RMC, FDC, and your profession,"  (RTP No. 31)

• "all nonprivileged communications with any person not employed or formerly employed at RMC concerning Ridley or Plaintiff," (RTP No. 30)

• identify "your username or account name for all social media accounts…Twitter, Facebook, Truth Social, Reddit, Parler, Gab, YouTube, Telegram, Gettr, Instagram, and Rumble" (Interrogatory No. 7)

• identify "all conversations or communications you had…by type, time, person involved and detailing the substance of each…concerning or related to the events alleged or identified in the complaint [dating from September 2017 to the present]" (Interrogatory No. 8)

• as well as each defendant's understanding of all applicable FDC policies when an inmate is in confinement (Interrogatory No. 9), and the recollections of each day such defendant saw the decedent (Interrogatory No. 10), just to name a few.

In <u>David v. U.S.</u>, 2020 WL 1862606 (M.D. Fla. April 14, 2020), this Court granted a motion to stay discovery pending resolution of pending motions to dismiss stating:

> In the Motion to Stay, the United States indicates that it has moved to dismiss the complaint based on a lack of subject matter jurisdiction and failure to state a claim, as Plaintiff does not allege a wrongful act or omission involving the United States or any federal actor, the claims fall within the exception to the waiver of sovereign immunity, and Plaintiff has failed to exhaust his administrative remedies. (Doc. 28 ¶ 5). The United States further indicates that if a stay is not granted, it will expend significant time and resources on unnecessary discovery, pointing out that Plaintiff has already requested multiple documents prior to the holding of a Rule 26(f) conference. See id. at ¶ 7.
>
> Having taken a preliminary peek at the Motion to Dismiss, the Court finds that the requested stay is warranted in this case. The Motion raises potentially meritorious challenges to the complaint, which outweigh any harm to Plaintiff that a delay in discovery or case management would cause. Accordingly, good cause has been shown. <u>See</u> <u>George & Co. LLC v. Cardinal Indus., Inc.</u>, No. 218CV154FTM38MRM, 2019 WL 1468514, at *2 (M.D. Fla. Feb. 19, 2019) (staying discovery due to potentially meritorious challenges to complaint); <u>Duo-Regen Techs., LLC v. 4463251 Canada, Inc.</u>, No. 8:13-CV-2108-T-27TBM, 2014 WL 12618711, at *1 (M.D. Fla. Feb. 14, 2014) (staying discovery in all respects because, among other things, legitimate concerns regarding subject matter jurisdiction existed).

In <u>Santamaria v. Carrington Mortgage Services, LLC</u>, 2020 WL 60178, at *1 (M.D. Fla. 2020), this Court granted a stay of discovery pending resolution of the motions to dismiss, stating:

District courts have inherent power to control their dockets and manage their cases, including by staying discovery. <u>Perez v. Miami-Dade Cty.</u>, 297 F.3d 1255, 1263 (11th Cir. 2002); <u>The Andersons, Inc. v. Enviro Granulation, LLC</u>, Case No. 8:13-cv-3004-T-33MAP, 2014 WL 4059886 at *2 (M.D. Fla. Aug. 14, 2014). The Eleventh Circuit has "emphasized the responsibility of trial courts to manage pretrial discovery properly in order to avoid a massive waste of judicial and private resources and a loss of society's confidence in the courts' ability to administer justice." <u>Perez</u>, 297 F.3d at 1263 (internal quotation marks omitted). "Granting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of that responsibility." <u>Rivas v. The Bank of New York Melon</u>, 676 F. App'x 926, 932 (11th Cir. 2017).

These motions to dismiss (which have a significant probability of disposing the entire matter or significantly narrowing the scope of the Plaintiff's claims) should be resolved prior to any discovery.  Plaintiff would not suffer any prejudice as the discovery deadline is over 10 months away and trial over 19 months away. And due to the expansive nature and volume of the propounded discovery, Defendants jointly assert that a stay of discovery be issued until such time that their motions to dismiss have been ruled upon.

WHEREFORE, having shown good cause, all Defendants jointly request that the Court exercise its discretion to stay all (or a portion of the) discovery in this matter (as to all or a portion of the defendants, as the court deems appropriate) until the issues raised in their respective motions to dismiss are resolved, and for any further relief this Court deems necessary and/or proper.

## <u>CERTIFICATE OF GOOD FAITH CONFERRAL</u>

The undersigned has conferred with counsel for Plaintiff who has stated that

they **DO NOT CONSENT** to the relief sought herein.

Respectfully submitted,

ASHLEY B. MOODY
ATTORNEY GENERAL

*/s/ Anthony Dean Johnson*
Anthony Dean Johnson
Assistant Attorney General
Florida Bar No.: 12084
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399-1050
(850) 414-3300
Anthony.Johnson@myfloridalegal.com

Attorneys for Jerrels' defendants


LUKS, SANTANIELLO, PETRILLO,
COHEN & PETERFRIEND

*/s/ Sam D. Smart*
Sam D. Smart
Florida Bar No.:  95951
301 W. Bay Street Suite 1010
Jacksonville, Florida 32202
Telephone:  (904) 791-9191
Facsimile:  (904) 791-9196

ssmart@insurancedefense.net

Attorneys for Ricky Dixon


ALEXANDER DEGANCE BARNETT, P.A.

*/s/ David E. Chauncey*
Michelle Bedoya Barnett
Florida Bar No. 0823201
E-mail: michelle.barnett@adblegal.com
David E. Chauncey
Florida Bar No. 0119497
E-mail: david.chauncey@adblegal.com
E-mail: mailbox@adblegal.com
1500 Riverside Avenue
Jacksonville, FL 32204
(904) 345-3277 Telephone
(904) 345-3294 Facsimile
*Attorneys for Defendants Aaron Lewis, Daniel Greene, John E. Nettles, Jon Eberlein and Richard Flynn*

11

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed through the Court's CM/ECF system which will provide electronic service to all counsel of record this 24th day of February 2023.

*/s/ Anthony Dean Johnson*
Anthony Dean Johnson

# EXHIBIT  A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

JATOON MOSS,

      Plaintiff,

v.

RICKY DIXON, *et al.*,

      Defendants.

Case No. 3:21-cv-1026-MMH-MCR

## PLAINTIFF'S <u>FIRST</u> SET OF DISCOVERY REQUESTS DIRECTED TO DEFENDANTS WILLIAM JERRELS AND JOHN NETTLES

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff Jatoon Moss hereby requests that Defendants William Jerrels and John Nettles within thirty days (1) provide written responses to the following Requests for Production and Admissions, (2) produce for inspection and copying the documents and things identified in the Requests for Production, and (3) answer the following Interrogatories, separately and fully under oath or affirmation. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests and Interrogatories are continuing in nature and may require supplementation.

Dated: January 9, 2023

Respectfully submitted,

SLATER LEGAL PLLC

By: */s/ James M. Slater*
        James M. Slater (FBN 111779)
        113 S. Monroe Street
        Tallahassee, Florida 32301
        james@slater.legal
        Tel.: (305) 523-9023

        -and-

LAW OFFICE OF JAMES COOK

By: */s/ James V. Cook*
        James V. Cook (FBN 0966843)
        314 W. Jefferson Street
        Tallahassee, Florida 32301
        Tel. (850) 222-8080
        cookjv@gmail.com

        *Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on January 9, 2023, I electronically served the foregoing

document to counsel for the Defendants Jerrels and Nettles via electronic mail.


By: */s/ James M. Slater*
        James M. Slater

2

## DEFINITIONS AND INSTRUCTIONS

### General Definitions

1.      The term "person" means any individual, natural person, witness, partnership, association, firm, corporation, organization, trust, governmental or public entity, and/or any of its agents, employees, assigns or representatives.

2.      The term "identify" when referring to a natural person or entity shall mean to provide the name, last known address, present or last known place of employment, and telephone number of the person or entity described in the specific request.

3.      The term "identify" when referring to a document shall mean to provide the type of document; name or title of the document; the date; the author(s), transmitter(s), addressee(s), and recipient(s); a description of the subject matter; and the location and custodian of the document.

4.      "Plaintiff" means Plaintiff Jatoon Moss.

5.      "Ridley" means Craig Ridley.

6.      "FDC" means the Florida Department of Corrections, and its employees, agents, servants, representatives, and all other persons acting on its behalf.

7.      "You or "your" means the defendant responding to these requests.

8.      The "Complaint" shall refer to the current operative pleading in this action.

9.      "RMC" shall refer to Reception and Medical Center.

10.     For the defendant answering these requests, the term "individual defendants" means all other corrections defendants excluding Ricky Dixon.

11.     "Policy" encompasses all your policies, training memoranda, bulletins, manuals, orders, and other documents through which you inform your staff about how they should or shall act when on duty and is to be given the broadest possible meaning.

12.     The "Incident" means the use of force employed against Ridley on or about September 8, 2017.

13.     "Confinement" refers to the period of approximately five days between the Incident and Ridley's transport to the hospital during which time Ridley was held in confinement.

14.     The terms "concerning," "relating to," or "relate to" shall mean to make a statement about, discuss, describe, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate, or in any way pertain (in whole or in part) to the subject.

15.     The words "and" as well as "or" shall be construed both disjunctively and conjunctively; the word "all" means "any and all"; the word "any" means "any and all"; the word "each" means "each and every"; the word "every" means "each and every.

16.     The singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each gender.

4

17.     The term "document" is defined to include, but is not limited to, any papers, writings, drafts, notes, letters, diaries, agreements, contracts, calendars, memoranda, reports, drawings, plans, blueprints, notation books, financial records, computer or other business machine records, communications sent via any electronic means, including but not limited to internet, extranet and intranet, and any attachments to such electronic communications and any other data, compilations or written or graphic material stored in a tangible, electronic, mechanical or electric form, or any representation of any kind, including, but not limited to, materials stored on or in computer disks, networks, mainframes, hard drives, CD-ROM, tapes or other forms of memory, as well as back-up and deleted files of any computer, computer storage device or media, whether located on or off site, from which the information can be obtained, as well as any draft, nonidentical copy, and/or translation of the foregoing. A draft or non-identical copy is a separate document within the meaning of the term.

18.     The term "communication" or "communications" means any transmission of any data, document, or information by whatever medium, and includes, but is not limited to, physical correspondence and email, recorded voicemail messages, exchanged handwritten notes or images, instant messages, text messages, transmitted files, and all other means and manner of transmission of data or information.

19.     "Including" shall mean including but not limited to.

## Instructions for Requests for Production and Admissions

1.      You shall identify and produce all documents that can be located or discovered through diligent effort by you, your employees, representatives, agents, attorneys, consultants or accountants.  This instruction applies to all documents that are in the business or personal files of, or accessible to you or your employees, or in the possession of, or accessible to your representatives, agents, attorneys, consultants or accountants. Each document shall be produced in the form in which it is maintained in the normal course of your activities.

2.      If you object to the production of any document covered by any of these Requests, in the response to the specific request that encompasses the document, state the objection, the basis for the objection and whether or not the document is being withheld because of the objection.  For each document being withheld for any reason, including a claim of privilege, state the following in the response to the request encompassing the document:

> a.      the reason or reasons you are withholding the document, including any specific privilege you claim protects the document;
>
> b.      the facts supporting the privilege or other reason or reasons for withholding the document;
>
> c.      the date when the document was prepared or originated;
>
> d.      the name(s) or the person(s) who wrote or prepared the document, along with information regarding their relationship

to the person(s);

e.   the names of each person to whom the document was addressed or copied, as well as the names of each person who may have seen the document, along with information regarding your relationship to each person;

f.   the subject matter of the document; and

g.   the name and address of each person who has personal knowledge of the subject matter of the document.

3.   If you object or otherwise refuse to respond or produce documents in response to any portion of a document request, you shall provide all documents and information called for by that portion of the request for production that you do not object to and/or to which you do not refuse to respond as follows:

a.   If you object to a document request on the ground that it is too broad (i.e. if you believe it calls for information outside the scope of permissible discovery as defined by Rules 26 and 34 of the Federal Rules of Civil Procedure), you shall produce documents and things in response to that Request by producing all documents and things that are within the permissible scope of discovery and identify all categories of documents being withheld;

b.   If you object to a document request on the ground that to produce documents and things would constitute an undue

burden, then you shall produce as many of the requested
documents and things as can be provided without undertaking
an undue burden;

c.    If you object to any portion of a document request on the
ground that it is vague or indefinite, then you shall set forth your
understanding of the allegedly vague or indefinite term and shall
then produce documents and things based upon that stated
understanding.

4.    Please produce documents responsive to individual Requests as soon
as possible and without waiting to produce documents responsive to other Requests
whenever possible.

5.    Unless another time period is specified, this request for production is
addressed to the time period from <u>January 1, 2017</u> to the present, inclusive of
records that were effective during that time period even if they were generated
before it.

6.    These Requests are continuing in nature, and must be supplemented to
the extent that, subsequent to responding to these Requests, you obtain additional
information that renders any of your initial responses inaccurate or incomplete.

<u>**Instructions for Interrogatories**</u>

1.    In answering these interrogatories, you are required to provide all
information that is available to you or within your control, including information in

8

the possession of your attorneys, investigators, employees, or other agents.

2.      Where terms are defined, interrogatories containing those defined terms cannot be properly answered unless the definitions are followed.

3.      If you object to any part of an interrogatory and refuse to answer that part, state you objection and answer the remaining portion of that interrogatory. If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and answer the interrogatory for the scope or time period you believe is appropriate. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your ability to answer the remainder and stating the information you have concerning the unanswered portions. If your answer is qualified in any particular manner, set forth the details of that qualification.

4.      When an interrogatory requests documents, data, knowledge, or information in your possession, that interrogatory includes the knowledge of your attorneys, accountants, agents, representatives and experts, and any professional employed or retained by you relating to any of the facts or issues involved in this proceeding.

5.      If you contend that a response to an interrogatory calls for the disclosure of privileged information, in whole or in part, or if you otherwise object to any part of any interrogatory, you are required to provide a complete response to the portion of the interrogatory that is not privileged or objectionable. With respect to

the remainder of the interrogatory, state the following:

      a.    the reason for such objection or ground for exclusion;

      b.    the identity of each person having knowledge of the factual basis and the identity of individual documents, if any, on which the privilege or other ground is asserted;

      c.    the nature of the claim or privilege; and

      d.    the brief description of the item, document, or thing in a manner so as not to waive the privilege.

6.    If the response to all or part of any interrogatory is that you lack knowledge of the requested information, set forth the remaining information that is known to you and describe all efforts made by you or your attorneys, accountants, agents, experts, representatives or any professional employed or retained by you to obtain the information necessary to respond to the interrogatory. If any estimate or approximation can reasonably be made in place of the unknown information, also set forth your best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

7.    You are cautioned against providing boilerplate objections without providing a detailed basis for the objection. Such objections are improper under Rule 33(b)(4).

## DOCUMENT REQUESTS

1.      All communications in your possession, custody, or control relating to the matter sued upon between you and any witness listed in your Rule 26(a)(1)(A)(i) disclosures.

2.      All records, including electronically stored information, in your possession, custody, or control, that you may use to dispute Plaintiff's claims or support your defenses.

3.      All records listed in your Rule 26(a)(1)(A)(ii) disclosures.

4.      All public records requests made by you or on your behalf relating to Plaintiff, Ridley, the Incident, Confinement, or the facts in the Complaint, and all responses made by the person or entity from whom the records were requested.

5.      All records relating to the Incident, Confinement, Ridley's death, or facts in the Complaint that have been otherwise provided to you whether based on public records requests or not.

6.      A copy of your application to FDC and your periodic evaluations.

7.      Your application for any promotions and all FDC responses to the applications.

8.      All records relating to corrective actions against you during your corrections career, any appeals of corrective action, and final disposition.

9.      All records supporting any affirmative defense raised by you.

10.     All records, exhibits, graphs, displays, charts, computer printouts, recordings and photographs which you may use at any stage of this proceeding (noting the continuing duty to produce).

11.     A copy of your degrees or certifications including any FDC certification and any resume or curriculum vitae.

12.     All documents, including without limitation any models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, communications, notes, letters, text messages, direct messages, SMS messages, internet or social media posts, and emails, not privileged, relating to the Incident, Confinement, Ridley's death, or any of the facts identified in the Complaint.

13.     All records, including models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, and communications, including e-mails, relating to a fact or issue in this controversy.

14.     All communications with the other individual defendants relating to the Incident, Confinement, Ridley's death, or any other facts identified in the Complaint, including texts and emails.

15.     All communications with the nonparty FDC staff relating to the Incident, Confinement, Ridley's death, or any other facts identified in the Complaint, including texts and emails.

16.     All communications with the other individual defendants related to Plaintiff or Ridley that were made, whether orally or in writing, from January 1, 2017 through present, including texts and emails.

17.     All communications with the Florida Department of Law Enforcement (FDLE) investigators and staff relating to the Incident, Confinement, Ridley's death, or any other facts identified in the Complaint, including texts and emails.

18.     All communications with the Centurion of Florida, LLC and/or MHM Health Professionals, LLC staff relating to the Incident, Confinement, Ridley's death, or any other facts identified in the Complaint, including texts and emails.

19.     All communications with any RMC inmates relating to the Incident, Confinement, or any other facts identified in the Complaint, including texts and emails.

20.     All communications with any member of Ridley's family relating to the Incident, Confinement, Ridley's death, or any other facts identified in the Complaint, including texts and emails.

21.     All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to Ridley's medical condition(s) and history,

22.     All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to the Incident or any use of force on Ridley.

23.     All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to Ridley's care and nutrition at RMC.

24.     All records of disciplinary and corrective actions against you related to the Incident, Confinement, or facts identified in the Complaint.

25.     If you ever used a cell phone, whether personal or agency-issued, for work purposes, all your phone call records for September 7, 2017 through October 31, 2017.

26.     All photographs or video or audio recordings relating to the Incident, Confinement, or any other facts identified in the Complaint, including clips downloaded to cell phones or other devices.

27.     Any records relied on by you relating to FDC Policies and/or training, including related to confinement matters and use of force and post-use of force events.

28.     All records or documents supporting any responses to Plaintiff's Requests for Admissions directed to you where the statement is not unequivocally admitted.

29.     All records or documents not privileged that you created as a result of the Incident, Confinement, or Ridley's death, including but not limited to, letters, memos, logs, forms, reports, and transcripts.

30.     All nonprivileged communications with any person not employed or formerly employed at RMC concerning Ridley or Plaintiff.

14

31.     All social media posts posted by yourself (on your own social media or someone else's) for all social media in which you have been involved, including Facebook, Twitter, Truth Social, Reddit, Parler, Gab, YouTube, Telegram, Gettr, Instagram, Rumble, etc., in which you have expressed opinions or attitudes relating prisons, prisoners, RMC, FDC, and your profession.

32.     All social media posts posted by yourself (on your own social media or someone else's) related to Ridley, the Incident, Plaintiff, the facts contained in the Complaint, or this lawsuit.

33.     A privilege log that includes (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

/

/

15

## INTERROGATORIES

**Interrogatory No. 1**

Please state the name and title of each person who participated in responding to these Interrogatories and the Interrogatory number they participated in responding to.

**Interrogatory No. 2**

Please provide a brief summary of your education starting with high school (or GED), including the name of every educational institution, the city and state of the same, the beginning and ending month and year of attendance, and identify the course of study and any degrees awarded.

**Interrogatory No. 3**

Please provide a brief summary of your work experience since high school (or GED), providing the name of each employer, the city and state of employment, your start and end dates (month and year), all job assignments, including secondary duties, ranks achieved, and a brief description of the tasks associated with each job.

**Interrogatory No. 4**

Please identify all corrective actions against you, including counseling, by any law enforcement employer, including the date of the corrective action, the date of the incident on which it was based, the reason for the corrective action, the type of corrective action given, and whether you appealed the corrective action taken against you and the outcome of any such appeal.

**Interrogatory No. 5**

Identify all prior arrests, investigations, detentions, criminal charges, and convictions of yourself made by any law enforcement officer or agency before the date of the incident that is the subject of plaintiff's complaint. Include the following:

a. The dates of each arrest or investigation.
b. The arresting or investigating agency and officer.
c. The offense(s) on which the investigation or charges were based.
d. The disposition of the offense(s).
e. Any other result of the arrest or detention or investigation.

**Interrogatory No. 6**

Have you have ever been a defendant in any other civil rights lawsuit and, if so, please identify the case by name, court, trial docket number, describe in detail the allegations against you and state the outcome of the case, including the terms of any settlement.

**Interrogatory No. 7**

Please identify your username or account name for all social media accounts, including without limitation, Twitter, Facebook, Truth Social, Reddit, Parler, Gab, YouTube, Telegram, Gettr, Instagram, and Rumble.

**Interrogatory No. 8**

Please identify all conversations or communications you had, or statements given, whether oral or in writing, by type, time, person involved, and detailing the substance of each such communication, concerning or related to the events alleged or

identified in the Complaint, including the Incident, Confinement, and Ridley's death.

**Interrogatory No. 9**

Please describe in detail your understanding of the FDC Policies that you are required to follow during instances of use of force on inmates outside the close management or confinement context, including any factors that would call for a backboard and gurney instead of just a wheelchair.

**Interrogatory No. 10**

Please describe in detail your recollection of the events forming Incident starting from when Ridley was woken up on the morning of September 8, 2017 until he was taken to confinement later that day. For each such event detailed, please identify (a) each and every person who has person knowledge surrounding that event and (b) each and every person you have communicated with about such events.

**Interrogatory No. 11**

Please explain why you and Ridley were in the location where Ridley was injured on September 8, 2017, where you were just prior to that, and who else was present at the scene.

**Interrogatory No. 12**

Please identify every single individual by name and address who witnessed the use of force on Ridley on September 8, 2017. For each such person identified, describe where they were located and what their role was in the Incident, if any.

## <u>REQUESTS FOR ADMISSIONS</u>

1.      No claim in the operative complaint is barred by a statute of limitations.

2.      You participated in use of force on Ridley on September 8, 2017.

3.      You were working in a supervisory capacity at the time of Ridley's injury.

4.      You had a duty to provide medical care to Ridley.

5.      You have a duty generally to provide care to prisoners who have exhibited serious medical needs.

6.      Paralysis is a serious medical need.

7.      The sudden inability to walk is a serious medical need.

8.      The sudden lack of feeling in arms or legs is a serious medical need.

9.      Ridley struck his head on the wall shown next to him in the video.

10.     "Counseling" is a euphemism for using force on an inmate.

11.     You knew after the Incident that Ridley was not refusing to walk to medical.

12.     You knew after the Incident that Ridley was severely injured.

13.     You had to hold Ridley's shirt to keep him sitting upright in his wheelchair after the Incident.

14.     You never described to medical providers the nature of force used on Ridley.

15.     You told medical staff at RMC that Ridley struck you on the face.

19

16.     You did not tell Nurse Corey that Ridley had suffered a traumatic impact that could have caused a neurological injury.

17.     You did not instruct medical staff at RMC West Unit to remove Ridley's restraints for his medical examination after the Incident.

18.     The use of force on Ridley was at least two corrections staff on one inmate.

19.     The use of force on Ridley on September 8, 2017 paralyzed him.

20.     The use of force on Ridley on September 8, 2017 rendered him disabled.

21.     Ridley told you that he unable to walk after the use of force used on him on September 8, 2017.

22.     The force you used on Ridley caused him to exhibit a serious medical need.

23.     The force you used on Ridley rendered him disabled.

24.     The force you observed used on Ridley caused him to exhibit a serious medical need.

25.     Ridley was a mobility impaired inmate after the Incident.

26.     You were authorized to provide some accommodations to impaired inmates.

27.     You were aware that the mishandling of a mobility-impaired inmate could risk further harm.

28.     FDC's Policies and regulations, including Rule 33-602.210, F.A.C., require all persons who participated in a use of force event to make a written report.

29.     FDC's policies and regulations require all persons who observe a use of force to make a written report.

30.     Persons who violate FDC's Policies and regulations on reporting use of force can be disciplined for such failure.

31.     FDC's Policies and regulations, including Rule 33-602.210, F.A.C., require witnesses to cruel or inhumane treatment of and inmate or battery of an inmate by an FDC employee to report the unlawful battery or abuse in violation of the law to the warden or his designee.

32.     You did not report the use of force on Ridley to RMC's warden.

33.     You engaged in acts of force without penological purpose against Ridley.

34.     You committed cruel or inhumane treatment against Ridley.

35.     You committed a battery against Ridley.

36.     You witnessed acts of force without penological purpose against Ridley.

37.     You witnessed acts of cruel or inhumane treatment against Ridley.

38.     You witnessed a battery against Ridley.

39.     You witnessed acts of force without penological purpose against Ridley, including cruel or inhumane treatment or battery, but you did not intervene to stop it.

21

40.     You did not intervene during the Incident even though you were able to do so.

41.     You have never intervened to stop an officer's use of force against an inmate.

42.     You have never witnessed another RMC staff member stop an officer's use of force against an inmate.

43.     You are not aware of any other RMC officer who has intervened to stop another officer from using force against an inmate.

44.     You did not receive any corrective action for the use of force you exerted on Ridley.

45.     You did not receive any corrective action for failing to intervene to stop the use of force on Ridley.

46.     You did not receive any corrective action for having Ridley transported to medical in a wheelchair instead of ordering a backboard and gurney from medical.

47.     You are not aware of any RMC staff member who has been punished, disciplined, or received corrective measures for use of force on an inmate.

48.     You are not aware of any RMC staff member who has been punished, disciplined, or received corrective measures for failing to intervene to stop the use of force against an inmate.

49.     You have witnessed acts of excessive force without penological purpose against Ridley, including cruel or inhumane treatment or battery, but you failed to

report such acts to the warden or his designee as provided in 33-602.210(9)(a)(9), F.A.C.

50.     FDC's Policies and regulations, including Rule 33-602.210, F.A.C., require those with knowledge of cruel or inhumane treatment of an inmate or battery of an inmate by an FDC employee to report the unlawful battery or abuse in violation of the law to the warden or his designee as provided in 33-602.210(9)(a)(9), F.A.C.

51.     You had knowledge of acts of force without penological purpose against Plaintiff, including cruel or inhumane treatment or battery, but you failed to report such acts to the warden or his designee.

52.     At the time of the Incident, you were acting under color of state law.

53.     Ridley received at least one more-than-de-minimis physical injury as a result of the Incident.

54.     You have knowledge of RMC staff encouraging a prisoner to carry out violence against Ridley.

55.     There are areas within RMC West that are not captured by video surveillance and recording equipment.

56.     RMC staff are aware of which areas within RMC West are not captured by video surveillance and recording equipment.

57.     You have taken Ridley to areas within RMC that are not captured by video surveillance and recording equipment.

58.    You committed a battery against Ridley within those unmonitored areas of RMC.

59.    You engaged in cruel or inhumane treatment against Ridley within those unmonitored areas of RMC.

60.    You have knowledge of other FDC staff taking inmates to areas within RMC which are not captured by video surveillance and recording equipment.

61.    You were aware that other FDC staff have committed a battery against at least one other inmate within those unmonitored areas of RMC.

62.    You were aware that other FDC staff engaged in cruel or inhumane treatment of Ridley within those unmonitored areas of RMC.

63.    You interfered with the RMC's medical staff's ability to conduct post-use of force examinations of Ridley.

64.    You prevented medical staff from conducting post-use of force examinations of Ridley.

65.    FDC staff have a duty to provide care, supervision and services necessary to prisoners, including food, shelter, needed medical care, and hygiene.

66.    FDC staff have a duty to avoid acts or omissions that cause significant impairment to a prisoner's mental and physical health.

67.    You failed to properly supervise and discipline FDC staff involved in the custody and care of Ridley.

68.    You failed to follow normal and accepted humane corrections practices and procedures relating to the safe care of Ridley.

24

69.     You witnessed others fail to follow normal and accepted humane corrections practices and procedures relating to the safe care of Ridley.

70.     You failed to provide care, supervision, and services necessary to maintain the physical and mental health of Ridley that a prudent person would consider essential for the well-being of a vulnerable adult.

71.     You witnessed others fail to provide care, supervision, and services necessary to maintain the physical and mental health of Plaintiff that a prudent person would consider essential for the well-being of a vulnerable adult.

72.     To your knowledge, FDC has never investigated the so-called "barbershop beatings" at RMC.

73.     You did not face criminal indictment as a result of the Incident.

74.     It is a crime to commit an unjustified homicide.

75.     It is a crime to commit manslaughter.

76.     You have knowledge of other inmates who have died as a result of FDC officer use of force.

77.     To your knowledge, no FDC staff member has ever been prosecuted for an inmates death resulting from use of force.

78.     No DC6-221 form was completed prior to Ridley's move to confinement on September 8, 2017.

79.     You were aware that no DC6-221 for was completed prior to Ridley's move to confinement.

80.     You communicated with the other individual defendants about the Incident on September 8, 2017.

81.     You have communicated with Dr. Dure concerning Incident.

82.     You have communicated with Nurse Corey concerning the Incident.

83.     You have communicated with Nurse Winningham concerning the Incident.

84.     You communicated with at least one other individual defendant while Ridley was in Confinement.

85.     You have communicated with Dr. Dure concerning Ridley.

86.     You have communicated with Nurse Corey concerning Ridley.

87.     You have communicated with Nurse Winningham concerning Ridley.

88.     You communicated with at least one other individual defendant while Ridley was in the hospital.

89.     You communicated with at least one other individual defendant after Ridley's death.

90.     You have communicated with at least one other individual defendant in this case about this lawsuit.

91.     You made false statements to FDLE investigators concerning the Incident.

92.     You made false statements to FDLE investigators concerning Confinement.

93.    You made false statements to FDLE investigators concerning Ridley's death.

94.    You were told that Ridley had cancer.

95.    You have told at least one person that Ridley died of cancer.

96.    You never believed that Ridley died of cancer.

97.    In September 2017, you were aware that Ridley's medical records concerning the Incident, Confinement, or his condition contained false information.

98.    You falsified Ridley's FDC records.

99.    You have falsified information in other inmates' records.

100.   You are aware that other individual defendants falsified Ridley's FDC or medical records.

101.   You are aware of at least one other instance in which Centurion staff has included false information in an inmate's medical records.

102.   You are aware of at least one other instance in which any of the defendants in this case has included false information in an inmate's classification records.

103.   FDC has a policy or protocol concerning the use of hand-held cameras after a use of force event.

104.   You were aware that FDC had a policy or protocol concerning how soon after use of force a hand-held camera should be turned on to monitor the affected inmate.

105.   You purposefully delayed obtaining a hand-held camera after the Incident.

106.   You are aware that hand-held video recordings from the Incident and Confinement were not preserved.

107.   You were notified of possibility of a lawsuit prior to the filing of the original complaint in this lawsuit.

108.   When so notified of the possibility of a lawsuit, you are obligated to take steps to ensure that evidence is maintained and not destroyed.

109.   The failure to maintain material evidence may result in sanctions.

110.   You failed to ensure that all evidence of the Incident and Confinement were maintained.

111.   You were aware after the Incident that Ridley could not walk.

112.   You were aware after the Incident that Ridley could not move his extremities.

113.   You were aware that Ridley was placed in confinement.

114.   During Confinement, you were aware that Ridley was not provided with a wheelchair.

115.   During Confinement, you were aware that Ridley was not provided with an inmate assistant.

116.   During Confinement, you were aware that Ridley was not provided with accommodations to eat or drink.

117.    During Confinement, you were aware that Ridley was not provided with accommodations to shower or use the toilet.

118.    You were aware at the time that Ridley fell on his face while in Confinement.

119.    During Confinement, you discussed Ridley's condition with the other individual defendants in this case.

120.    During Confinement, you were aware that staff brought trays of food and drink to Ridley's cell.

121.    During Confinement, you were aware that Ridley's food and drink were unconsumed.

122.    You did not take any steps to ensure that Ridley ate or drank during Confinement.

123.    You did not take any steps to ensure that Ridley could use the restroom during Confinement.

124.    You did not take any steps to ensure that Ridley obtained a wheelchair during Confinement.

125.    RMC's warden knew at the time that Ridley was not eating or drinking during Confinement.

126.    RMC's warden knew at the time that Ridley was not able to use his extremities during Confinement.

127.    You were in a position to advocate for Ridley during Confinement.

29

128.   You were in a position to ensure that Ridley received treatment for his serious medical condition during Confinement.

129.   You failed to take steps to help Ridley obtain medical treatment while in Confinement.

130.   You had a legal obligation to ensure that Ridley was provided with necessary treatment for his serious medical condition while in Confinement.

131.   During Confinement, you were aware of at least one prisoner who had asked FDC staff to help Ridley.