Defendant objects too all 8 pages of Plaintiff's "instructions" and "definitions" that precede the voluminous discovery requests.

## RESPONSES TO REQUESTS FOR ADMISSIONS

1.  No claim in the operative complaint is barred by a statute of limitations.

    **Response: Denied.**

2.  Decedent was a qualified person with a disability under the ADA.

    **Response: Denied.**

3.  Decedent became a qualified person with a disability under the ADA after the use of force event in September 2017.

    **Response: Denied.**

4.  You had a duty to provide medical care to Decedent.

    **Response: Admit Florida law applies, otherwise denied.**

5.  You had duty to provide ADA accommodations to Decedent.

    **Response: Admit Florida law applies, otherwise denied.**

6.  In 2017, Centurion had a contract with FDC to provide medical care at RMC.

    **Response: Admitted.**

7.  Reasonable accommodations for paralyzed prisoners can include ensuring access to mobility devices.

    **Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

8.  Reasonable accommodations for paralyzed prisoners can include ensuring access to inmate assistance with daily living activities.

    **Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion.  Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla.**

**5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

9.    Reasonable accommodations for paralyzed prisoners can include ensuring access to inmate assistance with eating and drinking.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

10.    Reasonable accommodations for PD-2-classified prisoners can include ensuring access to mobility devices.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

11.    Reasonable accommodations for PD-2-classified prisoners can include ensuring access to inmate assistance with daily living activities.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

12.    Reasonable accommodations for PD-2-classified prisoners can include ensuring access to inmate assistance with eating and drinking.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

13.    Reasonable accommodations for PD-3-classified prisoners can include ensuring access to mobility devices.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla.**

**5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

14.     Reasonable accommodations for PD-3-classified prisoners can include ensuring access to inmate assistance with daily living activities.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

15.     Reasonable accommodations for PD-3-classified prisoners can include ensuring access to inmate assistance with eating and drinking.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

16.     Decedent was a mobility impaired inmate after September 8, 2017.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion. Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Without waiving the foregoing objection, denied.**

17.     You have not provided any training to Defendant Jerrels concerning management of disabled inmates.

**Response: Denied.**

18.     You have not provided any ADA training to Defendant Jerrels.

**Response: Denied.**

19.     You have not provided any training to Defendant Nettles concerning management of disabled inmates.

**Response: Denied.**

20.     You have not provided any ADA training to Defendant Nettles.

**Response: Denied.**

21.    You have not provided any training to Defendant Anderson concerning management of disabled inmates.

**Response: Denied.**

22.    You have not provided any ADA training to Defendant Anderson.

**Response: Denied.**

23.    You have not provided any training to Defendant Livingston concerning management of disabled inmates.

**Response: Denied.**

24.    You have not provided any ADA training to Defendant Livingston.

**Response: Denied.**

25.    You have not provided any training to Defendant Nyitray concerning management of disabled inmates.

**Response: Denied.**

26.    You have not provided any ADA training to Defendant Nyitray.

**Response: Denied.**

27.    You have not provided any training to Defendant Lewis concerning management of disabled inmates.

**Response: Denied.**

28.    You have not provided any ADA training to Defendant Lewis.

**Response: Denied.**

29.    You have not provided any training to Defendant Eberlein concerning management of disabled inmates.

**Response: Denied.**

30.    You have not provided any ADA training to Defendant Eberlein.

**Response: Denied.**

31.     You have not provided any training to Defendant Potosky concerning management of disabled inmates.

**Response: Denied.**

32.     You have not provided any ADA training to Defendant Potosky.

**Response: Denied.**

33.     You have not provided any training to Defendant Greene concerning management of disabled inmates.

**Response: Denied.**

34.     You have not provided any ADA training to Defendant Greene.

**Response: Denied.**

35.     You have not provided any training to Defendant Flynn concerning management of disabled inmates.

**Response: Denied.**

36.     You have not provided any ADA training to Defendant Flynn.

**Response: Denied.**

37.     You have not provided any training to Defendant Givens concerning management of disabled inmates.

**Response: Denied.**

38.     You have not provided any ADA training to Defendant Givens.

**Response: Denied.**

39.     PD3 inmates were defined by Health Services Bulletin 15.03.13 in 2017 as those with a permanent disability requiring assignment of a permanent wheelchair or other adaptive device.

**RESPONSE: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an admission or denial regarding a purely legal conclusion.  Davis v. Dollar Rent A Car Systems, Inc., 909 So. 2d 297 (Fla. 5th DCA 2004) (quashed on other grounds Williams v. Davis, 974 So. 2d 1052 (Fla. 2007)). Defendant further objects to this request on**

**the grounds that the request is seeking an expert opinion. Without waiving the foregoing objection, denied.**

40.   Decedent was not referred to the Chief Health Officer for assessment to determine the need for an Inmate Assistant after the use of force event on September 8, 2017.

   **Response: Admitted.**

41.   Decedent was never referred to the Chief Health Officer for assessment to determine the need for an Inmate Assistant.

   **Response: Admitted.**

42.   Decedent was not referred to the Institutional Medical Director for assessment to determine the need for an Inmate Assistant after the use of force event on September 8, 2017.

   **Response: Admitted.**

43.   Decedent was never referred to the Institutional Medical Director for assessment to determine the need for an Inmate Assistant.

   **Response: Admitted.**

44.   You violated your Policies by not referring Decedent to the Chief Health Officer for an assessment in September 2017.

   **Response: Denied.**

45.   You violated your Policies by not referring Decedent to the Institutional Medical Director for an assessment in September 2017.

   **Response: Denied.**

46.   You violated Title II of the ADA by not referring Decedent to the Chief Health Officer for an assessment in September 2017.

   **Response: Denied.**

47.   You violated Title II of the ADA by not referring Decedent to the Institutional Medical Director for an assessment in September 2017.

   **Response: Denied.**

48.    Decedent was not assessed for accommodations on a recorded DC4-706, Health Services Profile form.

**Response: Admitted.**

49.    Decedent was not referred in September 2017 to an institutional ADA coordinator for assessment of his need for appropriate ADA accommodations.

**Response: Admitted.**

50.    Decedent never had the need for any ADA accommodations reviewed by an ADA coordinator.

**Response: Objection, this request is not phrased clearly therefore denied.**

51.    Decedent never had the need for any ADA accommodations assessed by an ADA coordinator.

**Response: Objection, this request is not phrased clearly therefore denied.**

52.    Decedent was never assessed for any determination as to the need of an Inmate Assistant.

**Response: Admitted.**

53.    You failed to provide Decedent with an Inmate Assistant in September 2017.

**Response: Denied.**

54.    FDC's policies and regulations, including Rule 33-602.210, F.A.C., require all persons who participated in a use of force event to report it.

**Response: Admitted.**

55.    Persons who violate FDC's policies and regulations on reporting use of force can be disciplined for such failure.

**Response: Admitted.**

56.    FDC's policies and regulations, including Rule 33-602.210, F.A.C., require witnesses to cruel or inhumane treatment of and inmate or battery of an inmate by an FDC employee to report the unlawful battery or abuse in violation of the law to the warden or his designee.

**Response: Admitted.**

57.     Defendant Jerrels did not report his unlawful battery on Decedent to RMC's warden.

    **Response: Denied.**

58.     Defendant Nettles did not report his unlawful battery on Decedent to RMC's warden.

    **Response: Denied.**

59.     No FDC investigation was done of the "barbershop beatings" allegation uncovered by FDLE investigators.

    **Response: OBJECTION. This request is outside the scope of admissible evidence and is immaterial to the Plaintiff's allegations. The request is vague and ambiguous and Defendant will be moving under separate cover for protective order from having to respond to this type of discovery.**

60.     No FDC investigation was done as to the allegations of gratuitous beatings of inmates by several corrections staff uncovered by FDLE investigators.

    **Response: OBJECTION. This request is outside the scope of admissible evidence and is immaterial to the Plaintiff's allegations. The request is vague and ambiguous and Defendant will be moving under separate cover for protective order from having to respond to this type of discovery.**

61.     No DC6-221 form was completed prior to Decedent's move to confinement on September 8, 2017.

    **Response: Denied.**

62.     At least one of Decedent's medical records generated after the use of force event on September 8, 2017 contained false information.

    **Response: Admitted.**

63.     You are aware at least one other instance in which your staff has included false information in an inmate's medical records.

    **Response: Defendant is without knowledge, therefore denied.**

64.     You are aware at least one other instance in which Centurion has included false information in an inmate's medical records.

    **Response: Defendant is without knowledge, therefore denied.**

65.     You are aware at least one other instance in which your staff has included false information in an inmate's classification records.

**Response: Defendant is without knowledge, therefore denied.**

66.     You are aware at least one other instance in which Centurion has included false information in an inmate's classification records.

**Response: Defendant is without knowledge, therefore denied.**

67.     Your staff has placed false information in inmates' records to hide their medical condition.

**Response: Defendant is without knowledge, therefore denied.**

68.     You failed to preserve all RMC fixed-wing video recordings from September 8, 2017 through September 13, 2017.

**Response: admit that all fixed wing video throughout the entire institution was not preserved, the institution hold approximately 2500 inmates in approximately 10 dorms.**

69.     You failed to preserve all handheld video recordings taken at RMC from September 8, 2017 through September 13, 2017.

**Response: Admit because Defendant was under no obligation to preserve all handheld video taken throughout the entire institution during that time frame.**

70.     You were on notice prior to this lawsuit that you had an obligation to maintain all video recordings concerning the use of force on Decedent.

**Response: Objection, overly broad and not limited in time or scope, therefore denied.**

71.     You were on notice prior to this lawsuit that you had an obligation to maintain all video recordings concerning Decedent taken after the use of force event on September 8, 2017.

**Response: See Defendant's response to request 70 above.**

72.     Despite knowing you had an obligation to preserve evidence in this case, you nevertheless permitted evidence to be destroyed.

**Response: Denied.**

73.     Despite knowing you had an obligation to preserve evidence in this case, you nevertheless failed to ensure that all records were maintained.

**Response: Denied.**

74.     Staff at Memorial Hospital in Jacksonville were never advised of the use of force on Decedent.

**Response: Defendant is without knowledge, therefore denied.**

75.     Staff at Memorial Hospital in Jacksonville were never advised that prior to arrival at the hospital Decedent spent several days in confinement without food, liquids, hygiene, or medication.

**Response: Defendant is without knowledge, therefore denied.**

76.     Staff at Memorial Hospital in Jacksonville were never told about the neck trauma associated with the hematoma on Decedent's neck.

**Response: Defendant is without knowledge, therefore denied.**

77.     Decedent was chained to his bed at Memorial Hospital in Jacksonville so that hospital staff could not turn him without asking the officers' permission.

**Response: Defendant is without knowledge, therefore denied.**

78.     Decedent was found to have a large decubitus ulcer on his buttocks after his death.

**Response: OBJECTION. Defendant objects to this request on the grounds that the request is seeking an expert opinion. Without waiving the foregoing objection, denied.**

79.     On September 8, 2017, corrections staff brought trays of food and drink to Decedent's cell.

**Response: Admitted.**

80.     On September 8, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

**Response: Admitted.**

81.     Decedent did not consume any food on September 8, 2017.

**Response: Admitted.**

82.    Decedent did not consume any drink on September 8, 2017.

**Response: Admitted.**

83.    On September 9, 2017, corrections staff brought trays of food and drink to Decedent's cell.

**Response: Admitted.**

84.    On September 9, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

**Response: Admitted.**

85.    Decedent did not consume any food on September 9, 2017.

**Response: Admitted.**

86.    Decedent did not consume any drink on September 9, 2017.

**Response: Admitted.**

87.    On September 10, 2017, corrections staff brought trays of food and drink to Decedent's cell.

**Response: Admitted.**

88.    On September 10, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

**Response: Admitted.**

89.    Decedent did not consume any food on September 10, 2017.

**Response: Admitted.**

90.    Decedent did not consume any drink on September 10, 2017.

**Response: Admitted.**

91.    On September 11, 2017, corrections staff brought trays of food and drink to Decedent's cell.

**Response: Admitted.**

92.    On September 11, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

**Response: Admitted.**

93.    Decedent did not consume any food on September 11, 2017.

**Response: Admitted.**

94.    Decedent did not consume any drink on September 12, 2017.

**Response: Admitted.**

95.    On September 12, 2017, corrections staff brought trays of food and drink to Decedent's cell.

**Response: Admitted.**

96.    On September 12, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

**Response: Admitted.**

97.    Decedent did not consume any food on September 12, 2017.

**Response: Admitted.**

98    Decedent did not consume any drink on September 12, 2017.

**Response: Admitted.**

99.    During his time in confinement at RMC from September 8 through September 13, 2017, Plaintiff never able to consume any food.

**Response: Defendant is without knowledge, therefore, denied.**

100.    FDC records do not reflect whether Decedent had consumed any food on September 8, 2017.

**Response: Admitted.**

101.    FDC records were required to reflect whether Decedent had consumed any food on September 8, 2017.

**Response: Denied.**

102.   FDC records do not reflect whether Decedent had consumed any food on September 9, 2017.

> **Response: Admitted.**

103.   FDC records were required to reflect whether Decedent had consumed any food on September 9, 2017.

> **Response: Denied.**

104.   FDC records do not reflect whether Decedent had consumed any food on September 10, 2017.

> **Response: Admitted**

105.   FDC records were required to reflect whether Decedent had consumed any food on September 10, 2017.
> **Response: Denied.**

106.   FDC records do not reflect whether Decedent had consumed any food on September 11, 2017.

> **Response: Admitted.**

107.   FDC records were required to reflect whether Decedent had consumed any food on September 11, 2017.

> **Response: Denied.**

108.   FDC records do not reflect whether Decedent had consumed any food on September 12, 2017.

> **Response: Admitted.**

109.   FDC records were required to reflect whether Decedent had consumed any food on September 12, 2017.

> **Response: Denied.**

110.   FDC records do not reflect whether Decedent had consumed any drink on September 8, 2017.

> **Response: Admitted.**

111.   FDC records were required to reflect whether Decedent had consumed any drink on September 8, 2017.

**Response: Denied.**

112.   FDC records do not reflect whether Decedent had consumed any drink on September 9, 2017.

**Response: Admitted.**

113.   FDC records were required to reflect whether Decedent had consumed any drink on September 9, 2017.

**Response: Denied.**

114.   FDC records do not reflect whether Decedent had consumed any drink on September 10, 2017.

**Response: Admitted.**

115.   FDC records were required to reflect whether Decedent had consumed any drink on September 10, 2017.

**Response: Denied.**

116.   FDC records do not reflect whether Decedent had consumed any drink on September 11, 2017.

**Response: Admitted.**

117.   FDC records were required to reflect whether Decedent had consumed any drink on September 11, 2017.

**Response: Denied.**

118.   FDC records do not reflect whether Decedent had consumed any drink on September 12, 2017.

**Response: Admitted.**

119.   FDC records were required to reflect whether Decedent had consumed any drink on September 12, 2017.

**Response: Denied.**

120.   FDC staff violated your Policies by not ensuring Decedent was consuming any food in confinement from September 8 through 13, 2017.

**Response: Denied as phrased.**

121.   FDC staff violated your Policies by not ensuring Decedent was consuming any drink in confinement from September 8 through 13, 2017.

**Response: Denied as phrased.**

122.   FDC staff violated your Policies by not reporting that Decedent was not consuming any food in confinement from September 8 through 13, 2017.

**Response: Denied as phrased.**

123.   FDC staff violated your Policies by not reporting that Decedent was not consuming any drink in confinement from September 8 through 13, 2017.

**Response: Denied as phrased.**

124.   After Decedent was removed from his cell in confinement at RMC in September 2017, a number of wrapped sandwiches were swept out of the cell.

**Response: Admitted.**

125.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent never able to consume any liquids.

**Response: Defendant is without knowledge, therefore, denied.**

126.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to food.

**Response: Admitted.**

127.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to beverage.

**Response: Admitted.**

128.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never able to attend to any personal hygiene.

**Response: Defendant is without knowledge, therefore, denied.**

129.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to facilities to clean themselves.

   **Response: Admitted.**

130.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to showers.

   **Response: Admitted.**

131.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to accessible bathrooms.

   **Response: Admitted.**

132.   Decedent did not have access to a handicap accessible bathroom on September 8, 2017.

   **Response: Admit as Defendant was not in an ADA confinement cell.**

133.   Decedent did not have access to a handicap accessible bathroom on September 9, 2017.

   **Response: Admit as Defendant was not in an ADA confinement cell.**

134.   Decedent did not have access to a handicap accessible bathroom on September 10, 2017.

   **Response: Admit as Defendant was not in an ADA confinement cell.**

135.   Decedent did not have access to a handicap accessible bathroom on September 11, 2017.

   **Response: Admit as Defendant was not in an ADA confinement cell.**

136.   Decedent did not have access to a handicap accessible bathroom on September 12, 2017.

   **Response: Admit as Defendant was not in an ADA confinement cell.**

137.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never able to receive any prescribed medication.

   **Response: Denied.**

138.   Decedent did not receive any medication on September 8, 2017.

   **Response: Admitted.**

139.   Decedent did not receive any medication on September 9, 2017.
     **Response: Admitted.**

140.   Decedent did not receive any medication on September 10, 2017.

     **Response: Denied.**

141.   Decedent did not receive any medication on September 11, 2017.
     **Response: Denied.**

142.   Decedent did not receive any medication on September 12, 2017.

     **Response: Admitted.**

143.   Decedent did not receive any medication on September 13, 2017.

     **Response: Admitted.**

144.   Decedent did not take any medication on September 8, 2017.
     **Response: Admitted.**

145.   Decedent did not take any medication on September 9, 2017.
     **Response: Admitted.**

146.   Decedent did not take any medication on September 10, 2017.

     **Response: Admitted.**

147.   Decedent did not take any medication on September 11, 2017.

     **Response: Admitted.**

148.   Decedent did not take any medication on September 12, 2017.

     **Response: Admitted.**

149.   Decedent did not take any medication on September 13, 2017.

     **Response: Admitted.**

150.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to medication.

     **Response: Admitted.**

151.  FDC staff violated your Policies by not providing Decedent medication while in confinement from September 8 through 13, 2017.

**Response: Denied.**

152.  During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never taken for recreation.

**Response: Admitted.**

153.  FDC staff violated your Policies by not taking Decedent for recreation while in confinement from September 8 through 13, 2017.

**Response: Denied.**

154.  Decedent was not taken for a shower on September 8, 2017.

**Response: Admitted.**

155.  Decedent was not taken for a shower on September 9, 2017.

**Response: Admitted.**

156.  Decedent was not taken for a shower on September 10, 2017
**Response: Admitted.**

157.  Decedent was not taken for a shower on September 11, 2017.

**Response: Admitted.**

158.  Decedent was not taken for a shower on September 12, 2017.

**Response: Admitted.**

159.  Decedent was not taken for a shower on September 13, 2017.
**Response: Admitted.**

160.  FDC staff violated your Policies by not taking Decedent for a shower while in confinement from September 8 through 13, 2017.

**Response: Denied.**

161.  During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never taken for a shower.

**Response: Admitted.**

162.    During his time in confinement at RMC from September 8 through September 13, 2017, other inmates asked corrections staff to provide care and nutrition to Decedent.
**Response: Admitted.**

163.    During his time in confinement at RMC from September 8 through September 13, 2017, inmates who asked correction staff to provide care and nutrition to Decedent received threats from staff
**Response: Denied.**