UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JATOON MOSS,

      Plaintiff,

v.

RICKY DIXON, *et al.*,

      Defendants.

Case No. 3:21-cv-1026-MMH-MCR

**PLAINTIFF'S <u>FIRST</u> SET OF DISCOVERY REQUESTS
DIRECTED TO SECRETARY RICKY DIXON**

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff Jatoon Moss hereby requests that Defendant Ricky Dixon, in his official capacity as Secretary of the Florida Department of Corrections, within thirty days (1) provide written responses to the following Requests for Production and Admissions, (2) produce for inspection and copying the documents and things identified in the Requests for Production, and (3) answer the following Interrogatories, separately and fully under oath or affirmation. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests and Interrogatories are continuing in nature and may require supplementation.

Dated: December 7, 2022

Respectfully submitted,

SLATER LEGAL PLLC

By: */s/ James M. Slater*
        James M. Slater (FBN 111779)
        113 S. Monroe Street
        Tallahassee, Florida 32301
        james@slater.legal
        Tel.: (305) 523-9023

        *Counsel for Plaintiff*

**Certificate of Service**

I hereby certify that on December 7, 2022, I electronically served the foregoing document to counsel for the Secretary Dixon via electronic mail.

By: */s/ James M. Slater*
      James M. Slater

## DEFINITIONS AND INSTRUCTIONS

### General Definitions

1.     The term "person" means any individual, natural person, witness, partnership, association, firm, corporation, organization, trust, governmental or public entity, and/or any of its agents, employees, assigns or representatives.

2.     The term "identify" when referring to a natural person or entity shall mean to provide the name, last known address, present or last known place of employment, and telephone number of the person or entity described in the specific request.

3.     The term "identify" when referring to a document shall mean to provide the type of document; name or title of the document; the date; the author(s), transmitter(s), addressee(s), and recipient(s); a description of the subject matter; and the location and custodian of the document.

4.     "Plaintiff" means Plaintiff Jatoon Moss.

5.     "Decedent" means Craig Ridley.

6.     "Defendant," "you," "your," or "FDC," means Secretary Ricky Dixon, in his capacity as Secretary of the Florida Department of Corrections, and his employees, agents, servants, representatives, and all other persons acting on his behalf.

7.     "Centurion" collectively means Centurion of Florida, LLC and MHM Health Professionals, LLC, and their respective or joint employees, agents, servants,

representatives, and all other persons acting on their behalf.

8.     The "Complaint" shall refer to the current operative pleading in this action.

9.     The "RMC" shall refer to Reception and Medical Center.

10.    The "individual defendants" means Defendants Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein, Potosky, Greene, Flynn, and Givens.

11.    "Policy" encompasses all your policies, training memoranda, bulletins, manuals, orders, and other documents through which you inform your staff about how they should or shall act when on duty and is to be given the broadest possible meaning.

12.    The terms "concerning," "relating to," or "relate to" shall mean to make a statement about, discuss, describe, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate, or in any way pertain (in whole or in part) to the subject.

13.    The words "and" as well as "or" shall be construed both disjunctively and conjunctively; the word "all" means "any and all"; the word "any" means "any and all"; the word "each" means "each and every"; the word "every" means "each and every.

14.    The singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each gender.

15.    The term "document" is defined to include, but is not limited to, any

4

papers, writings, drafts, notes, letters, diaries, agreements, contracts, calendars, memoranda, reports, drawings, plans, blueprints, notation books, financial records, computer or other business machine records, communications sent via any electronic means, including but not limited to internet, extranet and intranet, and any attachments to such electronic communications and any other data, compilations or written or graphic material stored in a tangible, electronic, mechanical or electric form, or any representation of any kind, including, but not limited to, materials stored on or in computer disks, networks, mainframes, hard drives, CD-ROM, tapes or other forms of memory, as well as back-up and deleted files of any computer, computer storage device or media, whether located on or off site, from which the information can be obtained, as well as any draft, nonidentical copy, and/or translation of the foregoing. A draft or non-identical copy is a separate document within the meaning of the term.

16.     "Including" shall mean including but not limited to.

### Instructions for Requests for Production and Admissions

1.     You shall identify and produce all documents that can be located or discovered through diligent effort by you, your employees, representatives, agents, attorneys, consultants or accountants.  This instruction applies to all documents that are in the business or personal files of, or accessible to you or your employees, or in the possession of, or accessible to your representatives, agents, attorneys, consultants or accountants. Each document shall be produced in the form in which it is

maintained in the normal course of your activities.

2.      If you object to the production of any document covered by any of these Requests, in the response to the specific request that encompasses the document, state the objection, the basis for the objection and whether or not the document is being withheld because of the objection.  For each document being withheld for any reason, including a claim of privilege, state the following in the response to the request encompassing the document:

a.      the reason or reasons you are withholding the document, including any specific privilege you claim protects the document;

b.      the facts supporting the privilege or other reason or reasons for withholding the document;

c.      the date when the document was prepared or originated;

d.      the name(s) or the person(s) who wrote or prepared the document, along with information regarding their relationship to the person(s);

e.      the names of each person to whom the document was addressed or copied, as well as the names of each person who may have seen the document, along with information regarding your relationship to each person;

f.      the subject matter of the document; and

g.      the name and address of each person who has personal

knowledge of the subject matter of the document.

3. If you object or otherwise refuse to respond or produce documents in response to any portion of a document request, you shall provide all documents and information called for by that portion of the request for production that you do not object to and/or to which you do not refuse to respond as follows:

a. If you object to a document request on the ground that it is too broad (i.e. if you believe it calls for information outside the scope of permissible discovery as defined by Rules 26 and 34 of the Federal Rules of Civil Procedure), you shall produce documents and things in response to that Request by producing all documents and things that are within the permissible scope of discovery and identify all categories of documents being withheld;

b. If you object to a document request on the ground that to produce documents and things would constitute an undue burden, then you shall produce as many of the requested documents and things as can be provided without undertaking an undue burden;

c. If you object to any portion of a document request on the ground that it is vague or indefinite, then you shall set forth your understanding of the allegedly vague or indefinite term and shall then produce documents and things based upon that stated

understanding.

4.      Please produce documents responsive to individual Requests as soon as possible and without waiting to produce documents responsive to other Requests whenever possible.

5.      Unless another time period is specified, this request for production is addressed to the time period from <u>January 1, 2017</u> to the present, inclusive of records that were effective during that time period even if they were generated before it.

6.      These Requests are continuing in nature, and must be supplemented to the extent that, subsequent to responding to these Requests, you obtain additional information that renders any of your initial responses inaccurate or incomplete.

<u>**Instructions for Interrogatories**</u>

1.      In answering these interrogatories, you are required to provide all information that is available to you or within your control, including information in the possession of your attorneys, investigators, employees, or other agents.

2.      Where terms are defined, interrogatories containing those defined terms cannot be properly answered unless the definitions are followed.

3.      If you object to any part of an interrogatory and refuse to answer that part, state you objection and answer the remaining portion of that interrogatory. If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and answer the interrogatory for the

scope or time period you believe is appropriate. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your ability to answer the remainder and stating the information you have concerning the unanswered portions. If your answer is qualified in any particular manner, set forth the details of that qualification.

5.      When an interrogatory requests documents, data, knowledge, or information in your possession, that interrogatory includes the knowledge of your attorneys, accountants, agents, representatives and experts, and any professional employed or retained by you relating to any of the facts or issues involved in this proceeding.

6.      If you contend that a response to an interrogatory calls for the disclosure of privileged information, in whole or in part, or if you otherwise object to any part of any interrogatory, you are required to provide a complete response to the portion of the interrogatory that is not privileged or objectionable. With respect to the remainder of the interrogatory, state the following:

        a.      the reason for such objection or ground for exclusion;

        b.      the identity of each person having knowledge of the factual basis and the identity of individual documents, if any, on which the privilege or other ground is asserted;

        c.      the nature of the claim or privilege; and

        d.      the brief description of the item, document, or thing in a manner

9

so as not to waive the privilege.

7.     If the response to all or part of any interrogatory is that you lack knowledge of the requested information, set forth the remaining information that is known to you and describe all efforts made by you or your attorneys, accountants, agents, experts, representatives or any professional employed or retained by you to obtain the information necessary to respond to the interrogatory. If any estimate or approximation can reasonably be made in place of the unknown information, also set forth your best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

8.     You are cautioned against providing boilerplate objections without providing a detailed basis for the objection. Such objections are improper under Rule 33(b)(4).

/

/

/

## DOCUMENT REQUESTS

1.      All communications in your possession, custody, or control relating to the matter sued upon between you and any witness listed in your Rule 26(a)(1)(A)(i) disclosures.

2.      All records, including electronically stored information, in your possession, custody, or control, that you may use to dispute Plaintiff's claims or support your defenses.

3.      All records listed in your Rule 26(a)(1)(A)(ii) disclosures.

4.      All public records requests made by you or on your behalf relating to Plaintiff, Decedent, or the facts in the Complaint, and all responses made by the person or entity from whom the records were requested.

5.      All incident and investigation reports and appendices relating to any formal or informal grievances or appeals by Decedent from January 1, 2017 to present.

6.      All video and audio recordings and photos relating to any formal or informal grievances or appeals by Decedent from January 1, 2017 to present.

7.      Any transcripts of audio or video recordings relating to any formal or informal grievances or appeals by Decedent from January 1, 2017 to present.

8.      All incident reports, investigation reports, or communications relating to any grievances or complaints against the individual defendants in this case.

9.      Decedent's complete classification files, including his DC-14.

10.      All of Decedent's DC4-701C and DC4-708 forms.

11.    All communications and documents concerning Decedent's DC4-701C and DC4-708 forms.

12.    All documents relied upon in creating Decedent's DC4-701C forms.

13.    All of Decedent's DC4-706 forms.

14.    All communications and documents concerning Decedent's DC4-706 forms.

15.    All documents relied upon in creating Decedent's DC4-706 forms.

16.    All of Decedent's DC4-706 forms.

17.    All communications and documents concerning Decedent's DC4-706 forms.

18.    All documents relied upon in creating Decedent's DC4-706 forms.

19.    All of Decedent's DC4-683DD forms.

20.    All communications and documents concerning Decedent's DC4-683DD forms.

21.    All documents relied upon in creating Decedent's DC4-683DD forms.

22.    All of Decedent's DC6-221 forms.

23.    All communications and documents concerning Decedent's DC6-221 forms.

24.    All documents relied upon in creating Decedent's DC6-221 forms.

25.    All of Decedent's DC6-229 forms.

26.    All communications and documents concerning Decedent's DC6-229 forms.

27.     All documents relied upon in creating Decedent's DC6-229 forms.

28.     All of Decedent's Medication Administration Record (MAR) forms.

29.     All grievance logs showing Decedent's grievances from January 1, 2017 to present.

30.     All of Decedent's medical and mental health records from January 1, 2017 to present.

31.     All personnel records or the individual defendants, including applications and employee evaluations and records relating to or concerning complaints, disciplinary and corrective actions taken against any of the individual defendants.

32.      All training records for the individual defendants containing the course name, hours, instructors, etc.

33.     For each record produced in response to Request No. 32 above, all related or accompanying materials, including without limitation lesson plans, instructor guides, training videos, PowerPoint presentations.

34.     All records relating to the facts in the Complaint that have been otherwise provided to you whether based on public records requests or not.

35.     All records, exhibits, graphs, displays, charts, computer printouts, recordings and photographs which you may use at any stage of this proceeding (noting the continuing duty to produce).

36.     All documents, including without limitation any models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence,

memos, journals, logs, notebooks, notes, investigative reports, communications, notes, letters, text messages, direct messages, SMS messages, internet or social media posts, and e-mails, not privileged, relating to any of the facts identified in the Complaint.

37.    All records, including models, plats, maps, drawings, photos, film, audio or video recordings, transcripts, correspondence, memos, journals, logs, notebooks, notes, investigative reports, and communications, including e-mails, relating to a fact or issue in this controversy, including, without limitation, all video recordings from all fixed wing-cameras in the RMC kitchen and laundry room for September 8, 2017.

38.    All communications with any of the individual defendants in this lawsuit or Centurion relating to the matter sued upon or facts identified in the Complaint, including texts and emails.

39.    All communications with any of the individual defendants in this lawsuit or Centurion related to Decedent that were made, whether orally or in writing, from January 1, 2017 through present, including texts and emails.

40.    All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to Decedent's medical condition(s) and history,

41.    All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to any force used on Decedent.

42.     All communications, including emails and phone notes, with staff at Memorial Hospital (Jacksonville) relating to Decedent's care and nutrition at RMC.

43.     Any and all records FDC or its staff provided to Memorial Hospital (Jacksonville) concerning or related to Decedent.

44.     Any and all records Centurion or its staff provided to Memorial Hospital (Jacksonville) concerning or related to Decedent.

45.     All communications, including emails and phone notes, with Decedent's family members and with any other person inquiring about his history or condition.

46.     All communications, including emails and phone notes, with Decedent's family members.

47.     All photographs or video or audio recordings relating to the matter sued upon or any other facts identified in the Complaint, including clips or photos taken by or downloaded to cell phones or other devices.

48.     Your Policies in effect in 2017 concerning Americans with Disabilities Act of 1990 (ADA) compliance and disability accommodation.

49.     Your Policies in effect in 2017 concerning treatment and care for inmates suffering from paralysis or quadriplegia.

50.     Your Policies in effect in 2017 concerning use of force protocols.

51.     All records or documents supporting any responses to Plaintiff's Requests for Admissions directed to you where the statement is not unequivocally admitted.

52.    All records or documents not privileged that you created as a result of any events alleged or identified in the Complaint, including but not limited to, letters, memos, logs, forms, reports, and transcripts.

53.    Training lesson materials, including videos and links to online materials, relating to providing inmates access to medical care and, as to disabled inmates, access to reasonable accommodations.

54.    Policy records relating to providing inmates access to medical care and, as to disabled inmates, access to reasonable accommodations.

55.    Post orders applicable to the individual defendants.

56.    Duty rosters at the RMC for all shifts from September 1, 2017 through September 15, 2017.

57.    Dormitory Logs, including without limitation escort logs and any other dormitory logs maintained.

58.    Roster of all inmates working in the RMC-West Unit kitchen the morning of September 8, 2017.

59.    Dormitory logs for Decedent's dormitory (K-Dorm) for September 1, 2017 through September 15, 2017.

60.    Any and all reports FDC made concerning Decedent's condition from September 1, 2017 through October 31, 2017.

61.    All documents related to use of force at RMC between January 1, 2017 to January 1, 2018.

62.    All photographs of Decedent's injuries on or about September 8, 2017.

16

63.     All photographs of Decedent taken from January 1, 2017 to October 31, 2017.

64.     All incident reports and investigation reports concerning Decedent.

65.     All nonprivileged communications with any person not employed or formerly employed or contracted at the RMC concerning Plaintiff or Decedent.

66.     All documents and communications between January 1, 2017 to present between or among your personnel at RMC, Centurion, and any other person relating disability review or assessment after a use of force event.

67.     Documents sufficient to show the following with respect to each prisoner diagnosed full or partial paralysis from January 1, 2015 to present: (a) the identity of the patient suffering from full or partial paralysis; (b) the date of diagnosis; (c) the course of treatment of for full or partial paralysis; and (d) all medical personnel involved in the treatment of the same.

68.     All documents or communications with Centurion concerning ADA inmate mobility needs.

69.     All documents and communications with the Centurion concerning any changes to policy or practice for ADA inmates concerning, relating to, arising from, or in connection with the death of Decedent.

70.     All communications relating to Plaintiff's informal and formal grievances and appeals from January 1, 2020 to present.

71.     All communications with ADA coordinators or personnel staffed by you or your contractors or agents concerning or relating to Decedent.

72.     All documents generated or relied upon by ADA coordinators in completing any DC4-706 forms for Decedent.

73.     All documents relating to any assessments or determinations taken concerning Decedent in connection with the specific procedures outlined in Procedure 403.011.

74.     All documents relied upon in making any determinations or assessments regarding ADA accommodations or compliance with Procedure 403.011.

75.     Your Policies concerning the specific procedures outlined in Procedure 403.011.

76.     Your Policies concerning the staff compliance with Rule 33-602.210, F.A.C.

77.     All records created in compliance with Rule 33-602.210, F.A.C.

78.     A privilege log that includes (1) the date of the record withheld, (2) the author, (3) the nature of the record, (4) the subject matter, (5) all recipients, and (6) the privilege asserted. It should include enough information to allow the requesting party to challenge the privilege.

79.     A disposition of records form for any responsive documents that were destroyed.

/

/

/

## INTERROGATORIES

**Interrogatory No. 1**

Please state the name and title of each person who participated in responding to these Interrogatories and the Interrogatory number(s) they participated in responding to.

**Interrogatory No. 2**

Please describe in detail and specifically identify the Policies for designating persons as being impaired for purposes of the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) and determining the accommodations each such impaired inmate must receive. For each Policy described, please also identify (a) the persons (by job title) who are involved in the designation process, including the ADA coordinator and the liaison with the medical provider, (b) how RMC and FDC monitor and review the need for accommodations, and (c) the disciplinary process and penalties for violation of those Policies.

**Interrogatory No. 3**

Please describe in detail and specifically identify the Policies for accommodating inmates who suffer (or claim to suffer) from full or partial paralysis including (a)  any specific Policies for inmates who need access to bathroom and/or shower facilities, (b) any specific policies for access to wheelchairs or other mobility devices, (c) any specific Policies to ensure that inmates are receiving their meals, (d) any specific Policies to confirm that inmates are able to access their meals for

consumption, and (e) the disciplinary process for violation of those Policies.

**Interrogatory No. 4**

Please describe in detail and specifically identify the Policies for investigating, disciplining, and prosecuting FDC staff who violate Rule 33-602.210, F.A.C. or any similar rule or law prohibiting "cruel or inhuman treatment of an inmate." As to RMC, please also identify for the years 2015 to present the annual number of investigations, discipline, and prosecution.

**Interrogatory No. 5**

Please describe in detail any investigations or corrective action you have undertaken against any of the individual defendants concerning or related to the death of Decedent.

**Interrogatory No. 6**

For the years 2017 and 2018, please describe all steps, processes, determinations, and assessments you and your staff or contractors followed or undertook in complying with Procedure 403.011 titled "Inmate Assistants for Impaired Inmates" to determine what ADA accommodations Decedent required after the use of force in September 2017.

**Interrogatory No. 7**

For the years 2015 through the present, please describe and identify all FDC investigations concerning the following: (1) officer Klan activity at RMC; (2) officer vigilante activity at RMC; and (3) officer gang activity at RMC. For each

investigation described, please identify (a) the outcome of the investigation, (b) whether you generated any reports or memoranda, and (c) the substance of the report, memoranda, or outcome of the investigation.

**Interrogatory No. 8**

For the years 2015 through the present, please describe and identify all FDC investigations concerning allegations of "barbershop beatings" as uncovered by FDLE investigators into the death of Decedent. For each investigation described, please identify (a) the outcome of the investigation, (b) whether you generated any reports or memoranda, and (c) the substance of the report, memoranda, or outcome of the investigation.

/

/

/

## <u>REQUESTS FOR ADMISSIONS</u>

1.      No claim in the operative complaint is barred by a statute of limitations.

2.      Decedent was a qualified person with a disability under the ADA.

3.      Decedent became a qualified person with a disability under the ADA after the use of force event in September 2017.

4.      You had a duty to provide medical care to Decedent.

5.      You had duty to provide ADA accommodations to Decedent.

6.      In 2017, Centurion had a contract with FDC to provide medical care at RMC.

7.      Reasonable accommodations for paralyzed prisoners can include ensuring access to mobility devices.

8.      Reasonable accommodations for paralyzed prisoners can include ensuring access to inmate assistance with daily living activities.

9.      Reasonable accommodations for paralyzed prisoners can include ensuring access to inmate assistance with eating and drinking.

10.     Reasonable accommodations for PD-2-classified prisoners can include ensuring access to mobility devices.

11.     Reasonable accommodations for PD-2-classified prisoners can include ensuring access to inmate assistance with daily living activities.

12.     Reasonable accommodations for PD-2-classified prisoners can include ensuring access to inmate assistance with eating and drinking.

13.     Reasonable accommodations for PD-3-classified prisoners can include ensuring access to mobility devices.

14.     Reasonable accommodations for PD-3-classified prisoners can include ensuring access to inmate assistance with daily living activities.

15.     Reasonable accommodations for PD-3-classified prisoners can include ensuring access to inmate assistance with eating and drinking.

16.     Decedent was a mobility impaired inmate after September 8, 2017.

17.     You have not provided any training to Defendant Jerrels concerning management of disabled inmates.

18.     You have not provided any ADA training to Defendant Jerrels.

19.     You have not provided any training to Defendant Nettles concerning management of disabled inmates.

20.     You have not provided any ADA training to Defendant Nettles.

21.     You have not provided any training to Defendant Anderson concerning management of disabled inmates.

22.     You have not provided any ADA training to Defendant Anderson.

23.     You have not provided any training to Defendant Livingston concerning management of disabled inmates.

24.     You have not provided any ADA training to Defendant Livingston.

25.     You have not provided any training to Defendant Nyitray concerning management of disabled inmates.

26.     You have not provided any ADA training to Defendant Nyitray.

27.    You have not provided any training to Defendant Lewis concerning management of disabled inmates.

28.    You have not provided any ADA training to Defendant Lewis.

29.    You have not provided any training to Defendant Eberlein concerning management of disabled inmates.

30.    You have not provided any ADA training to Defendant Eberlein.

31.    You have not provided any training to Defendant Potosky concerning management of disabled inmates.

32.    You have not provided any ADA training to Defendant Potosky.

33.    You have not provided any training to Defendant Greene concerning management of disabled inmates.

34.    You have not provided any ADA training to Defendant Greene.

35.    You have not provided any training to Defendant Flynn concerning management of disabled inmates.

36.    You have not provided any ADA training to Defendant Flynn.

37.    You have not provided any training to Defendant Givens concerning management of disabled inmates.

38.    You have not provided any ADA training to Defendant Givens.

39.    PD3 inmates were defined by Health Services Bulletin 15.03.13 in 2017 as those with a permanent disability requiring assignment of a permanent wheelchair or other adaptive device.

40.     Decedent was not referred to the Chief Health Officer for assessment to determine the need for an Inmate Assistant after the use of force event on September 8, 2017.

41.     Decedent was never referred to the Chief Health Officer for assessment to determine the need for an Inmate Assistant.

42.     Decedent was not referred to the Institutional Medical Director for assessment to determine the need for an Inmate Assistant after the use of force event on September 8, 2017.

43.     Decedent was never referred to the Institutional Medical Director for assessment to determine the need for an Inmate Assistant.

44.     You violated your Policies by not referring Decedent to the Chief Health Officer for an assessment in September 2017.

45.     You violated your Policies by not referring Decedent to the Institutional Medical Director for an assessment in September 2017.

46.     You violated Title II of the ADA by not referring Decedent to the Chief Health Officer for an assessment in September 2017.

47.     You violated Title II of the ADA by not referring Decedent to the Institutional Medical Director for an assessment in September 2017.

48.     Decedent was not assessed for accommodations on a recorded DC4-706, Health Services Profile form.

49.     Decedent was not referred in September 2017 to an institutional ADA coordinator for assessment of his need for appropriate ADA accommodations.

50.     Decedent never had the need for any ADA accommodations reviewed by an ADA coordinator.

51.     Decedent never had the need for any ADA accommodations assessed by an ADA coordinator.

52.     Decedent was never assessed for any determination as to the need of an Inmate Assistant.

53.     You failed to provide Decedent with an Inmate Assistant in September 2017.

54.     FDC's policies and regulations, including Rule 33-602.210, F.A.C., require all persons who participated in a use of force event to report it.

55.     Persons who violate FDC's policies and regulations on reporting use of force can be disciplined for such failure.

56.     FDC's policies and regulations, including Rule 33-602.210, F.A.C., require witnesses to cruel or inhumane treatment of and inmate or battery of an inmate by an FDC employee to report the unlawful battery or abuse in violation of the law to the warden or his designee.

57.     Defendant Jerrels did not report his unlawful battery on Decedent to RMC's warden.

58.     Defendant Nettles did not report his unlawful battery on Decedent to RMC's warden.

59.     No FDC investigation was done of the "barbershop beatings" allegation uncovered by FDLE investigators.

60.     No FDC investigation was done as to the allegations of gratuitous beatings of inmates by several corrections staff uncovered by FDLE investigators.

61.     No DC6-221 form was completed prior to Decedent's move to confinement on September 8, 2017.

62.     At least one of Decedent's medical records generated after the use of force event on September 8, 2017 contained false information.

63.     You are aware at least one other instance in which your staff has included false information in an inmate's medical records.

64.     You are aware at least one other instance in which Centurion has included false information in an inmate's medical records.

65.     You are aware at least one other instance in which your staff has included false information in an inmate's classification records.

66.     You are aware at least one other instance in which Centurion has included false information in an inmate's classification records.

67.     Your staff has placed false information in inmates' records to hide their medical condition.

68.     You failed to preserve all RMC fixed-wing video recordings from September 8, 2017 through September 13, 2017.

69.      You failed to preserve all handheld video recordings taken at RMC from September 8, 2017 through September 13, 2017.

70.     You were on notice prior to this lawsuit that you had an obligation to maintain all video recordings concerning the use of force on Decedent.

71.     You were on notice prior to this lawsuit that you had an obligation to maintain all video recordings concerning Decedent taken after the use of force event on September 8, 2017.

72.     Despite knowing you had an obligation to preserve evidence in this case, you nevertheless permitted evidence to be destroyed.

73.     Despite knowing you had an obligation to preserve evidence in this case, you nevertheless failed to ensure that all records were maintained.

74.     Staff at Memorial Hospital in Jacksonville were never advised of the use of force on Decedent.

75.     Staff at Memorial Hospital in Jacksonville were never advised that prior to arrival at the hospital Decedent spent several days in confinement without food, liquids, hygiene, or medication.

76.     Staff at Memorial Hospital in Jacksonville were never told about the neck trauma associated with the hematoma on Decedent's neck.

77.     Decedent was chained to his bed at Memorial Hospital in Jacksonville so that hospital staff could not turn him without asking the officers' permission.

78.     Decedent was found to have a large decubitus ulcer on his buttocks after his death.

79.     On September 8, 2017, corrections staff brought trays of food and drink to Decedent's cell.

80.     On September 8, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

81.     Decedent did not consume any food on September 8, 2017.

82.     Decedent did not consume any drink on September 8, 2017.

83.     On September 9, 2017, corrections staff brought trays of food and drink to Decedent's cell.

84.     On September 9, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

85.     Decedent did not consume any food on September 9, 2017.

86.     Decedent did not consume any drink on September 9, 2017.

87.     On September 10, 2017, corrections staff brought trays of food and drink to Decedent's cell.

88.     On September 10, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

89.     Decedent did not consume any food on September 10, 2017.

90.     Decedent did not consume any drink on September 10, 2017.

91.     On September 11, 2017, corrections staff brought trays of food and drink to Decedent's cell.

92.     On September 11, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

93.     Decedent did not consume any food on September 11, 2017.

94.     Decedent did not consume any drink on September 12, 2017.

95.     On September 12, 2017, corrections staff brought trays of food and drink to Decedent's cell.

96.     On September 12, 2017, corrections staff removed unconsumed trays of food and drink from Decedent's cell.

97.     Decedent did not consume any food on September 12, 2017.

98.     Decedent did not consume any drink on September 12, 2017.

99.     During his time in confinement at RMC from September 8 through September 13, 2017, Plaintiff never able to consume any food.

100.    FDC records do not reflect whether Decedent had consumed any food on September 8, 2017.

101.    FDC records were required to reflect whether Decedent had consumed any food on September 8, 2017.

102.    FDC records do not reflect whether Decedent had consumed any food on September 9, 2017.

103.    FDC records were required to reflect whether Decedent had consumed any food on September 9, 2017.

104.    FDC records do not reflect whether Decedent had consumed any food on September 10, 2017.

105.    FDC records were required to reflect whether Decedent had consumed any food on September 10, 2017.

106.    FDC records do not reflect whether Decedent had consumed any food on September 11, 2017.

107.    FDC records were required to reflect whether Decedent had consumed any food on September 11, 2017.

108.   FDC records do not reflect whether Decedent had consumed any food on September 12, 2017.

109.   FDC records were required to reflect whether Decedent had consumed any food on September 12, 2017.

110.   FDC records do not reflect whether Decedent had consumed any drink on September 8, 2017.

111.   FDC records were required to reflect whether Decedent had consumed any drink on September 8, 2017.

112.   FDC records do not reflect whether Decedent had consumed any drink on September 9, 2017.

113.   FDC records were required to reflect whether Decedent had consumed any drink on September 9, 2017.

114.   FDC records do not reflect whether Decedent had consumed any drink on September 10, 2017.

115.   FDC records were required to reflect whether Decedent had consumed any drink on September 10, 2017.

116.   FDC records do not reflect whether Decedent had consumed any drink on September 11, 2017.

117.   FDC records were required to reflect whether Decedent had consumed any drink on September 11, 2017.

118.   FDC records do not reflect whether Decedent had consumed any drink on September 12, 2017.

119.   FDC records were required to reflect whether Decedent had consumed any drink on September 12, 2017.

120.   FDC staff violated your Policies by not ensuring Decedent was consuming any food in confinement from September 8 through 13, 2017.

121.   FDC staff violated your Policies by not ensuring Decedent was consuming any drink in confinement from September 8 through 13, 2017.

122.   FDC staff violated your Policies by not reporting that Decedent was not consuming any food in confinement from September 8 through 13, 2017.

123.   FDC staff violated your Policies by not reporting that Decedent was not consuming any drink in confinement from September 8 through 13, 2017.

124.   After Decedent was removed from his cell in confinement at RMC in September 2017, a number of wrapped sandwiches were swept out of the cell.

125.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent never able to consume any liquids.

126.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to food.

127.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to beverage.

128.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never able to attend to any personal hygiene.

129.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to facilities to clean themselves.

130.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to showers.

131.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to accessible bathrooms.

132.   Decedent did not have access to a handicap accessible bathroom on September 8, 2017.

133.   Decedent did not have access to a handicap accessible bathroom on September 9, 2017.

134.   Decedent did not have access to a handicap accessible bathroom on September 10, 2017.

135.   Decedent did not have access to a handicap accessible bathroom on September 11, 2017.

136.   Decedent did not have access to a handicap accessible bathroom on September 12, 2017.

137.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never able to receive any prescribed medication.

138.   Decedent did not receive any medication on September 8, 2017.

139.   Decedent did not receive any medication on September 9, 2017.

140.   Decedent did not receive any medication on September 10, 2017.

141.   Decedent did not receive any medication on September 11, 2017.

142.   Decedent did not receive any medication on September 12, 2017.

143.   Decedent did not receive any medication on September 13, 2017.

144.   Decedent did not take any medication on September 8, 2017.

145.   Decedent did not take any medication on September 9, 2017.

146.   Decedent did not take any medication on September 10, 2017.

147.   Decedent did not take any medication on September 11, 2017.

148.   Decedent did not take any medication on September 12, 2017.

149.   Decedent did not take any medication on September 13, 2017.

150.   Title II of the ADA requires FDC to ensure that qualified inmates receive access to medication.

151.   FDC staff violated your Policies by not providing Decedent medication while in confinement from September 8 through 13, 2017.

152.   During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never taken for recreation.

153.   FDC staff violated your Policies by not taking Decedent for recreation while in confinement from September 8 through 13, 2017.

154.   Decedent was not taken for a shower on September 8, 2017.

155.   Decedent was not taken for a shower on September 9, 2017.

156.   Decedent was not taken for a shower on September 10, 2017.

157.   Decedent was not taken for a shower on September 11, 2017.

158.   Decedent was not taken for a shower on September 12, 2017.

159.   Decedent was not taken for a shower on September 13, 2017.

160.   FDC staff violated your Policies by not taking Decedent for a shower while in confinement from September 8 through 13, 2017.

161.    During his time in confinement at RMC from September 8 through September 13, 2017, Decedent was never taken for a shower.

162.    During his time in confinement at RMC from September 8 through September 13, 2017, other inmates asked corrections staff to provide care and nutrition to Decedent.

163.    During his time in confinement at RMC from September 8 through September 13, 2017, inmates who asked correction staff to provide care and nutrition to Decedent received threats from staff.