UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JATOON MOSS,

      Plaintiff,

v.

RICKY DIXON, *et al.*,

      Defendants.

Case No. 3:21-cv-1026

**PLAINTIFF'S <u>SECOND</u> SET OF DISCOVERY REQUESTS
DIRECTED TO SECRETARY RICKY DIXON**

Pursuant to Rules 26, 33, 34 and 36 of the Federal Rules of Civil Procedure, Plaintiff Jatoon Moss hereby requests that Defendant Ricky Dixon, in his official capacity as Secretary of the Florida Department of Corrections, within thirty days (1) provide written responses to the following Requests for Production and Admissions, (2) produce for inspection and copying the documents and things identified in the Requests for Production, and (3) answer the following Interrogatories, separately and fully under oath or affirmation. Pursuant to Federal Rule of Civil Procedure 26(e), the Requests and Interrogatories are continuing in nature and may require supplementation.

Dated: May 17, 2023.

Respectfully submitted,

*/s/ James M. Slater*
James M. Slater (FBN 111779)
113 S. Monroe Street
Tallahassee, Florida 32301
james@slater.legal
Tel. (305) 523-9023

-and-

James V. Cook (FBN 0966853)
Law Office of James Cook
314 West Jefferson Street
Tallahassee, Florida 32301
cookjv@gmail.com
Tel. (850) 222-8080

*Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on May 17, 2023, I electronically served the

foregoing document to counsel for the Secretary Dixon via electronic mail.

By: */s/ James M. Slater*
James M. Slater

## DEFINITIONS AND INSTRUCTIONS

### General Definitions

1.      The term "person" means any individual, natural person, witness, partnership, association, firm, corporation, organization, trust, governmental or public entity, and/or any of its agents, employees, assigns or representatives.

2.      The term "identify" when referring to a natural person or entity shall mean to provide the name, last known address, present or last known place of employment, and telephone number of the person or entity described in the specific request.

3.      The term "identify" when referring to a document shall mean to provide the type of document; name or title of the document; the date; the author(s), transmitter(s), addressee(s), and recipient(s); a description of the subject matter; and the location and custodian of the document.

4.      "Plaintiff" means Plaintiff Jatoon Moss.

5.      "Decedent" means Craig Ridley.

6.      "Defendant," "you," "your," or "FDC," means Secretary Ricky Dixon, in his capacity as Secretary of the Florida Department of Corrections, and his employees, agents, servants, representatives, and all other persons acting on his behalf.

7.     "Centurion" collectively means Centurion of Florida, LLC and MHM Health Professionals, LLC, and their respective or joint employees, agents, contractors, representatives, and all other persons acting on their behalf.

8.     The "Complaint" shall refer to the current operative pleading in this action.

9.     The "RMC" shall refer to Reception and Medical Center.

10.     "FDLE" refers to Florida Department of Law Enforcement and its employees, agents, representatives, and all other persons acting on its behalf.

11.     The "individual defendants" means Defendants Jerrels, Nettles, Anderson, Livingston, Nyitray, Lewis, Eberlein, Potosky, Greene, Flynn, and Givens.

12.     "Policy" encompasses all your policies, training memoranda, bulletins, manuals, orders, and other documents through which you inform your staff about how they should or shall act when on duty and is to be given the broadest possible meaning.

13.     The terms "concerning," "relating to," or "relate to" shall mean to make a statement about, discuss, describe, disclose, confirm, support, describe, reflect, constitute, identify, deal with, consist of, establish, comprise, list, evidence, substantiate, or in any way pertain (in whole or in part) to the subject.

14.    The words "and" as well as "or" shall be construed both disjunctively and conjunctively; the word "all" means "any and all"; the word "any" means "any and all"; the word "each" means "each and every"; the word "every" means "each and every.

15.    The singular shall include the plural, the plural shall include the singular, and the masculine, feminine, and neuter shall include each gender.

16.    The term "document" is defined to include, but is not limited to, any papers, writings, drafts, notes, letters, diaries, agreements, contracts, calendars, memoranda, reports, drawings, plans, blueprints, notation books, financial records, computer or other business machine records, communications sent via any electronic means, including but not limited to internet, extranet and intranet, and any attachments to such electronic communications and any other data, compilations or written or graphic material stored in a tangible, electronic, mechanical or electric form, or any representation of any kind, including, but not limited to, materials stored on or in computer disks, networks, mainframes, hard drives, CD-ROM, tapes or other forms of memory, as well as back-up and deleted files of any computer, computer storage device or media, whether located on or off site, from which the information can be obtained, as well as any draft, nonidentical copy, and/or translation of the foregoing. A draft or non-identical copy is a separate document within the meaning of the term.

17.     The term "communication" or "communications" means any transmission of any data, document, or information by whatever medium, and includes, but is not limited to, physical correspondence and email, recorded voicemail messages, exchanged handwritten notes or images, instant messages, text messages, transmitted files, and all other means and manner of transmission of data or information.

18.     "Including" shall mean including but not limited to.

**<u>Instructions for Requests for Production and Admissions</u>**

1.     You shall identify and produce all documents that can be located or discovered through diligent effort by you, your employees, representatives, agents, attorneys, consultants or accountants.  This instruction applies to all documents that are in the business or personal files of, or accessible to you or your employees, or in the possession of, or accessible to your representatives, agents, attorneys, consultants or accountants. Each document shall be produced in the form in which it is maintained in the normal course of your activities.

2.     If you object to the production of any document covered by any of these Requests, in the response to the specific request that encompasses the document, state the objection, the basis for the objection and whether or not the document is being withheld because of the objection.  For each document being withheld for any reason, including a claim of privilege, state the

following in the response to the request encompassing the document:

  a.   the reason or reasons you are withholding the document, including any specific privilege you claim protects the document;

  b.   the facts supporting the privilege or other reason or reasons for withholding the document;

  c.   the date when the document was prepared or originated;

  d.   the name(s) or the person(s) who wrote or prepared the document, along with information regarding their relationship to the person(s);

  e.   the names of each person to whom the document was addressed or copied, as well as the names of each person who may have seen the document, along with information regarding your relationship to each person;

  f.   the subject matter of the document; and

  g.   the name and address of each person who has personal knowledge of the subject matter of the document.

  3.   If you object or otherwise refuse to respond or produce documents in response to any portion of a document request, you shall provide all documents and information called for by that portion of the request for production that you do not object to and/or to which you do not

refute to respond as follows:

    a.    If you object to a document request on the ground that it is too broad (i.e. if you believe it calls for information outside the scope of permissible discovery as defined by Rules 26 and 34 of the Federal Rules of Civil Procedure), you shall produce documents and things in response to that Request by producing all documents and things that are within the permissible scope of discovery and identify all categories of documents being withheld;

    b.    If you object to a document request on the ground that to produce documents and things would constitute an undue burden, then you shall produce as many of the requested documents and things as can be provided without undertaking an undue burden;

    c.    If you object to any portion of a document request on the ground that it is vague or indefinite, then you shall set forth your understanding of the allegedly vague or indefinite term and shall then produce documents and things based upon that stated understanding.

4.    Please produce documents responsive to individual Requests as soon as possible and without waiting to produce documents responsive to

other Requests whenever possible.

5.      Unless another time period is specified, this request for production is addressed to the time period from <u>January 1, 2017</u> to the present, inclusive of records that were effective during that time period even if they were generated before it.

6.      These Requests are continuing in nature, and must be supplemented to the extent that, subsequent to responding to these Requests, you obtain additional information that renders any of your initial responses inaccurate or incomplete.

## <u>Instructions for Interrogatories</u>

1.      In answering these interrogatories, you are required to provide all information that is available to you or within your control, including information in the possession of your attorneys, investigators, employees, or other agents.

2.      Where terms are defined, interrogatories containing those defined terms cannot be properly answered unless the definitions are followed.

3.      If you object to any part of an interrogatory and refuse to answer that part, state you objection and answer the remaining portion of that interrogatory. If you object to the scope or time period of an interrogatory and refuse to answer for that scope or time period, state your objection and

answer the interrogatory for the scope or time period you believe is appropriate. If any interrogatory cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying your ability to answer the remainder and stating the information you have concerning the unanswered portions. If your answer is qualified in any particular manner, set forth the details of that qualification.

5.    When an interrogatory requests documents, data, knowledge, or information in your possession, that interrogatory includes the knowledge of your attorneys, accountants, agents, representatives and experts, and any professional employed or retained by you relating to any of the facts or issues involved in this proceeding.

6.    If you contend that a response to an interrogatory calls for the disclosure of privileged information, in whole or in part, or if you otherwise object to any part of any interrogatory, you are required to provide a complete response to the portion of the interrogatory that is not privileged or objectionable. With respect to the remainder of the interrogatory, state the following:

      a.    the reason for such objection or ground for exclusion;

      b.    the identity of each person having knowledge of the factual basis and the identity of individual documents, if any, on

which the privilege or other ground is asserted;

      c.     the nature of the claim or privilege; and

      d.     the brief description of the item, document, or thing in a manner so as not to waive the privilege.

     7.     If the response to all or part of any interrogatory is that you lack knowledge of the requested information, set forth the remaining information that is known to you and describe all efforts made by you or your attorneys, accountants, agents, experts, representatives or any professional employed or retained by you to obtain the information necessary to respond to the interrogatory. If any estimate or approximation can reasonably be made in place of the unknown information, also set forth your best estimate or approximation, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate or approximation is made.

     8.     You are cautioned against providing boilerplate objections without providing a detailed basis for the objection. Such objections are improper under Rule 33(b)(4).

/

/

/

## DOCUMENT REQUESTS

80.   All communications referenced on page 2 of the death notice

produced in response to Plaintiff's First Set of Written Discovery requests to

FDC.

81.   All documents and communications regarding the United States

Attorney's Office findings and determinations concerning Ridley, including,

without limitation, any findings as referenced in the June 2, 2020 10:57 a.m.

email from Josh Mead to Daniel Gonzalez, copying Justin Bates, Kevin Ortiz,

and others.

82.   All documents and communications related to the following

reports:

     (a)   MINS #811361

     (b)   MINS #805503

     (c)   IG Report #17-16495

     (d)   IG Report #17-18628

     (e)   IG Report #19-11272

     (f)   IG Report #19-17572

     (g)   IG Report #21-17515

     (h)   Report #HU201701681

     (i)   Report #MU201702773

     (j)   Report #WU201701587

(k)    Report #WU201701588

(l)    Report #WU201701589

(m)    Report #208-170578

(n)    FDLE Report #JA-37-0133

83.    Copies of any photographs, videos, and/or materials shown to the individual defendants, including without limitation all photographs of Ridley shown to the individual defendants as identified in IG Report #19-11272.

84.    A copy of the "Interview Packet" provided to the individual defendants as referenced in IG Report #19-11272.

85.    All communications with the State Attorney's Office for the Eighth Judicial Circuit concerning the claims associated with IG Report #21-17515, including, without limitation, any notes, records, memoranda, materials, or documents generated in connection with the December 16, 2021 meeting regarding such claims.

86.    All documents and communications with the Office of Human Resources in connection with the reports identified in Request No. 82 above.

87.    All documents and communications regarding "gaining" inmates into confinement without proper paperwork.

88.    All handwriting samples provided to FDLE, as referenced in IG Report #19-11272.

13

89.    All communications concerning the determinations to sustain or decline any violations of Rule 33-208-002 against any of the individuals identified in the IG reports concerning Ridley.

90.    All documents and communications, including without limitation, notes, related to (a) the NIC meeting and (b) the log referenced in the June 2, 2020 8:54 a.m. email from Richard Comerford to Douglas Weiner.

91.    The "case book" referenced in the June 10, 2020 1:33 p.m. email from Josh Mead to Justin Bates.

## **INTERROGATORIES**

9.    Please explain your understanding of the process of "gaining" an inmate into confinement, as your agents discussed with the individual defendants in connection with its investigation into the death of Ridley.

10.    Please identify any policy changes you have made since Ridley's death to prevent "gaining" inmates into confinement without paperwork.

11.    Please identify the "many failures that took place" involving Ridley, as referenced by Michelle Glady on page 3A of the *Miami Herald* article attached as **Exhibit A**, and specifically how FDC "failed Ridley."

12.    Please explain how and what you have "learned from" the events involving Ridley, as referenced by Michelle Glady on page 3A of the *Miami Herald* article attached as **Exhibit A**.

13.     Please identify any and all policy changes you and Centurion made in response to Ridley's death, including, without limitation, any changes made to camera locations at RMC and/or the ability of correctional officers to take inmates to areas that are outside the view of fixed-wing cameras at RMC and/or other facilities.

14.     Please identify the two cases identified on page 4A in the *Miami Herald* article attached as **Exhibit A** where the author writes "Florida correctional officers have broken the necks of inmates — leaving one woman paralyzed and another man dead."

15.     Please identify any and all FDC employees and/or contractors who were terminated as a result of the investigations into the death of Ridley and whether FDC referred any of these individuals to the United States Attorney's Office or state prosecutors for prosecution. For each such referral, detail the basis and any recommendation from FDC to either of these agencies.

## REQUEST FOR ADMISSIONS

164.   Admit that Michelle Glady stated that "[t]he circumstances of [Ridley's] case are isolated, and absolutely no reflection of what [FDC's] policies outline and expect."

165.   Admit that at least one other inmate in FDC custody has been paralyzed by a corrections officer since Ridley's death.

166.   Admit that, to your knowledge, on at least one occasion since Ridley's death an FDC staff member has "gained" an inmate into confinement without paperwork, as you understand that term.

167.   Admit that FDC has conducted an investigation of the alleged "barber shop beatings" as shown on at least pages PL27, 62, 69, 82, 85, 87, 89, 92, 95, 100, 148, 232, 234, 246 of the FDLE report attached as **Exhibit B**.

168.   Admit that FDC has *not* conducted an investigation of the alleged "barber shop beatings" as shown on at least pages PL27, 62, 69, 82, 85, 87, 89, 92, 95, 100, 148, 232, 234, 246 of the FDLE report attached as **Exhibit B**.

169.   Admit that FDC has conducted an investigation of the alleged threats to "snitches" by Sgt. Bush as shown on page PL101 of the FDLE report attached as **Exhibit B**.

170.   Admit that FDC has *not* conducted an investigation of the alleged threats to "snitches" by Sgt. Bush as shown on page PL101 of the FDLE report attached as **Exhibit B**.

171.   Admit that FDC has conducted an investigation of the alleged forgery of Craig Ridley's signature as shown on pages PL369 and 376 of the FDLE report attached as **Exhibit B**.

172.   Admit that FDC has *not* conducted an investigation of the alleged forgery of Craig Ridley's signature as shown on pages PL369 and 376 of the FDLE report attached as **Exhibit B**.

173.   Admit that FDC has conducted an investigation of the alleged abuses by the "four horsemen" as shown on page PL112 of the FDLE report attached as **Exhibit B**.

174.   Admit that FDC has not conducted an investigation of the alleged abuses by the "four horsemen" as shown on page PL112 of the FDLE report attached as **Exhibit B**.

# Exhibit A



**CLASSIC SIPS**

Seven cocktails you need to know how to make, Page 31A

**CLOSING ARGUMENTS IN PARKLAND TRIAL**

Prosecutors urge jurors to vote to execute Nikolas Cruz for Stoneman Douglas High massacre, Page 13A



VOL. 120
NO. 28
**$3.00**
MIAMIHERALD.COM



WEDNESDAY **OCTOBER 12,** 2022

# Miami Herald



CRAIG RIDLEY

*Craig Ridley was mocked and accused of faking, then died after suffering a broken neck at the hands of corrections officers. As is common in Florida's brutal prisons, no one was charged, 3-6A.*



RICKY DIXON



# 'IT WAS TORTURE'



**VIDEO: Corrections officers at a Florida prison broke Craig Ridley's neck, leaving him paralyzed.** But they said they didn't believe him when he said he couldn't walk. Neither did a prison nurse and doctor.



**VIDEO: Beyond Punishment**
The death of Florida inmate Latandra Ellington.



We're committed to providing the essential journalism you need. Find the content important to you inside. Subscribers can find an additional 50+ pages each day by going to miamiherald.com/eedition/extraextra or by scanning the code to the left.

**CUSTOMER SERVICE**
800-843-4372
miamiherald.com/customer-service

Thunderstorms
88°/76° See 30A







**IMPACT WINDOW & DOOR**

**SALE** 40% OFF

OFFER ENDS SOON!

FLORIDA WINDOW & DOOR

License#CGC1509450

Call Now for Your FREE Estimate
**786-751-7662**



Starting from
**$95**/mo*

*with approved credit



Security footage shows
corrections officers
moving Craig Ridley in a
wheelchair on Sept. 12,
2017 — four days after he
suffered a broken neck.

DIANE RIDLEY GATEWOOD Courtesy

# INMATE LEFT TO DIE
## after officers broke his neck

**Craig Ridley suffered a serious injury in
a confrontation with officers at a
Florida prison facility. Rather than get
him proper treatment, guards mocked
and then ignored him.**

BY NICHOLAS NEHAMAS
nnehamas@miamiherald.com

For five days, trays of
food piled up in Craig Ridley's cell at a Florida prison.

Breakfast, lunch and
dinner, Ridley left his meals
untouched.

That's because he
couldn't walk.

Ridley, 62, was lying on
his bunk paralyzed, his neck
dislocated — a catastrophic
injury suffered after corrections officers tackled him to
the ground face first on
Sept. 8, 2017. A little more
than a month later, he
would be dead, having been
manhandled, mocked and
ignored by prison staff,
even as he begged for help.

"My neck is broke,"
Ridley said, according to a
video taken by officers
shortly after his injury and
obtained by the Miami
Herald. "I'm paralyzed."

Instead of calling for a
backboard, officers at the
scene of his injury forced
Ridley into a wheelchair. He
drooped forward awkwardly, crying out in pain,
the video shows. A prison
nurse disregarded his complaints in a brief exam.

"You ain't paralyzed," one
officer told him.

Officers then put Ridley
in a confinement cell, positioning him on a toilet
where, unable to balance,
he fell onto the hard floor —
again face first — leaving a
pool of blood that horrified
other inmates. Once more,
prison medical staff said he
was fine.

Over the next five days,
Ridley's blockmates —
many of whom could see
his cell — realized he
couldn't move and asked
staff to give him medical
attention. But officers and

nurses walked by and did
nothing, sometimes dozens
of times a day, prison security footage shows.

Finally, on Sept. 12, 2017,
a CO acknowledged something was grievously wrong
and Ridley was taken to a
hospital in Jacksonville. He
died on Oct. 12 — five years
ago on Wednesday — intubated and unable to communicate.

Ridley's story, laid out in
minute detail in a 383-page
investigative report by the
Florida Department of Law
Enforcement, has never
been told — thanks in part
to a state prison system
with a long history of burying abuses, refusing to
communicate with family
members of incarcerated
people, and delaying public
records requests.

"This was an inhumane
death caused by an abysmal
lack of medical treatment,"
said Diane Ridley Gatewood, Ridley's sister, a
lawyer from New York who
has fought for years to
obtain records about her
brother and seek answers.
"It was torture."

But no one was charged
in Ridley's slow death.

State and federal prosecutors decided that corrections officers had relied on
the advice of doctors, despite an exhaustive investigation by FDLE that
turned up repeated evidence of abuse and medical
neglect.

Now, after suffering
through the strain of the
pandemic, Florida's beleaguered prison system is
stuck in a worsening crisis
that could produce more
cases like Ridley's. Florida
prisons have only 76 percent of the employees they
need, with a statewide
shortage of nearly 4,000
officers, according to the

Florida Department of
Corrections.

The situation has grown
so alarming that Gov. Ron
DeSantis is activating Florida's National Guard to
help staff state prisons,
where roughly 450 incarcerated people die every
year. Many pass away from
natural causes thanks to the
state's long sentences and
aging inmate population.
Some die young because of
illicit drugs, others by suicide. Most result in an autopsy, a rudimentary report
— and then not much else.

In Ridley's case, a medical examiner ruled his
death a homicide. The
causes of death were listed
as "blunt impact" to the
head and neck, a major
spinal cord injury and
"complications of quadriplegia" — the paralysis of all
four limbs.

That contradicted the
diagnosis of prison medical
staff. During examinations
on the day Ridley was injured, a prison nurse and
doctor said the inmate was
fine, even though FDLE
found no record that they
conducted neurological
testing. Officers insisted
Ridley was faking, then
falsified documents to show
Ridley had eaten during the
five-day period when he
languished in confinement,
according to FDLE. In fact,
he hadn't touched his



Florida Department of Corrections Secretary Ricky D. Dixon speaks during a press
conference at Miami-Dade State Attorney Katherine Fernandez Rundle's office on April
29.

MATIAS J. OCNER mocner@miamiherald.com

meals. They also likely
forged his signature on
documents that FDLE
found he couldn't have
signed, given his injuries.

One officer was observed
on video seeming to mock
Ridley after moving his
head around. In addition,
an inmate said he saw an
orderly (an inmate on work
duty) twist Ridley's head
back and forth, laughing at
him, in front of a guard and
nurse at the prison's urgent
care center.

"They f***ed with him
and they f***ed with him,"
the inmate told FDLE.

Ridley's death was all the
more preventable because
it took place at the Reception and Medical Center in
Lake Butler, the main hospital for Florida's prison
system. Ridley was not a
patient there but a so-called
"permanent," a prisoner
who worked at the hospital
full-time, in Ridley's case as
a kitchen worker. The hospital had extra staffing the
weekend Ridley was injured
because Hurricane Irma
was rolling through.

Michelle Glady, a spokeswoman for the Florida
Department of Corrections,
acknowledged the state had
failed Ridley, a Jacksonville
resident.

"The circumstances of
this case are isolated, and
absolutely no reflection of
what our policies outline



Craig Ridley in a photo he
used on his résumé shortly
before he was incarcerated.

DIANE RIDLEY GATEWOOD Courtesy

and expect," Glady wrote in
an email. "We have reviewed this case in depth
and recognize the many
failures that took place and
we have learned from it."

Glady said the department's Office of Inspector
General "sustained numerous findings" against officers and that "all individuals still employed at the
conclusion of the case were
disciplined for the role they

SEE RIDLEY, 4A



**VIDEO:
'Welcoming
committee'**
Leaked video
of the beating of
a handcuffed
inmate at
Charlotte
Correctional
Institute.

Craig Ridley, who served in the U.S. Army, is buried at the Jefferson Barracks National Cemetery in St. Louis.



DIANE RIDLEY GATEWOOD Courtesy

> "
> ## THIS WAS AN INHUMANE DEATH CAUSED BY AN ABYSMAL LACK OF MEDICAL TREATMENT.
>
> *Diane Ridley Gatewood, Ridley's sister*

"emergency beds" — mats laid out on the day-room floor.

Ridley's daughter, Jatoon Moss, has filed a civil rights lawsuit in federal court against Ricky Dixon, the secretary of the Department of Corrections, as well as more than a dozen current and former corrections officers and medical staff.

"They think they're above the system and they can make this go away," Moss said of the state prison system. "But they're wrong."

"It's not just my father," she added. "We have to get as much light as we can on this issue, especially for the Black community. My father was a Black man. I am a Black woman.

Moss, who now lives in Utah, grew up in the Bahamas with her mother and didn't know her dad well. She cried after reading FDLE's report for the first time.

"I didn't get too much time with him," she said. "This is where my regret and hurt comes from. We have so much in common. What we went to school for. Scuba diving and loving the water. We had so many similarities."

James Cook, the Tallahassee attorney representing Moss, said officers had no basis to conclude Ridley was faking his injuries.

"He suffered the torment of the damned prior to his death," Cook said.

'Hell of a cover-up'For almost his entire sentence, Ridley had been incarcerated at Florida's prison hospital, where the medical treatment he received was poor.

The doctor who treated Ridley after his broken neck had been reprimanded and fined by the state medical board for botching cosmetic injections on a woman's face, leaving her with abscesses and infections.

The doctor, Jean Dure, earned his medical degree abroad and was licensed to work in Florida only at prisons, government health facilities and high-need hospitals. He concluded nothing was wrong with Ridley after taking an X-Ray and CT scan. Dure's notes claim that Ridley had walked into the prison's urgent care. And although Dure said Ridley passed neurological testing, FDLE found that no one had filled out forms showing those tests had been performed. An inmate said a corrections officer repeatedly told Dure that Ridley was lying about his injuries while the doctor treated him.

Dure, listed as still practicing medicine in Florida, did not respond to questions. He is one of the defendants named in the federal lawsuit.

Medical care at Florida prisons is provided by a private contractor, Centurion of Florida, which was brought in after previous providers were repeatedly accused of malpractice and neglect. Centurion did not respond to several requests for comment.

The U.S. Supreme Court has held that prisoners have a constitutional right to appropriate medical treatment. In Estelle v Gamble, the court ruled that "deliberate indifference to serious medical needs of prisoners" constitutes a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

David Rembert, an assistant professor of criminal justice at Prairie View A&M University and a former



Courtesy Florida Department of Law Enforcement

Craig Ridley is shown shortly after he suffered a broken neck at the Reception and Medical Center in Lake Butler, the main hospital for Florida's prison system.

FROM PAGE 3A

# RIDLEY

played."

"The medical staff were not Department employees, and no longer work inside Florida's correctional institutions," she continued. "Additionally, in 2019, a new warden was hired."

She did not respond when asked what policy changes Florida's prison system made in response to Ridley's death, nor did she produce a copy of the inspector general's report.

In at least two other high-profile cases in recent years, Florida correctional officers have broken the necks of inmates — leaving one woman paralyzed and another man dead.

'Should have been criminal charges'Ridley was a quiet man who played chess and ran several miles a day while waiting out a 20-year prison sentence on charges of aggravated assault and criminal mischief.

Before being locked up in 2008, he had served in the U.S. Army, earned a degree in electronic engineering, worked in information technology and taken joy in his pastimes of golf, sailing and scuba diving.

Other inmates said Ridley, who grew up in Missouri, often read and worked out. One knew him by his nickname, "the President," because of his generally calm and cool demeanor — although he was known to talk back to guards when he felt they weren't treating him fairly. Still, a corrections officer described Ridley as a "model inmate" in an interview with FDLE. His family sent him money so he could maintain his vegetarian diet — no easy feat behind bars.

Disciplinary records show Ridley occasionally earned minor infractions for refusing orders and not wanting to work.

The decision not to charge anyone criminally over his death shocked former corrections officers and prison investigators.

"There should have been criminal charges to come out of this," said Aubrey Land, a former investigator with the department's inspector general and now a private prison consultant who reviewed the records obtained by the Herald. "There is serious medical neglect, evidence of falsifying documents, and a man that died. It looks mighty bad."

Land said officers should have taken seriously Ridley's complaints that he couldn't walk.

"They should have immediately summoned medical personnel to the location where he was injured," he said. "They shouldn't have moved him. He should have been collared and transported to a hospital. You don't just grab a guy up who says, 'I'm paralyzed, I can't feel my legs.' "

Stephen Vanni, chief of medical staff at HCA Florida University Hospital, agreed that the way prison staff treated the injured Ridley was "appalling."

"In terms of management of a potential spinal cord injury, it's the worst management you could ever imagine," said Vanni, a former chief of spinal surgery at Jackson Memorial Hospital who at the Herald's request reviewed Ridley's medical records and the video taken after his injury. "If the guy had a salvageable injury, they likely made it worse, which is why he ultimately died."

The office of State Attorney Brian Kramer, which covers the Gainesville area and declined to prosecute over Ridley's death, did not respond to requests for comment. Neither did the Civil Rights Division of the U.S. Department of Justice, which also decided against bringing charges after Kramer's office referred the case.



## About the cover

The Florida Department of Corrections' Reception & Medical Center in Lake Butler, the state prison system's main hospital; department secretary Ricky Dixon; Craig Ridley.

Despite operating prisons with skeleton crews, Florida continues to incarcerate about 80,000 people at a given time. Though that is a considerable dip in prison population from the roughly 100,000 inmates housed a decade ago, the facilities have been hemorrhaging staff under poor working conditions and low pay, forcing prison closures and pushing inmates onto

SEE RIDLEY, 5A

MIAMI HERALD  WEDNESDAY **OCTOBER 12**, 2022 | **PAGE 5A**

# Florida prisons have a long history of covering up scandals



Randall Jordan-Aparo was sprayed with noxious chemicals by prison staff at Franklin Correctional and died on the floor of his cell.

Jeffery Beasley, former prison inspector general, was accused of retaliating against subordinates who alleged a cover-up in Jordan-Aparo's death.

BY NICHOLAS NEHAMAS
nnehamas@miamiherald.com

Florida's Department of Corrections has a long history of burying abuses.

In one of its most notable cases, several of the department's own investigators filed a whistleblower complaint against their boss, the then-inspector general.

In 2014, investigator Aubrey Land accused the department of covering up the 2010 death of Randall Jordan-Aparo, 27, an inmate at Franklin Correctional Institution. Jordan-Aparo, who had a documented blood disorder, was repeatedly doused with noxious chemicals in violation of procedures until he died on the floor of his cell.

Land had been dispatched to the prison to investigate another case. In the course of that, he came to believe that the investigation of Jordan-Aparo's death had been a whitewash. When he alerted his boss, he faced recriminations, he said.

The state had to pay $800,000 to settle a retaliation lawsuit brought by Land and two other whistleblowers.

Other investigators testified under oath that the department had tried to impede their cases.

Several of the investigators left the department to start their own consulting firm, saying their goal was to help shed light on the abuses they believe are commonplace in Florida prisons.

Nicholas Nehamas:
305-376-3745,
@NickNehamas

Texas corrections officer, said the details of Ridley's case were "horrifying."

"His civil rights were violated," said Rembert, who reviewed the records obtained by the Herald. "This was deliberate indifference to medical need. ... If you're walking past somebody's cell day after day and they're not moving, you have to know something is wrong."

Rembert pointed to the interviews of officers and medical staff — which wildly contradict both each other and available records — as signs that prison workers were trying to "cover their tracks." He also noted the disappearance of certain video evidence sought by FDLE.

"You don't know who's telling the truth and who's not," he said. "This is a hell of a cover-up."

After Ridley's death, FDLE agents interviewed more than 170 inmates, corrections officers and medical staff at the prison to determine how he could have been abandoned to die, according to a report obtained by the Herald. The FDLE agents even flew to North Dakota to interview one former officer and traveled to New York to update Ridley's sister on the status of the case.

Greif Plessinger, a spokeswoman for FDLE, said the department's agents and analysts "conducted an exhaustive investigation working more than 4,400 hours on this case to determine the facts of what happened."

The FDLE investigation — led by special agent David Maurer — also uncovered allegations of a culture of abuse and neglect at the prison.

Inmates told FDLE that officers routinely took them out of view of prison cameras to beat and douse them with pepper spray, ignored their medical needs, and subjected them to vile humiliations like "saucing" their food by spitting tobacco juice onto it.

Because prosecutors declined to bring charges, only minor and administrative repercussions came from FDLE's probe. The Department of Corrections suspended one officer for 8.5 hours without pay because he walked by Ridley's cell 16 times over two days without calling for aid or noting that he wasn't eating. Two others had letters placed in their files reprimanding them for using "inappropriate" language to Ridley after his neck was broken. The department did not provide records showing what other actions it took against the dozens of officers and medical staff who had contact with Ridley.

Ridley's case is one of several Florida prison beatings that led to an inmate being paralyzed or killed.

In 2019, officers at the state's largest women's prison, Lowell Correctional Institution, beat Cheryl Weimar, who was rendered a paraplegic and now needs a breathing tube to survive.

The next year, officers at Lake Correctional Institution near Orlando beat 51-year-old Christopher Howell, breaking his neck and killing him. Howell was serving four years for stealing phone chargers from a Target store in West Palm Beach.

No one was charged in Weimar's beating. Former CO Michael Riley was charged with second-degree murder in Howell's death. He has pleaded not guilty.

"This might never have happened" Ridley's time in prison stemmed from a dispute over money.

On Nov. 10, 2007, Ridley went to the office of a man who owed him $300 in Duval County, according to police.

Ridley was upset the man hadn't paid him for driving a limo and cut the man's tires, an incident report from the Jacksonville Sheriff's Office states. He also fired two rounds from a handgun into the man's office door. An arrest report calculated the total damage at $800.

He was arrested nearly three months later after being pulled over for speeding.

Prosecutors hit him with charges, including attempted murder, that could have resulted in decades behind bars. Ridley's sister said he rejected a plea deal — angry at what he thought was prosecutorial overreach. A jury found Ridley guilty and a judge sentenced him to 20 years, the mandatory

SEE RIDLEY, 6A

> ## THE MEDICAL STAFF WERE NOT DEPARTMENT EMPLOYEES, AND NO LONGER WORK INSIDE FLORIDA'S CORRECTIONS INSTITUTIONS.
>
> *Corrections spokeswoman Michelle Glady*



BankUnited

# Savings with High Rewards!

12-MONTH CD
## 3.25% APY*
$1,000 minimum deposit

Open your account online in a few minutes or visit your nearest BankUnited branch.

Open online at www.BankUnitedDirect.com

*Annual Percentage Yield (APY) is accurate as of 10/3/2022. Advertised rate is fixed for the initial term of the Certificate of Deposit (CD) only. APY assumes interest earned remains on deposit until maturity. CD minimum opening deposit of $1,000 required. This promotional offer is limited to a maximum deposit of $1,000,000. Early withdrawal penalty may apply if you withdraw any principal from the CD before the maturity date. Account fees could reduce earnings. Additional terms and conditions apply. CD will automatically renew at maturity into a standard CD closest in length to the initial term (which may be shorter or longer than the initial term) at the then current standard rate in effect at the time of renewal unless you instruct us otherwise. Please refer to our Depositor's Agreement and applicable Schedule of Fees for additional information. Offer cannot be combined with any other promotional rate, bonus rate or special rate offer. BankUnited reserves the right to cancel or modify this offer at any time. Interest rates and APYs displayed are available only for accounts opened in a BankUnited branch or online through www.BankUnitedDirect.com. Rates are subject to change at any time and are not guaranteed until the CD is open. Deposit products and services are offered by BankUnited, N.A. BankUnited Direct is a trade name of BankUnited, N.A., and does not refer to a separately insured institution. All deposit accounts opened through BankUnitedDirect are combined with other deposit accounts held in the same ownership category at BankUnited, N.A. for purposes of calculating your Federal Deposit Insurance Corporation (FDIC) insurance coverage. Please contact a BankUnited representative for additional details. Offer is for consumer accounts only.

www.bankunited.com

BankUnited, N.A.
Member FDIC



Cheryl Weimar has been paralyzed from the neck down since a beating by corrections officers at Lowell Correctional.

*Courtesy of Ryan Andrews*

FROM PAGE 5A

# RIDLEY

minimum.

"He said he was going to fight for his rights," Ridley Gatewood said. "He believed in justice, freedom and equality. If he had taken the plea deal, this might never have happened."

Since her brother's death, Ridley Gatewood has been making public records requests and contacting state and federal prosecutors, desperate for information and to seek discipline for those responsible. She said she was originally told that her brother had fallen ill with cancer — which she didn't believe — leading her to dig further. (Other inmates at the prison also said staff told them Ridley had died of cancer.)

Although Ridley Gatewood praised the efforts of FDLE's agents, she has felt stonewalled at every turn by other authorities involved in the case. She shared many of the documents, photographs and videos used by the Herald in this story after being approached by reporters who'd been tipped off about her brother's death. The Department of Corrections takes months or even longer to answer records requests. Telling Ridley's full story would have been impossible without her persistence.

The Herald obtained other records about Ridley through its own requests to state officials.

The chain of events that would end in Ridley's death began early in the morning of Sept. 8, 2017, according to FDLE's investigation. (The officers allegedly involved either did not respond to requests for comment or could not be reached.)

At around 3 a.m. in the prison's Dormitory A, Ridley was roused for his kitchen duties. He muttered something to Sgt. John Nettles, who accused him of being disrespectful and took him outside for "counseling." There, Nettles said Ridley punched him in the face. They began to struggle. Another officer, Capt. William Jerrels, intervened and tackled Ridley to the ground face first. Inmates said they could hear Ridley shouting at the guards to stop hitting him and that he was not resisting.

After being tackled, Ridley said he couldn't walk. An officer brought him a wheelchair.

Officers began recording video at 3:32 a.m. The video shows Ridley being picked up by three guards and placed in the wheelchair. Ridley did not appear to assist the guards in any way. He almost fell out of the chair but was held in place by a guard grabbing his shirt.

The officers took Ridley to the prison clinic, where an officer told a nurse: "He says his feet ain't working." Ridley told the nurse he couldn't move. With his head hanging down toward his chest at an awkward angle, Ridley asked an officer to push it up. The officer replied: "You ain't paralyzed."

After the exam, with his head hanging toward his chest at an awkward angle, Ridley asked an officer to push it up. Sgt. Gerrie Guy moved his head and then smiled "animatedly toward the camera," according to FDLE. Ridley, grimacing, didn't appear able to move his head, arms or legs under his own power.

Then, instead of taking Ridley to see a doctor, two officers took him to confinement — consisting of special cells used in part to punish inmates for breaking rules that they cannot leave without a special appointment or medical emergency. The guards, Sgt. John Nyitray and Officer Daniel Greene, told Ridley to get up from his wheelchair and go into his cell. He said he couldn't.

"You're bullsh*ting," Nyitray responded, according to FDLE's report. "You're just trying to get a lawsuit."

The officers put Ridley on the confinement cell's toilet and closed the door. Ridley immediately fell to the floor and hit his face, causing a massive nose bleed.

His cellmate, Moise Cherette, started banging on the door and called for aid. But an officer walked away and no other staff came to help, Cherette told FDLE. (Another inmate said he also saw Ridley lying in a "pool of blood.")

Ridley told Cherette he couldn't move or feel his arms and legs. Cherette turned him on his back and poked his foot with his finger. Ridley said he could feel something but wasn't sure what it was.

Cherette again yelled for help and Ridley was taken to the infirmary, where he was finally seen by the prison doctor, Dure, who said he was fine. (Cherette claimed he was later beaten by staff for asking too many questions about Ridley.)

That afternoon, Ridley was returned to a confinement cell, this time with no cellmate. Prison staff walked by 19 times that day without entering to check on him, although they occasionally shined a flashlight into his cell, security footage shows. On Sept. 9, staffers walked by 44 times without entering to check on him, then passed by 48 times on Sept. 10, another 41 times on Sept. 11, and 18 times on Sept. 12. No one changed his sheets or offered him a shower.

At least 11 inmates in his cell block reported that Ridley never moved from his bunk, did not pick up his food trays, and that the officers ignored him and said he was faking.

Finally, on Sept. 12, CO Jesse Mallard noticed that Ridley was mumbling unintelligibly and not moving.

"CO Mallard stated something did not feel right with how Ridley was acting," FDLE wrote in its report.

Mallard contacted a supervisor and Ridley was taken to the medical unit. Seeing his condition had worsened from the last time they saw him on Sept. 8, doctors sent him to Memorial Hospital in Jacksonville at around 1 a.m. on Sept. 13. Security footage captured an orderly sweeping wrapped sandwiches and other food items out of his cell.

Ridley's sister flew down from New York to see him but he was already intubated, couldn't communicate and died the next month.

He would have been eligible for release in 2025.

*Former Miami Herald staff writer Ben Conarck and Miami Herald information services director Monika Leal contributed to this report.*

Nicholas Nehamas: 305-376-3745, @NickNehamas





# Miami Herald
# Get local news
## on the go

Tap into the digital benefits available with your subscription.

Set up access at
**miamiherald.com/activate**



*Photo Credit: Al Diaz | Miami Herald*

# HELP THE VICTIMS OF HURRICANE IAN AND HURRICANE FIONA

**Some have lost it all. But let's never lose hope.**

With your help, we can support the response, rebuilding and recovery efforts in the areas affected by Hurricane Ian and Hurricane Fiona. One hundred percent of funds raised through Operation Helping Hands will go directly to help the people affected by these powerful storms.


Operation Helping Hands

To make a donation to help the victims of either Hurricane Ian or Hurricane Fiona you can:
- Scan QR code below
- Visit **unitedwaymiami.org/ohh** (credit card, electronic check, PayPal or bitpay)
- Call **1-800-226-3320**





# Exhibit B

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the opening of this case.

On September 8, 2017, at approximately 0300 hours, Inmate Ridley was being counseled outside of "A" dormitory at the Reception and Medical Center (RMC) West Unit before he was going to work in the kitchen. It was reported by Captain (Capt.) William Jeffrey Jerrels and Sergeant (Sgt.) John E. Nettles that, Inmate Ridley was being disrespectful and while being counseled, Inmate Ridley struck Sgt. Nettles on the left check. Sgt. Nettles and Capt. Jerrels grabbed Inmate Ridley by the torso and forced him face first to the ground where Inmate Ridley was placed in hand restrains and the use of force was ended. Both Sgt. Nettles and Inmate Ridley were taken to the infirmary and were cleared by medical staff. Inmate Ridley was transported to "K" dormitory (confinement dormitory) where he stayed for several days. While in "K" dorm, Inmate Ridley complained of numbness in his arms and legs and was brought back to the infirmary on September 8, 2017, at 1414 hours.

On September 13, 2017, Inmate Ridley was transported to ▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida for additional treatment. After several tests it was determined that Inmate Ridley had a suspected ▮▮▮▮▮▮▮▮▮. While waiting for his condition to stabilize Inmate Ridley died on ▮▮▮▮▮▮▮▮▮▮.

On October 13, 2017, an autopsy was conducted by Doctor Robert Pfalzgraf at the Fourth Circuit Medical Examiner's Office in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

Due to the circumstances surrounding the death of Inmate Ridley, the FDLE initiated an

| Case Number: JA-37-0133 | Serial #: 1 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 10/27/2017 | Activity End Date:10/27/2017 |
| Approved By: Walsh, Matthew James | |

Description:Opening Report

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103246

PL000008

| Case Number | JA-37-0133 |
| IR Number | 1 |

investigation.  Special Agent (SA) David Maurer requested video footage from RMC West in and around the area of the "A" dormitory any handheld video and fixed wing video of "K" dormitory and any logs or reports generated during the incident on September 8, 2017. Additionally, SA Maurer requested the medical file from RMC for Inmate Ridley.  SA Maurer requested this information from Inspector Ortiz who advised he would gather the requested information and provide it to SA Maurer on a later date.

277620190211103246

PL000009

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the receipt of documents and video from RMC.

On October 26, 2017, Special Agent (SA) David Maurer met with Inspector Ortiz at his office in Nassau County Florida.  Inspector Ortiz provided SA Maurer with copies of logs and other paperwork from the Reception and Medical Center (RMC).  Included with the paperwork were several videos that were requested by SA Maurer.  These videos were the post use of force handheld video and fixed wing video from dormitory "K".  It should be noted that RMC was unable to provide fixed wing video of dormitory "A" at RMC-West, where the incident occurred, because the files were over thirty days old and had been over written.   Additionally, the video obtained for dormitory "K" was for the incorrect dates and wing.  A request was made for the correct dates and wing but the files were once again over written.  The only video provided for the date of the incident is the post use of force handheld video.  Below is a list of the documents provided to SA Maurer:

Inmate Ridley's Disciplinary Report history
Inmate Ridley's internal movement history
RMC-West Unit Daily Security Roster
Dormitory "A" inmate housing log for September 7-8, 2017
Use of Force report for the incident
Dormitory "K" Housing Unit Log for September 11-12, 2017
Copy of email regarding the dormitory "A" video
Copy of email regarding change to Use of Force report
Copies of all the incidents involving Captain William Jeffrey Jerrels and Sergeant John E. Nettles

All these items will be maintained as related item INV-1, in the case file.  During this meeting SA

| Case Number: JA-37-0133 | Serial #: 2 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 12/06/2017 | Activity End Date:12/06/2017 |
| Approved By: Walsh, Matthew James | |

Description:Receipt of RMC Documents and Videos

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000010

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 2 |

Maurer provided Inspector Ortiz with an investigative demand request for Inmate Ridley's Medical file. Inspector Ortiz advised he would send SA Maurer's request to the records management section at RMC.

PL000011

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████
████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the receipt of Inmate Ridley's medical file.

On November 3, 2017, Special Agent (SA) David Maurer received a phone call from Latorya A. Jenkins who is the Mortality Coordinator for Centurion of Florida. This is the health care provider at RMC. Ms. Jenkins stated she emailed SA Maurer all of Inmate Ridley's medical paperwork from RMC. She wanted to verify that SA Maurer received the emails. SA Maurer verified that the emails had been sent and Ms. Jenkins stated she would be the point of contact for any additional questions.

SA Maurer received a total of four emails from Ms. Jenkins containing Inmate Ridley's medical file from RMC. SA Maurer requested copies of the x-ray and CT films from Ms. Jenkins and picked them up from RMC on November 6, 2017.

Inmate Ridley's medical file, including the films will be maintained as related item INV-2, in the case file.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 3 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 11/03/2017 | Activity End Date:11/03/2017 |
| Approved By: Walsh, Matthew James | |

Description:Receipt of Inmate Ridley's Medical File

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103246

PL000012

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the meeting with Dr. Pfalzgraf.

On November 15, 2017, Special Agent Supervisor (SAS) Matt Walsh, Special Agent (SA) David Maurer, and SA David Meacham meet with Dr. Pfalzgraf at the Fourth District Medical Examiner's Office. Dr. Pfalzgraf performed the autopsy on Inmate Ridley. He provided SA Maurer with a copy of the final autopsy report and the autopsy photos, which will be maintained as related item INV-3, in the case file. Dr. Pfalzgraf provided the following information:

**Diagnoses:**



**Cause of Death**

**Manner of Death**

| Case Number: JA-37-0133 | Serial #: 4 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 11/15/2017 | Activity End Date:11/15/2017 |
| Approved By: Walsh, Matthew James | |

Description:Meeting with Doctor Robert Pfalzgraf

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103246

PL000013

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. On ██████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the contents of a Post Use of Force handheld video recorded by Florida Department of Corrections (DOC) Sergeant Sonya Gerber.

On November 14, 2017 at 0725 hours, Special Agent (SA) David Meacham reviewed the handheld video recording and noted the following:

The video was 44 minutes 40 seconds in length. The recording was started after the Use of Force (UOF) ended. At the beginning of the recording, the camera operator identified herself as Sergeant Gerber and advised the time of day was 3:32am. DOC Captain Jerrels was observed standing in the frame along with inmate Ridley, who was shown lying in the grass outside one of the doors of Dormitory A. Ridley's hands were observed handcuffed securely behind his back and he was in a partial fetal position on his knees with his head and face down in the grass. Ridley was not moving.

Captain Jerrels provided a narrative explaining Sergeant Nettles had been attempting to counsel Ridley regarding his attitude about getting up to go to work, at which time Ridley struck Nettles on the left side of his face. Captain Jerrels explained he assisted Sergeant Nettles with placing Ridley on the ground outside of Dormitory A where he was currently located. Captain Jerrels advised Ridley then refused to walk to Medical for his post use of force and pre-confinement physical. Captain Jerrels advised a ████████ was requested and he directed Sergeant Carl Olin and Sergeant Gerrie Guy to place Ridley in the ████████. He then directed Sergeant Leroy Scott to also assist if needed. At this time, approximately 1 minute into the video, Ridley was picked up by the three sergeants and was placed in the ████████. It did not appear Ridley assisted the sergeants in any way as he was moved. After placed in the ████████, Ridley appeared to nearly fall out of the chair and was held in place by the transporting guard, who held onto Ridley's shirt to keep him upright in the chair. Ridley was

| Case Number: JA-37-0133 | Serial #: 5 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 11/13/2017 | Activity End Date:12/07/2017 |
| Approved By: Walsh, Matthew James | |
| Description:Review of Post UOF Video | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000014

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 5 |

taken directly from outside of Dormitory A to the clinic.

The following listed times (in minutes) reflect the elapsed time of the recording as displayed along with specific actions or statements noted at that time:

03:50- Ridley arrived at the building housing the clinic and the guards turned the ▬▬▬ backward to roll Ridley over a small curb and up a sidewalk into the building.  As the ▬▬▬ in which Ridley was riding reached the threshold of the door, Ridley could be heard stating, "My neck is broke."

04:50- Ridley was wheeled down a hallway and his ▬▬▬ was stopped outside a door. One of the guards entered the room and was heard stating, "He's in this ▬▬▬ and he says his feet ain't working.  You wanna do this out here?"

05:45- Ridley was moved into an examination room at which time an announcement was made by one of the guards to the camera operator that the camera would remain outside the exam room to prevent any HIPAA violations from occurring.

The camera remained outside the exam room for the duration of the examination.   Some partial conversation could be heard as Ridley was questioned by the nurse.

09:23- (Nurse) "OK. You can't move at all?"  In response, Ridley moved his head slightly from side to side (indicating No).

*Note- During this time the nurse can be seen checking Ridley's blood pressure on both his left and right arms.

12:20- (Guard to Ridley) "Lean forward a little bit.  Lean forward."  Ridley began moaning audibly after being pushed forward in the ▬▬▬ with his torso bent forward toward his legs.  Ridley stated, "I cannot move." To which the guard stated, "You don't need to move."  At this time the nurse placed a pulse oximeter on Ridley's finger (as he remained leaning forward). Ridley can be heard saying, "Please put me back."

13:25- (Nurse to Ridley) "If you would have gotten up and got in that chair in there, this would not be happening."

14:10- The guards sat Ridley upright in the ▬▬▬ as his head hung down toward his chest. Ridley stated, "Push my head up"; after which the guard lifted Ridley's head.  The guard then said, "You're ▬▬▬ and all is fine.  You ain't paralyzed."

20:10- (Nurse) "Were you having any problems feeling your legs or arms before that?"  Ridley could be seen shaking his head back and forth (▬▬▬).

21:00- The examination was completed after which Ridley was moved from the exam room to the hallway where he continued to remain in the ▬▬▬ with his hands securely cuffed behind his back.

35:17- At this time, Ridley was seated in the ▬▬▬ in the hallway with his head tilted

277620190211103247

PL000015

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 5 |

toward his right shoulder.  The female guard was standing behind the ▮▮▮▮▮▮.  Ridley stated, "Sarge, can you move my head to the left?"  The guard then moved Ridley's head to an upright position and briefly held it in place before removing her hand from his head.  The guard then backed away from Ridley and pointing toward him while smiling animatedly to the camera.

39:00- The guards temporarily removed the restraints from Ridley's wrists and moved his hands in front of his body where they were again securely cuffed.  During this process, Ridley's head was held upright by a guard standing behind the ▮▮▮▮▮▮.  Ridley does not move his arms or hands under his own power at this time.  After his hands were cuffed, a belly chain was placed around Ridley's waist and his handcuffs were secured to the band.  During this process, Ridley stated again, "My neck is broke" and "I'm paralyzed."

Immediately after the restraints were secured, Ridley was taken by ▮▮▮▮▮▮ from the hallway to a waiting transport van.  The transport guards then physically removed Ridley from the ▮▮▮▮▮▮ and placed him in the van.  Ridley did not appear to move his arms or legs during that process under his own power as his legs were seen swinging limply.

44:40- End of recording.

Note- The video was previously submittedby SA Maurer as related item INV-1.

Page : 3 of 3          277620190211103247

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Neal D. Buckles.

On December 13, 2017, at 1712 hours, Special Agent (SA) David Maurer and SA Geoffrey Anderson conducted an interview of Inmate Buckles in the command offices of the Northwest Florida Reception Center in Chipley, Florida. SA Maurer and SA Anderson identified themselves and advised Inmate Buckles the interview would be a sworn voluntary statement. Inmate Buckles understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-4, in the case file:

Inmate Buckles was housed at the Reception and Medical Center (RMC) in Lake Butler, Florida during the month of September 2017. He said he spent most of his time at RMC in the confinement dormitory (Kilo). He was in several cells during the month of September, but remembered spending time in K2108, He only had one cellmate during his incarceration in Kilo dorm and that man's name was William J. Hooper. He remembers Inmate Hooper because he was beat up by Inmate Hooper the first day in the cell, which was K2108. Inmate Hooper was removed from the cell the next day and Inmate Buckles never had another cellmate. SA Maurer showed him a photo of Inmate Ridley and he did not recognize him. Inmate Buckles said he never had a ████ cellmate. Inmate Buckles was later moved to a different part of Kilo 2, and thought the cell was K2214 or K2215 but was not sure. He stated he could see K2108 from his cell and a ████ inmate was moved into that cell. The ████ inmate who was moved into K2108 was in a ████████ but again he could not say if it was Inmate Ridley or not. He said the guards wheeled him into the cell and left him there. The inmate did not move from where the guards placed him. He never moved from that spot, food trays were placed in the flap (on the door) and he never ate. The "inmate411" (the rumors about the inmate) was he had smoked some bad "K2" (synthetic marijuana) and was paralyzed. He said the guards said he was

| Case Number: JA-37-0133 | Serial #: 6 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 12/13/2017 | Activity End Date:12/13/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Neal Buckles

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000017

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 6 |

faking, but put food in the flap for several days but he never ate anything.  Inmate Buckles could not identify what guards put the food on the flap.  At one point the inmate was ▮▮▮▮ out to Kilo dorm by guards and later ▮▮▮▮ back to K2108.

SA Maurer asked if any DOC staff members have threatened him or told him not to talk to anyone asking questions about a ▮▮▮ inmate in a ▮▮▮▮▮.  Inmate Buckles said he had not been threatened or told not to talk.  He said "I have no love for the guards" and would talk even if they had threatened him.  He said everything he told SA Maurer was the truth.

The interview with Inmate Buckles concluded at 1744 hours.

277620190211103247

PL000018

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ██████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Inmate Omar Galarza DC# U31856.

On December 14, 2017, at 1121 hours, Special Agent (SA) David Maurer and SA Larry Perez conducted an interview of Inmate Galarza at Columbia Correctional Institute (CCI) in Live Oak, Florida. SA Maurer and SA Perez identified themselves and advised Inmate Galarza the interview would be a sworn voluntary statement. Inmate Galarza understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-5, in the case file:

Inmate Galarza said he was housed at RMC in September 2017, before he was moved to CCI. He spent most of his time in the confinement dormitory or Kilo dorm. While in Kilo dorm, wing 2 he was in cell 2108. SA Maurer showed him a photo of Inmate Ridley. He did not recognize Inmate Ridley and said none of his roommates were ████████████████████ ████████████. The records from FDC show Inmate Galarza was housed in 2108 on September 12, 2017, which was the last day Inmate Ridley was in the same cell. Additional records show Inmate Ridley was taken to the infirmary the morning of the 12th and Inmate Galarza stated he was placed in 2108 in the afternoon of the 12th. He said the cell was unoccupied when he got there and it was two or three days after that when he got a roommate. He never saw Inmate Ridley and did not know anything about him.

The interview with Inmate Galarza concluded at 1135 hours.

| Case Number: JA-37-0133 | Serial #: 7 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 12/14/2017 | Activity End Date:12/14/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Omar Galarza

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000019

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the submission of evidence.

On December 21, 2017, at approximately 0930 hours, Special Agent Supervisor Matt Walsh, Special Agent (SA) David Maurer, SA David Meacham, and SA Rodger Prendergast went to RMC and RMC-West to seize the DVRs from Kilo dormitory and Alfa dormitory at RMC-West. SA Prendergast met with John Moore at RMC who is in the maintenance department and deals with the DVRs at the prison. J. Moore brought two DVRs to exchange for the two that were seized in Kilo dorm and one DVR which was seized in Alfa dorm. SA Prendergast completed a FDLE Property Receipt Form, which J. Moore signed. These DVRs were brought back to the Jacksonville Regional Operation Center and placed into evidence so they could be forensically analyzed.

At approximately 1300 hours SA Maurer met with Crime Laboratory Technician (CLT) Bonnie Cox. SA Maurer submitted the following from evidence:

Evidence Item 01: ECOR HD 16X1 DVR, S/N: 1MW265430048
Evidence Item 02: ECOR HD 16X1 DVR, S/N: 1MW285180079
Evidence Item 03: ECOR HD 16X1 DVR, S/N: 1MW285180086

A copy of the FDLE Property Receipt Form and evidence submission form will be maintained as related item INV-6, in the case file.

| Case Number: JA-37-0133 | Serial #: 8 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 12/21/2017 | Activity End Date:12/21/2017 |
| Approved By: Walsh, Matthew James | |

Description:Evidence Submission

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000020

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of inmate Francis Sesco.

On December 19, 2017, FDLE Special Agent (SA) George Dandelake and FDLE SA David Maurer conducted a sworn, recorded interview with inmate Francis Sesco (DOC # 149174). This interview was conducted at the Reception Medical Center (RMC) located in Lake Butler, Florida. Sesco provided the following information, in summary, to SA Dandelake and SA Maurer:

Sesco stated he held a position as a "permanent", which is an inmate that has job responsibilities within the prison. During September of 2017, Sesco was a permanent assigned to K dorm on the day shift. Sesco's job responsibilities including feeding the inmates in the dorms and assisting handicapped or mobility restricted inmates.

Sesco was presented with a picture of Ridley. He did not recognize Ridley from the picture. Sesco stated on one occasion while working in K dorm, he observed a ████ male, subsequently identified as Ridley, who was in his cell for several days and was not moving. Sesco described Ridley as lying on his bunk with his lower legs hanging off of his bed in his cell. He was wearing white clothing, which indicated that the inmate was also a "permanent" and had a job somewhere in the prison.

Sesco noticed the man in his cell was not eating when a tray was placed in his cell. Sesco stated it was unusual that an inmate would not take his tray of food. He stated that the man did not refuse the tray, but did not retrieve it. Sesco stated that the tray would sit on the flap in the door untouched, and would later be collected and discarded by a permanent afterwards. Sesco notified the officers on the day shift that the man was not moving, but the officers did not respond. Sesco noticed the man in the same position every time he saw him.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 9 |
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Francis Sesco

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000021

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 9 |

Sesco stated that they would feed the inmates three times per day. Additionally, Sesco noticed the guards would check on the inmates approximately once per hour.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-7.

277620190211103247

PL000022

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of inmate Tim Hall.

On December 19, 2017, FDLE Special Agent (SA) George Dandelake and FDLE SA David Maurer conducted a sworn, recorded interview with inmate Tim Hall (DOC # 129452). This interview was conducted at the Reception Medical Center (RMC) located in Lake Butler, Florida. Hall provided the following information, in summary, to SA Dandelake and SA Maurer:

Hall stated that he was employed as an orderly, also known as a permanent, in the K dorm during the month of September of 2017. Hall confirmed that his responsibilities included cleaning and assisting with feeding the inmates in the dorm. Hall confirmed that he also assisted handicapped inmates as needed. Hall further confirmed that his activities as an orderly were supervised by a correctional officer.

SA Dandelake presented Hall with a photo of inmate Craig Ridley. Hall recognized Ridley but could not recall his name. Hall heard that Ridley was beaten up by officers after a confrontation with them.

Hall stated that in September, on the evening of a hurricane, Hall was performing his duties as an orderly and was sweeping water from the K dorm area as the dorm was flooding. Hall heard Ridley moaning in his cell as if he was trying to call out to someone. Hall looked into Ridley's room and saw half of Ridley's body hanging off of his bed and the rest of body was halfway on the bed. Hall also saw approximately six or seven food trays strewn in Ridley's cell containing uneaten food. Hall described this as unusual, because there is no other food available aside from the food provided on the trays.

Hall asked Ridley if he was alright. Ridley responded that he needed some water. Ridley stated that he was paralyzed and he could not move or get to his food. Hall notified an officer of

| Case Number: JA-37-0133 | Serial #: 10 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Tim Hall

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000023

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 10 |

Ridley's condition and the condition of Ridley's cell but the officer did not respond. He could not recall which officer he notified. Hall heard that Ridley had been transferred to another cell in another area. Hall also heard that Ridley had fallen down when the officers attempted to get Ridley to stand up by himself.

Hall elaborated on how the inmates in K dorm receive food. He stated that an officer opens a flap in the door of each cell to push a food tray into the cell. He stated that it is unusual that an inmate would not take their food tray and eat. Hall stated that an orderly collects the empty food trays from the cell flaps after the inmate has finished eating.

Hall stated that Ridley did not have a roommate when he saw him in his cell.

Hall stated that he was angry that the officers did not assist Ridley since Ridley appeared to be paralyzed.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-8.

277620190211103247

PL000024

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████
████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Mitchell Harrison.

On Tuesday, December 19, 2017, at approximately, 1048 hours, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted a sworn interview of inmate Mitchell Harrison, DOC #I09126, (heretofore referred to as inmate Harrison). The recorded interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Inmate Harrison was advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file. Inmate Harrison provided, in part, the following information:

On May 8, 2017, inmate Harrison arrived at RMC and was placed in confinement; he has been in confinement since his arrival.

In September 2017, inmate Harrison was assigned to Dormitory "K" (Dorm-K) cell 3109.

Inmate Harrison recalled that "a couple of months" prior to this interview, an inmate was placed in a cell across from him, possibly K3114 or K3115, and when the inmate's handcuffs were removed, he fell and hit his head on the floor. The inmate was left bleeding on the floor the entire time he was in the cell, approximately three (3) to four (4) hours. Inmate Harrison did not observe the injured inmate enter the cell; another inmate known as "Haitian Mo" was in the cell (K3114 or K3115) at the time and told inmate Harrison about the injured inmate and how he could not get off of the floor. Inmate Harrison was able to see the injured inmate lying "on the floor the whole time he was in the cell." According to inmate Harrison, other inmates kicked on the cell doors to get someone to look at the injured inmate, but the correctional officers thought he was "faking" being hurt. When the officers did come to remove the injured inmate and the cell door was opened, inmate Harrison observed the injured inmate lying next to the door and

| Case Number: JA-37-0133 | Serial #: 11 |
|---|---|
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Mitchell Harrison

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000025

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 11 |

his legs fell out of the cell.

Inmate Harrison learned from Sergeant Nyitray that the injured inmate refused to work. Inmate Harrison believed Sergeant Nyitray and Officer Green were the people that brought the inmate to the cell. According to inmate Harrison, they told Officer Greene that the inmate was lying on the floor, but he did not care.

Inmate Harrison described the injured inmate as a ▇▇▇ male in his ▇▇▇▇▇▇▇ he believed the inmate was a "permanent" that refused to work.

Inmate Harrison did not remember observing an inmate arriving by ▇▇▇▇▇ that was unable to move his legs or arms. He was also unable to identify inmate Ridley by photograph.

Inmate Harrison believes the FDC personnel do not care about what happens to the inmates. According to inmate Harrison, he was stabbed nine times and nothing was done about it. Inmate Harrison advised it is difficult for the inmates to get medical attention; if they request it, they could be "put on script" and if they kick on the doors, the guards say they are being disorderly.

Inmate Harrison is unsure if the nurses are influenced or scared by the guards, but they go along with whatever the guards tell them.

According to inmate Harrison, his current bunk mate has had a broken jaw for the past two weeks and has not been treated by dental personnel.

The interview ended at 1100 hours.

INV-9 is the digitally attached recorded interview of inmate Mitchell Harrison.

PL000026

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate James M Reed, DC #D44314 on December 19, 2017, at 1417 hours.  This sworn interview was conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-19.

**Writers Note:**  For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death.  They were shown a color DOC picture of Ridley and asked how or if they knew Ridley.  They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Reed said he knew Ridley and was previously housed with him in the RMC West Unit.  Ridley had been put in confinement before for an altercation with Sergeant Young over asking a question.  He was not present for the latest incident with Ridley and did not find out what happened until he returned to the dormitory.  He heard the latest incident was also with Sergeant Young.  Reed described Ridley as an ████ quiet man sentenced to a lot of time.  He was not aware of any medical issues Ridley had and was not sure of his work assignment.

Reed said the correctional officers at RMC West Unit will beat you if you are not where you are supposed to be or if you are somewhere you should not be.  The majority of the beatings take place in the barbershop because it was not under video surveillance.  Reed said he was currently in confinement because of an issue with an Officer Addison,(possibly Dewey Gilford Addison), from RMC West Unit.  He said Officer Addison threatened him, so he wrote a letter threatening Officer Addison to get moved out of the area.

| Case Number: JA-37-0133 | Serial #: 12 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate James Reed #D44314

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000027

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 12 |

The interview was concluded at 1426 hours

277620190211103247

PL000028

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████████ ███████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Malcolm J Woods, DC #129454 on December 19, 2017, at 1254 hours. This sworn interview was conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-13.

**Writers Note:** For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley. They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Woods said had spoken to Ridley before in passing and Ridley told him he needed the correctional officers to let him seek medical attention. Ridley told him he "got into it with an officer and they locked him up" but did not say which correctional officer. Ridley was ███ ███████ the entire time he was in "K" Dormitory and Woods believed he was paralyzed. He did not see any injuries on Ridley, but believed Ridley had gotten into a fight. Woods said he did not witness the correctional officers mistreat Ridley, but the officers often neglected the inmates. He recalled a recent event where an inmate declared a psychological emergency and the correctional officer told him to wait. Later when the correctional officers went to his cell the inmate had hanged himself. Woods said the correctional officers are aware of the blind spots in the video surveillance at RMC and use that to their advantage. The correctional officers have a motto of "Never walk alone" and if you mess with one of them you mess with them all. The correctional officers will beat inmates if they feel the inmate was being disrespectful. He said a young black male inmate from Tampa was recently beaten by the correctional officers in

| Case Number: JA-37-0133 | Serial #: 13 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Malcolm Woods, DC #129454

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000029

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 13 |

November 2017.

The interview was concluded at 1307 hours

277620190211103247

PL000030

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. █████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interviews of multiple inmates that were not able to provide additional details on this investigation on December 19, 2017. These sworn interviews were conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a listing of these inmates for a verbatim transcript please refer to the audio recording of the interviews attached to this investigative report as Related Item INV-21.

**Writers Note:** For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley. They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

The following inmates were interviewed and had no knowledge of the circumstances of Ridley's altercation and subsequent post incident treatment:

- Clayton K Rogers  DC#C03408 - Rodgers was a member of the Unforgiven and said he was aware of as many as 8 inmate deaths that have occurred since his incarceration, but was unable to provide any specifics or details that could be followed up.
- Joseph A Nunnelly DC#T07686 - Nunnelly had no additional information and did not want to be involved in the investigation.
- Leslie J Wright, Jr DC#J21429 - Wright had no information.
- Paul A WhiteDC#126756 - White had no information.
- Rocco D Gelonese DC#U08531 - Gelonese had no information.
- Michael N Woods DC#T87248 - Woods had no information.

| Case Number: JA-37-0133 | Serial #: 14 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |
| Description:RMC "K" Dormitory Inmates with no information | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000031

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 14 |

- Deondre L Edwards DC#S38582 - Edwards had no information.
- Ronald W Clark DC#015851 - Clark had no information.
- David A SmithieDC#I00605 - Smithie was an orderly in "K" dormitory during a previous time Ridley was assigned to isolation. He had no information about the latest incarceration and complained about the living conditions at RMC.
- Javon D Simmons DC#157240 - Simmons had no information.
- Robert E Brumbley, Jr DC#DG07372 - Brumbley had no information.
- Ricky L Killian, Jr DC#V45534 - Killian was previously housed with Ridley at RMC West Unit, but was asleep when the incident occurred and only heard about what happened afterward.

PL000032

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Shawn Thomas Loncala, DC #V21575 on December 19, 2017, at 1349 hours. This sworn interview was conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-22.

**Writers Note:** For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley. They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Loncala was housed with Ridley at RMC West Unit and they often worked out together. He was able to identify Ridley by name and the alias name of "████████". He last saw Ridley on the morning he was awoken by an altercation between Ridley and unknown named DOC Sergeant. The argument was about Ridley going to his work assignment in the kitchen. It appeared the Sergeant had forgotten to wake Ridley with the other inmates and discovered his absence when they did the roll call in the laundry room. It was normal for the correctional officers to come around and wake the inmates to attend their work assignment. The Sergeant was being vulgar towards Ridley telling him to "Get the fuck up! Hurry the hell up!" Ridley did not rush and the Sergeant told him "Come the fuck on!" Ridley told the Sergeant he was going to go brush his teeth. Ridley brushed his teeth and afterwards the Sergeant and Ridley went into the laundry room. After they left the open dorm area, Loncala had no more contact with Ridley.

Loncala said he was told Inmate Green and about 15 other inmates were in the Laundry room

| Case Number: JA-37-0133 | Serial #: 15 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Shawn Loncala, DC #V21575

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000033

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 15 |

with Ridley and heard the Sergeant ask Ridley to step outside followed by wrestling sounds like people hitting each other.  Loncala could only name 3 inmates in the laundry area at the time of the altercation; Pierre and 2 inmates named Green.  After they heard about the altercation, the Sergeant came back into the open dorm area and he saw a scratch under the Sergeant's eye.  He only saw the verbal interaction in the dormitory room between Ridley and the Sergeant and was not aware of any other correctional officers being involved.

Loncala said it was normal for the correctional officers to take you to an area without cameras and "beat your ass" if they felt you were causing them problems.  In his opinion, the way Ridley was arguing with the Sergeant would be reason to get beaten at the RMC West Unit.  Later he heard Ridley was moved to "K" dormitory, where the correctional officers were beating him, and eventually Ridley died.  The area where the Ridley's altercation occurred would not be visible from the dorimitory windows or by the cameras.  He commented that the Sergeant involved in the altercation was usually quiet and was not normally very physical with the inmates.  He said normally "Sergeant Young and Officer McCord" were the correctional officers that inmates worried would get physical.  He said it was normal if you have an altercation with a correctional officer for them to retaliate.  Loncala was recently attacked by a correctional officer that he had a problem with in the past.  He said the correctional officer handcuffed him, sprayed him with OC spray, and punched him in the face.  He said this happened in an area that was not filmed so it was his word against the correctional officer.  He was scheduled to get out of prison in 4 months, but now because of the altercation he will not be leaving for 8 months.

The interview was concluded at 1403 hours

277620190211103247

PL000034

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████████ ███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Steven D Bryan, DOC #A134430 on December 19, 2017, at 1149 hours. This sworn interview was conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-23.

**Writers Note:** For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley. They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Bryan said he did not know Ridley personally, but was working as an orderly in "K" Dormitory and saw Ridley when he was placed into a cell in "K" Dormitory. He understood that Ridley was a "permanent" at the West Unit of RMC and he was in a ███████████ when arrived into "K" Dormitory. He believed Ridley was placed into cell 15, 16, or 17 of Wing "3". He said Ridley looked beat up and his face seemed swollen when he arrived. Ridley was ███████████████ during this entire time and Bryan did not see him walk or stand on his own. While attending his duties he noticed Ridley's cellmate on Wing "3" was "screaming and hollering." He looked into the cell and saw Ridley lying on the cell floor in a pool of blood. He did not see any injuries to Ridley. Bryan said he brought Ridley's condition to the attention of the correctional officers assigned to "K" dormitory and was told to "Stay in your fucking lane". He did as he was told and later they moved Ridley out of Wing "3" into Wing "2" and he had no further contact with Ridley. He heard rumors that the correctional officers had beaten and starved Ridley to death, but he did not witness these actions. He did not know Ridley before he was placed into "K" Dormitory

| Case Number: JA-37-0133 | Serial #: 16 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Steven Bryan, DOC #A134430

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000035

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 16 |

and was not aware of what led to his condition or any problems Ridley had with the correctional officers.

The interview was concluded at 1154 hours

Page : 2 of 2                    277620190211103247

PL000036

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Tracy Wright, DC #361209 on December 19, 2017, at 1158 hours. This sworn interview was conducted by Special Agents (SA) Lonnie Mills and Dan Pierson inside the Chapel Library of the DOC Reception and Medical Center (RMC) located 7765 County Road 231 in Lake Butler, Florida. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-24.

**Writers Note:** For reference during the interview all persons interviewed by SA Mills and Pierson were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley. They were also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Wright said he had been housed in "K" Dormitory for over a year and recognized Ridley as being housed in the same area. He believed Ridley was house in Wing "2". They had contact with each other because when inmates are pulled out of their confinement cells to be moved they are placed inside holding cells around the control room of "K" Dormitory. Wright said he saw and spoke to Ridley while in the holding cells. Ridley was ████████████ and made a joke to Wright about all the restraints the correctional officers had on him. Wright told him the reason for the restraints was that he stabbed someone. Ridley did not elaborate on why he was ████████████ or what happened to him during their interaction. Wright had heard from a Hispanic inmate that Ridley had not eaten for 5 days and the correctional officers were not doing anything to help him. Wright did not see any injuries to Ridley, but could tell from his appearance that he was sick. He did not see Ridley move or get out ████████████ and heard he was paralyzed. He did not see the correctional officers have any inappropriate contact with Ridley. He was not aware of any issues Ridley had with any of the correctional officers.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 17 |
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Tracy Wright, DC #361209

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000037

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 17 |

The interview was concluded at 1203 hours

277620190211103247

PL000038

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████████ ███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Marlon Burgess.

On Tuesday, December 19, 2017, at approximately 1211 hours, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted a sworn interview of inmate Marlon Burgess, DOC #C00960, (heretofore referred to as inmate Burgess). The recorded interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Inmate Burgess was advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file. Inmate Burgess provided, in part, the following information:

Inmate Burgess is currently assigned to bunk I2108L.

During September 8 through 12, 2017, inmate Burgess was assigned to bunk K2215L. Inmate Burgess remembered a ████, paralyzed inmate (later identified by photograph as Craig Ridley) who was brought to Dormitory "K," wing 2, "room 8 downstairs" by ████████.

Inmate Burgess witnessed an orderly bring Ridley to cell "8" by ████████. The orderly physically picked Ridley up and placed him into the bed; inmate Burgess did not know who the orderly was and did not remember his ethnicity. Inmate Burgess believed someone (a guard or another inmate) helped place Ridley into the bed, but was not positive. No other inmate was assigned to cell "8" at that time.

From his cell, Inmate Burgess was able to see directly into Ridley's cell; he could see Ridley's head and shoulders and that he was lying on the bed. According to inmate Burgess, Ridley did not move from the bed; he never got up to use the bathroom. Correctional officers left food trays for Ridley. When the officers returned for the food trays they would be untouched.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 18 |
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Marlon Burgess

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000039

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 18 |

Inmate Burgess witnessed the guards open Ridley's cell door a couple of times and place a food tray inside, but Ridley never ate the food. When asked how inmate Burgess knew the food had not been eaten he replied,

"When you being in the box, you know, just give it to you blood raw, um, you be starving back there. So when that tray come around and it still got food on it, you going to beg the officer for that tray. Every time, I used to be one of the ones begging for one of them trays. Them trays was untouched. First of all, he couldn't even get up to physically get the tray."

After lying in the bed for three (3) to four (4) days, inmate Ridley was removed from the cell.

Inmate Burgess did not see Ridley "get beat up" but it was "universal knowledge" that the guards beat him and that his roommate witnessed it. Inmate Burgess heard through "inmate.com" that the "police beat him up and caused him to be paralyzed."

Inmate Burgess talked to Colonel Peterson (NFI) and Captain Carr (NFI) on the midnight shift about an inmate in cell eight (8) that could not move. According to inmate Burgess, Captain Carr (NFI) would always say "Ok, we'll get that later," and then he would never do anything about it. Captain Jason P. Livingston (a Lieutenant in September 2017), Sergeant John Nyitray and Sergeant Lewis, described as a white male with red hair and a red beard, were also made aware of Ridley's condition. Inmate Burgess heard from Ridley's roommate that Ridley was battered by Sergeant Nyitray and Sergeant Lewis. Inmate Burgess did not remember the name of Ridley's roommate.

Inmates Tracy Wright and Trevor Jackson should have information regarding the circumstances of Ridley's injuries. Inmate Trevor Jackson used to be inmate Burgess' roommate and his DOC number begins with a "T."

When shown a photograph of Ridley, inmate Burgess identified him as the paralyzed inmate he was talking about, but stated Ridley had facial hair when he saw him. Inmate Burgess did not know Ridley's name.

According to inmate Burgess, Ridley was moved from the cell because people from Tallahassee were coming to the institution and the guards wanted to make sure everything "looked right". According to Burgess, when it is known that people from Tallahassee are coming to visit, they clean the compound and make it "look pretty." If there are holes in the inmates' clothes, nicknamed "blues," then they will give the inmates new ones during the visit; after the visit they take them away.

The interview ended at 1226 hours.

INV-10 is the digitally attached recorded interview of inmate Marlon Burgess.

277620190211103247

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of inmate Roger Posey at Regional Medical Center- Main Unit.

On Tuesday, December 19, 2017, at 1415 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Roger Posey, (DOC # 569560), at the RMC Main. Posey was housed in dorm "D1" assigned to bunk 114 upper. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Posey stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Posey advised he was on a medical transfer from Santa Rosa. Posey stated he was in confinement "CM3" for about a month around September 2017. Posey was shown a picture of Ridley which he denied knowing. Posey advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-11.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 19 |
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:interview of inmate Roger Posey DOC # 569560

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000041

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document a sworn recorded interview with Inmate Jared Ross.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL.  The interviews were conducted with inmates that had been housed in A Dorm.  The interviews were recorded using a digital recording device.

At 1351 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison conducted a sworn interview with FDOC Inmate Jared Ross.  Inmate Ross provided the following information:

- Inmate Ross was currently assigned to G Dorm (G1). During the month of September 2017, Inmate Ross had been assigned in Confinement (Wing 2, Bunk 5 upper). Inmate Ross was in Confinement for approximately three months. Inmate Ross was placed into confinement after being caught smoking in the infirmary.
- SA Graff provided Inmate Ross with an unlabeled photograph of Inmate Craig Ridley. Inmate Ross could not identify Inmate Ridley and advised that he had never seen Ridley.
- While in Confinement, Inmate Ross witnessed an inmate get beat up, but he was unable to provide any specific information as to date or identity of the inmate.

Inmate Ross was unable to provide any information concerning Inmate Ridley.

The recording of the interview was electronically attached to this report as related item INV-12.

| Case Number: JA-37-0133 | Serial #: 20 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Sworn Interview with Inmate Jared Ross (K-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000042

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jeffery Jerrels. On ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Brian Michael McGhee DOC # C11002.The interview was sworn to by Inmate Brian McGhee and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Brian McGhee DOC # C11002 interview was recorded and placed into the investigative file as related item # 13.

The aforementioned interview with Brian McGhee DOC # C11002 was conducted on December 19, 2017, (1005 hours) by FDLE Special Agents Rusty Ray Rodgers and  Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

Inmate Brian McGhee reported he is currently housed in K- unit bed, # K3213. McGhee initially reported he knew why SA's Rodgers and Edwards were there and referenced an incident that occurred in October 2017 concerning an inmate that had hung himself.

McGhee was shown a photograph of Ridley and was unable to identify same. McGhee reported he had not seen Ridley in a ████████ and continued to deny knowing him while responding to a series of questions.

During the interview it was noted McGhee wore dark sunglasses and when questioned about the glasses reported he had eye surgery and was able to see. McGhee reported he was housed in K-unit; bed K2103U during the month of September 2017. McGhee reported he was unaware he would be interviewed concerning this matter and was not discouraged to talk to agents by guards or corrections staff members. McGhee is currently in confinement (since August 17, 2017) and does not have a work assignment. The interview of Brian McGhee terminated at 1011 hours.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 21 |
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Brian McGhee DOC #C11002

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000043

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 21         |

277620190211103247

PL000044

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Benjamin Robert Dick DOC # U35193.The interview was sworn to by Inmate Dick and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Benjamin Dick's interview was recorded and placed into the investigative file as related item # 14.

The aforementioned interview with Dick was conducted on December 19, 2017, by FDLE Special Agents Rusty Rodgers and Veronica Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

Inmate Dick reported he was not housed in the K- unit on September 8, 2017, and recalled he was housed in the West wing unit (F1109L) at that time. Dick was shown a photograph of Ridley and was unable to identify same. Dick responded several times to specific questions that he did not know who Ridley was.

Dick reported he did not hear any information from other inmates concerning this matter. Dick currently does not have a work assignment due to his medical classification at RMC. Dick was questioned to determine if he had ever been housed at K2216L in the K-unit. Dick reported he remembered that he was housed in K-unit (K2216L) after September 2017.

Dick remembered that he was in confinement for thirty eight (38) days in August 2017 prior to being housed in the K-2 unit. Dick reported he was housed in D-2 dormitory (open bay dormitory) when he was housed in the West wing unit.

| Case Number: JA-37-0133 | Serial #: 22 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Benjamin Dick DOC #U35193

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000045

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of inmate Shane Griffin.

On December 19, 2017, FDLE Special Agent (SA) George Dandelake and FDLE SA David Maurer conducted a sworn, recorded interview with inmate Shane Griffin (DOC # G04307). This interview was conducted at the Reception Medical Center (RMC) located in Lake Butler, Florida. Griffin provided the following information, in summary, to SA Dandelake and SA Maurer:

Griffin confirmed that he was employed as a permanent and was assigned to the confinement dorm during September of 2017.

Griffin was presented with a photograph of Ridley. He recognized Ridley and stated that Ridley was housed in K dorm, specifically in Wing 2, 8 Low. Before that he was in Wing 3 and was moved to Wing 2.

Griffin stated that Ridley was in a cell by himself. Ridley was lying on his back and did not appear to be able to move on his own. He further stated that the lower half of Ridley's body was hanging off of his bed.

Griffin did not see Ridley eat his meals. Ridley refused his food tray in that he did not take his tray from the chute in the door. Griffin confirmed that Ridley was in the cell for multiple days "just lying there" and noticed Ridley was in the same position every time he saw him.

Griffin stated that another inmate gave him a phone to report Ridley's condition. Griffin described this individual as a ████████ male with a nickname of "██" and was possibly ███████. Griffin turned the phone into an officer and was told that he would be "straight."

Griffin heard that Ridley had been beat up by officers. He heard that another inmate had been

| Case Number: JA-37-0133 | Serial #: 23 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |
| Description:Interview of Inmate Shane Griffin | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000046

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 23 |

with Ridley in a cell but was moved out of the cell for "not minding his own business."

Griffin reported Ridley's condition to "Officer Yates," who is assigned to K dorm. Griffin later received a disciplinary report (D.R.) from "Officer Nightrain" for turning in the cell phone that he received. Griffin never saw the D.R. and was not sure if the inmate who gave him the phone got in trouble.

Griffin never observed Ridley receive medical attention. He heard officers state that Ridley was faking his injury.

Griffin stated that everyone treated Ridley as if he did not exist.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-15.

PL000047

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████

████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Douglas Sinclair.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Douglas Sinclair (DC #122044) at RMC Main Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Sinclair was in confinement at the time Ridley was brought over to K dorm. Sinclair was presented with a photo of Ridley and he indicated that he remembered seeing him ███████████. He believed Ridley was in 3 wing but was moved to 2 wing. Sinclair described Ridley as being slumped over and trying to roll the ███████████. Sinclair said he couldn't see real well, as he was peeking through the window on the door. After that day, Sinclair never saw Ridley again. Sinclair advised that he heard from other inmates that officers beat Ridley up.

Sinclair stated that he didn't specifically see officers beat on Ridley but they do beat inmates up. Sinclair also advised that he heard from an officer that Ridley had a broken neck and that he was sent to the hospital. Sinclair didn't know that Ridley had died. When asked who told him that Ridley's neck was broken, he advised that he was told by Officer Reed. Officer Reed works in confinement. Sinclair stated that Officer Reed told him about Ridley having a broken neck, a few days after he was taken to the hospital. Sinclair advised that inmates from the west unit are always getting beat up by officers.

Sinclair had no additional information to provide and the interview concluded.

A compact disc containing the recorded interview of Sinclair will be maintained as a related item to the case file INV-16.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 24 |
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Douglas Sinclair

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000048

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of inmate Christopher Forsgren.

On December 19, 2017, FDLE Special Agent (SA) George Dandelake and FDLE SA David Maurer conducted a sworn, recorded interview with inmate Christopher Forsgren (DOC # 149068). This interview was conducted at the Reception Medical Center (RMC) located in Lake Butler, Florida. Forsgren provided the following information, in summary, to SA Dandelake and SA Maurer:

Forsgren stated that at the time of the incident he was assigned to bed 2140 single in dorm A at RMC West. He resided in this dorm for approximately two and one half years. He is currently a "permanent," meaning that he has a job function within the institution. He is employed as a certified law clerk. Prior to his employment as a certified law clerk, he was assigned to inside grounds.

Forsgren was presented with a picture of Ridley and he positively identified him. He stated that Ridley was also a permanent in the "2 side" of the dorm. Forsgren also assisted Riley with his criminal case and the law library. Forsgren described Ridley as intelligent and energetic. Forsgren stated that Ridley did not appear to give the officers a problem unless they gave him a problem, which result in Ridley frequently receiving confinement.

Forsgren heard that Ridley died. He heard that Ridley was in confinement and was dead. He further heard on the night of the incident that there was a confrontation between Ridley and an officer. More specifically, he heard that Ridley struck Sgt. Nettles. He heard that the confrontation occurred in the threshold of the laundry room door that leads into the bathroom of their dormitory. Forsgren stated that Sgt. Nettles is respectful and does not give the inmates a hard time. Forsgren cannot imagine why the confrontation would have occurred. Forsgren did not see or hear the confrontation and was not awake when the permanents assigned to the

| Case Number: JA-37-0133 | Serial #: 25 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Christopher Forsgren

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000049

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 25 |

kitchen reported to their work assignments.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-17.

277620190211103247

PL000050

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ██████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interviews of multiple inmates on December 19, 2017 that were not able to provide additional information pertinent to this investigation.

On December 19, 2017, FDLE Special Agent (SA) George Dandelake and FDLE SA David Maurer conducted a sworn, recorded interview with numerous inmates regarding the events leading to the death of Craig Ridley. These interviews were conducted at the Reception Medical Center (RMC) located in Lake Butler, Florida. The following inmates were interviewed and were unable to provide additional information pertinent to this investigation:

Max Newton (DOC # 069652)
Lascelles Ford (DOC # 817749)
Antraveius Baker (DOC # V19634)
Carl Lovett (DOC # 081521)
Damon Welch (DOC # 372042)
Lance Grant (DOC # M55252)
Erice Green (DOC # 278526)


Compact discs containing digital recordings of interviews of the aforementioned inmates will be maintained in this case file as related item number INV-18.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 26 |
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |
| Description:RMC K Dormitory inmates with no additional information | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000051

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Michael P Oliveri.

On Tuesday, December 19, 2017, at approximately 1301 hours, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted an interview of inmate Michael Oliveri, DOC #888231, (heretofore referred to as inmate Oliveri). The interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Inmate Oliveri was advised of the identity of the interviewing agents and the purpose of the interview. Inmate Oliveri would not consent to providing a sworn statement or having the interview recorded.

Inmate Oliveri is currently assigned to bunk B2123L and works as an orderly in Dormitory "K".

Inmate Oliveri had knowledge regarding the incident involving Ridley, but repeatedly stated he was in fear for his safety if he spoke with the agents regarding the incident or anything else he had observed at RMC. Inmate Oliveri advised he only had a few more years until he got out of prison and was afraid of retaliation from the guards if he got involved. Inmate Oliveri's family, a wife and two children, live nearby and he did not want to move to a different prison where he would not be able to see them anymore.

During the interview, Inmate Oliveri became visibly nervous; he was sweating around his head and face, ringing his hands, and fidgeting in his chair.

The interview ended at approximately1316 hours.

| Case Number: JA-37-0133 | Serial #: 27 |
|---|---|
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Michael Oliveri

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000052

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interviews of multiple inmates that did not provide information pertinent to this investigation.

On Tuesday, December 19, 2017, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted sworn interviews of the below listed inmates. The recorded interviews, which have been made a part of this case file, took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Each inmate was advised of the identity of the interviewing agents and the purpose of the interview. The following inmates were unable to provide additional information pertinent to this investigation:

1. Sebastian Smart, DOC #H10514
   - Currently housed in K1102
   - Was not able to identify Ridley by photograph, but thought he looked familiar
   - Had not heard of an inmate who was incapable of feeding himself
   - Could not recall which days he was in confinement, but knew it was around September 2017
   - Has been assigned to Dormitory "K", wing 2, cell 22 upstairs; Dormitory "K", wing 2, cell 10 downstairs, and Dormitory "K", wing 1, but does not remember which bunk

2. Cedric Barnes, DOC #T28302
   - Assigned to confinement since August 17, 2017
   - Moved to Florida State Prison in late September 2017 and returned to RMC for surgery on November 29, 2017.
   - Was not able to identify Ridley by photograph

| Case Number: JA-37-0133 | Serial #: 28 |
|---|---|
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:RMC Dormitory K inmates without additional information

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103247

PL000053

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 28 |

- Had not heard of an inmate who was incapable of feeding himself
- In early September was assigned to bunk K3103L; prior to that was assigned to cell K2222L; prior to that was assigned to cell K1107 and had a roommate. That roommate was brought in ███████ and was left in the cell without the ████████. The roommate could not walk well and did not take a shower

3. Robert Briggs, DOC #Y15156
   - September 2017 was assigned to bunks K1113L and K2115.
   - Was not able to identify Ridley by photograph, but stated he looked familiar
   - Did not have knowledge of Ridley's death.

4. Lorenzo Gutierrez, DOC #165856
   - Currently assigned to bunk K1210
   - From September 10 through12, 2017 was in K Dorm and assigned to cell 2208
   - Was not able to identify Ridley by photograph
   - Heard through "inmate.com" of an inmate that did not eat for four days and was lying in a pool of blood; did not know if the inmate chose not to move or was unable to move.

INV-25 is the digitally attached interview of inmate Sebastian Smart
INV-26 is the digitally attached interview of inmate Cedric Barnes
INV-27 is the digitally attached interview of inmate Robert Briggs
INV-28 is the digitally attached interview of inmate Lorenzo Gutierrez

277620190211103247

PL000054

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CAPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████████ ██████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document the interview of inmate Casey L Wilcox, DOC number 134666.

On January 4, 2018, at approximately 1244 hours, FDLE Special Agent (SA) Gregory Lee Holycross and Veronica Benson Edwards conducted an interview with Wilcox. The interview took place at RMC West Unit in the classification office. SA Holycross identified himself and SA Edwards and advised Wilcox the reason for the interview. Wilcox was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information Wilcox provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 33. Wilcox provided the following information:

Wilcox is currently housed at RMC West Unit dormitory A-1, bunk 13 upper. On September 7 and 8, 2017, he was in A-1, bunk 2 single. Wilcox was shown a full page color photograph of Ridley and asked if he knew the person in the photograph. Wilcox stated it was "Mr. Ridley or the ████████". Wilcox stated he and Ridley worked in food service together and were good friends. They both did exercise together and spent a lot of time together every day. He said Ridley was a good person and didn't give the officers a problem, unless they gave him a problem, then he would stand up for himself, but only using words not violence. Wilcox stated he heard about Ridley and some foul play with officers from other inmates. Wilcox stated once the officers take you outside the wing there are no cameras and it would be your word against their word as what happened. The officers have authority and power and if you don't give them respect they will retaliate against you.

Wilcox worked the food service morning shift, 0230 hours through 1100 hours. The officers would wake the inmates working food service 30 minutes before they were to lineup in the

| Case Number: JA-37-0133 | Serial #: 29 |
|---|---|
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Casey Wilcox

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000055

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Michael V. Glover.

On Tuesday, December 19, 2017, at approximately 1427 hours, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted a sworn interview of inmate Michael Glover, DOC #108740, (heretofore referred to as inmate Glover). The recorded interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Inmate Glover was advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file. Inmate Glover provided, in part, the following information:

Inmate Glover arrived at RMC in September 2015 and is currently assigned to Dormitory "B", wing 2, bunk 116U. Inmate Glover is a permanent inmate at the RMC West Unit.

From November 2016 to August 4, 2017, inmate Glover was assigned to Dormitory "A", wing 1.

From August 4 to approximately September 1, 2017, inmate Glover was in medical confinement in either cell K2117L or K2118L.

Inmate Glover was able to identify Ridley by photograph; Ridley was his chess partner.

When inmate Glover was moved from confinement in September 2017, he was assigned to Dormitory "A", wing 2, bunk 38S and Ridley was in a bunk across from him; either bunk five (5), six (6), seven (7) or eight (8). Inmate Glover and Ridley also used to work together in the kitchen.

When Inmate Glover met Ridley, he was surprised to learn that Ridley was ██████ years old.

| Case Number: JA-37-0133 | Serial #: 30 |
|---|---|
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Michael Glover

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000057

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 30 |

Inmate Glover thought Ridley was healthy; he liked to work out and would run three (3) to four (4) miles on the track.

Inmate Glover described Ridley as ▆▆▆▆▆▆, "very outspoken," but did not "bother other people." Ridley would keep to himself unless he had been around a person for a while and determined they were "alright." Ridley was very stubborn and did not like correctional officers. Ridley was not used to the fact that while in prison, the guards could do things to him and there was nothing he could do about it.

According to Inmate Glover, Ridley and Sergeant Young had an "issue" with each other because Ridley would write up anything he thought the officers did wrong. Sergeant Young took Ridley's property and did not give it back so Ridley reported it. Inmate Glover witnessed Sergeant Young threaten Ridley when he questioned Sergeant Young about throwing his property away. Sergeant Young said "I don't give a fuck about your property" "I don't give a fuck about you. Matter of fact, I got something for you" and Sergeant Young put Ridley in handcuffs and took him away. Inmate Glover does not know what happen to Ridley that time.

Inmate Glover is now "going through it" with Sergeant Young; Sergeant Young is under investigation because of a complaint made by inmate Glover.

Inmate Glover heard Ridley had a confrontation with Sergeant Nettles and that Ridley hit him. Inmate Glover heard that Sergeant Nettles grabbed Ridley and then Ridley threw his hands up and ended up hitting Sergeant Nettles in the face. Inmate Glover did not witness the incident and is not sure what actually happened.

On the morning of the incident, inmate Glover was assigned to work the inside grounds, but was awake when the kitchen workers got up at approximately 0230 hours. Inmate Jerry Pierre was working in the kitchen that morning and is one of the inmates that inmate Glover received information from regarding the incident involving Ridley.

Inmate Glover heard that Ridley was handcuffed behind his back and "dragged" outside where the cameras are not installed; he was also "pepper sprayed." Ridley would not get up or walk and the officers "jumped him again in medical" and then put him in confinement.

Inmate Glover heard Ridley verbally refused to take the handcuffs off when he got to confinement so the officers went into the cell and "did whatever they had to do and got the handcuffs off."

On the day of the incident with Ridley, the kitchen crew was sent back to their bunks and they did not go to work until approximately 0500 hours; whatever took place in the laundry room between Ridley and Sergeant Nettles stopped their normal routine. Inmate Jerry Pierre returned to his bunk that morning and told inmate Glover about the incident with Ridley. Inmate Glover did not see Ridley return to his bunk. The inmates did not eat until 0700 hours that day. Inmate Glover remembers the day because the incident was something everyone was talking about and that was the last day he saw Ridley.

According to inmate Glover, there is video surveillance in the confinement dorm but it does not have audio. There have been times when a guard has come by inmate Glover's confinement

PL000058

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 30 |

cell and told him to stop making noise and he has not been making noise. Inmate Glover believes it is just to give the officers an excuse to do what they are going to do.

Inmate Glover went back into confinement October 5, 2017 under investigation by Sergeant Young; this was when inmate Glover learned about Ridley's death. Inmate Glover heard Ridley died of cancer, but he did not believe that because Ridley hated going to "medical".

On November 23, 2017, inmate Glover was released from confinement and assigned to the RMC West Unit. The following Tuesday, an inmate asked inmate Glover if Ridley was dead. Another inmate had someone "on the outside" check into Ridley's status and found out that he was deceased.

According to inmate Glover, an inmate in K2219U could see Ridley in his cell, lying on the floor bleeding and told the guards that Ridley did not look well. The guards told the inmate in K2219U to "get away from the fucking door" and to "mind his own business." They also slapped the inmate around and changed his job from being an orderly to something else. The inmate was charged with battery on a Department of Corrections officer and is now in confinement K2219U.

Inmate Glover does not side with an officer over an inmate unless he knows the officer is absolutely right. Inmate Glover heard that Sergeant John Nyitray is the officer who battered Ridley; inmate Glover never thought Sergeant Nyitray would do something like that. The rumor inmate Glover heard was that Sergeant Nyitray and another officer beat Ridley up and Officer Graham (NFI) witnessed it. Inmate Glover also heard Officer Graham beat up the inmate in K2219U.

Inmate Glover believes Sergeant Nyitray would go along with the actions of other officers.

Inmate Glover's opinion is that the guards are one of the biggest "gangs" in the prisons.

Inmate Glover was "jumped" by officers two (2) weeks prior to this interview; the officers "peppered" him, shoved him down, punched him in his mouth and tried to put the spray in it in retaliation for an incident that happened in August. According to inmate Glover, there was nothing he could do about it because "nobody believes you;" they are inmates and they lie. It is the image they have. Inmate Glover would rather be in confinement than go back to the West Unit.

Inmate Glover believes inmate Marlo Green (Dormitory A, wing 2, 15L) was working on the kitchen crew the day of the incident.

Inmate Glover believes there will be more incidents like the one surrounding Ridley. Inmate Glover has witnessed inmates beaten up and slapped, especially when video surveillance is not present.

The interview ended at 1501 hours.

INV-29 is a CD containing the interview of inmate Michael Glover.

PL000059

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Shaun D Watson.

On Tuesday, December 19, 2017, at approximately 1344 hours, FDLE Special Agents (SA) Rusty Rodgers and Veronica Edwards conducted a sworn interview of inmate Shaun Watson, DOC #G11379, (heretofore referred to as inmate Watson). The recorded interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) located at 7765 County Road 231, Lake Butler, Florida, in a chapel office. Inmate Watson was advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file. Inmate Watson provided, in part, the following information:

Since November 17, 2017, Inmate Watson has been assigned to bunk K2221.

In September 2017, Inmate Watson was assigned to Dormitory "A", wing 1, bunk 23U at the RMC West Unit. During that time, he worked the inside grounds.

Inmate Watson was able to identify Ridley by photograph and called him "███████████ ████." Inmate Watson described Ridley as outspoken and the type of person who told you how he felt whether you were an inmate or a guard; Ridley was "like ███" but he talked like he 6'5."

Ridley used to be assigned to Dormitory "A", wing 1, bunk 1114U. When Ridley was assigned to that bunk, Inmate Watson witnessed Ridley and an officer "get into it" because Ridley was not ready for bed count. As a result, Ridley went to confinement. When Ridley came back from confinement, he was assigned to Dormitory "A", wing 2.

Inmate Watson used to work food service with Ridley and they would talk while working in the

| Case Number: JA-37-0133 | Serial #: 31 |
|---|---|
| Author: Edwards, Veronica | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Shawn Watson

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000060

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 31         |

kitchen. Inmates working food service are woken up by the guards around 0220 hours; they get ready for work and then line up in the laundry room. Once the Sergeant on duty has confirmed the bed count, the inmates line up outside and are then escorted as a group to the kitchen by a Sergeant.

Inmate Watson heard about an incident wherein Ridley "cussed out" one of the Sergeants. The incident occurred around 0230 to 0300 hours in the Dormitory "A" laundry room. Inmate Watson thought the incident occurred in September 2017 when Ridley was assigned to wing 2. As a result, Ridley was sent to confinement and inmate Watson never saw him again.

According to inmate Watson, Ridley did not like Sergeant Young (NFI) or Sergeant Haight and he would argue with them; inmate Watson never saw Ridley physically fight anybody. Ridley was quiet, kept to himself and did not start arguments, but if something was said to him he would respond.

Inmate Watson heard Ridley passed away due to cancer, but he does not believe it to be true; Ridley was in good health, would run around the track, and was more energetic than all of the other inmates. One of the officers told inmate Watson that Ridley died of cancer and when he said it he used air quotes around the word "cancer" as if he did not believe it either. Inmate Watson did not remember which officer made the statement. Inmate Watson does not know why Ridley died; "I [inmate Watson] can't say they put their hands on him or nothin, but I [inmate Watson] can't say they didn't either." Inmate Watson believes "everyone" thinks Ridley died because of a beating he received from the guards.

In reference to the incident involving Ridley, inmate Watson advised Ridley was lined up in the laundry room for kitchen duty. Ridley stated "this is bullshit" to a "white shirt" who replied "what did you say" and Ridley "repeated himself"; that was the last time inmate Watson saw Ridley. Inmate Watson advised the agents Ridley was one of the first people in the laundry room that day. When the agents confronted inmate Watson with the fact that he sounded like he heard or witnessed the incident, inmate Watson laughed and stated he was "just getting up" because he was going to work as well. Inmate Watson would have been "nearby" but he did not see or hear the incident; he heard about it from other inmates.

Inmate Watson has heard that inmates have been beaten up or slapped by the guards, but did not know the names of any specific inmates.

Inmate Watson was never in Dormitory "K" (confinement dorm) at the same time as Ridley and had not seen Ridley in ▮▮▮▮▮▮▮▮.

The interview ended at 1404 hours.

INV-30 is the electronically attached interview of inmate Shaun Watson.

277620190211103248

PL000061

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Jeffery Baker at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at 1040 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Jeffery Baker Jr. (DOC # J33215), at the RMC West. Baker was housed in dorm "A 2" assigned to bunk 2108 lower. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Baker stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Baker's work assignment was inside grounds from 8am till 1pm. Baker advised that he walks in a group to work while being escorted. Baker advised that he heard the incident occurred in the dorm between Ridley and an officer. Baker further stated that he does not know which officer was involved. Baker stated "I am just trying to do my own time".
Baker advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Ridley is known to be calm and collective. Baker further stated that Ridley could always be found reading or working out.

Baker stated that he has never been counseled by Correctional Officers. Baker advised that's it common for inmates to be taken to the Barber Shop to be counseled.

Baker was shown a picture of Ridley which he immediately recognized as Ridley. Baker was also shown photos of two Correctional Officers. Baker recognized the photo of Sergeant Nettles but could not place him by name. Baker did not recognize Captain Jerrels. Baker advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-31.

| Case Number: JA-37-0133 | Serial #: 32 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Jeffery Baker (DOC# J33215)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000062

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 32 |

277620190211103248

PL000063

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Christopher Botto at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  0945 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Christopher Botto, (DOC # 927090), at the RMC West. Botto was housed in dorm "A 1" assigned to bunk 1134 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Botto stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Botto's work assignment was in the chapel. Botto advised that he heard the incident occurred in the kitchen between Ridley and Sergeant Young. Botto described Sergeant Young as a white male, 6'00", clean cut, salt/pepper hair with glasses. According to Botto, Sergeant Young and Ridley have had several incidents which have led Ridley to be placed into confinement. Botto described being a partial witness to an incident between Sergeant Young and Inmate Wynn.

Botto advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Ridley is known to speak his mind and move on from the incident. Botto further stated that Ridley could always be found reading on his bunk or running the track.

Botto was shown a picture of Ridley which he immediately recognized as Ridley. Botto was also shown photos of two Correctional Officers. Botto recognized the photo of Sergeant Nettles but could not place him by name. Botto did not recognize Captain Jerrels. Botto advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-32.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 33 |
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Christopher Botto (DOC# 927090)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000064

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 33 |

277620190211103248

PL000065

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Justin Fiske DOC # 158123. The interview was sworn to by Inmate Fiske and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Justin Fiske's interview was recorded and placed into the investigative file as related item # 34 .

The aforementioned interview with Fiske was conducted on December 19, 2017, by FDLE Special Agents Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

During the interview Fiske reported he arrived at RMC in July 25, 2017 and was housed in the confinement section for a period of fifty (50) days. Fiske did not remember his bed assignment during his time in confinement. Fiske reported his current bed assignment was A2122L.

Fiske was shown a photograph of Ridley for the purpose of identification and he was unable to identify Ridley and did not recall seeing him while assigned to the confinement section at RMC. Fiske reported he had no knowledge of any incident involving Ridley or recalled any incident while he was in confinement on September 8, 2017.

Fiske reported he is currently assigned to the kitchen crew and has not heard anyone talk about any incident. Fiske reported this was his first time in prison and he was scared and can't remember his past bed and cell assignments due to his fear. Fiske had no additional information concerning this matter.

The aforementioned interview of Justin Fiske began at approximately 1:59 pm and was

| Case Number: JA-37-0133 | Serial #: 34 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Justin Fiske DOC # 158123

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000066

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 34 |

terminated at 2:06 pm.

277620190211103248

PL000067

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Aaron M Smith, DC #V26109 on January 4, 2018, at 1040 hours. This sworn interview was conducted by Special Agents (SA) Lonnie Mills and George Dandelake inside the Classification Building break room of the DOC Reception and Medical Center West Unit (RMCW) located. The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-134.

**Writers Note:** For reference during the interview all persons interviewed were told that FDLE was investigating an inmate death. They were shown a color DOC picture of Ridley and asked how or if they knew Ridley.

Smith said he knew Ridley from working with him in the kitchen and being housed together in "A" dormitory. He referred to Ridley by name and as "█████████." He no longer worked in the kitchen and was moved to Maintenance doing air conditioning repair. He also slept on side 1 of Dormitory "A" and Ridley slept on side 2. He was aware of the incident involving Ridley, but was not a witness to what happened, because he was already working when the incident occurred. He said Ridley had a good "easy going" personality and worked out a lot. Ridley never had any issues with the correctional officers (CO) to his knowledge and he could not even remember Ridley ever talking to a CO.

When asked what rumors he had heard about what happened to Ridley, Smith said he heard Sergeant Nettles and Ridley got into an altercation. Ridley exited Dormitory "A" on his own power and during the counseling hit Sergeant Nettles. A physical altercation ensued and Ridley was taken to the clinic in █████████. He does not know Sergeant Nettles that well and did not believe he had a reputation for using exccessvie force with inmates.

| Case Number: JA-37-0133 | Serial #: 35 |
| --- | --- |
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:02/15/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Aaron Smith

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000068

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 35 |

When asked if it was normal for a CO to remove an inmate from the cell for a counseling session, Smith said it was not uncommon.  A CO would often take inmates into areas that were not recorded by video surveillance like the bathroom or the barbershop.  Normally the CO would spray the inmate with OC spray and slap him.  He has never been a victim of such excessive force, but has seen an inmate taken into the barbershop and leave ████████.  The time of day does not have any bearing on what the officers do and they will usually seek to discipline inmates away from the presence of other inmates.

When going to work assignments, Smith desribed the process as; the officers would wake you up and you have a certain amount of time to get lined up for roll call.  Then you are escorted over to your assignment.

Interview concluded at 1059 hours.

PL000069

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document interviews with inmates who may have information related to how Craig Ridley obtained the injuries that later caused his death.

FDLE Special Agents (SA) Lonnie Mills and Dan Pierson travelled to the Florida Department of Corrections Reception and Medical Center in Lake Butler, Florida on December 19, 2017 and conducted sworn interviews with inmates housed around or who may have had interactions with Craig Ridley. The following is a brief summary of that sworn interview. For a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item # 43.

SA Mills and SA Pierson interviewed inmate Jerry Chambers (DOC #Q15468) about the death of Craig Ridley. During the interview Chambers was informed that FDLE was investigating an inmate death. Chambers was shown a color DOC picture of Ridley and asked how or if he knew Ridley. Chambers was also told the time frame he might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Chambers said he was housed on the bottom floor of the K2 wing for a short time in September of 2017. Chambers said he does not know anything about how Ridley got hurt. Chambers said he saw Ridley in ███████████ and talked to him about physical problems, as well as, other casual issues. Chambers did not provide any specific information about their conversations. Chambers also said he believes he saw Ridley standing in his cell. Chambers said he saw corrections officers interacting with Ridley. Chambers said he remembered the corrections officers taking Ridley out of his cell in K2 on a stretcher. Chambers said he later heard Ridley died. Chambers also stated since he had been incarcerated in the Reception and Medical Center there had been several deaths.

| Case Number: JA-37-0133 | Serial #: 36 |
|---|---|
| Author: Pierson, Daniel Eric | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Jerry Chambers

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000070

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document interviews with inmates who may have information related to how Craig Ridley obtained the injuries that later caused his death.

FDLE Special Agents (SA) Lonnie Mills and Dan Pierson travelled to the Florida Department of Corrections Reception and Medical Center in Lake Butler, Florida on December 19, 2017 and conducted sworn interviews with inmates housed around or who may have had interactions with Craig Ridley. The following is a brief summary of that sworn interview. For a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item # 42.

SA Mills and SA Pierson interviewed inmate Michael A Hicks (DOC #D18194) about the death of Craig Ridley. During the interview Hicks was informed that FDLE was investigating an inmate death. Hicks was shown a color DOC picture of Ridley and asked how or if he knew Ridley. Hicks was also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Hicks said he was in K2 wing in 103 Low in September of 2017. Hicks said he did not know or hear anything about how Ridley got hurt. Hicks said the only thing he remembered about Ridley is he saw him being ████████████████████████.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 37 |
| Author: Pierson, Daniel Eric | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Michael Hicks

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000071

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document interviews with inmates who may have information related to how Craig Ridley obtained the injuries that later caused his death.

FDLE Special Agents (SA) Lonnie Mills and Dan Pierson travelled to the Florida Department of Corrections Reception and Medical Center in Lake Butler, Florida on December 19, 2017 and conducted sworn interviews with inmates housed around or who may have had interactions with Craig Ridley. The following is a brief summary of that sworn interview. For a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item # 41.

SA Mills and SA Pierson interviewed inmate Lou Joseph (DOC #193377) about the death of Craig Ridley. During the interview Joseph was informed that FDLE was investigating an inmate death. Joseph was shown a color DOC picture of Ridley and asked how or if he knew Ridley. Joseph was also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Joseph said he was a roommate with Craig Ridley in K1 wing in cell 2112 before September of 2017. Joseph said he did not know or hear anything about how Ridley got hurt. Joseph said Ridley was healthy and he never heard of him complaining about any medical issues. Joseph said Ridley did complain about some of the corrections officers harassing him, but did not name any officers. Joseph said he never had a problem with any corrections officers. Joseph said the only recent inmate deaths he heard of was when an inmate committed suicide in Wing 3 and rumors of other inmates dying of K-2 Spice overdoses.

| Case Number: JA-37-0133 | Serial #: 38 |
|---|---|
| Author: Pierson, Daniel Eric | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Lou Joseph

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000072

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████
███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document interviews with inmates who may have information related to how Craig Ridley obtained the injuries that later caused his death.

FDLE Special Agents (SA) Lonnie Mills and Dan Pierson travelled to the Florida Department of Corrections Reception and Medical Center in Lake Butler, Florida on December 19, 2017 and conducted sworn interviews with inmates housed around or who may have had interactions with Craig Ridley. The following is a brief summary of that sworn interview. For a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item # 36.

SA Mills and SA Pierson interviewed Jonathan A Lulloff (DOC #V51697) about the death of Craig Ridley. During the interview Lulloff was informed that FDLE was investigating an inmate death. Lulloff was shown a color DOC picture of Ridley and asked how or if he knew Ridley. Lulloff was also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Lulloff said he was in K2 wing cell 216 in September of 2017. Lulloff said he did not know or hear anything about how Ridley got hurt. Lulloff said he heard about other deaths in K-Dorm. Lulloff said he heard some inmates were pepper spayed to death and others died from K-2 Spice. Lulloff did make the comment to the interviewers that the medical staff does not listen to the inmates' medical complaints.

| Case Number: JA-37-0133 | Serial #: 39 |
|---|---|
| Author: Pierson, Daniel Eric | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Jonathan Lulloff

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000073

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document interviews with inmates who may have information related to how Craig Ridley obtained the injuries that later caused his death.

FDLE Special Agents (SA) Lonnie Mills and Dan Pierson travelled to the Florida Department of Corrections Reception and Medical Center in Lake Butler, Florida on December 19, 2017 and conducted sworn interviews with inmates housed around or who may have had interactions with Craig Ridley. The following is a brief summary of that sworn interview. For a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item # 37.

SA Mills and SA Pierson interviewed inmate John Roca (DOC #V45606) about the death of Craig Ridley. During the interview Roca was informed that FDLE was investigating an inmate death. Roca was shown a color DOC picture of Ridley and asked how or if they knew Ridley. Roca was also told the time frame they might have had contact with Ridley was between September 8, 2017 and September 12, 2017 while he was housed in "K" dormitory.

Roca said he was in K2 wing in cell 2211 in September of 2017. Roca said he did not know or hear anything about how Ridley got hurt. Roca said he did not see Ridley interact with the corrections officers, but did see them once take him to the shower. Roca said the only thing he remembers about Ridley is he saw him in a ████████. Roca said he only later heard an inmate had died.

| Case Number: JA-37-0133 | Serial #: 40 |
|---|---|
| Author: Pierson, Daniel Eric | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate John Roca

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

Page : 1 of 1                    277620190211103248

PL000074

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Wilbert Bynes at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  1028 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Wilbert Bynes Jr., (DOC # 148915), at the RMC West. Bynes was housed in dorm "A 2" assigned to bunk 2143 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Bynes stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Bynes work assignment was in property (Transport and Receiving) from 5am until done. Bynes advised that he walks in a group to work while being escorted. Bynes heard that Ridley struck Sergeant Nettles, and then they beat him and placed him in confinement. Bynes also heard that they beat him over there (referring to confinement). Bynes stated that the incident supposedly occurred in the laundry room which has a camera. Bynes further stated that inmates generally are taken to the bathroom for counseling by Correctional Officers due to no cameras.

Bynes advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Bynes described Ridley as a humble guy and does not know what would make him act out. Bynes has known Ridley for over 3 years and has never known him to be violent.
Bynes was shown a picture of Ridley which he immediately recognized as Ridley. Bynes was shown photos of two Correctional Officers. Bynes recognized the photo of Sergeant Nettles but had nothing negative to say. Bynes also recognized Captain Jerrels but does not know him well.  Bynes advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-35.

| Case Number: JA-37-0133 | Serial #: 41 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Wilbert Bynes (DOC# 148915)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000075

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 41 |

277620190211103248

PL000076

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Howard Desue at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  0955 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Howard Desue Jr., (DOC # 473878), at the RMC West. Desue was housed in dorm "A 1" assigned to bunk 1125 lower. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Desue stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Desue's work assignment was in the kitchen from 7 am to 3 pm. Desue advised that he walks in a group to work while not being escorted.  Desue advised that he heard about the incident but had no knowledge of who was involved. Desue further stated he heard that Ridley got into altercation with an officer when they were getting ready to go to work , they retaliated against him, took him to confinement and no one heard from him since. Desue heard Ridley died from cancer and/or from an altercation with Officers.

Desue advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Ridley is known to get along with everybody. Desue advised that he has never been counseled by the Correctional Officers. Inmates are counseled by Officers in the dorm. Desue advised that he has never seen inmates counseled in other places but you hear things.

Desue was shown a picture of Ridley which he immediately recognized as Ridley. Desue was also shown photos of two Correctional Officers. Desue recognized the photo of Sergeant Nettles. Desue recognized Captain Jerrels as someone that comes by the dorm to do paperwork.   Desue advised that he had nothing else to add to the interview.

| Case Number: JA-37-0133 | Serial #: 42 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Howard Desue (DOC# 473878)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000077

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 42 |

A copy of the audio interview will be kept and maintained as related item INV-42.

277620190211103248

PL000078

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ██████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Erik Donald at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at approximately 1135 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Erik Donald (DOC # B01907), at RMC West. Donald was housed in dorm A assigned to bunk 2126 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Donald advised that on September 8, 2017 he was assigned to inside grounds crew. Donald advised that his hours were 0700-1200.

Donald was asked about the incident that occurred on September 8, 2017. Donald advised that he didn't see or hear the incident involving Ridley. Donald advised he was asleep when the incident occurred. Donald advised that he had heard Ridley and Sgt. Nettles had gotten into it in the laundry room. Donald advised that about two months ago he heard jail talk that "they killed Ridley". Donald advised that he heard he died of cancer and also heard they had been taking Ridley "out of the box and jumping on him and beating him up."

Donald advised that he had been at RMC since December 2015. Donald advised that he knew Ridley well and said Ridley knew his relatives in Chicago. Donald advised that Ridley was well liked and didn't have problems with other inmates. Donald advised that he has not seen Ridley have problems with correctional officers. Donald advised that Ridley was in good shape and played basketball and ran regularly.

Donald advised that he was aware of a run in that Ridley had with another correctional officer named Sgt. Young. Donald advised that Ridley and Sgt. Young got into an argument about

| Case Number: JA-37-0133 | Serial #: 43 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:interview of inmate Erik Donald (DOC# B01907)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000079

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 43 |

some property and Young had to show Ridley who he was talking too. Donald advised that Ridley ended up in confinement. Donald advised that Young would provoke altercations. Donald advised that Ridley had just gotten out of confinement three weeks prior to September 8, 2017.

Donald was shown a picture of correctional officers John Nettles and William Jerrels. Donald identified Nettles as Sgt. Nettles. Donald identified Jerrels as "The Captain". Donald described Nettles as not bad and someone who kept to himself. Donald advised that the captain was "something else" and he tried to stay as far away from him as he could. Donald advised that he had never seen Nettles or Jerrels have a problem with Ridley. Donald advised that he was surprised that Nettles got into it with Ridley because Nettles doesn't mess with anybody.

Donald advised that an inmate named Glover told him that Ridley had been shipped out of confinement. Donald advised that another inmate had someone on the outside check and advised that Ridley was listed as deceased.

A copy of the audio recording of interview will be kept and maintained as related item INV-40.

277620190211103248

PL000080

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CAPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document the interview of RMC Inmate Dorry McMeekin, DOC # V17341.

On January 4, 2018, at approximately 1215 hours, FDLE Special Agents Veronica Benson Edwards and Gregory Lee Holycross conducted an interview with McMeekin. The interview took place at RMC West Unit in the Classification Office. SA Edwards identified herself and SA Holycross and advised McMeekin the reason for the interview. McMeekin was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information McMeekin provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 117. McMeekin provided the following statement:

McMeekin is housed at RMC West Unit Dormitory A-1 bunk 104 upper and was assigned this bunk on September 8, 2017. He works in the food service area on the 1100 to 1900 hours shift. McMeekin was shown a color photograph of Ridley and was asked if he knew Ridley. McMeekin responded that he did not know Ridley and did not recall ever seeing him in the dormitory. He was unaware of any incident involving Ridley. McMeekin heard from other inmates that Ridley was beaten by correctional officers at the RMC Main Unit, not the West Unit, but he did not know the circumstances of the incident. McMeekin stated he stays to himself and does not get involved in any business of inmates or officers, and did not ask any questions of the other inmates when they were talking about the incident involving Ridley. McMeekin stated he did not know anything about inmates being taken to the barbershop area by officers and beaten. McMeekin had no other information to provide and the interview was concluded at 1222 hours.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 44 |
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Dorry McMeekin

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000081

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CAPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document an interview of inmate Ernest Barnwell, IV.

On January 4, 2018, at approximately 1121 hours, FDLE Special Agent Veronica Benson Edwards and Gregory Lee Holycross conducted an interview with Barnwell. The interview took place at RMC West Unit in the Classification Office. SA Edwards identified herself and SA Holycross and advised Barnwell the reason for the interview. Barnwell was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information Barnwell provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 131. Barnwell provided the following information:

Barnwell is housed at RMC West dormitory A-1 bunk 147 single. His DOC # is G19277. He has been in that assigned bunk since August 2017. Barnwell works food service second shift from 1100 hours through 1900 hours. He was shown a color photograph of Ridley and he stated he did not know his name, but has seen him around. He didn't know him and did not know if he was in dormitory A-1. Barnwell heard that Ridley left the dormitory and was fine and four days later the inmates were told he died of cancer. Ridley was physically fit and healthy. Barnwell does not believe he died of cancer, but was beaten by guards. Barnwell stated an unknown officer told the inmates that "you can be next, same thing that happened to that old man (Ridley) can happen to you".

Barnwell stated that inmates are beaten at the prison barbershop. Two or three weeks ago an inmate walked into the barbershop and after the officers beat him he left the barbershop by stretcher to an ambulance. A SGT. Haight, SGT Phelps and Officer Allen were seen coming out of the barbershop after the inmate was beaten. Barnwell stated he has seen SGT Haight strike

| Case Number: JA-37-0133 | Serial #: 45 |
|---|---|
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Ernest Barnwell

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000082

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 45 |

an inmate in the kitchen area and that Officer Young, a white male 6' 6", dark hair and glasses, has been seen beating handcuffed inmates. This happens where there are no cameras. Barnwell had no other information to provide and the interview was concluded ay 1140 hours.

PL000083

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CAPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document the interview of RMC inmate Jerry D Crankfield, DOC # 124935.

On January 4, 2018, at approximately 1019 hours, FDLE Special Agent Veronica Benson Edwards and Gregory Lee Holycross conducted an interview with Crankfield. The interview took place at RMC West Unit in the Classification office. SA Edwards identified herself and SA Holycross and advised Crankfield the reason for the interview. Crankfield was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information Crankfield provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 120. Crankfield provided the following information:

Crankfield is housed at RMC West Unit dormitory A-1 bunk 42 single and has been at that location for about one year. His current work assignment is the inside grounds maintenance. When he first arrived at West Unit he worked food service, but on September 2017 he was working inside grounds. Crankfield was shown a color photograph of Ridley and he identified the photograph as being Mr. Ridley, a no trouble inmate. He first heard of the incident involving Ridley on September 8, 2017, in the morning when he went outside to clean the inside grounds. Inmates were talking and told him that an inmate was beaten by officers outside dormitory A last night, but he did not know the name of the inmate. An inmate in B dormitory was looking out the window and saw officers beating an inmate outside of dormitory A. SGT Netteles was the dormitory SGT that night. Crankfield stated he did not see or hear the incident involving Ridley.

Crankfield stated that an inmate named Pierre was in the laundry room in line to go to Food Service and saw the beginning of the incident involving Ridley. The following day, SGT Nettles had a mark on his cheek and everyone said that was where Ridley struck Nettles. Crankfield did

| Case Number: JA-37-0133 | Serial #: 46 |
|---|---|
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview of Inmate Jerry Crankfield | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000084

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 46 |

not know what started the fight or why Ridley struck Nettles. He was unaware of any problems between Ridley and SGT Nettles, but said that the entire shift that works with SGT Nettles beat inmates. Two other SGTs that are involved in beatings are SGT. Scott and SGT. Guy, a female SGT.

Crankfield stated Ridley had been to the "box" (confinement) numerous times "because of his mouth", not for physical actions. Ridley frequently voiced his opinions about everything. Crankfield also stated that the barber shop is where the officers take inmates to beat them because there are no cameras there. This includes both the staff and inmate barber shops.

Crankfield stated he was talking with another inmate, he believed his name was Baker, who was also in confinement when Ridley was brought to confinement. Baker told Crankfield that the officers were moving Ridley's neck and telling Ridley that he was ok and was faking his injuries. Ridley was either on a stretcher or in a ███████ when this was happening. Baker thought Ridley was unconscious and was not moving. Crankfield believes this inmate in now working in maintenance. A check of DOC records reflect that Baker could be Antraveius Baker, DOC # V19634. This inmate was in confinement and was released on September 8, 2017, and is now working maintenance at RMC.

Crankfield had no other information to provide and the interview was concluded at 1041 hours.

277620190211103248

PL000085

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (Capt) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document an interview with inmate Marvin Eugene King, Jr.

On January 4, 2018, at approximately 1146 hours, FDLE Special Agent (SA) Gregory Lee Holycross and Veronica Benson Edwards conducted an interview with King. The interview took place at RMC West Unit in the Classification Office. SA Holycross identified himself and SA Edwards and advised King the reason for the interview. King was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information King provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 129. King provided the following information:

King is housed at RMC West Unit dormitory A-1 bunk 43 single. He has been in this bunk for over six months. His DOC # is AV 28234. His current work assignment is food service working from 0300 hours until 1100 hours. King was shown a color photograph of Ridley and identified him as "██████ or Craig Ridley". He stated his nickname as ██████ was because Ridley was very intelligent and informative on different subjects. King worked with Ridley in food service. King stated that each day at approximately 0200 hours the food service inmates were awakened by the dormitory officers to get ready for work. At 0245 all of the inmates line up in the laundry room and then are escorted to the "chow hall". On September 8, 2017, when King entered the laundry room to line up he saw Ridley walking out the rear door followed by a correctional officer he had not seen before. The officer was described as a heavy set white male wearing glasses. King assumed Ridley was going to medical for something and did not give it another thought. King did not hear or see anything involving Ridley and the officers after they went outside. King stated the other inmates that were in line were talking about Ridley and an officer talking about Ridley being on time for work. The officer made the remark that he would

| Case Number: JA-37-0133 | Serial #: 47 |
|---|---|
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Marvin King

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000086

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 47 |

have to get the inmates up earlier if they can't be on time, and Ridley told the officer the inmates were not late it was the officers. Ridley was then escorted outside.

King stated he did not believe Ridley would attack an officer and he had never seen Ridley violent with anyone, because Ridley was a debater, not a violent man. He stated Ridley was in very good physical condition because he worked out all of his spare time. King stated that inmate Timothy Lee Dallas or Jerry Pierre may have witnessed the incident because they were ahead of him in the line. Other inmates King knew only as "Jabo" and "Eos" may have witnessed the incident, but they were moved after the incident. Ridley was not back in the dormitory and didn't show up for work and all of the inmates were questioning where he was. A couple of days after the incident inmates from the main unit were talking about Ridley being injured badly and was wearing a neck brace. They were also talking about the officer that escorted Ridley out of the laundry room stating he had a scratch on his face from where Ridley hit him. A few days later the inmates heard that Ridley had died from his injuries and it was assumed that he was beaten by officers.

King said that after the first time FDLE Agents were at the prison questioning inmates about the incident involving Ridley, an officer made the statement "I have something for all you snitches". King stated a Correctional Sergeant he believed his last name was Bush came to the dormitory and told the inmates " son of bitches want to run your mouth, we got something for you snitches". King said Bush is not normally in that dormitory, but that he is heavy set white man who wears glasses. King said he is not usually one of the bad officers, but could be at times. King said that the officers take inmates to the barber shop to beat inmates because there are no cameras there. He said that Sgt Young, a white male and Sgt Haight, an older white male are always beating inmates. King had no other information to provide and the interview was concluded at 1209 hours.

277620190211103248

PL000087

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CAPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this Investigative Report is to document the interview of RMC inmate Timothy Lee Dallas.

On January 4, 2018, at approximately 1048 hours, FDLE Special Agents (SA) Gregory Lee Holycross and Veronica Benson Edwards conducted an interview with Dallas. The interview took place at RMC in the Classification room in the West Unit. SA Holycross identified himself and SA Edwards and advised Dallas the reason for the interview. Dallas was advised the interview would be a sworn recorded interview and he agreed to the interview and was placed under oath. The following narrative should not be considered to be a verbatim or all inclusive statement. This narrative serves only as an overview/synopsis of the information Dallas provided. For the complete interview see the Interview Preparation Statement Form and the Compact Disk recording of the interview which will be maintained in the case as Related Item INV # 118. Dallas provided the following information:

Dallas is housed in RMC dormitory A-1 bunk 19 lower and was in that bunk on September 8, 2017. Dallas was shown a color photograph of Ridley and asked if he knew Ridley. He responded that the photograph was Craig Ridley and that Dallas called him Mr. Ridley. He stated they were good friends and knew each other very well. Ridley was housed in A dormitory on side A-2. Dallas stated Ridley was his good friend in prison and that they talked each day and Ridley helped Dallas in the law library almost every day. Every day Ridley and Dallas did a weight workout together. Dallas said that Ridley also worked with him in food service. When questioned how the inmates got to food service he said the officers woke the inmates working food service up at 0200 to 0245 hours so they could get dressed. The inmates all lined up in the A dormitory laundry room and were escorted to food service. There were usually 18 to 20 inmates escorted to food service by officers. The escort depended on what officer was working that day.

On September 8, 2017, Dallas was walking to the laundry room to line up to go to work and was

| Case Number: JA-37-0133 | Serial #: 48 |
|---|---|
| Author: Holycross, Gregory Lee | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Timothy Dallas

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000088

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 48 |

told to go back to his bunk. He was told by other inmates that there was an incident with Ridley and Ridley was going to jail (confinement). Inmates told Dallas that Ridley and an officer got into a fight and Ridley struck an officer. Dallas did not believe Ridley would strike an officer, but would instead have a verbal altercation with the officer. According to other inmates Ridley was taken outside by the laundry room door and that is where the incident took place. When questioned about the location Dallas stated outside the laundry room there are no cameras and it is a blind spot where officers can do what they want to inmates and not be caught on camera. He stated when he first arrived at RMC he was told by officers that they can manipulate the cameras to make a blind sport and do whatever they want to do to inmates. The inmates told Ridley SGT Nettles was the dormitory SGT and he was the officer Ridley had the altercation with. Dallas stated that night the prison was short of staff and SGT Nettles was the only officer in the dormitory. Dallas stated he did not hear or see the incident involving Ridley and he did not see Ridley being taken outside; that apparently happened before he arrived for the line-up to go to food service.

Dallas stated Ridley was a very debating person and would stand up for himself, but he was not violent or physical. Dallas never saw Ridley use violence or become physical with anyone. Dallas stated inmates were talking and saying that SGT Nettles pushed Ridley and Ridley struck SGT Nettles on the face. Dallas did not remember which inmates made this statement. Dallas stated that if something happened in a blind spot it would be the officer's word against the inmates word and the officer would always be found right. Dallas stated he has seen numerous inmates hit and beaten by officers in the bathrooms and the barbershop area. He said the staff and inmate barbershops are where the officers take inmates to beat them because there are no cameras.

After about a week, questions were being raised about when Ridley was going to return to the dormitory and food service. Dallas stated an officer told the inmates that Ridley had died in the main unit from cancer. Dallas stated Ridley was very healthy and had never made any remarks about having cancer. Dallas believes Ridley died from a beating he received as retaliation or for something else that happened when Ridley was in K dormitory. Dallas was questioned about officers that have beaten inmates and he responded that SGT Young, a white male, and SGT Haight, an older officer, Officer Phillips and Officer Osteen are officers that beat inmates. (SGT Haight may be Vincent Haight.) Dallas did not know any of the first names of the officers.

Dallas had no other information to provide and the interview was concluded at 1115 hours.

277620190211103248

PL000089

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Christopher Kimmel at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at 1108 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Christopher Kimmel, (DOC #T90850), at the RMC West. Kimmel was housed in dorm "A 2" assigned to bunk 2122 lower. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Kimmel stated that he had no personal knowledge of the incident which occurred on September 8, 2017. Kimmel's work assignment was in the dental clinic from 730 am till 330 pm. Kimmel advised that he walks in a group to work while not being escorted. Kimmel advised he heard of the incident were Ridley was beaten up. No one told Kimmel they observed the incident. Kimmel described the incident conversation as dorm talk. Kimmel advised that the next thing he heard Ridley was dead. Kimmel stated "rumor going around is that Ridley died of cancer".

Kimmel advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Kimmel described Ridley as a person that played chess, kept to himself and worked out.

Kimmel was shown a picture of Ridley which he immediately recognized as Ridley. Kimmel was shown photos of two Correctional Officers whom he did not recognize. Kimmel advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-44.

| Case Number: JA-37-0133 | Serial #: 49 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:interview of inmate Christopher Kimmel (DOC#T90850)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000090

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Charles Kusiak at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at 1153 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Charles Kusiak, (DOC # 135481), at the RMC West. Kusiak was housed in dorm "A 2" assigned to bunk 2141 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Kusiak stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Kusiak's work assignment was in classification from 8 am till 4 pm. Kusiak advised that he walks to work while not being escorted. Kusiak heard that Ridley threw a punch at an officer and presumed that he went to confinement.

Kusiak advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Kusiak stated that he does not Ridley very well but would always see him playing chess.

Kusiak was shown a picture of Ridley which he immediately recognized as Ridley. Kusiak was shown photos of two Correctional Officers. Kusiak recognized the photo of Sergeant Nettles but had nothing negative to say. Kusiak also recognized Captain Jerrels but does not know him well. Kusiak advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-45.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 50 |
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Charles Kusiak (DOC# 135481)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000091

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ███████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Edward Melendez at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at 1009 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Edward Melendez,(DOC # R46416), at the RMC West. Melendez was housed in dorm "A 1" assigned to bunk 1130 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Melendez stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Melendez' work assignment was in the kitchen from 11am till 10 pm. Melendez advised that he walks in a group to work while not being escorted. Melendez advised "God rest his soul" but it has nothing to do with him. Melendez further stated that he does not know who was involved in the incident just that someone died.

Melendez advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Melendez described Ridley as a very hard worker. Melendez stated he has never seen Officers take inmates out in the middle of the night because that would be the talk of the town. Melendez advised that he has seen inmates be taken to the barber shop for beatings. "Height, Young, all of them, those are the people you try to avoid on this campus."

Melendez was shown photos of two Correctional Officers. Melendez recognized the photo of Sergeant Nettles but had nothing negative to say. Melendez also recognized Captain Jerrels. Melendez stated that Captain Jerrels, Sergeant Young and Height peppered sprayed Inmate Loncala (DOC # V21575) twice and beat him down in front of everybody. The incident happened in the kitchen over Inmate Loncala giving out extra chicken. Inmate Loncala was placed in confinement over the incident. Melendez advised he got in trouble that day also but

| Case Number: JA-37-0133 | Serial #: 51 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Edward Melendez (DOC#R46416)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000092

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 51 |

believes the Officers did not get physical due to being a minority. Melendez advised that there are no cameras in the kitchen area. Melendez advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-46.

PL000093

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Paige Minney at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  1050 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Paige Minney (DOC # V19517), at the RMC West. Minney was housed in dorm A assigned to bunk 2104 lower. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Minney advised that Ridley slept in a bunk directly next to his.  Minney advised that he was assigned to food services at the time of the Ridley incident.  Minney advised that he worked the afternoon shift and he went to work at 1000 hours and usually worked to 1900 hours.
Minney advised that he has been incarcerated at RMC for the past 8 months.   Minney advised that he has known Ridley since he was incarcerated.  Minney described Ridley as a quiet old man.  Minney advised that Ridley didn't mess with anybody and played a lot of chess.  Minney advised that Ridley told him he would cuss out the correctional officers when they pissed him off.  Minney advised he never actually saw Ridley do it.  Minney advised that he had never seen Ridley get violent.

Minney advised that on September 8, 2017 he was awoken and heard a commotion between Ridley and some correctional officers. Minney advised he overheard the correctional officers tapping on Ridley's bunk and telling him to get up.  Minney advised he overheard Ridley complaining that it was day off and heard Ridley refusing to get out of his bunk. Minney advised he then heard the correctional officers giving Ridley an ultimatum to get up or go to "jail". Minney advised that "jail" was a term the correctional officers used for confinement cells. Minney advised he then heard the correctional officers packing up Ridley's "stuff" and then took Ridley to the "box".  Minney advised that the correctional officers put handcuffs on Ridley.

| Case Number: JA-37-0133 | Serial #: 52 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Paige Minney (DOC# V19517)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000094

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 52 |

Minney advised that he did not see it but heard the "clinking" of handcuffs.  Minney advised he only overheard what was happening and did not actually see the incident.  Minney advised that he had pulled his blanket over his head.

Minney shown a picture of correctional officers John Nettles and William Jerrels.  Minney advised that he recognized both correctional officers but did know eithers name.

Minney advised that he had heard that on the night of the incident that Ridley got his ass beat and was sprayed.  Minney advised he did not know what happened to Ridley after that day but sometime later he had heard talk that Ridley had died from Cancer and also heard he had died from a broken neck.

Minney advised that RMC is known for being rough on inmates.  Minney advised that inmates are often taken to the Barber Shop to receive discipline.   Minney advised that the correctional officers would take inmates where no cameras were located.

A copy of the audio recording of interview will be kept and maintained as related item INV-47.

277620190211103248

PL000095

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of George Sullivan at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at 1233 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, George Sullivan, (DOC # 134733), at the RMC West. Sullivan was housed in dorm "A 2" assigned to bunk 2116 lower. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Sullivan stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Sullivan's work assignment was in the canteen from 8am till 6pm. Sullivan advised that he walks to work by himself. Sullivan advised he heard rumors across the compound. Sullivan advised Sergeant Nettles and Ridley had an incident inside the laundry room. Sullivan stated rumor has it that they took him outside and "beat the shit out of him." Sullivan advised that he does not know if anyone in the dorm witnessed the incident. Sullivan advised that inmate Jason Baker (A1 #1124 single) was in confinement at the same time as Ridley. Sullivan heard from Baker, that Ridley was complaining of neck problems and some other inmate was giving him a neck massage.

Sullivan advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Sullivan advised Ridley was always on his bunk or playing chess. Everyone was shocked when they heard what happened. Sullivan advised that Ridley was sent to confinement over a previous incident with Sergeant Young. Sullivan acknowledged that Sergeant Young would be an officer to stay away from if you're an inmate.

Sullivan was shown a picture of Ridley which he immediately recognized as Ridley. Sullivan was shown photos of two Correctional Officers. Sullivan recognized the photo of Sergeant

| Case Number: JA-37-0133 | Serial #: 53 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate George Sullivan (DOC#134733)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000096

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 53 |

Nettles but had nothing negative to say. Sullivan also recognized Captain Jerrels but had nothing negative to say about him either.  Sullivan advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-48.

PL000097

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████████ ██████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Rudolph Andrews.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL.  The interviews were conducted with inmates that had been housed in A Dorm.  The interviews were recorded using a digital recording device.

At 1210 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Rudolph Andrews.  Inmate Andrews was sworn in at the beginning of the interview and provided the following information:

- Inmate Andrews was assigned to A Dorm (A2) in bunk 2101 single and had been in that bunk for several years.
- SA Graff provided Inmate Andrews with an unlabeled photograph of Inmate Craig Ridley. Inmate Andrews identified Inmate Ridley from the photograph, advising that they had been in A Dorm together.
- Inmate Andrews was assigned to the library for his work assignment.
- Inmate Andrews was unsure what happened to Inmate Ridley. Inmate Ridley had left the dorm and not returned. Inmate Andrews had heard rumors indicating that Ridley had been beaten by the guards and sent to medical. Inmate Andrews was asleep the night of the incident and felt that it had not occurred within the dorm.
- Inmate Ridley was a mild mannered, laid back person. Inmate Andrews believed Inmate Ridley to be a non-violent person, who would not have swung on anyone without reason.
- SA Graff provided Inmate Andrews with an unlabeled photograph of Captain William Jerrels. Inmate Andrews did not know Captain Jerrels.
- SA Graff provided Inmate Andrews with an unlabeled photograph of Sergeant John Nettles. Inmate Andrews advised he had seen Sgt. Nettles, however he did not know his

| Case Number: JA-37-0133 | Serial #: 54 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded Interview with Inmate Rudolph Andrews (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000098

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 54 |

name. Inmate Andrews did not have any issues with Sgt. Nettles and did not know about Sgt. Nettles' personality.

Inmate Andrews was unable to provide any further information.

The recording of the interview was electronically attached to this report as related item INV-49.

PL000099

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonvile, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Daniel Swafford at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  1206 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Daniel Swafford, (DOC # 132760), at the RMC West. Swafford was housed in dorm "A 2" assigned to bunk 2108 upper. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Swafford stated that he had no personal knowledge of the incident which occurred on September 8, 2017. At that time, Swafford's work assignment was in the kitchen from 11am till 7pm. Swafford advised that he walks in a group to work while not being escorted. Swafford advised he was in the bathroom smoking a cigarette that morning. Upon returning to his bunk, Swafford observed other inmates looking through the officer's station into the laundry room. Swafford asked other inmates "Damn what happened?" Inmates advised "officers done jumped on somebody." Swafford replied "Who?" Inmates stated the old man referring to Ridley. Swafford was advised by inmates that Ridley swung on the officer. Swafford stated "not Mr. Ridley." Swafford further reported that he observed the officers escorting Ridley down the sidewalk in a wheel chair.

Swafford advised that the area near the exit door leading from the laundry room cannot be viewed by the camera.  Also according to Swafford, the area right outside the laundry room exit door cannot be viewed by cameras either. Swafford stated the officers take you to the Barber Shop to beat you due to no cameras. Swafford advised he was taken to the barber shop by five officers in the past and beaten. Swafford stated he had visitation that day and has pictures of the incident.

| Case Number: JA-37-0133 | Serial #: 55 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Daniel Swafford (DOC# 132760)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000100

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 55 |

Swafford advised that he has never known Ridley to be physical with Correctional Officers or other inmates. Swafford described Ridley as a "good dude." Ridley would work out on the track every day and read. Sergeant Young sent Ridley to confinement over disrespect for a previous incident.

Swafford advised that Michael Glover (DOC # 108740) and Gillis Tillis (DOC# J46258) were in confinement at the same time as Ridley after September 8, 2017. Both inmates advised Swafford that Ridley died over a broken neck and internal bleeding. Swafford advised that Ridley was involved in another incident while in confinement. Both Tillis and Glover advised Swafford the officers beat Ridley while he was in confinement.  Tillis advised that the officers were slapping Ridley and telling him to get up. Tillis has been released from FDC custody and Glover has been placed back in confinement as of this interview.

Swafford was shown a picture of Ridley which he immediately recognized as Ridley. Swafford was shown photos of two Correctional Officers. Swafford recognized the photo of Sergeant Nettles but does not think he had anything to do with the incident. Swafford also recognized Captain Jerrels and advised that he is nasty. On the day of this interview, Swafford advised that Sergeant Bush was in charge of Alpha dorm. Swafford stated Sergeant Bush was advising inmates that are snitching, "he would put his hands on them personally." Swafford advised that he had nothing else to add to the interview.

A copy of the audio interview will be kept and maintained as related item INV-50.

PL000101

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Dwight Daniels.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

At 1152 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Dwight Daniels. Inmate Daniels was sworn in at the beginning of the interview and provided the following information:

- Inmate Daniels was assigned to A Dorm (A2) in bunk 23 lower for the past two years.
- SA Graff provided Inmate Daniels with an unlabeled photograph of Inmate Craig Ridley. Inmate Daniels identified Inmate Ridley from the photograph, advising that they had been in A Dorm together for several years.
- Inmate Daniels was assigned dorm houseman and as a barber for his work assignment. Inmate Daniels did not wake up with the inmates working the early shift for food service.
- On the date of this incident, Inmate Daniels woke up at about 0345 hours to Inmate Ridley screaming. Inmate Ridley was being taken out the back door of the dorm in a ████████. Inmate Ridley was described as looking lifeless in the ████████. When the officers saw inmates looking out the dorm windows, the inmates were ordered to get on their bunks and face the wall.
- Inmate Daniels advised that the incident happened inside the laundry room of the dorm. Being the houseman, Inmate Daniels had to clean up the laundry room. Inmate Daniels described the laundry room as being in disarray with boot scuffmarks on the floor and walls.
- The officers involved with the incident were Sgt. John Nettles, a captain, and a red-headed

| Case Number: JA-37-0133 | Serial #: 56 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded interview with Inmate Dwight Daniels (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000102

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 56         |

male sergeant from the RMC Main Unit.

- SA Graff provided Inmate Daniels with an unlabeled photograph of Captain Jerrels. Inmate Daniels identified Capt. Jerrels as the captain involved in the incident.
- SA Graff provided Inmate Daniels with an unlabeled photograph of Sergeant Nettles. Inmate Daniels identified Sgt. Nettles as one of the officers beating Inmate Ridley. Inmate Daniels advised that he did not think Sgt. Nettles was the type of officer to beat an inmate.
- Inmate Daniels was later told by the guards that Inmate Ridley had been smoking "touchie". Inmate Daniels stated that Inmate Ridley did not smoke and regularly excercised in the yard. A week after the incident, Sgt. Worthington informed Inmate Daniels that Inmate Ridley had died.
- Inmate Daniels stated that inmates were afraid to talk to anyone about their treatment at the prison for fear of reprisal. Grievances made against officers, by inmates, were given to the suspect officers to handle. Inmates were then sprayed, beaten, and taken to confinement.
- The prison camera system had many blind spots, with one of those being at the barber shop. Guards regularly took inmates to that area to beat them. Per Inmate Daniels, a white inmate was badly beaten by the barber shop the day prior to this interview.

Inmate Daniels did not provide any further information.

The recording of the interview was electronically attached to this report as related item INV-51.

PL000103

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Main inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the following interview of Mike Zontonio at Regional Medical Center- West Unit.

On Tuesday, December 19, 2017, at  approximately 1120 hours, Special Agent Richard Hughey and Special Agent Charles Bates conducted a sworn digitally recorded interview of FDC inmate, Mike Zontonio (DOC # 377877), at RMC West. Zontonio was housed in dorm A assigned to bunk 2129 single. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Zontonio advised that on September 8, 2017 he was assigned to the laundry crew.  Zontonio advised that his hours were 0800-1600.

Zontonio was asked about the incident that occurred on September 8, 2017.  Zontonio advised that he knew nothing personally about the incident involving Ridley.  Zontonio advised that he slept in the same dorm as Ridley but did not see anything happen that day.

Zontonio advised he had known Ridley since he (Zontonio) had been incarcerated at RMC.  Zontonio advised that he had been at RMC since 2010.  Zontonio advised that he knew Ridley well and they played chess together every day.

Zontonio described Ridley as a laid back guy who liked to play chess. Zontonio advised that Ridley was in good shape for his age and worked out regularly.  Zontonio advised that Ridley got along well with other inmates.  Zontonio advised that he had never seen Ridley get in an altercation with the correctional officers but advised he had seen Ridley be harassed.  Zontonio advised he had seen the correctional officers make Ridley work on his day off.  Zontonio advised that Ridley would argue with the correctional officers about work days.  Zontonio advised that he had never seen Ridley get violent.

| Case Number: JA-37-0133 | Serial #: 57 |
|---|---|
| Author: Hughey, Richard Cale | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Mike Zontonio (DOC# 377877)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000104

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 57 |

Zontonio advised that he had heard multiple stories about Ridley including that he he had died of cancer and had been beaten to death. Zontonio advised that he has not talked to anyone that said they had personally seen what had happened to Ridley.

Zontonio was shown a picture of correctional officers John Nettles and William Jerrels. Zontonio identified both correctional officers by name.  Zontonio advised Nettles was a quiet guy.  Zontonio advised that he had never seen Nettles get violent with an inmate. Zontonio advised that Nettles had been working their dorm for about three weeks prior to September 8, 2017.  Zontonio advised that neither Nettles nor Jerrels are known as being heavy handed with inmates.

Zontonio advised that the correctional officers take inmates in the Barber Shop or Captains Office for discipline.  Zontonio advised that there were no cameras in the Barber Shop or Captains Office.  Zontonio advised that Ridley told him he had been taken to the Barber Shop before,  Zontonio advised that he had never personally seen Ridley taken to the Barber Shop. Zontonio advised that the inmates referred to the Barber Shop as the "understanding room" but the understanding only went one way. Zontonio implied that inmates were physically beaten in the Barber Shop.

Zontonio advised that in his experience inmates are handcuffed as soon as they are told they are going to confinement.

A copy of the audio recording of interview will be kept and maintained as related item INV- 52.

PL000105

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ▮▮▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Brian Leonard, DC Number X56571.

On Thursday, January 11, 2018, at 0837 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Leonard at Gulf Correctional Institution. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-53.

Leonard provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 115 at the RMC Main Unit during the time Ridley was housed in K Dorm.

SA Meacham asked Leonard if he recalled anyone coming into the dorm that appeared to be injured. Leonard advised he did not. Leonard was asked if he recalled anyone coming into the dorm in a ▮▮▮▮▮▮ or using a walker. Leonard advised he did not.

Leonard provided no substantive information regarding this investigation.

At 0842 hours the interview was concluded.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 58 |
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- Brian Leonard DC#X56571 (K-Dorm) | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000106

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Raymond L Martinez, DC Number Y24021.

On Thursday, January 11, 2018, at 0846 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Martinez at Gulf Correctional Institution. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-54.

Martinez provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 113 at the RMC Main Unit during the time Ridley was housed in K Dorm.

SA Meacham asked Martinez if he recalled anyone coming into the dorm that appeared to be injured. Martinez advised a lot of people were injured. Martinez was then asked specifically if he observed someone come into the dorm in a ███████. Martinez did not provide any specific information regarding anyone who was in a ███████. When asked again about someone being in a ████████ in a cell across from and to the left of his own cell, Martinez stated he did remember a Hispanic male in cell 2107 or 2108 and a second inmate in a ████████ further down. Martinez advised the second person was a ████ male because he recalled the guards wheeling him in and out of the cell "to the shower and what not." Martinez further advised he didn't spend much time "on the door" (meaning looking out the window of the door of his cell). When asked if he heard any rumors about someone being paralyzed, Martinez said there were always rumors going around about someone being injured. Martinez could not provide any other information.

Martinez was asked specifically about his treatment by the guards. Martinez advised guards were not any different than police officers. Some were good, some were bad. Martinez made no other statements regarding the guards.

| Case Number: JA-37-0133 | Serial #: 59 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Raymond Martinez (DC #Y24021) K-Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000107

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 59 |

At 0854 hours the interview was concluded.

277620190211103248

PL000108

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████ ██████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Antoni Cheaves, DC Number 074538.

On Thursday, January 11, 2018, at 0857 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Cheaves at Gulf Correctional Institution. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-55.

Cheaves provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 117 at the RMC Main Unit during the time Ridley was housed in K Dorm.

SA Meacham asked Cheaves if he recalled seeing an inmate in the dorm that was paralyzed. Cheaves said he did not. When asked if he recalled anyone coming into the dorm area with a walker or in a ██████████, Cheaves advised he recalled several people with walkers.

When asked if he recalled anyone across from his cell in a ██████████, Cheaves advised there was a guy across from him who was "going off all the time and kicking the doors" that the guards kept spraying. Cheaves advised he remembered the inmate was moved from the cell and a person in a ██████████ was then placed into the same cell. Cheaves could provide no other information.

When asked if he had any problems other than what he had just been asked about, Cheaves advised he had an incident in RMC West where he was jumped by three gang members and he was sent to confinement after the incident. Cheaves stated correctional officer Piler (no other information) had the three inmates pack up his personal items, at which time they took all of his property. Cheaves advised this incident occurred on August 22, 2017 in Dorm D-1; and should have been captured on video. Cheaves stated he filed a grievance regarding this incident and

| Case Number: JA-37-0133 | Serial #: 60 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Antoni Cheaves (DC #074538) K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000109

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 60 |

had no other information.

At 0903 hours the interview was concluded.

277620190211103248

PL000110

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels.  On ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████████████ ████████████████████████████████████████████████████████.  Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the interview of inmate Daniel Solomon, DC Number 141462.

On Thursday, January 11, 2018, at 1210 hours, SA Meacham and SA Maurer conducted a digitally recorded interview of FDC inmate Solomon at Franklin Correctional Institution.  The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-56.

Solomon provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 213 at the RMC Main Unit during the time Ridley was housed in K Dorm.  Specifically, Turner was asked if he recalled anyone being severely injured.  Solomon recalled one inamte getting beaten so badly half his body was paralyzed.  Solomon said he saw the inmate being walked into the wing, at which time he was handcuffed.  Solomon advised later that night he heard the inmate screaming.  Solomon advised he then saw officers leave his cell.  Solomon stated several days after the incident he saw the inmate taken out of the cell in a ████████.

SA Meacham asked Solomon if he recalled anyone coming into the dorm using a walker or a ████████.  Solomon he saw a Hispanic male and a ████ male who were transported into and out of the dorm in ████████.  When asked specifically about the ████ male, Solomon stated, "I really can't remember", before saying the man's cell was near the shower.  Solomon stated at this time he was housed on the second tier and the ████ male's cell was located on the first floor on the same side.  Solomon explained he could only see cells across from his, not on the same side.

Solomon was asked if he heard any rumors about someone being brought into the dorm that was already paralyzed.  Solomon stated, "Just that one guy."  Solomon stated the male he had

| Case Number: JA-37-0133 | Serial #: 61 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Daniel Solomon (DC #141462) K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000111

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 61 |

previously spoken of was left on the floor for three days before receiving medical treatment. Solomon explained he received this information from the "runarounds" (indicating the tustees).

Solomon was asked if he knew anyone who went by the name, "Zoe". Solomon stated the guy he said was beaten was named "Zoe." Solomon stated after the beating, "Zoe" was later placed in a cell next to him on the second tier as he was recovering. Solomon did not know "Zoe's" name, but he believed he came from Belle Glade, was serving time for Robbery, and had since been released from prison. Solomon later advised "Zoe" was Haitian and had gold teeth and an accent. He advised another possible nickname for "Zoe" was "Haitian 2 Pac."

Solomon was asked about his knowledge of any cell phones being passed around in K Dorm. Solomon initially advised he didn't know of any phones being passed around. Solomon later advised "Zoe" was in confinement for something to do with a cell phone or cigarettes. He then remembered "Zoe" had previously been an orderly at RMC. Solomon stated "Zoe" said he got caught with something by the guards and that led to his confinement.

Solomon then said if he was being honest with us, we should know that he would never provide any information about the source of a cell phone in the prison to us because that was his lifeline to the outside world.

Solomon explained that the person we were trying to identify was housed in the cell next to him at some point when Solomon was housed alone in the cell. Solomon stated he was in confinement for approximately 60 days and that he was alone in the cell three times during that time.

Solomon was asked if he knew which guards were involved in the incident. Solomon said he didn't know.

Solomon then remembered a Lieutenant Livingston was one of the guards who put his hands on "Zoe" along with a red haired Sergeant named Lewis. Solomon stated the guards loved to put their hands on the inmates. Solomon then advised one of the guards would "sauce your food" and explained that meant the guard would spit tobacco in the inmate's food. He said this would happen if you asked for a request slip or medication. Solomon tentatively identified this guard by photograph (Officer Mallard? No other information).

Solomon was asked if the guards he was identifying worked the same shift. Solomon advised the officers did work together and he referred to them as "The Four Horsemen." Solomon again gave the following names as members of the Four Horsemen: Lieutenant Livingston, Sergeant Lewis, the officer who sauced their food (Officer Mallard).

Solomon went on to state, "Medical was down with that shit too. Medical would hide that shit." When asked if he was referring to all of the medical staff or only certain members, Solomon could not give an answer.

At 1238 hours the interview was concluded.

277620190211103248

PL000112

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridleywas the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Robert J Turner, DC Number J38638.

On Thursday, January 11, 2018, at 1535 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Turner at Taylor Correctional Institution. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-57.

Turner provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 104 and 117 at the RMC Main Unit during the time Ridley was housed in K Dorm. Specifically, Turner was asked if he recalled being in the dorm at the same time the hurricane was impacting the area. Turner stated he was in confinement at that time.

SA Meacham asked Turner if he recalled anyone coming into the dorm using a walker or a ███████████. Turner advised he saw several older males coming into the dorm using a walker. Additionally, Turner advised there was a Hispanic male who was transported into and out of the dorm in a ███████████.

Turner was asked about anyone in the dorm with the nickname of "Zoe". Turner advised there were a lot of guys who went by "Zoe" in the prison, but he didn't know too many of them. Turner was asked who else he observed in a ███████████. Turner stated there was an ███████████ ███████████ male and an older white male who were in ███████████. Additionally, Turner advised people who were "sprayed" (OC spray) by the guards were often transported by ███████████.

When asked specifically about a ████ male in a ███████████ being in cell 2108, Turner took several seconds to think about the question before asking if we were asking about a short ████

| Case Number: JA-37-0133 | Serial #: 62 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- Robert Turner (DC #J38638) K Dorm | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000113

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 62 |

male with gold teeth.  Turner was not able to provide any other information about a subject in a █████████.

Turner was asked if he recalled any other inmates being upset over an inmate who was paralyzed.  Turner only advised he recalled the Hispanic inmate in a wheelchair being pushed into the cell by the guards.  Turner advised he did not see the inmate and he did not see the guards do anything to the inmate, only that other inmates told him about the inmate's condition.  Turner then recalled the inmate went by the name "Machete."

Turner had no other information.

At 1544 hours the interview was concluded.

277620190211103248

PL000114

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Trevor Jackson, DC Number T86699.

On Thursday, January 11, 2018, at 1557 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Jackson at Taylor Correctional Institution Annex. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-58.

Jackson provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 215 at the RMC Main Unit during the time Ridley was housed in K Dorm. Specifically, Jackson was asked if he recalled being in the dorm at the same time the hurricane was impacting the area. Jackson advised he was in confinement at that time.

SA Meacham asked Jackson if he recalled any talk about someone being in the dorm who was severely hurt and the guards were ignoring him. Jackson advised he witnessed an inmate named Omar who was brought in by the guards, at which time he was handcuffed with his hands behind his back (with a belt around his waist). Once Omar was placed in the cell a very large Captain (unknown name) pulled the belt through the flap and pulled all his weight on the belt jerking Omar up against the door causing Omar to scream. Jackson later stated this incident was likely in response to Omar being given a Disciplinary Report (DR) for a Lewd and Lascivious incident in the compound.

Jackson was asked which guards were involved in the incident. Jackson advised Lieutenant Livingston (no other information), Captain Thornton (no other information), and Sergeant Lewis (no other information). Jackson could not provide any other possible names of the other guards present.

| Case Number: JA-37-0133 | Serial #: 63 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- Trevor Jackson (DC #T86699) K Dorm | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000115

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 63 |

Jackson then advised he had also been assaulted by several of the guards while at RMC. Jackson specifically stated he was jumped by "Officer Mallard, Officer Graham, Sergeant Smith, and the other Sergeant Smith."  When asked if he was assaulted while he was in confinement, Jackson stated he was released from confinement and was assaulted just outside the door to K Dorm where there were no cameras.  The guards then called the incident a Use of Force by Jackson.  Jackson advised his whole face was swollen as a result of the incident.  Jackson advised his parents were aware of the incident and had already contacted FDLE about it.

Jackson was asked if all of the guards were involved in the incidents or if there was a specific shift or group of guards that were involved in the incidents.  Jackson stated the guards he named were the ones involved and that they all work the same shift.

Jackson was asked if he saw anyone come into the dorm in a ████████.  Jackson said there were several inmates who came into the dorm in a ████████.  Jackson also stated there was a time when he heard, but did not see, an inmate screaming for medical after he was dumped out of his ████████.

Jackson was asked if he heard anyone talking about someone being paralyzed.  Jackson stated he heard about an inmate who may have had a seizure and fell on the floor.  Jackson stated the guards told the inmate's cellmate to pick him up and put him on the bed at which time the cellmate refused and the guards entered the cell.

Jackson was asked about the inmates receiving medical treatment if they were injured.  Jackson stated the guards will not let the inmates go to medical if the injury was caused by the guards.  Jackson was asked if any of the inmates were able to contact someone outside the prison by phone or if anyone photographed his injuries.  Jackson said he didn't have his cell phone (it had been confiscated) and none of the inmates had a phone to take pictures of his injuries nor were they able to contact anyone.

Jackson was asked if he knew anyone named "Zoe."  Jackson advised all of the Haitians were known as "Zoe."  Jackson was asked specifically if there was anyone going by "Zoe" who had ██ teeth and was in confinement with him.  Jackson advised there were several people known as Zo in confinement including:

Haitian Mo or Haitian Zo (2218, then 2216) - had ███ teeth
Baby Zo (2214)
Hollywood (2212 top) - had ███ teeth, from Hollywood, Florida

Jackson had no other information.

At 1610 hours the interview was concluded.

PL000116

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▇▇▇▇▇▇▇▇▇▇, Ridley died while being treated at ▇▇▇▇▇▇▇▇▇▇▇▇▇ in Jacksonville, Florida. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Roosevelt B. Shelby DC# W23520.

On January 10, 2018, at 1534 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Shelby at Jackson Correctional Institute in Malone, Florida. SA Maurer and SA Meacham identified themselves and advised Inmate Shelby the interview would be a sworn voluntary statement. Inmate Shelby understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-60, in the case file:

Inmate Shelby was housed in Kilo dormitory while at RMC Main unit in September 2017, He could not remember the cell number he was in but stated it was on the bottom floor of Kilo wing two. SA Maurer asked if he was in K2116, but Inmate Shelby said he could not remember. SA Meacham showed him a photograph of Inmate Ridley and Inmate Shelby said that was the guy across the hall from him and he was paralyzed. Inmate Shelby did not know Inmate Ridley, but heard he got beat up by some guards and was paralyzed after. He saw Inmate Ridley being brought into Kilo dormitory and he was placed in a cell directly across from his cell. The guards wheeled him into the cell lifted him out of the ▇▇▇▇▇▇▇ and put him on the lower bunk. He said Inmate Ridley stayed in the same position for several days and never moved. The guards put food on the flap of the door but Inmate Ridley never ate anything during the time he was in the cell. Other inmates vocalized their concerns regarding Inmate Ridley's condition and the guards told the other inmates, Inmate Ridley was fine and not to worry about him. Inmate Shelby said none of the medical staff checked on Inmate Ridley while in Kilo dormitory as well. After several days the guards came in and put Inmate Ridley in a ▇▇▇▇▇▇▇ and took him out of Kilo dormitory. Inmate Shelby never saw him again.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 64 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/10/2018 | Activity End Date:01/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Roosevelt Shelby DC#W23520 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000117

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 64 |

Inmate Shelby could not remember the names of the guards who dealt with Inmate Ridley but stated the lieutenants and sergeants in Kilo dormitory are all rough on inmates.  SA Maurer asked if Inmate Shelby passed a cell phone to another inmate to try and call someone on the outside and tell them about Inmate Ridley.  He said he did not have a cell phone, but if he did he would have called his people about Inmate Ridley's situation.

The interview of Inmate Shelby concluded at 1555 hours.

277620190211103248

PL000118

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate George Shaw DC# 489596.

On January 10, 2018, at 1421 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Shaw at Apalachee East Unit in Sneads, Florida. SA Maurer and SA Meacham identified themselves and advised Inmate Shaw the interview would be a sworn voluntary statement. Inmate Shaw understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-61, in the case file:

Inmate Shaw was at RMC Main unit in September 2017. He remembered the cell number he was in to be K2213. He said it was on the second floor back to the right of the stair case. SA Meacham showed him a photograph of Inmate Ridley and Inmate Shaw remembered the inmate. Inmate Shaw did not know Inmate Ridley, but heard he got beat up by some guards and was paralyzed after. He was able to see cell 2108 but could not see inside. He did not know who the guard were that got into the altercation with Inmate Ridley. He was under the impression Lieutenant Jason Livingston was somehow involved but could not be sure. He said he saw Inmate Ridley being brought in by ▮▮▮▮▮▮ and placed in 2108. He was left in the cell for several days without medical care and did not eat. The nurse who is normally in confinement made her rounds every day and never stopped at Inmate Ridley's cell. Inmate Shaw stated if she is accompanied by a supervisor something is going on that the guards don't want her to see but if a guard is with her she stops at every door. During the time Inmate Ridley was in confinement she was always with a supervisor. After a few days a different nurse (that normally works the medication window) made the rounds and stopped at Inmate Ridley's cell. He was wheeled out of confinement that morning and he never saw him again. Inmate Shaw did not know the names of the nurses.

| Case Number: JA-37-0133 | Serial #: 65 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/10/2018 | Activity End Date:01/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate George Shaw DC#489596 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000119

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 65 |

He knew Lt. Livingston when he was a Sergeant at Taylor Correctional Institute approximately 18 years ago.  Inmate Shaw stated back in the day at Taylor CI, then Sgt. Livingston would put other inmates in the cell with Inmate Shaw and he would beat the other inmate for Sgt. Livingston.  He said Sgt. Livingston would give him cigarettes or a can of dip for taking care of those inmates.  On the same date Inmate Ridley was placed into confinement, an unknown sergeant came to his cell and told him Lt. Livingston was going to give him a roommate to take care of.  Inmate Shaw told this sergeant he did not do those kinds of things anymore.

The interview of Inmate Shaw concluded at 1439 hours.

277620190211103248

PL000120

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

FOn September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Reginald Kitchen DC# N04042.

On January 10, 2018, at 1638 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Kitchen at Graceville Correctional Institute in Graceville, Florida.  SA Maurer and SA Meacham identified themselves and advised Inmate Kitchen the interview would be a sworn voluntary statement.  Inmate Kitchen understood and agreed to make a statement.  The following is a synopsis of the interview and should not be considered a verbatim statement.  A CD with the entire interview will be maintained as related item INV-62, in the case file:

Inmate Kitchen was at RMC in September 2017 for a medical procedure.  SA Meacham showed him a photo of Inmate Ridley.  He stated when he was at RMC-West Unit he remembers seeing Inmate Ridley during food service.  He said he remembered he was a "permanent" who worked in the kitchen.  Later Inmate Kitchen was moved to confinement and was housed in K2116. He did not remember seeing Inmate Ridley in confinement and said that he kept to himself and did not remember hearing anything regarding a paralyzed inmate.

The interview of Inmate Shaw concluded at 1646 hours.

| Case Number: JA-37-0133 | Serial #: 66 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/10/2018 | Activity End Date:01/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Reginald Kitchen DC#N04042 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000121

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ████████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ██████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Jonathan A Lulloff, DC Number V51697.

On Thursday, January 11, 2018, at 1755 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Lulloff at Suwannee Correctional Institution. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-59.

Lulloff provided his DC number and date of birth and confirmed he was housed in wing 2 of K Dorm, cell 116 at the RMC Main Unit during the time Ridley was housed in K Dorm. Specifically, Jackson was asked if he recalled being in the dorm at the same time the hurricane was impacting the area. Lulloff replied he was in confinement at that time.

Lulloff was asked if he knew about an inmate who was brought into the dorm in a ████████. Lulloff said he remembered a light skinned ████ ████ male. A photograph of Ridley was shown to Lulloff at which time he advised he had been previously interviewed by two other agents who had also shown him the same picture. At this time no additional questions were asked regarding the incident itself.

Lulloff was asked specifically about any ████ male inmates who had ██ teeth. Lulloff could only advise his previous cellmate (Kitchen) had ████ teeth, but he did not have any interaction with any other inmates while in confinement.

Lulloff was asked if he had any interaction with the guards. Lulloff stated he had very little interaction with the guards other than what he had already relayed when he was previously interviewed. Lulloff then described an incident when a Captain Williams utilized an entire can of OC spray on an inmate in a cell across from his cell. Lulloff stated when the nurse came to the

| Case Number: JA-37-0133 | Serial #: 67 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Jonathan Lulloff (DC #V51697) K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103248

PL000122

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 67 |

dorm she stated the inmate would be fine and did not provide any treatment before leaving.

Lulloff was asked about anyone named Zoe.  Lulloff stated the name Zoe referred to an entire nation of people and could be referring to anyone.

At 1802 hours the interview was concluded.

277620190211103248

PL000123

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████ ██████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Alex D. Newman DC# 124425.

On January 17, 2018, at 1041 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Newman at Lake Correctional Institute in Claremont, Florida. SA Maurer and SA Meacham identified themselves and advised Inmate Newman the interview would be a sworn voluntary statement. Inmate Newman understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-63, in the case file:

Inmate Newman was at RMC in September 2017 for a medical procedure. He stated he was in Kilo dormitory around the time of hurricane Irma and remembered being housed in K2116. SA Meacham showed him a photo of Inmate Ridley. Prior to going to Kilo dormitory, Inmate Newman was in urgent care at RMC for his pre-confinement check. He saw Inmate Ridley there on a bed with something around his neck, being looked at by a Doctor. An unknown Correctional Officer (CO) repeatedly told the Doctor that Ridley was alright he's lying. Inmate Ridley was moved to a ████████ and taken from urgent care. When they put him from the ████████ it looked like he was in a lot of pain. Later in Kilo dormitory, while waiting for a room assignment Inmate Newman was sitting next to Inmate Ridley in the cages near the offices. Inmate Ridley told him that he was beaten by some guards at RMC-West and he was paralyzed. Inmate Ridley did not say who the guards were and Inmate Newman did not ask.

After Inmate Newman went to K2116 he was able to see Inmate Ridley across from him in another cell. He said he was on his bunk with his legs on the floor and stayed in that position for several days. No one checked on him while he was in the cell and he knows he did not eat anything for several days because when they removed him from the cell he could see uneaten

| Case Number: JA-37-0133 | Serial #: 68 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/17/2018 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Alex Newman DC#124425 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000124

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 68 |

food on the floor.  He said the food on the floor were sandwiches wrapped in plastic because he asked the COs if he could have the extra food.  The COs did not respond to his request and wheeled Inmate Ridley out of Kilo dormitory.  He never saw him again.

The interview of Inmate Newman concluded at 1056 hours.

PL000125

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ██████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Jamie R. Pittman DC# K89497.

On January 17, 2018, at 1104 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Pittman at Lake Correctional Institute in Claremont, Florida. SA Maurer and SA Meacham identified themselves and advised Inmate Pittman the interview would be a sworn voluntary statement. Inmate Pittman understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-64, in the case file:

Inmate Pittman recalls that he spent some time at RMC in September 2017. He stated he was in Kilo dormitory around the time of hurricane Irma and remembered being housed in K2214. He remembers hearing about another inmate in his area that came in to the dorm in a ████████ and was said to be paralyzed. He could not see the inmate but could see the door to the cell where he was housed. He said the paralyzed inmate was in the cell by himself and felt that was wrong because if he was paralyzed how would he be able to eat. He saw food being placed on the door flap but it was untouched. Correctional Officers would walk by his door but never stopped. Inmate Pittman was shown a photo of Inmate Ridley and he confirmed that he was the inmate that was paralyzed. He had no additional information regarding Inmate Ridley.

The interview of Inmate Newman concluded at 1110 hours.

| Case Number: JA-37-0133 | Serial #: 69 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/17/2018 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Jamie Pittman DC#K89497 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000126

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████
███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Brandon L. Hall DC# U48795.

On January 17, 2018, at 1122 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Inmate Hall at Lake Correctional Institute in Claremont, Florida. SA Maurer and SA Meacham identified themselves and advised Inmate Hall the interview would be a sworn voluntary statement. Inmate Hall understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-65, in the case file:

Inmate Hall spent some time at RMC in September 2017 for a medical procedure. He stated he was in Kilo dormitory around the time of hurricane Irma and remembered being housed in K2214. Inmate Hall was shown a photo of Inmate Ridley and he said he did not remember seeing Inmate Ridley. He never saw Inmate Ridley of heard anything about him. He said he kept to himself and stayed off the door. He had no additional information regarding Inmate Ridley.

The interview of Inmate Newman concluded at 1125 hours.

| Case Number: JA-37-0133 | Serial #: 70 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/17/2018 | Activity End Date:01/17/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Brandon Hall DC#U48795 K Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000127

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ██████████
████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the submission of evidence.

On December 21, 2017, at 0946 hours SA Maurer met with Crime Laboratory Technician (CLT) Bonnie Cox.  SA Maurer submitted the following from evidence:

Evidence Item 04: DVD containing 124 images of scene and 2 images from Faro scan of scene
Evidence Item 05: DVD containing Faro Focus 3d raw scan data and Blu-ray with processed scan data of scene
Evidence Item 06: Blu-ray containing Webshare 2Go panoramic images of scene

A copy of the FDLE evidence submission form will be maintained as related item INV-66, in the case file.

| Case Number: JA-37-0133 | Serial #: 71 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/18/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Evidence Submission 2 | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000128

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. █████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Jack Lemond DC Number 135698.

On Thursday, January 4, 2018, at 1035 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Lemond. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-67.

Lemond provided his DC number and date of birth and confirmed he was housed in Dorm A1, bunk 1511 at the time of the incident.

Lemond did not know Ridley by name but identified him by photograph. Lemond stated Ridley was a nice person who kept to himself and was just doing his time and didn't fight with anyone.

Lemond stated he did not have a work assignment, but knew Ridley worked in the kitchen.

Lemond advised he was aware of the incident which occurred involving the inmate Ridley.

At the time of the incident Lemond stated he was in the restroom at which time he could hear some sort of commotion in the laundry area. Lemond advised it was between 2:30-3:00 in the morning. After exiting the restroom, Lemond advised he was told to move away at which time he returned to his bunk. When asked, Lemond did not provide any specific detail regarding the "commotion."

When asked about his knowledge of other incidents involving the guards, Lemond made a statement about "a lot of things going on" in the prison. Lemond was asked to describe what was "going on" and what specific people could be more problematic than others. Lemond

| Case Number: JA-37-0133 | Serial #: 72 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Jack Lemond (DC #135698) A Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000129

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 72 |

stated, "You got Haight, you got Young.  You got the other guy. I don't even know his name.  I try to stay out of his way, but every time he talks he blinks." (Described as a white male guard, chubby, with brown close cut hair on the sides and bald on top).  Lemond gave no specific incident or description of actions by the described guards other than to say if he did what the guards did inside the fence he would go to prison.  Lemond also mentioned Young (no other information), Bush (no other information), and Haight (no other information) as being involved in incidents, but again with no detail.

1047 hours- End of recording.

277620190211103249

PL000130

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate eric k brown DC Number J41969.

On Thursday, January 4, 2018, at 1051 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Brown. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-68.

Brown provided his DC number and date of birth and confirmed he was housed in Dorm A1, bunk 110 lower at the time of the incident.

Brown was asked if he knew why FDLE agents were at the prison today. Brown stated agents were at the prison regarding "Old man Ridley." Brown was shown a photo of Ridley which he identified as being the person about whom he was referring. Brown went on to state that although he knew who Ridley was, he did not know him personally.

Brown was asked what he knew about the incident involving Ridley. Brown advised he had no independent knowledge of what transpired, but he heard Ridley got into an altercation with an officer "late in the morning or early in the morning and that he was never found." Brown further elaborated that the incident was between Ridley, Sergeant Nettles, and a "white shirt" (indicating a Lieutenant or a Captain). Brown could not provide any additional details about this incident. When asked if anyone else was involved in this incident Brown advised he did not know of anyone else; however, he stated there were other incidents which have occurred at the prison.

When pressed about what incidents had occurred, Brown stated there were a lot of things going on at the camp, but nothing could be done about it unless you had people on the outside.

| Case Number: JA-37-0133 | Serial #: 73 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- Eric Brown (DC #J41969) A Dorm | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000131

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 73 |

When asked which staff members were involved Brown, stated, "Haight and Young." Brown went on to state the two named officers had "their own little wrecking crew." Brown advised if you got into trouble with them "they come and get you." Brown stated they would take you to the Barber Shop and "beat the shit out of you." When asked how many officers would go to the barber shop; Brown stated it would depend on how big the inmate was. Brown further advised someone his size (5'9", 170 pounds) would get a "one on one fade" (meaning he would be assaulted by one guard while any others watched) whereas a larger inmate may be assaulted by a group of guards. Brown advised he had been in the prison for a year and a half and that he had several run-ins with the guards since his arrival. When asked if he had been threatened by the guards, Brown stated he had been threatened in the past, but had not been threatened regarding speaking to FDLE agents about Ridley.

When asked if the guards were more or less difficult to deal with since the investigation into the incident involving Ridley started, Brown advised some of the guards were easier to deal with and others were more difficult. When asked who was more difficult to deal with, Brown stated "just Haight and Underhill and them." Brown stated "the shift that is on today and tomorrow; the afternoon shifts are like a wrecking crew."

Brown had no information regarding the medical staff, stating he had not had to visit the clinic.

When asked, Brown advised he worked "C" shift in the kitchen, but he could not advise if Ridley worked in the kitchen on another shift.

1058 hours- End of recording.

277620190211103249

PL000132

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████ ████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate James R Davis, DC Number D23767.

On Thursday, January 4, 2018, at 1100 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Davis. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-69.

Davis provided his DC number and date of birth and confirmed he was housed in Dorm A1, bunk 111 low at the time of the incident.

SA Meacham asked Davis if he was familiar with an incident that occurred in September (2017). Davis responded saying the incident involving Glover (no other information) or "Reed", whom he could identify on sight. When shown a photograph of Ridley, Davis advised he was the person he was referring to when he gave the name of "Reed."

Davis advised he worked in the kitchen on C shift as the head cook. Davis stated he worked from 1030 or 1100 until 1730 or later if necessary. Davis advised Ridley worked in the kitchen and believed Ridley was working A shift.

When asked if he recalled the incident in the dorm, Davis said he did. Davis advised he was in the bathroom of Dorm A, but thought the incident was already over. When asked why he believed an incident occurred Davis stated, "They said that the officer and Mr. Ridley had an incident in the back of the laundry room." When asked who "they" were, Davis advised he was referring to other inmates. When asked if there were a number of people up at 0300 in the bathroom Davis advised he did not actually find out anything about the incident until he got up for breakfast at which time Ridley was gone. Davis could not advise which guards Ridley had

| Case Number: JA-37-0133 | Serial #: 74 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- James Davis (DC #D23767) A Dorm | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000133

| Case Number | JA-37-0133 |
| IR Number | 74 |

the altercation with.

Davis was asked if he had any issues with the guards.  Davis advised he didn't have any issues with the guards because he kept himself out of their way.  Davis advised there were other inmates who didn't avoid the guards as well and had run-ins with them.

When asked if there were some guards who were worse than others, Davis stated there were a few guards in particular who were worse than others but was reluctant to provide any specific names.  Davis stated those guards would take inmates to the barber shop where the inmates would get roughed up.

Davis advised he has had no interaction with the medical staff at the prison.

Davis was asked about the incident involving Glover (no other information).  Davis stated he didn't see the incident happen, but it was common knowledge that Glover got some cigarettes and when the guards found them, Glover was beaten by them.  When asked if the incident was over cigarettes or over the incident involving Ridley, Davis advised he did not know if it involved the incident with Ridley, but he was certain Glover had some cigarettes at the time of the incident.  Davis was asked if he had seen Glover since the incident.  Davis stated Glover briefly returned to the West Unit but only remained there a short time before being run off back to confinement at the Main Unit.  Davis advised the rumors were it involved guards Haight (no other information) and Young (no other information).

1112 hours- End of recording.

277620190211103249

PL000134

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Jason O Baker, DC Number 149017.

On Thursday, January 4, 2018, at 1151 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Baker. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-70.

Baker provided his DC number and date of birth and confirmed he was housed in Dorm A1, bunk 124 low at the time of the incident.

SA Meacham asked Baker if he was familiar with an incident that occurred in September (2017) involving inmate Ridley. Baker advised he knew about it, but did not witness the original incident. Baker was then shown a photograph of Ridley at which time he confirmed he knew Ridley and disclosed he was probably one of the last people to see Ridley over at the Main Unit. Baker stated he had been at the hospital in Gainesville and was returned to the prison before transportation was suspended when the hurricane came through. Baker stated he was medical at the Main Unit when Ridley came into medical handcuffed to a ███████ complaining about a broken neck. Baker stated Ridley had a C-collar on when he arrived in the clinic. Baker stated, "They fucked with him and they fucked with him" and they finally put Ridley on a backboard because he kept complaining so much. Baker went on to state once Ridley was secured to the backboard, the nurse and a Hispanic orderly (inmate who works in the staff canteen inside the prison hospital) turned and tilted the board upside down. Baker went on to state when Ridley was still in the ███████; the orderly stood behind him and physically twisted Ridley's head from side to side and laughed while telling Ridley he was alright. Baker stated at that time the nurse, who had a tattoo on her neck and had a raspy voice was present. Baker also stated there was a guard present as well. Baker did not know the guard's name, but

| Case Number: JA-37-0133 | Serial #: 75 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview- Jason Baker (DC #149017) Urgent Care | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000135

| Case Number | JA-37-0133 |
|-------------|-----------|
| IR Number | 75 |

described him as a white male Sergeant with a red beard who works in confinement. Baker believed the Sergeant is the person who transported Ridley from confinement.

When asked if Ridley had any visible injuries, Baker advised Ridley had blood around his nose and mouth area.

When asked where Ridley went, Baker advised after Ridley was placed on the backboard he was carried out of Urgent Care and he believed Ridley was taken for additional testing.

Baker advised he was returned to the prison from Gainesville sometime after 2000 hours and incident occurred after that. Baker knew this because he didn't get out of urgent care until almost 0100 hours the following morning.

Baker was asked how many other people were in Urgent Care while Ridley was there. Baker advised there were five or six other people there including several guards, but he could not advise who any of the people were, other than to say the inmates were "transits", indicating they were not permanent inmates at RMC.

Baker advised none of the staff had talked to him about the incident and he had not been threatened about cooperating with our investigation.

When asked what he has heard about the incident, Baker stated he heard Ridley got into a fight with Sergeant Nettles over some clothes. Baker stated that would be out of character for either Sergeant Nettles or for Ridley. Baker described Sergeant Nettles as a good guard and he stated Ridley didn't mess with anyone.

Baker was asked if he had a job in the prison. Baker stated he was a plumber and worked all over the prison as needed.

1208 hours- End of recording.

277620190211103249

PL000136

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at █████████████████ in Jacksonville, Florida. ██████████ ██████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Courtney V Fray, DC Number J13384.

On Thursday, January 4, 2018, at 1213 hours, SA Meacham and SA Maurer conducted a sworn digitally recorded interview of FDC inmate Fray. The following should be considered only a summary of the interview; the audio recording will serve as the comprehensive record and will be submitted as related item INV-71.

Fray provided his DC number and date of birth and confirmed he was housed in Dorm A1, bunk 104 low at the time of the incident.

SA Meacham asked Fray if he was he knew why he was being interviewed. Fray stated the interview was about Ridley. At this time Fray was shown a photograph which he identified as being of Ridley; whom he has known since he was housed at RMC West Unit in January of 2017. Fray further stated Ridley was commonly known as "The ████████" by other inmates.

Fray advised he was currently assigned to work in the kitchen on A shift with Ridley. Fray advised he was awake and waiting to go to work on the morning of September 8, 2017 when the incident occurred. Fray advised he was in the bathroom when he overheard Ridley and Sergeant Nettles arguing, but he was unsure about what they were arguing about. Fray advised Ridley was then taken out of the Dorm through the laundry room door. When asked if there was a confrontation between Sergeant Nettles and Ridley, Fray stated he was unsure, but had heard from staff members that Ridley hit Sergeant Nettles. Fray said he recalled exiting the Dorm after the incident at which time he observed Ridley's hat and glasses on the ground outside the door to the laundry room. Fray advised the incident occurred sometime around 0230 and that the inmates were late to work, arriving sometime closer to 0315-0330.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 76 |
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/18/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview- Courtney Fray (DC #J13384) A Dorm

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000137

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 76 |

Fray advised this was the last time he saw Ridley at the prison.

When asked about Ridley's demeanor, Fray described Ridley as someone who was very laid back and that he was the one inmate who would stick up for the other inmates to the guards.

When asked about his interaction with the medical staff at the prison, Fray advised he had no issues with the medical staff.

When asked about any problems he has with the guards, Fray stated, "Yeah, Sergeant Haight (no other information) and Young (no other information).  Some of them guys they like to put their hands on you.  They put their hands on you quick.  Their motto around here is I'll just spray you and kick your ass and take you to jail (confinement)."  In addition to Haight and Young, Fray advised Phillips (no other information) and occasionally Nettles or the captain would get physical with an inmate.

Fray was asked if he had been threatened regarding cooperating with the FDLE agents investigating the incident with Ridley.  Fray advised after FDLE conducted interviews the last time the guards came to the dorm and told the inmates, "All you guys want to run your mouths, so you're not going to get canteen and you're not going to yard, and if we find out you said something we're going to kick your ass."  Fray advised the guards working at that time included Haight and Young.

Fray was asked about the Barber Shop.  Fray referred to the Barber Shop as, "Ass kicking central."

Fray was asked about any other incidents involving Ridley and the guards.  Fray relayed he had been present for several incidents where Ridley ran his mouth to the guards and was then sent to confinement.

Fray was asked if he had been told anything about the incident by any of the staff.  Fray said he had been told nothing by any staff member.

1228 hours- End of recording.

277620190211103249

PL000138

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of inmate Arthur Lorenzo Bryant DC# 129739.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County.  SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley.  SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Arthur Bryant was escorted to the office where he met SAs Kays and Busey.  Before the interview, SA Kays asked Bryant if he knew why FDLE was at the prison.  Bryant didn't know and hadn't heard anything.

At approximately 1151 hours, Bryant provided sworn testimony.  The interview was digitally recorded.  The actual recording is the most accurate account of Bryant's testimony. The following is a summary of the interview.

On September 8, 2017, Bryant was assigned to the kitchen work crew on shift "C" which works from 1100 until 1900 to 2000 hours.  Bryant did not remember anything that happened on September 8, 2017.  Bryant said he would have been asleep at 0200 hours.

Bryant then remembered something happened with "Riley," who Bryant called "████████."  SA Busey showed Bryant a single photograph of Craig Ridley.  Bryant identified him and called him "Riley" and "████████."  Bryant described Ridley as an "alright individual" and an "alright dude." The two weren't necessarily friends, but they played chess together.  Bryant never saw Ridley have any problems with the guards.

Bryant said he heard Ridley went to "jail" because he swung on the "police."   Bryant heard

| Case Number: JA-37-0133 | Serial #: 77 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Arthur Byrant DC# 129739

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000139

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 77 |

about it the day it happened.  Bryant said Ridley wasn't the type of person to swing on the "police."  Bryant also heard Ridley went to jail because he (Ridley) didn't want to go to work and "they" got "rough with him" and "took him to jail."  Bryant did not remember from whom he heard this.  Bryant also heard Ridley died.  Bryant heard Ridley was beat up and killed at the RMC Main Unit while in confinement.

Bryant volunteered "they" were "hands on" at this prison.  He said the guards "beat (you) up."  Bryant couldn't provide any more specifics.  Bryant, himself, had not been beaten by the guards.

Bryant said the inmate who told him was from the Main Unit but told "everybody" the same story at the RMC - West unit.  Bryant described him as a black male, dark skin, in his mid-30s, 6-0, 300 pounds and heavy set ("fat").  He had a low haircut and a goatee.  This inmate wore a blue uniform and wasn't a "permanent" inmate.  Bryant thought this male was transferred back to the Main Unit the same day he told everyone the story about Ridley's death.  This conversation occurred approximately three week to a month after Ridley left A dorm in front of several inmates as they were in line waiting to eat.  Bryant thought the inmate was prescribed medication and this is why he was still outside and able to co-mingle with inmates from A dorm.

SA Busey submitted the recording of the interview as related item #INV 72.

277620190211103249

PL000140

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████.  Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of inmate Edmund Randolph Allen, Jr DC# V41279.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County.  SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley.  SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Edmund "RJ" Allen was escorted to the office where he met SAs Kays and Busey.

At approximately 1055 hours, Allen provided sworn testimony.  The interview was digitally recorded.  The actual recording is the most accurate account of Allen's testimony. The following is a summary of the interview.

On September 7 and 8, 2017, Allen was assigned to bunk # 2110 "up" within Dormitory A. Allen was assigned to the kitchen work crew on shift "C" which worked from 1030 until 1800 to 1900 hours.  Allen didn't remember anything significant that happened on September 7 or 8, 2017.  Allen heard FDLE was going to interview him because "someone got beat up."

Over two months ago, Allen heard an inmate got beat up by a guard by the "chow hall."  Allen had no other information about that incident, which would not have involved Ridley.

SA Busey showed Allen a single photograph of Ridley.  Allen identified him as "Mr. Ridley" and knew him as the "rec orderly."  Allen heard Ridley swung on an (correctional) officer over a dispute about Ridley's laundry.  Allen heard Ridley was sent to confinement at RMC main unit.  Allen didn't know what finally happened to Ridley.  Allen described Ridley as humble and quiet.  Allen also described him as "an older gentleman."  Allen is an acquaintance of Ridley.  The two

| Case Number: JA-37-0133 | Serial #: 78 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Edmund Allen DC# V41279

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000141

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 78 |

have played chess together.  Allen was clear he didn't see the incident with Ridley and the correctional officer.

The interview concluded at approximately 1106 hours.

SA Busey submitted the recording of the interview as related item #INV 73.

PL000142

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of inmate Nathaniel David Waters DC# T64213.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County.  SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley.  SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Nathaniel Waters was escorted to the office where he met SAs Kays and Busey.  Prior to the interview, Waters told SAs Kays and Busey he heard FDLE was investigating the death of an inmate.

At approximately 1032 hours, Waters provided sworn testimony.  The interview was digitally recorded.  The actual recording is the most accurate account of Waters' testimony. The following is a summary of the interview.

On September 7 and 8, 2017, Waters was assigned to bunk # 2135S within Dormitory A. Waters was assigned to the kitchen work crew on shift "C" which works from 1030 until 1800 to 1900 hours.  Waters did not remember anything that would have resulted in an inmate's death around September 7 or 8, 2017.

The first time Waters heard about an inmate's death was right before he was instructed to meet with SAs Kays and Busey. Someone told Waters the inmate's name, but he couldn't remember it and couldn't place a face with that name.  Waters did not remember the incident and hadn't heard any details.

| Case Number: JA-37-0133 | Serial #: 79 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interviews of Inmates Nathaniel Waters DC#T64213 and Frank Morton DC# L02490

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000143

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 79 |

The interview concluded at approximately 1040 hours.

SA Busey submitted the recording of the interview as related item #INV 74.

Interview of inmate Frank Lorenzo Morton DC# L02490.

Inmate Frank Morton was escorted to the office where he met SAs Kays and Busey.

At approximately 1126 hours, Morton provided sworn testimony. The interview was digitally recorded. The actual recording is the most accurate account of Morton's testimony. The following is a summary of the interview.

On September 7 and 8, 2017, Morton was at the RMC Main Unit in confinement and had been since August 18, 2017. He was there through September 13, 2017. While in confinement, Morton was assigned to cell #2121 "lower."

SA Kays asked Morton if he remembered Craig Ridley coming to confinement. Morton did not remember him. SA Busey showed Morton a single photograph of Ridley. Morton looked at the photograph and said he did not know Ridley.

SA Kays asked Morton if remembered anyone coming into cell #2108. Morton said he couldn't see #2108 from his cell. Morton recalled he had several (medical) "call-outs" between September 5, 2017 and September 10, 2017 so it's probable he wasn't in confinement on September 8, 2017. He would have been in the hospital's specialty clinic. Morton was clear he didn't know "anything about anything." Morton did not know why FDLE was at the prison. Morton hadn't heard anything.

The interview concluded at approximately 1138 hours.

SA Busey submitted the recording of the interview as related item #INV 75.

277620190211103249

PL000144

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of inmate Joshua Tyler Shults DC# J54130.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County. SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley. SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Joshua Shults was escorted to the office where he met SAs Kays and Busey. Before the interview SA Kays asked Shults if he knew why he was meeting the SAs. Shults said he heard it was to talk about "Ridley."

At approximately 1109 hours, Shults provided sworn testimony. The interview was digitally recorded. The actual recording is the most accurate account of Shults' testimony. The following is a summary of the interview.

On September 7 and 8, 2017, Shults was assigned to the kitchen work crew on shift "A" which works from 0300 until 1100 hours. Shults remembers the incident with Ridley and Sergeant (Sgt.) Nettles and was a witness to the events that occurred in the laundry room. Shults said Ridley "got in trouble" and went to confinement, but Shults didn't know the details.

Shults described the process by which the kitchen crew was woken up by staff before their work shift. At approximately 0230 hours, as everyone on the crew (approximately 16-17 inmates) was waking up, they staged in the laundry room before they were escorted outside to the chow hall. Specific to this incident, Ridley got into trouble for "smarting off." Ridley was "called out" (outside) and then the officer came back in the laundry room and told the inmates to go back to their bunks. SA Busey showed Shults a single photograph of Sergeant (Sgt.) Nettles. Shults

| Case Number: JA-37-0133 | Serial #: 80 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Joshua Shults DC# J54130

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 80 |

identified Sgt. Nettles as the officer who called Ridley outside and then returned to send the inmates back to their bunks.  Shults knew Ridley had been sent to confinement.  Shults heard Ridley died of cancer.  Shults also heard Ridley had been transferred to another prison.

When SA Kays asked for further details, Shults said Ridley said something "back" to Sgt. Nettles that made Sgt. Nettles mad.  Sgt. Nettles went into the "bubble" (the control room at the front of the laundry room.)  Then, Sgt. Nettles called Ridley outside.  Sgt. Nettles went outside first.  Ridley followed.  Shults couldn't see what happened outside and didn't hear anything.  Sgt. Nettles came back in approximately one to two minutes later and told everyone in the laundry room to go back to their bunks.  When Sgt. Nettles came back into the laundry room Shults didn't notice anything visibly "wrong" with him (Sgt. Nettles.)  Based on Sgt. Nettles' behavior, Shults guessed that Ridley and Sgt. Nettles had an "altercation."  There were approximately four inmates in the laundry room when this happened.  Shults could not remember the names of any other inmates who were in the laundry room.  There were only four inmates as the others were still getting ready and had not yet made it to the laundry room.

Shults described Ridley as a "good guy" who enjoyed playing chess and cards.  Shults said Ridley had been "in the box (confinement) a lot" and had "problems with staff" but not with other inmates.  Ridley was "outspoken."  Ridley worked out and was a healthy "dude."  Shults described Sgt. Nettles as a good sergeant.  Shults said, "We liked him in the dorm."  Sgt. Nettles "didn't bother anyone and didn't really have any problems."  Shults was surprised that Sgt. Nettles called Ridley outside.  Sgt. Nettles wasn't known for being violent.  Shults didn't know of Ridley and Sgt. Nettles having any past problems.

The interview concluded at approximately 1125 hours.

SA Busey submitted the recording of the interview as related item #INV 76.

277620190211103249

PL000146

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████
█████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of inmate Matthew Don Hersey DC# J53456.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County. SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley. SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Matthew Hersey was escorted to the office where he met SAs Kays and Busey. SA Kays asked Hersey if he knew why FDLE was at the prison. Hersey did not know. Hersey heard others talking about a "death."

At approximately 1351 hours, Hersey provided sworn testimony. The interview was digitally recorded. The actual recording is the most accurate account of Hersey's testimony. The following is a summary of the interview.

On September 8, 2017, Hersey was in confinement at the RMC Main Unit and had been since September 6, 2017. He stayed in confinement until September 14 or 15, 2017.

Hersey's first cellmate was Jason Nicholas a 30 year old white male. Hersey was paired with Nicholas for four or five days (until September 10 or 11, 2017.) Nicholas finished his prison sentence in confinement and has since been released. Hersey thought his first cell was #14 "bottom." Hersey was then moved to another cell, #4 "up", and paired with a white male named "Kiefer" who was about 23-24 years old.

SA Kays asked Hersey about anything involving inmates brought into confinement that stood out to him.

| Case Number: JA-37-0133 | Serial #: 81 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Matthew Hersey DC# J53456

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000147

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 81 |

Hersey described a Hispanic male nicknamed "305," who was actually the orderly assigned to work in confinement. Hersey did not witness but heard about 305 getting into an altercation with one of the officers. 305 allegedly "swung" on the officer(s). "They" beat him up bad and he went to the hospital. Hersey saw 305 when they brought him back to confinement, this time as punishment. This incident occurred approximately seven to ten days after Hersey was put in confinement, which would have been September 16, 2017 or before. Through his cell door window, Hersey saw the injuries on 305's face, which he described as a bruised with black eyes. 305 was up and walking to his cell. He described 305 as approximately 30 years old, 5-10, 140-150 pounds with short (shaved) hair. Kiefer would have seen 305 and his injuries.

SA Kays asked Hersey about any other inmates that were brought into confinement, specifically in a wheel chair. Hersey only remembered an inmate who was already in confinement when he arrived, a Hispanic male named "Machete." Machete was in cell #5 "low." Machete was recovering from surgery on his leg and was undergoing physical therapy.

SA Kays asked about cell #2108 (or 8) in relation to Hersey's cell. Hersey said he couldn't see cell #8 from his cell. Hersey said he thought two inmates were in cell #8, one who smoked an illegal substance and an older white male with a heart condition.

SA Busey showed a single photograph of Craig Ridley to Hersey. Hersey didn't recognize him and didn't recall seeing him in confinement.

Hersey was a witness to an attack on Michael V. Glover by correctional officers by the barbershop, which is next to the A dorm. Hersey's testimony of this event involving Glover was chronologically disorganized. The following is a chronological summary.

After being in confinement, Hersey returned to and was living in the A2 side of A dorm.
Once he returned, but preceding the attack on Glover, Hersey heard a backstory that Glover stole cigarettes from a female officer. The officers recovered the stolen cigarettes.

On a day three weeks before the attack, the inmates were at breakfast in the chow hall. Sgt. Young saw Glover "stepping" to the captain. Hersey explained that Glover was "telling" or complaining about Sgt. Young. Sgt. Young ran up to and told Glover he wasn't scared of the captain and didn't care about his (Sgt. Young's) job. When the inmates were leaving breakfast and walking outside back to A dorm, Sgt. Young started calling Glover "out" in front of all the inmates. Sgt. Young told Glover to "check-in." Sgt. Young also called Glover a "fuck boy." Sgt. Young screamed at Glover. Glover was scared of Sgt. Young and "checked-in." Hersey explained that "checking in" is a type of self-admission to confinement out of safety concerns because of another inmate or correctional officer.

Approximately three weeks later, Glover came back from confinement. Glover had yet to be assigned a job and was ordered out of the dorm by Ms. Busby. Glover went outside which was right across from the barbershop. Sgt. Young and Sgt. (or Officer) Hunt, who is from the RMC Main Unit, stopped Glover and patted him down. They found nothing on Glover. As soon as they turned Glover around (to face them) Sgt. Hunt sprayed Glover (with subject control spray) in the face. Glover dropped to the ground screaming. Hunt began kicking Glover in head as he lay on the ground. The officers (Hunt, Sgt. Young, Sgt. Gamble, and another officer (a white

277620190211103249

PL000148

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 81 |

male in his 40s, 6-0, 185 pounds) saw the inmates, to include Hersey, looking out of the A2 side (south side) dorm windows. Sgt. Young dragged Glover by the back of the shirt and out of view around the barbershop building.  Hersey didn't see any more but heard Glover repeatedly yelling, "Help!"  Hersey assumed that Glover had injuries but couldn't see any.

That same morning before that incident, Glover reportedly told inmate Timothy Osteen if anything happened to Glover to contact Glover's sister.  Glover gave his sister's information to Osteen.

Hersey said inmates Timothy Mark Osteen, Karren Trappio Afo-Labi Plaines and Alberto "Serrango" all witnessed this attack from the A dorm windows.

Hersey did not witness but heard of another incident that occurred two weeks ago on a Tuesday.

Shawn Thomas Loncala is an inmate who was the diet cook.  Loncala had a "hustle" where he would give inmates extra food.  In return, they would give him food back.  Sgt. McCord discovered Shawn's hustle.  Sgt. McCord was temporarily assigned to the RMC West Unit as he was under investigation from something that happened at the RMC Main Unit.  Sgt. McCord told Loncala to stop and threatened to spray or "write him up" if he continued giving others extra food. Loncala told Sgt. McCord he wasn't scared of him.  Sgt. McCord handcuffed Loncala, took him to the office, sprayed him in the head and struck and kicked Loncala as he lay on the ground.

Inmate Thomas Anthony Blackburn, III witnessed this event.

The interview concluded at approximately 1428 hours.

SA Busey submitted the recording of the interview as related item #INV 77.

PL000149

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley is the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of inmate Ryan Timothy South DC# J58692.

On December 19, 2017, Special Agent (SA) Barry Michael Kays travelled to the Reception and Medical Center (RMC) - West Unit, located at 8183 SW 152nd Loop, Lake Butler, Florida, Union County.  SA Kays was paired with SA Stephen Douglas Busey to interview inmates in the prison regarding the incident involving inmate Craig Ridley.  SAs Kays and Busey were provided an office to conduct the interviews.

Inmate Ryan South was escorted to the office where he met SAs Kays and Busey.  SA Busey asked South if he knew why FDLE was at the prison.  South didn't know but assumed it had to do with an "officer-inmate altercation."

At approximately 1212 hours, South provided sworn testimony.  The interview was digitally recorded.  The actual recording is the most accurate account of South's testimony. The following is a summary of the interview.

On September 8, 2017, South was assigned to A dorm.  His work assignment was in the law library.  He worked from 0730 to 1530 hours.  He usually wakes up at 0630 hours.  South knew Craig Ridley.  South remembered when Ridley left the RMC West Unit.  South didn't see what happened, but when he woke up the next day, Ridley's bunk was empty and people were talking about what happened.  South heard Sgt. Nettles and Ridley had an altercation.  South couldn't remember who told him.  South said it was general conversation around the dorm. South also heard Ridley died of cancer at the Main Unit while in confinement.  South heard this from Ms. Bell, a correctional officer who sits in the clinic, approximately two months ago when they were both in the law library. South also heard Ridley's autopsy revealed a ruptured spleen. South couldn't remember who told him this, but this information came forward approximately three to four weeks ago.  South described Ridley as a "nice guy."  South identified Ridley by a

| Case Number: JA-37-0133 | Serial #: 82 |
|---|---|
| Author: Kays, Barry Michael | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Ryan South DC# J58692

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000150

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 82 |

single photograph shown to him by SA Busey.  South didn't know of any disciplinary problems regarding Ridley.  South has had no interactions with Sgt. Nettles.

The interview concluded at approximately 1221 hours.

SA Busey submitted the recording of the interview as related item #INV 78.

After the interview about Ridley was concluded, South asked if could give information about something else that needed FDLE's attention.

South spoke of an incident a few weeks ago where an inmate named Michael V. Glover was attacked by four guards.  South said "a lot" of inmates had firsthand knowledge of this incident. South specifically named Sgt. Young as one of the attackers.  South said he was a witness to this incident when Sgt. Young attacked Michael Glover.  South also named Ofc. Phillips, Ofc. Hunt and another officer, who South described as a white male, approximately 30 years old and 5'8".

South said Glover had "checked-in" "under Sgt. Young" and went to confinement under protective custody.  Approximately three to four weeks later, Glover returned on a Thursday to the RMC - West Unit. The following Monday (approximately two to three weeks ago), at 0900 to 1000 hours, Glover was told to go outside to "rec."  Glover was attacked when he was outside. The attack occurred outside the staff barbershop, which is next to the A dorm.  South witnessed this from the law library's windows in a separate building to the northwest.  South said he was close enough to see what happened but was further than the distance one could throw a football.  (Later, SA Kays used the measurement tool on Google Maps.  The law library windows were at least 375 feet away from the front of staff barbershop.)  South saw Sgt. Young talking to Glover.  Sgt. Young hit Glover in the face once with a fist.  The blow knocked Glover to the ground and Ofc. Phillips (or the unknown white male officer) "jumped" on Glover's leg. (South physically stomped his own foot on the floor to describe this.)  Glover went to confinement after this incident.  South couldn't see if Glover had any injuries.  South left the window and went back to work.  No inmates were outside when this occurred but whoever was inside the "A-2" side (the south side) of A dorm could have seen this attack from the dorm windows which have a view of the barbershop. Inside the law library at the time of this attack were the two library clerks, Nate Andrews (not identified), Veil Spaulding and Brian K Peters (a law library clerk.)  They all talked about it afterward, but everyone knew it was going happen. South clarified that he was the only one at the law library windows.  South couldn't say if any of the others saw what happened.  South assumed the attack occurred because Glover told on Sgt. Young for something.  South said he told SAs Kays and Busey about Glover's attack because, "I think it should be addressed.  Quite frankly, this is, uh, a camp where, I think that this stuff might happen a little too often."  South is also worried for his own safety. South has not had any interactions with Sgt. Young.  South said people in the (A) dorm were talking about it afterward, so he assumed others in the dorm saw it.  South said an inmate named David Mincy said he witnessed the attack.

277620190211103249

PL000151

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interviews of multiple inmates that were not able to provide additional details on this investigation.

On Tuesday, December 19, 2017, FDLE Special Agents (SA) Stephen Busey and Barry Kays conducted sworn recorded interviews. The interviews took place at the Florida Department of Corrections, Reception and Medical Center (RMC) West Unit located at 8183 SW 152nd Loop, Lake Butler, Florida. Inmates were advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file.

Robbie Lee Dorminey DC#125970 - Dorminey had no information.
Scott Gabriel DC#134956 - Gabriel had no information other than he heard via rumors that Inmate Ridley had swung on an officer and was taken to confinement.

The recorded interview of inmate Dorminey was added to the related items section of this case file as INV-79.

The recorded interview of inmate Gabriel was added to the related items section of this case file as INV-80.

| Case Number: JA-37-0133 | Serial #: 83 |
|---|---|
| Author: Busey, Stephen Douglas | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interviews of Inmates Robbie Dorminey DC# 125970 and Scott Gabriel DC# 134956

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000152

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████

██████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Jerry Pierre.

On Tuesday, December 19, 2017, at approximately, 0945 hours, FDLE Special Agents (SA) Stephen Busey and Barry Kays conducted a sworn interview of Jerry Pierre, DOC #M48726, (heretofore referred to as inmate Pierre). The recorded interview took place at the Florida Department of Corrections, Reception and Medical Center (RMC) West Unit located at 8183 SW 152nd Loop, Lake Butler, Florida. Inmate Pierre was advised of the identity of the interviewing agents and the purpose of the interview. The following information is a synopsis of the interview; the audio recording will serve as the comprehensive record and has been made a part of this case file. Inmate Pierre provided, in part, the following information:

During September 7 through 8, 2017, inmate Pierre was assigned to bunk 1141S. Inmate Pierre was assigned to the food services "a" shift. Inmate Pierre was shown a picture of Inmate Craig Ridley. Inmate Pierre replied "that's Craig Ridley, that's a good friend of mine." Inmate Pierre informed SA Busey and Kays that he was in the laundry room when the "accident" happened. Inmate Pierre explained that Sergeant Nettles, the A Dorm sergeant, woke up the "a" shift food service workers which consisted of approximately 17 to 18 inmates. Sgt. Nettles woke everyone up earlier than normal. Sgt. Nettles usually wakes everyone up at approximately 0245 hours but this morning he woke everyone up at approximately 0220 hours. Sgt. Nettles instructed the inmates to go to the laundry room.

As inmates come into the laundry room, Sgt. Nettles was standing by the control room and checking inmates off as they come in. There was a group of five inmates consisting of inmates Pierre, Ridley, Craig Joseph, Joshua Tyler Shults, and an unidentified black male. The unidentified black male is believed to have been transferred to a re-entry program. He is believed to be approximately 34 to 36 years old, 175 to 185 pounds, and approximately 5 foot and 8 inches tall.  As inmate Ridley lined up in the laundry room he started cussing saying

| Case Number: JA-37-0133 | Serial #: 84 |
|---|---|
| Author: Busey, Stephen Douglas | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Jerry Pierre

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000153

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 84 |

"bullshit, I'm sick and tired of this shit." Inmate Pierre was lined up directly across from inmate Ridley. Inmate Pierre believes that Sgt. Nettles could not hear what Inmate Ridley was saying due to a large fan running in the laundry room. Inmate Pierre tried to calm inmate Ridley down. Inmate Ridley then began to argue with inmate Pierre. While waiting for the remaining inmates to arrive in the laundry room to get escorted to the food services building, Sgt. Nettles opened the laundry room door leading outside and began to smoke a cigarette. Sgt. Nettles kept the door propped open to keep an eye on additional inmates arriving in the laundry room. Sgt. Nettles then called for inmate Ridley. Inmate Pierre realizing that inmate Ridley didn't hear Sgt. Nettles' command, told inmate Ridley that Sgt. Nettles wants to see him. Inmate Ridley exited A Dorm out of the laundry room door to talk with Sgt. Nettles and the door was shut. Inmate Pierre could not see outside since the door was shut. Sgt. Nettles returned to the laundry room and instructed all of the inmates to return to the dorm. Inmate Pierre stated that he observed a small scratch on the left side of Sgt. Nettles' face that was bleeding with a small piece of paper on it. Inmate Pierre believes that inmate Ridley was right handed. Inmate Pierre stated that they did not get escorted to work until 4 to 415 that morning. Inmate Pierre stated he saw Captain Jerrels in the yard on the way to work that morning.

Inmate Pierre did not see or hear what happened to inmate Ridley after the door closed. Inmate Pierre heard rumors that "use of force" was used on inmate Ridley and that he was then taken to confinement. Inmate Pierre later heard that inmate Ridley had died. Inmate Pierre did not observe Sgt. Nettles make any comments regarding what happened to inmate Ridley.

At approximately 3pm that afternoon, inmate Pierre was woken up by Captain William and Sgt. Young. Captain William and Sgt. Young questioned inmate Pierre in the laundry room as to his involvement in the incident involving inmate Ridley. Captain William and Sgt. Young accused him of sending inmate Ridley after Sgt. Nettles. Captain William and Sgt. Young claimed to have reviewed the camera footage from the laundry room and it showed inmate Pierre sending inmate Ridley after Sgt. Nettles. Inmate Pierre explained that he was trying to calm inmate Ridley down and that when Sgt. Nettles called for inmate Ridley, inmate Ridley could not hear him and that he told inmate Ridley that Sgt. Nettles wanted to talk to him. Captain William and Sgt. Young never told inmate Pierre what happened to inmate Ridley.

Inmate Pierre explained that inmate Ridley was in his 60s, had a temper, and was the type to run his mouth. Inmate Pierre never observed inmate Ridley fight with other inmates or staff. Inmate Pierre did state that occasionally inmate Ridley would push or shove him when inmate Ridley got tired of playing around. Inmate Pierre was not aware of any previous incidents involving inmate Ridley and Sgt. Nettles. Inmate Pierre described Sgt. Nettles as a "good dude" and he ran a good dorm. Inmate Pierre also stated that Sgt. Nettles wasn't the type to go "hands on".

The interview ended at 1022 hours.

The recorded interview of inmate Jerry Pierre was added to the related items section of this case file as INV-81.

277620190211103249

PL000154

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Joshua Land.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

At 1135 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Joshua Land. Inmate Land was sworn in at the beginning of the interview and provided the following information:

- Inmate Land was assigned to A Dorm (A2) in bunk 39 single since the beginning of September, 2017.
- SA Graff provided Inmate Land with an unlabeled photograph of Inmate Craig Ridley. Inmate Land identified Inmate Ridley from the photograph, advising that they had been in A Dorm together for the past three years. Inmate Land advised that Inmate Ridley was also known as "███████". Inmate Land described Inmate Ridley as a laid back person, who stayed to himself.
- Inmate Land was assigned to the inside grounds maintenance for his work assignment. Inmate Land did not wake up with the inmates working the early shift for food service.
- On the date of this incident, Inmate Land had been up late reading. An officer came into the dorm to wake up Inmate Ridley for a second time. Both Inmate Ridley and the officer were cussing at each other as they walked out of the dormitory. Both subjects left the dormitory and went into the either the laundry room or the bathroom. At about 0245 hours, Inmate Land heard what sounded like someone being thrown to the floor in the bathroom and then heard Inmate Ridley yelling for the officer to stop hitting him. Inmate Land could hear the officer hitting Inmate Ridley.

| Case Number: JA-37-0133 | Serial #: 85 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded interview with Inmate Joshua Land. (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000155

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 85 |

- Inmate Land believed that the incident occurred in the bathroom. This was due to the laundry room, which was right next to the bathroom, had a camera in it. Inmate Land advised that the officers usually took inmates to areas without cameras to "beat them".
- Inmate Land was later told the cause of the incident was due to the officer grabbing Inmate Ridley and Inmate Ridley swinging on the officer.
- Inmate Land was on his bunk at the time of the incident and did not leave his bunk to investigate for fear of getting beaten also.
- SA Graff provided Inmate Land with an unlabeled photograph of Captain Jerrels. Inmate Land identified Capt. Jerrels as one of the captains at the camp.
- SA Graff provided Inmate Land with an unlabeled photograph of Sgt John Nettles. Inmate Land identified Sgt. Nettles as one of the officers in the dorm. Inmate Land identified Sgt. Nettles as the officer beating Inmate Ridley. Inmate Land advised that he did not think Sgt. Nettles was the type of officer to beat and inmate.
- Guards told the inmates that Inmate Ridley died from cancer. Inmate Land did not believe the cause of death. Inmate Ridley was in good shape and ran two to three miles daily.
- Per Inmate Land, officers regularly take inmates to the Barber Shop to "beat" them and the officers had just beaten someone at the barber shop the day prior to this interview.

Inmate Land did not provide any further information.

The recording of the interview was electronically attached to this report as related item INV-82.

277620190211103249

PL000156

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████████████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Jamar McCray.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

At 1231 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Jamar McCray. Inmate McCray was sworn in at the beginning of the interview and provided the following information:

- Inmate McCray was assigned to A Dorm (A2) in bunk 2109 lower since the beginning of September, 2017.
- SA Graff provided Inmate McCray with an unlabeled photograph of Inmate Craig Ridley. Inmate McCray identified Inmate Ridley from the photograph, advising that they had been in A Dorm together.
- Inmate McCray was assigned to the barber shop for his work assignment. Inmate McCray worked in the barber shop from after morning count until about 1500 hours. Inmate McCray was the barber for the transit inmates. Inmate Dwight Daniels also worked with Inmate McCray in the barber shop.
- On the date of this incident, Inmate McCray had to go to medical at RMC West Unit for lab work. Inmate McCray was awoken between 0230 hours and 0300 hours to go to medical. Inmate McCray was advised that Ridley had swung on Sgt. John Nettles. While at medical, Inmate McCray saw Inmate Ridley being pushed to the back of medical in a ███████. Per Inmate McCray, Inmate Ridley was responding to officers, but he was slumped in the ████████.
- The incident with Inmate Ridley occurred prior to Inmate McCray waking up to go to

| Case Number: JA-37-0133 | Serial #: 86 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded interview of Inmate Jamar McCray. (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000157

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 86 |

medical and that Inmate Ridley had already been taken from the dorm. When Inmate McCray returned to the dorm from medical, he found Sgt. Nettles packing up Inmate Ridley's bunk. Inmate McCray did not witness the altercation between Sgt. Nettles and Inmate Ridley. Inmate McCray was told about the incident by Sgt. Nettles. A scratch on Sgt. Nettles face was the only injury noted by Inmate McCray.

- When asked about what happened to Inmate Ridley, Inmate McCray advised that everyone knew that Inmate Ridley was beaten up in the back of the laundry room. Inmate Ridley was having a bad morning. Inmate McCray advised that Inmate Ridley could have an attitude when he was woken up to early.
- About a week after the incident, one of the guards told the inmates that Inmate Ridley died of cancer. Inmate McCray did not believe that Inmate Ridley died of cancer, that he was beaten to death by the guards. Whatever happened to Inmate Ridley, Inmate McCray believed that it occurred once he arrived at RMC Main Unit.
- SA Graff provided Inmate McCray with an unlabeled photograph of Captain Jerrels. Inmate McCray identified Capt. Jerrels, but did not know his name. Inmate McCray stated that Capt. Jerrels was one of the better captains at the facility.
- SA Graff provided Inmate McCray with an unlabeled photograph of Sgt. Nettles. Inmate McCray identified Sgt. Nettles as the person in the photograph. Sgt. Nettles was described as a cool, laid back guy and one of the better officers on the compound.

Inmate McCray did not provide any further information.

The recording of the interview was electronically attached to this report as related item INV-83.

277620190211103249

PL000158

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Robert Brown.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL.  The interviews were conducted with inmates that had been housed in A Dorm.  The interviews were recorded using a digital recording device.

At 1122 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Robert Brown.  Inmate Brown was sworn in at the beginning of the interview and provided the following information:

- Inmate Brown was assigned to A Dorm (A2) in bunk 2 single since before September, 2017.
- SA Graff provided Inmate Brown with an unlabeled photograph of Inmate Craig Ridley. Inmate Brown identified Inmate Ridley from the photograph, advising that they had been in A Dorm together. Inmate Brown would play chess with Inmate Ridley. Inmate Ridley slept in either bunk 5 or bunk 6.
- Inmate Brown was assigned to the library for his work assignment. Prior to the library, Inmate Brown worked in food service on the late shift for about two weeks. Per Inmate Brown, the early shift for food service woke up at about 0230 hours or 0300 hours.
- Inmate Brown woke up on the day of this incident to find Inmate Ridley's bunk empty. Inmate Brown was later told that Inmate Ridley went to "jail" due to getting into a fight with Sgt. Nettles in the Laundry Room. Inmate Brown was told that Inmate Ridley struck Sgt. Nettles. While Inmate Ridley and Sgt. Nettles were tussling, other officers got involved and jumped on Inmate Ridley, later taking Inmate Ridley to confinement.
- Inmate Brown heard that Inmate Ridley was frequently beaten while in confinement and that he was not being fed. Inmate Ridley was later diagnosed with cancer and then passed

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 87 |
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded interview with Inmate Robert Brown (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000159

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 87 |

away. Inmate Brown did not believe that inmate Ridley died from cancer due to Inmate Ridley being healthy and in excellent shape.

- Inmate Brown was told by a Sergeant that, while Inmate Ridley was in confinement, they beat him so he couldn't walk. Inmate Brown could not provide the Sergeant's name, but described the subject as having red hair and regularly working at RMC Main Unit.
- Inmate Brown advised that if the altercation had occurred in the dorm, then it would have awoken him.
- Both Inmate Ridley and Sgt. Nettles were laid back and the altercation was unexpected.
- SA Graff provided Inmate Brown with an unlabeled photograph of Captain Jerrels. Inmate Brown identified Capt. Jerrels as the night shift captain. Inmate Brown did not know Capt. Jerrels' name.
- SA Graff provided Inmate Brown with an unlabeled photograph of Sgt. Nettles. Inmate Andrews identified Sgt. Nettles as the person in the photograph. Sgt. Nettles was the sergeant of the dorm for midnight shift. Inmate Brown had only seen Sgt. Nettles get verbal with inmates on one or two occasions.

Inmate Brown did not provide any further information.

The recording of the interview was electronically attached to this report as related item INV-84.

277620190211103249

PL000160

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ███████████████████████
███████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Veil Spaulding.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL.  The interviews were conducted with inmates that had been housed in A Dorm.  The interviews were recorded using a digital recording device.

At 1223 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Veil Spaulding.  Inmate Spaulding was sworn in at the beginning of the interview and provided the following information:

- Inmate Spaulding was assigned to A Dorm (A2) in bunk 11 lower. Inmate Spaulding had previously been in bunk 11 upper and was moved to bunk 11 lower around September, 2017.
- SA Graff provided Inmate Spaulding with an unlabeled photograph of Inmate Craig Ridley. Inmate Spaulding identified Inmate Ridley from the photograph, advising that they had been in A Dorm together. Inmate Ridley slept in bunk 5 lower.
- Inmate Spaulding was assigned to the library for his work assignment. Inmate Spaulding would wake up for work at 0600 hours. Inmate Spaulding never worked with Inmate Ridley.
- Inmate Spaulding woke up on the day of this incident to find Inmate Ridley's bunk had been stripped. Inmate Spaulding took that to mean Inmate Ridley had been transferred. Inmate Spaulding later heard from other inmates that Inmate Ridley had been in an altercation with an officer. Inmate Spaulding did not witness the altercation and only received the information from other inmates. Inmate Spaulding was unable to provide specific information.
- Inmate Ridley was a quiet person, who stayed to himself. Inmate Spaulding did not know Inmate Ridley very well, but did not know Inmate Ridley to swing on anyone without good

| Case Number: JA-37-0133 | Serial #: 88 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded interview with Veil Spaulding. (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000161

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 88 |

reason. Inmate Spaulding did not expect Inmate Ridley to be someone who would fight with the guards.

- SA Graff provided Inmate Spaulding with an unlabeled photograph of Captain Jerrels. Inmate Spaulding did not know Captain Jerrels.
- SA Graff provided Inmate Spaulding with an unlabeled photograph of Sgt. Nettles. Inmate Spaulding identified Sgt. Nettles as the person in the photograph. Sgt. Nettles was one of the dorm officers. Inmate Spaulding had not had any incidents with Sgt. Nettles in the past. Sgt. Nettles had not been back to the dorm since Inmate Ridley left.

Inmate Spaulding did not provide any further information.

The recording of the interview was electronically attached to this report as related item INV-85.

PL000162

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Ronal Reyes.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Ronal Reyes (DC #149090), at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Reyes has been housed at RMC West for three years. SA Clark presented a photo of Ridley to Reyes, to which Reyes indicated that he didn't know Ridley and that he was there to do his time. Reyes advised he's seen Ridley in his dorm but that he didn't have a relationship with him. When asked what his occupation at RMC West was, Reyes stated he worked in medical.

Reyes had no additional information to provide and the interview concluded.

A compact disc containing the recorded interview of Reyes, will be maintained as a related item to the case file INV-86.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 89 |
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview with inmate Reyes DC #149090

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000163

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document a sworn recorded interview with Inmate Christopher Lee.

On December 19, 2017, FDLE conducted a series of interviews at the Florida Department of Corrections (FDOC) Regional Medical Center (RMC) West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

At 1108 hours, Special Agent (SA) Adam Graff and SA Courtney Harrison interviewed FDOC Inmate Christopher Lee. Inmate Lee was sworn in at the beginning of the interview and provided the following information:

- Inmate Lee was currently assigned to A Dorm (A2) in bunk 13 upper. During the month of September 2017, Inmate Lee had been assigned to bunk 24 lower (2124L). Inmate Lee was assigned to RMC West Unit in either July or August of 2017. Prior to RMC West, Inmate Lee had been assigned to RMC Main Unit for approximately three months.
- SA Graff provided Inmate Lee with an unlabeled photograph of Inmate Craig Ridley. Inmate Lee originally advised that the person looked familiar, but he did not know the person's name. Inmate Lee later advised that he remembered Ridley as being housed in the same dorm, assigned to either bunk 5 or bunk 6.
- Inmate Lee was assigned to the Chapel as an Orderly. Inmate Lee was not required to get up for work until the count at about 0900 hours. When asked what time the kitchen workers had to wake up, Inmate Lee advised that they woke up at about 0430 hours.
- Inmate Lee advised he remembered an incident involving Ridley and one of the guards. Inmate Lee was awake one night, to drink coffee and write. Inmate Lee remembered several inmates crowded around the windows to the guards office at about 0400 hours. Inmate Lee explained that inmates were able to see the areas of the laundry room or the other side of the dorm through these windows. Inmate Lee was told by other inmates that

| Case Number: JA-37-0133 | Serial #: 90 |
|---|---|
| Author: Graff, Adam | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date: |
| Approved By: Walsh, Matthew James | |

Description:Recorded Interview with Inmate Christopher Lee. (A-Dorm)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000164

| Case Number | JA-37-0133 |
| IR Number | 90 |

Ridley had gotten into it with one of the Sergeants, with Inmate Ridley eventually swinging at the Sergeant. Inmate Lee did not see the altercation and did not know the name of the Sergeant.

- SA Graff provided Inmate Lee with an unlabeled photograph of Captain Jerrels. Inmate Lee identified Captain Jerrels as one of the Captains working at RMC West Unit, but he was unable to provide Jerrels' name.
- SA Graff provided Inmate Lee with an unlabeled photograph of Sergeant Nettles. Inmate Lee advised that Sgt. Nettles was the person involved in the incident with Ridley. Inmate Lee was unable to provide Sgt. Nettles' name.
- Inmate Lee advised that the Corrections Officers at RMC West Unit are known for fighting with inmates. Per Inmate Lee, inmates did what they were told to avoid getting beat up.

During the interview, Inmate Lee advised he did not have a good recollection of the incident and that he did not personally see the incident.

The recording of the interview was electronically attached to this report as related item INV-87.

277620190211103249

PL000165

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Timothy Osteen.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Timothy Osteen (DC #098129) at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Osteen has been assigned to RMC West for 3 years and is housed in dorm A2. Osteen informed agents that he knew Ridley and that he was his buddy. Osteen said Ridley was a good man, with a little bit of a temper, but he got along with everyone. He said Ridley worked out all of the time and that he didn't look like he was "sixty something years old." On the morning of the incident, Osteen was in medical getting blood work. He didn't witness the incident but saw Ridley in the ████████, once he was brought to medical. He described Ridley being handcuffed and slumped over in the ████████. Osteen didn't hear Ridley say anything but only saw him slumped over. When asked if he knew who was working that morning, Osteen said that he knew SGT Nettles was working the dorm and SGT Guy had the inmates in medical. He couldn't recall which officer had Ridley in the ████████.

Osteen said he never saw Ridley after that morning and only heard that he got his "ass beat" by the officers. Osteen advised Agents that once he got back from medical that morning, SGT Nettles told him that Ridley slapped him. When asked if he noticed any visible injuries to Nettles, Osteen advised that Nettles had a little scratch on his face that looked like it had been from a finger nail. He didn't notice any swelling or redness.

Osteen believed Ridley got his "ass beat" because he's seen it happen to other inmates, mostly the transients. He said the barber shop is notorious for "ass beatings" and that officer's take you over there and "kick your liver out." He described seeing inmate, Michael Glover, the

| Case Number: JA-37-0133 | Serial #: 91 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview with Inmate Timothy Osteen DC #098129

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000166

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 91 |

previous month, getting the "shit stomped" out of him by SGT Young and SGT Hunt.  Osteen advised that Glover stole a pack of cigarettes out of the officer's station and was taken to the box for it.  He said SGT Hunt normally worked over at the main unit, but was working at West Unit the day Glover got his "ass beat."  Osteen said Glover didn't want to go back to the West Unit because the officer's already threatened to "beat his ass," once he got back.  Osteen advised that it's kind of a known fact that they're going to "beat your ass."  When asked if Ridley had anything personal with the officer's prior to the incident, Osteen recalled a few months before, that Ridley had gotten into it with SGT Young, over a pair of shorts.  He advised that Ridley was an old man and that he spoke his mind if he thought something was wrong.  He said he was surprised that Ridley got beat up because he was an older guy and that he mainly stuck to himself.

Osteen couldn't provide any additional information but was concerned about who was going to know that he talked to Agents.  He believed whatever Ridley did, wasn't worth "getting killed over."

A compact disc containing the recorded interview of Osteen will be maintained as a related item to the case file INV-88.

277620190211103249

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. █████████████
██████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Damien C Hayes.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Damien Hayes (DC #M20062) at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Hayes was presented a picture of Ridley and he advised that he didn't know who Ridley was. At the time of the incident, Hayes was in confinement around the same time Ridley was. When asked if Hayes saw Ridley in a ████████, he stated the only person he saw in a ████████ was a "Spanish looking dude." Hayes stated he didn't know anything about what happened to Ridley and never saw him when he was in confinement.

Hayes had no additional information to provide.

A compact disc containing the recorded interview of Hayes will be maintained as a related item to the case file INV-89.

| Case Number: JA-37-0133 | Serial #: 92 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview with Inmate Damien Hayes DC#M20062

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000168

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Christopher Garland.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Christopher Garland (DC #U47395) at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Christopher Garland informed Agents that he has been housed RMC West for six months and was currently residing in A2 dorm. Garland advised that he didn't know Ridley and at the time the incident occurred, he was housed in F dorm.

Garland couldn't provide any additional information and the interview concluded.

A compact disc containing the recorded interview of Garland will be maintained as a related item to the case file INV-90.

| Case Number: JA-37-0133 | Serial #: 93 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview with Inmate Christopher Garland DC#U47395

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000169

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the interview of inmate, Frankie Crumpton.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Frankie Crumpton (DC #V19063), at RMC West.  The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Crumpton has been assigned to RMC West for six months and is housed in dorm A2, bunk 08. Crumpton knew Ridley and worked on the kitchen staff with him.  Crumpton believed Ridley was liked by everyone and advised that he pretty much stayed to himself, with the exception of playing chess.  When asked if Crumpton knew about the incident that took place, he advised that he heard but didn't know too much.  Crumpton stated that he heard a Lieutenant and Officer put their hands on Ridley.

On the morning of the incident, Crumpton advised that everyone got up around 2:30 to get ready for work.  While everyone was getting ready, Ridley was in the laundry room with two officers, by himself.  While everyone started trickling into the laundry room to line up, the officers told everyone to go back to their bunks, while the laundry room door was closed.  When asked which officers were in the laundry room with him, Crumpton couldn't recall but believed they were in the laundry room for 5 to 10 minutes.  Crumpton advised that he never saw Ridley after the incident.  He later heard that Ridley went to K dorm, where they continued to beat him and not feed him.

Crumpton couldn't provide any additional information and the interview concluded.

A compact disc containing the recorded interview of Crumpton will be maintained as a related item to the case file INV-91.

| Case Number: JA-37-0133 | Serial #: 94 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Frankie Crumpton DC#V19063

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000170

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 94 |

277620190211103249

PL000171

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Daniel Cooper.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Daniel Cooper (DC #H36983) at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Cooper has been assigned to RMC West for about six months and is housed in A2 dorm, bunk 12 low. Cooper recognized the photo of Ridley but couldn't identify him by name. Cooper said he talked to Ridley a few times and knew that he was from Chicago. Cooper advised that Ridley seemed to be a "pretty good dude" but didn't know too much more about him. He never saw Ridley get in any verbal altercations with inmates or staff. When asked about the incident that took place, Cooper advised that he was asleep that morning and once he woke up, he heard that Ridley went to the box. SA Clark asked Cooper if he had heard anything else since the incident occurred, Cooper stated that he "pleaded the fifth" and that he stays in his own little world.

Cooper didn't provide any additional information and the interview concluded.

A compact disc containing the recorded interview of Cooper will be maintained as a related item to the case file INV-99.

| Case Number: JA-37-0133 | Serial #: 95 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Daniel Cooper DC#H36983

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103249

PL000172

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████

███████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the interview of inmate, Brandon Allison.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Brandon Allison (DC #V23385) at RMC West.  The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Allison advised that he's been housed at RMC West since 2015.  Allison was assigned to A2 dorm, bunk 1107 low.  When asked if Allison knew Ridley, he stated "yes" and that he used to be his bunk mate and that Ridley worked in food services with him.  Allison said he never saw Ridley get violent but he would verbally respond to inmates and staff.  Allison advised that he wasn't working on the morning of the incident.

When asked about the incident, Allison advised that he heard Ridley had died of cancer.  He didn't believe it, because Ridley was in better shape than anyone.  Allison informed Agents that an officer woke the inmates up and told them that Ridley had passed away in confinement.  When asked if he heard anything else regarding the incident, Allison advised that he heard Ridley hit SGT Nettles and he was taken to confinement.  Allison heard the altercation occurred in the laundry room that day.  Once the altercation began, the other inmates in the laundry room were told to go back to their bunks and Ridley was taken outside.  Allison also heard from inmates, that were in confinement at the time, that once Ridley arrived, the "police kept jumping on him. "

Agents questioned Allison about the daily routine of the cook staff.  Allison advised the cook staff is woken up by an officer daily and they're escorted to the kitchen around 3:00-3:15.  When asked how many people are woken up and escorted to the kitchen, Allison advised that 14-22 people are lined up and escorted to the kitchen.  He also advised that if someone is lagging

| Case Number: JA-37-0133 | Serial #: 96 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Brandon Allison DC#V23385

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000173

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 96 |

behind, the officer will come back and take the stragglers with the transfers about an hour later.

Allison couldn't provide any additional information and the interview concluded.

A compact disc containing the recorded interview of Allison will be maintained as a related item to the case file INV-100.

PL000174

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Brian Peters.

On Tuesday, December 19, 2017, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Brian Peters (DC #V45361) at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Peters has been assigned to RMC West for 3 and one half years, and is housed in Dorm A2, bunk 33 single. Peters knew Ridley and worked with him in the kitchen when he first got to RMC. He advised he never saw Ridley get into an altercation with inmates or officers. Peters said that Ridley would occasionally refuse to go to work, for which he would be sent to confinement.

On the morning of the incident, Peters was asleep in his bunk. He advised that he didn't hear anything that morning because he wears ear plugs when he sleeps. Once he woke up that morning, he heard there was an altercation between Ridley and SGT Nettles and Ridley was sent to confinement. He heard once Ridley went to confinement, he was "roughed up." When asked if he had ever seen any incidents prior to Ridley's, he acknowledged he did see some incidents of use of force, but didn't have any specifics.

Peters had no additional information to add and the interview concluded.

A compact disc containing the recorded interview of Peters will be maintained as a related item to the case file INV-102.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 97 |
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Brian Peters DC#V45361

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000175

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████████████████ ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Christopher Spence.

On Thursday, January 4, 2018, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Christopher Spence (DC #931815), at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Spence advised that he has been assigned to RMC West for three years and is housed in A dorm. Spence was presented with a photo of Ridley and he indicated that he was his good friend and that they referred to him as the "████████." Spence advised that Ridley was a good guy and that he was respectful to everyone.

Spence witnessed the first incident with Ridley and SGT Young. He said Ridley was locked up and brought back to A dorm on the one side. He described an altercation Ridley had with officer Young. He believes SGT Young has been there a long time and has "backing" from his superiors. He advised that Young "picks on" individuals and that Ridley would defend himself verbally. When Ridley came back, he was taken to the box again, because of an incident with SGT Young. He described Young as being a dorm officer.

Inmate Spence was presented with photos of the officers. He advised the Captain (Jerrels) in the photo is the one that allows SGT Young to get away with what he does. He advised that SGT Young has stated he doesn't care about Julie Jones and that he does what he wants to do. Spence advised that before cameras were put in place, the beatings took place in the dorm. Once cameras were installed, the laundry room, bathroom area and barber shop became the areas where the beatings occur, because they were off camera. Spence heard that Ridley was beaten over in the main unit.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 98 |
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Christopher Spence DC#931815

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000176

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 98 |

Spence also advised that before agents arrived at RMC, they were called "snitches" by officers. He also advised that a female maintenance worker was writing down the time to see how long the inmates were in interviews.

Spence went on to describe the way the officers beat the inmates.  He advised that inmates are handcuffed first, sprayed, and then beaten.  He advised the shift with Officer Height and SGT Young is the shift that "turns it up."   He also indicated that, Ms. Belle has a lot of information and that she witnesses a lot of the beatings.  Spence believes the beatings get worse when inmates are sent over to the main unit.

Spence had no additional information to add.

A compact disc containing the recorded interview of Spence will be maintained as a related item to the case file INV-103.

PL000177

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████ ████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Eric Roldan.

On Thursday, January 4, 2018, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Eric Roldan (DC #I13374) at RMC Main Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

The interview began at 10:14 and Roldan began by asking why they were there. SA's Clark and Pena informed Roldan they were there to determine what happened to inmate, Ridley. Roldan asked if Ridley had died and once agents acknowledged that Ridley had passed, Roldan responded by saying they "killed the motherfucker." Roldan said whatever happened that day, it started in the laundry room. He described everyone was getting ready to go work in the kitchen that morning and that Ridley informed the officers that it was his day off. Roldan said that Ridley was in the laundry room, and then he never saw him again and was told a few days later that Ridley died of cancer. He didn't believe that Ridley had died of cancer because he didn't smoke or do anything bad.

When asked if he knew the officers involved with Ridley that morning, Roldan said he couldn't remember the officers in the laundry room that day, but that he could identify them if he had pictures. Roldan advised that Ridley was in the laundry with two other officers. He also advised the laundry room had a blind spot by the back door. He said Ridley was in that area and that all of the other inmates had already left for the kitchen. Roldan went on to say that Ridley got into it with the Sergeant because he didn't want to go to work, as it was his day off. He said Ridley was then taken down by the Sergeant in the blind spot. Once Ridley was taken down, he was handcuffed and everyone else left for the kitchen. He described the sergeant as being a big guy but that he couldn't remember his name.

| Case Number: JA-37-0133 | Serial #: 99 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Eric Roldan DC#I13374

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000178

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 99 |

Roldan informed agents that he's seen inmates get beaten while he has been assigned to RMC.  He described the laundry room, bathroom, and barber shop as the areas where officers beat the inmates, as there aren't cameras.  Roldan advised that he was being released that day or the next, and could provide more information once he was released.

Roldan had no additional information to provide and the interview concluded at 10:29.

A compact disc containing the recorded interview of Roldan will be maintained as a related item to the case file INV-104.

277620190211103250

PL000179

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ██████████ in Jacksonville, Florida. ██████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Joseph Moses.

On Thursday, January 4, 2018, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Joseph Moses (DC #388141), at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Joseph Moses has been assigned to RMC West for three years. He's housed in dorm A1 and works in laundry. Moses advised that he knew Ridley, and he had a little bit of a problem when people told him what to do. Moses stated Ridley was outspoken and on one occasion, had an incident with SGT Young. Ridley went to lockup for a few weeks, as a result. Moses believes the incident was a few months prior to the September incident.

When asked about the most recent incident, Moses advised that he heard something happened that morning when everyone was getting ready to go to the kitchen. Moses stated once he woke that morning and got ready for work, he was told by the officer to get Ridley's bed roll. He believed he was told by Officer Wimberley to get Ridley's bed roll. Moses advised that Officer Wimberly quit working the month prior to this interview.

When asked about the officers working the morning of the incident, Moses couldn't recall what officers were working that day. Moses was presented a picture of SGT Nettles and CPT Jerrels. Moses said he knew the SGT but couldn't identify his name. He advised that he'd never seen the CPT before.

Moses had no additional information to add and the interview concluded.

A compact disc containing the recorded interview of Moses will be maintained as a related item

| Case Number: JA-37-0133 | Serial #: 100 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Joseph Moses DC#388141

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000180

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 100 |

to the case file INV-106.

277620190211103250

PL000181

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████

████████████████████████████████████████████  Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the interview of inmate, Antoine Houston.

On Thursday, January 4, 2018, Special Agent (SA) Jami Pena and SA Michael Clark conducted a sworn digitally recorded interview of FDC inmate, Antoine Houston (DC #J28188), at RMC West.  The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive report.

Antoine Houston has been assigned to RMC West for twenty three months.  Houston was presented with a photo of Ridley and identified him as the "███████."  Houston said he used to work out with Ridley and that he was the orderly of the rec yard when he first got there. Houston advised that Ridley was liked by everyone and that he would speak his mind.  Houston described an altercation Ridley had with SGT Young, over a disagreement with another inmate.

Houston advised that he works in the barber shop and inmates are taken to the barber shop all of the time for a "pat down." The barber shop is the place for the "pat downs" because there aren't cameras.  When the "pat down" initiates, the inmates are taken into the barber shop by the officers and the workers are told to leave.  Houston advised that once the inmates exit the barber shop, "they're bloodied."  Houston described an incident that took place on December 18 th.  An inmate was brought in by SGT Height for a haircut.  The inmate didn't want a haircut, so an altercation ensued.  The inmate was getting the best of SGT Height and SGT Phillips stepped in.  Houston stated SGT Young and SGT Eatmon were involved as well.  Houston also said that, SGT Eatmon starts whatever is going on in the yard and SGT L Young is "going to beat you."  Houston advised the shift that has the most excessive force incidents, is the B shift. The B shift consists of SGT's Height, Phillips, Eatmon, and Young.

Houston went on to say that he was awake on the morning of the incident with inmate Ridley. He described seeing SGT Nettles and the Captain as he was going to the restroom.  Houston

| Case Number: JA-37-0133 | Serial #: 101 |
|---|---|
| Author: Pena, Jami Henson | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Antoine Houston DC#J28188

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000182

| Case Number | JA-37-0133 |
| IR Number | 101 |

advised that he saw Ridley through the glass and he heard "m-fer I told you." Houston said he wasn't sure if it was SGT Nettles or the Captain talking to Ridley that way.  After the exchange of words, Houston heard the back door open and could hear Ridley "hollering."  Ridley "hollered" for about 15-20 minutes, asking the officers to "please stop."  Houston said the nurse brought the ████████ about 20 minutes later.   He described seeing Ridley in the ████████, slumped over with a bloody towel over his head.

Houston advised that he went to confinement (cell CM-1112) on Thanksgiving after a scuffle with another inmate.  His roommate "Gainesville" in confinement was the orderly, during the time Ridley was sent to confinement.  "Gainesville" told Houston that Ridley was beaten up in the cell when he was in confinement.  "Gainesville" described seeing Ridley in his cell, lying in a puddle of blood.  "Gainesville" told Houston that he knocked on the window to get help and the officers wouldn't help Ridley, telling him not to worry about it.

Houston was asked if he heard anything about Ridley after he went to confinement.  Houston advised that he heard Ridley died of a tumor and cancer.  He then heard Ridley died of a broken neck.  Houston advised that after the first set of interviews with FDLE Agents, the officers on the compound were asking inmates "What did FDLE say?" He then said all of the inmates wanted to make sure there were pictures taken in the barber shop.  They were hoping there would be pictures taken because there was still blood in the barber shop from the inmate getting beat up on December 18th (the day before FDLE visited).  Houston said there was blood and boot scuff marks in the barber shop.  He described the inmate as being "a skinny white dude" that didn't want his hair cut.  Houston advised that inmate McArthur, was told by SGT Height to clean the barber shop after the beating.  He advised that everyone had to go into the dorm when the inmate got beat up.

Houston had no additional information to add and the interview concluded.

A compact disc containing the recorded interview of Houston will be maintained as a related item to the case file INV-107.

PL000183

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.The purpose of this investigative report is to document the interview of inmate Eric Roldan (DC# I13374).

On December 19, 2017, at approximately 0930 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Eric Roldan at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Roldan was sworn in by SA Clark and the following information is a summary of the interview. An original copy of the interview was entered as a related item in this case (INV# 146).

Roldan stated he had been assigned to the kitchen staff for approximately two months and was housed in dorm A-2. SA Clark showed Roldan a photograph of inmate Craig Ridley, and Roldan positively identified Ridley. SA Clark asked Roldan if he remembered an incident which occurred in September involving inmate Ridley? Roldan said he was off that day and did not know what happened, but he knew Ridley had "went to jail" meaning confinement. SA Clark asked Roldan how long he was housed with Ridley and what type of person Ridley was? Roldan said he was housed with Ridley for six years and Ridley was a good person and never caused problems with other inmates or staff.

The morning of the incident, Ridley was summoned for work with the kitchen crew. Ridley and other inmates went to the laundry room; however, Ridley never came back. Roldan said he was off that day and everyone would tell us the same story, " Nothing because they are scared." SA Pena asked Roldan if he was in the laundry room the morning in September with Ridley, and he said "no." At 0200 hours officers came and woke up the kitchen crew and the inmates went to the laundry room to get ready. That was the last time Roldan saw Ridley.

SA Clark asked Roldan if he remembered what officers where there the morning of the incident. Roldan stated again, " Let me tell you something, nobody will tell you anything, when

| Case Number: JA-37-0133 | Serial #: 102 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Eric Roldan DC# I13374

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000184

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 102 |

you leave (Indicating FDLE) these people will come get you." SA Clark asked if he meant the staff by stating "these people", and he stated "yes." Roldan said he was due to be released on January 6, 2018, and he just wanted to finish his time and get home to his family with no problems. SA Clark asked if he would talk again with agents once released, and Roldan said he would. The interview with Roldan was concluded.

PL000185

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettlesa and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate Bradford Thomas (DC# 148881).

On December 19, 2017, at approximately 1030 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Bradford Thomas at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Thomas was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 145).

Thomas stated he had been housed at RMC West Unit for two years. He identified a picture shown to him by SA Clark as Ridley. He said Ridley was an easy going guy and he worked out a lot. SA Clark asked if he was aware of the incident that occurred in September involving Ridley and staff. He said he was sleeping at the time and did not witness the incident, but heard through other inmates there was an altercation and Ridley allegedly hit a sergeant. SA Clark asked Thomas if he ever witnessed Ridley in altercations with staff or other inmates and he said no. The interview was concluded.

| Case Number: JA-37-0133 | Serial #: 103 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Bradford Thomas DC# 148881

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000186

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate Cornelius Shade (DC# I15496).

On December 19, 2017, at approximately 1005 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Cornelius Shade at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Shade was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 144).

Inmate Shade was shown a photograph of Ridley and stated he recognized him. Shade said he slept on the other side of the dorm from Ridley in A-1. At one time he worked on the kitchen crew with Ridley. Shade was sent to "K" dorm at RMC Main Unit and changed jobs upon his return to RMC West Unit so he no longer worked with Ridley. SA Clark asked Shade if he witnessed what happened to Ridley and he stated he did not, but he heard about what occurred. Shade heard Ridley was beaten and taken to "K" dorm at RMC Main Unit. Shade heard the information on what he called "Inmate.com", or inmates talking amongst themselves. SA Clark asked Shade if he heard the names of the staff involved in the incident with Ridley. Shade said he did not want to say names because he was not sure who was involved or what was true. Shade said beatings occur regularly so it did not surprise him. SA Clark asked Shade if he witnessed a particular officer beat someone and he said "Yes, Sgt. Young." Shade said in July 2017, he was pepper sprayed for nothing. He was asked to place his hands behind his back and he complied at which time two sergeants ordered Officer Osteen to spray him. Shade described Ridley as an inmate who got along with others but was outspoken. Shade said while assigned to the kitchen with Ridley, he (Ridley) did his work and did not bother others. Shade said he had observed inmates taken off camera to the bathroom or

| Case Number: JA-37-0133 | Serial #: 104 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date: 12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description: Interview of inmate Cornelius Shade DC# I15496

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000187

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 104        |

the Barber Shop and slapped or beaten. Around Thanksgiving, Sgt. Young took him aside and stated "I can't wait for you to slip so I can put my hands on you." Shade said the officers have no respect for inmates and verbally abuse them and the inmates could not say anything for fear of retaliation. Shade said he looks at officers a certain way because he could not verbally respond and that is why he was threatened by Sgt. Young. SA Pena confirmed with Shade that the two Sergeants had told Officer O'steen to spray him when the incident occurred in the kitchen, and Shade said "Yes". The interview was concluded.

277620190211103250

PL000188

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate James Edwards (DC# G08986).

On December 19, 2017, at approximately 1030 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate James Edwards at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Edwards was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV#) 143.

Inmate Edwards was shown a picture by SA Clark and identified it as Ridley. Edwards stated everyone called Ridley "Mr. ██████". Edwards said Ridley was on the kitchen work crew and never had problems. SA Clark asked Edwards if he remembered or witnessed an incident in September involving Ridley and staff. He said he did not witness the incident, but heard from other inmates what occurred. Edwards heard Ridley had passed away from cancer, but other inmates said staff had killed him. Edwards did not believe Ridley died of cancer because Ridley was in good physical condition. SA Pena asked Edwards how long he had been at RMC West Unit, and he said since October 3, 2016. He met Ridley in September of 2017 when he transferred to "A" dorm. SA Clark asked Edwards if he had observed other cases of abuse. Edwards said he witnessed inmate Mike Glover get beaten and taken to confinement. Edwards named Sgt. Hunt, who normally works at RMC Main Unit as the person who beat Glover. Edwards witnessed staff take Glover out at recreation and place him against the wall. Glover did not resist and was handcuffed, sprayed, thrown to the ground, and kicked by Sgt. Hunt. Edwards said Glover was accused of stealing cigarettes from an officer. SA Clark asked Edwards if he was aware of Glover's job assignment and he said Glover worked outside grounds. The interview was concluded.

| Case Number: JA-37-0133 | Serial #: 105 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate James Edwards DC# G08986

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000189

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 105 |

277620190211103250

PL000190

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. █████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

 The purpose of this investigative report is to document the interview of inmate Karren Plaines (DC# J44105).

On December 19, 2017, at approximately 1030 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Karren Plaines at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Plaines was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 142).

Inmate Plaines was shown a photograph by SA Clark and he identified the person as Ridley. Plaines said Ridley was nicknamed the "Governor" because he was the oldest person in the dorm. He said Ridley was in very good physical condition. Plaines did not work with Ridley but said Ridley was assigned to the kitchen work crew. SA Clark asked Plaines if he remembered an incident that occurred in September involving Ridley and the staff. Plaines was reluctant to answer and asked SA Clark "Where is this going?" SA Clark explained that information he provided would be retained by FDLE for the purpose of the investigation. Plaines appeared concerned and stated "This has a way of getting back on us" meaning the inmates. Plaines stated "This happens every day, it happened yesterday, same thing, same people and officers, if you say something you get dealt with and you have to deal with it."

Plaines said it was the prior shift in September that was involved in the incident with Ridley . He said Sgt. Nettles came to wake Ridley up for kitchen duty, and instead of tapping on Ridley's bunk, Sgt. Nettle's apparently touched Ridley. Ridley jumped up disoriented and startled and said things to Sgt. Nettles. Plaines explained it was not normal to touch a person to awake them

| Case Number: JA-37-0133 | Serial #: 106 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Karren Plaines DC# J44105

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000191

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 106 |

and instead you should tap on their bunk. Plaines said Sgt. Nettles escorted Ridley to the laundry room and Ridley willingly went with him. Sgt. Nettles was joined by other officers but Plaines did not know their names. SA Clark showed Plaines a diagram of the dorm and he pointed out the directions to the laundry room and the path Sgt. Nettle's took with Ridley. Plaines was aware of and pointed out areas that he called "blind spots" for the camera system. Plaines said he had moved to the glass so he could see what was going on with Ridley. He observed Sgt. Nettles and the other officers as they escorted Ridley toward the rear of the laundry room. As they did so, the officers started to surround Ridley and an officer ordered Plaines and other inmates away from the glass so they could not see.

At that time, Plaines heard sounds consistent with someone being beaten and Ridley was screaming. Plaines could hear Ridley screaming for the officers to stop and heard Ridley state "I'm not resisting, stop". Plaines said he could not hear everything verbatim, but he heard who he recognized as Ridley screaming, "I'm not resisting, stop". He did not see Ridley again until Ridley was outside and being wheeled to medical. Plaines said Ridley looked bad and described Ridley as looking "out of it", and slumped to one side. Plaines said he did not condone what goes on and was worried about his safety. The interview was concluded.

277620190211103250

PL000192

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate Michael Woodard (DC# I13374).

On December 19, 2017, at approximately 0945 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Michael Woodard at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Woodard was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 141).

Inmate Woodard was shown a photograph Ridley and recognized him, but did not recall his name. Agents advised Woodard the person pictured was named Ridley. Woodard said he knew Ridley and he (Ridley) was housed in Dorm A, and was assigned to the kitchen crew. Woodard heard talk among other inmates regarding the incident when he returned from work. Woodard heard Ridley "went to the box", (confinement) and later died of cancer but he did not believe it. Woodard said officers were known to beat inmates for no apparent reason and use excessive force.

Woodard said an inmate was beaten in the barber shop on December 18, 2017. Woodard did not know the name of the inmate but said he was a transient inmate not permanently assigned to RMC West Unit. Woodard saw the inmate escorted out of the barber shop. The inmate had blood on him. Woodard said the officers working the shift were the problem and were known to abuse inmates. According to Woodard, Sgt. Young often harassed Ridley. Woodard named the following officers involved in the abuse of inmates; Sgt. Young, Sgt. Busch and Sgt. Hay. Woodard said Sgt. Busch often threatened to slap inmates for no reason. Woodard said he had been assigned to RMC West Unit for a year and a half and again stated Ridley never caused

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 107 |
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Michael Woodard DC# J49366

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000193

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 107 |

problems. The interview was concluded.

277620190211103250

PL000194

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate Raymond McArthur (DC# 305582).

On December 19, 2017, at approximately 1030 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Raymond McArthur at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate McArthur was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 140).

McArthur was shown a photograph of Ridley and he positively identified the photograph as such. McArthur said Ridley slept across from him in dorm A-2, and he had been housed in the dorm about two years, however, Ridley had been there much longer. Ridley got along well with other inmates but was outspoken. McArthur was the staff barber and did not work with Ridley. He did not witness the incident that occurred with Ridley back in September and was sleeping at the time. McArthur heard later Ridley attempted to punch Sgt. Nettles and was beaten pretty bad by Sgt. Nettles and other officers. McArthur could not provide specifics.

McArthur said the morning procedure would have been to wake the entire kitchen crew at 0200 hours and there should be other witnesses. When asked if there was one particular shift or staff member Ridley had problems with, McArthur said "Yes, the shift working day shift today." McArthur said Sgt. Young works that shift and Sgt. Young gave Ridley problems. When asked if there had been a recent incident in the barber shop, McArthur said on December 18, 2017, an inmate assaulted the barber and there was a use of force by officers. McArthur said he was the staff barber and did not see what occurred. The interview was concluded.

| Case Number: JA-37-0133 | Serial #: 108 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Raymond McArthur DC# 305582

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000195

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of inmate Thomas Blackburn (DC# 4650).

On December 19, 2017, at approximately 1030 hours, Special Agents (SA) Michael Clark and Jamie Pena, conducted a recorded interview with inmate Thomas Blackburn at Reception Medical Center (RMC) West Unit, located at 8183 SW 152nd Loop, Lake Butler, Union County Florida. Inmate Blackburn was sworn in by SA Clark and the following information is a summary of the recorded interview. An original copy of the interview was entered as a related item in this case (INV# 139).

Inmate Blackburn was shown a photograph and he identified it as Ridley. Blackburn had been in the system for 8 months and had been working with Ridley since the summer. Blackburn was present the morning the incident occurred but did not witness the incident. He later heard inmates talk about what happened to Ridley. Blackburn heard Ridley was in an altercation with a sergeant and was sprayed and taken to confinement. Blackburn said the last time he saw Ridley, he (Ridley) was still in bed and officers escorted the rest of the kitchen crew to work. SA Clark asked Blackburn what type of person Ridley was and he said Ridley seemed peaceful. The interview was concluded.

| Case Number: JA-37-0133 | Serial #: 109 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Thomas Blackburn DC# C04650

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000196

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Courtney V. Fray, DOC # J13384.

On Tuesday, December 19, 2017, at approximately 0949 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Courtney Fray at RMC West Unit.  This interview concluded at 1022 hours.

A second interview of Fray was subsequently conducted by SA David Meacham and SA David Maurer on January 4, 2018.  This interview was documented in Investigative Report (IR) 76. Please refer to IR 76 for complete details as it relates to that specific interview.  The content of Fray's initial interview by SA Soulis and SA Nauss was consistent with the follow-up interview conducted on January 4, 2017.

SA Nauss provided Fray with a diagram of A Dorm for review,  whereupon he initialed and made a notation of both his and Ridley's location prior to/during the incident.

A compact disc containing the digitally recorded interview of Fray and the diagram of the dormitory will be maintained as a related item to the case file (INV 92).

| Case Number: JA-37-0133 | Serial #: 110 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/19/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Courtney Fray

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000197

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Steven Shane Wallace, DOC # 126176.

On Tuesday, December 19, 2017, at approximately 1140 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Steven Wallace, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Wallace was assigned to A2 dormitory, bunk 2117 upper around the time of the September 2017 incident involving Ridley. On the date of this interview, Wallace was assigned to bunk 2131. Wallace was assigned to the roofing crew but was previously assigned to food services for approximately 18 months. Wallace believed he was assigned to the roofing crew on or about the date of this incident.

Wallace knew Ridley to go by the nickname "The █████". Ridley was quiet and stayed to himself. He never saw Ridley cause conflict except with staff. Ridley tried not to "take too much shit off of them". He was respectful, but if he felt like he was being disrespected he wasn't shy about being vocal.

Sometime during September of 2017, Ridley went to the "box" (confinement) during the early morning around 0300 hours. Wallace was sleeping at the time of the incident and did not have direct knowledge of what transpired. It had been relayed to him that corrections personnel woke Ridley up at 0230 hours to begin the a.m. shift in the kitchen. Ridley became upset because his schedule changed and he was supposed to work the p.m. shift. Wallace heard that Ridley had an altercation with Sgt. Young and "they beat the brakes off of him". Ridley was then taken to confinement and by the time he arrived all he could do was "lay on the floor and moan" because he had been so badly beaten. Wallace later heard that Ridley died.

| Case Number: JA-37-0133 | Serial #: 111 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |
| Description:Interview of inmate Steven Wallace | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000198

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 111 |

Wallace himself had not had any physical altercations with corrections personnel, but had witnessed it with other inmates.  As it pertained to physical altercations involving corrections personnel, the shift working at the time of Wallace's interview were the worst. Wallace stated it was "pretty much fair game" as it pertained to inmates targeted by corrections staff. Corrections officers took inmates into the barber shop where there were no cameras to "get a haircut". Wallace further stated "you're going to come out bloody".  Inmates were also taken to the kitchen which also did not have cameras. Wallace advised "they know what they're doing". He identified Young, Hunt, McCory, and Hate as the officers to avoid. Wallace further stated that they (inmates) were not animals and what was done to Ridley was not right.

This interview concluded at approximately 1155 hours.

A compact disc containing the digitally recorded interview of Wallace and the diagram of the dormitory will be maintained as a related item to the case file (INV 93).

PL000199

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jerrels. ████████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Marlo Green, DOC # 379424.

On Tuesday, December 19, 2017, at approximately 1043 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Marlo Green, at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

On the date of this interview, Green was assigned to dormitory A2, bunk 115 lower. He had been assigned to that dormitory since March of 2017. Green was assigned to food services and had been since April of 2016. According to Green, Ridley was assigned to 105 lower. Green believed he (Green) may have been assigned to 104 lower when the incident involving Ridley occurred.

Green was assigned to A-shift and stated that inmates assigned to food services got up at 0230 hours and would brush their teeth and wash their face. Inmates had a 15 minute grace period while they waited for count to clear. They were taken into to the laundry room before being escorted to the yard where they were counted again. After this count, they were escorted to the kitchen. Green advised that there were typically two corrections officers in the dormitory. A "TA" or officer without rank and a sergeant would participate in the escort of the prisoners. There were other corrections officers stationed on the yard itself. Approximately 15-20 inmates worked the A-shift for food services.

A photograph was presented to Green during the interview and he identified the subject in the photograph as Craig Ridley.

Green worked with Ridley in food services in the past but was not working the day of the incident. Green heard there was an altercation between Ridley and Sgt. Nettles. Green stated

| Case Number: JA-37-0133 | Serial #: 112 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |
| Description:Interview of inmate Marlo Green | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000200

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 112 |

he could not see Ridley putting up a fight. He stated that Ridley was referred to as the "█████████" as he was very outspoken and talked about yachts.

Green described Ridley to be approximately 5'4, 160 pounds and in good shape. Green described Sgt. Nettles as a big guy and made the comparison that Ridley and Nettles were like "David and Goliath".

Green did not know Ridley to have any violent tendencies or be an aggressor. Ridley was not a trouble maker, but Green reiterated that Ridley was outspoken.  If someone said something Ridley did not agree with he was going to let you know.

Ridley went to the "box" which is also known as confinement two times in the year Green knew him. The first incident pertained to a pair of short pants belonging to Ridley that went missing from laundry and Ridley had a "hissy fit".  The second incident which resulted in Ridley going to confinement was his altercation with Sgt. Nettles in September of 2017.

Green did not have direct knowledge of the incident involving Ridley and Nettles.  He heard that Nettles was conducting count and told everyone to "shut the fuck up" because it was loud. Ridley told Nettles he could not talk to them that way. Green wasn't sure if Ridley was handcuffed or what happened after that. He heard Ridley was killed in K dormitory.

Green later heard from another inmate that Ridley died and had cancer. Green could not recall the name of the inmate who provided this information to him. Green stated he'd never seen Ridley go to medical or have sick call outs so there were no indicators of illness to Green.

Green stated that inmate Brandon Allison was Ridley's bunk mate and was assigned to 105 upper. Allison went to work the morning of the incident with Ridley.

Green was not aware of Ridley having issues with any corrections staff with the exception of the above referenced incident where his short pants went missing from the laundry.

This interview concluded at approximately 1104 hours.

A compact disc containing the digitally recorded interview of Green will be maintained as a related item to the case file (INV 94).

Page : 2 of 2

277620190211103250

PL000201

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, David S. Teller, DOC # J42076.

On Tuesday, December 19, 2017, at approximately 1115 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, David Teller, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

On the date of this interview, Teller was assigned to A dormitory, 2142 single and had been assigned to this bunk for approximately three years. Teller is a prison orderly and handled supplies to include toilet paper, trash, etc. Teller was assigned to food services in 2010, but only held that assignment for six months.

SA Nauss presented a photograph to Teller and he stated he knew the person in the photograph as "Craig Ridley" and had known him for years.

Teller described Ridley as quiet and stated that he kept to himself. He also stated that Ridley didn't "take anything" from people to include corrections officers. He was respectful to those who were respectful to him. He did not seem to have any issues with other inmates or much interaction with corrections personnel with the exception of the two times he went to the "box". Teller never observed Ridley to be violent. Teller was also not aware of Ridley having any medical related issues.

Teller recalled the day Ridley went to the box for the last time. On the morning in question, Teller woke up at approximately 0630 hours. Teller went to the bathroom and then back to his bunk and noticed Ridley's bunk was empty and his mat was rolled up. It took him a second to recall who occupied that bunk and he then thought Ridley must have gone back to confinement. He then heard that Ridley went to confinement after getting "high on something".

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 113 |
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate David Teller

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000202

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 113 |

This was a surprise to Teller because he had never seen Ridley "smoke or anything like that". He'd also heard there was an altercation between Ridley and sergeant which resulted in Ridley being locked up.  That sounded normal to Teller but Ridley never came back to the dormitory. Teller did not recall the name of the involved officer, but stated he was heavy set with gray hair and a goatee. Teller stated this sergeant was very laid back and that this incident seemed uncharacteristic of that particular sergeant.  SA Nauss presented a photograph to Teller and he identified the person in the photograph as the involved sergeant. It should be noted the photograph depicted the image of Sergeant Nettles.

Teller spoke with Ridley the night before the incident and said he seemed fine and didn't tell him anything was wrong.  He believed that Ridley was supposed to work the morning of the incident.

Teller advised that officers and inmates in the dorm "pretty much get along".  Teller had never really had any negative altercations with corrections personnel.  The last negative interaction he recalled between corrections personnel and residents involved an inmate by the name of "Glover".  Glover was alleged to have taken cigarettes from a corrections officer and was placed in confinement as a result.  He described Glover as loud and outspoken, and further stated he caused trouble for himself.  He believed Glover may have been sprayed during a use of force, but he did not know the details or what precipitated that response from corrections.

This interview concluded at approximately 1135 hours.

A compact disc containing the digitally recorded interview of Teller and the diagram of the dormitory will be maintained as a related item to the case file (INV 95).

277620190211103250

PL000203

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████
████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Michael J. Wahlse, DOC # 741256.

On Tuesday, December 19, 2017, at approximately 1431 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Michael Wahlse, at RMC. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

On the date of this interview, Wahlse was located at the RMC hospital. He was previously housed in D, E, F and K dorm while at RMC. Wahlse was assigned to F dorm prior to going to confinement for 50 days. He could not recall why he went to confinement and stated his mind was not functioning like it should. He attributed his failure to recollect to the unknown reason he "fell out" a couple months ago which resulted in his hospital stay.

Wahlse advised there was tension between inmates and corrections staff in confinement. He could not recall any physical altercations occurring between inmates and corrections personnel while he was there. The only person he spoke to in confinement was his cell mate but he did not recall who that was.

SA Nauss presented a photograph of Ridley to Wahlse and he stated he may have seen him around. Wahlse did not recall having any interaction with Ridley and further stated they moved in different circles.

Wahlse did not provide any information pertaining to the incident involving Ridley or have any other pertinent information.

This interview concluded at approximately 1444 hours.

| Case Number: JA-37-0133 | Serial #: 114 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Michael Wahlse

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000204

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 114 |

A compact disc containing the digitally recorded interview of Wahlse will be maintained as a related item to the case file (INV 96).

277620190211103250

PL000205

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, David T. Rogers, DOC # J06430.

On Tuesday, December 19, 2017, at approximately 1242 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, David Rogers, at RMC West. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

On the date of this interview, Rogers was assigned to A-2 dormitory, bunk 32 single. Rogers had been assigned to this dormitory and bunk for approximately a year and a half. Rogers was provided a diagram of the dormitory to include bunk assignments and made a notation on this form indicating his bunk assignment.

Rogers was assigned to staff canteen and has had that position for approximately one year.

SA Nauss presented a photograph of Ridley to Rogers and asked if he knew the individual depicted in the photograph. Rogers knew the person in the photograph as "Ridley". Ridley was also known to go by the nickname "The ████████".

Rogers described Ridley to be quiet but respectful. He never knew Ridley to be violent or exhibit any violent tendencies. It was his understanding that Ridley was incarcerated for stabbing someone. Everyone knew Ridley and joked around with him. Ridley did not appear to have any issues with corrections personnel or them with him. He believed Ridley's relationship with corrections staff was okay and had never seen them "get into it".

Ridley went to confinement on one occasion for "cussing someone out" but this was relayed to Rogers second hand.

| Case Number: JA-37-0133 | Serial #: 115 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/19/2018 | Activity End Date:01/19/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate David Rogers

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000206

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 115 |

Rogers did not have any direct knowledge of the incident involving Ridley in September of 2017.  It was relayed to him that they (inmates assigned to food services) were getting up for work that morning and there was an altercation where Ridley was called outside away from the camera and sprayed by corrections personnel.  Rogers later heard while working his canteen assignment that Sgt. Nettles and a captain were involved.

Rogers stated a couple weeks after the incident an individual unknown to him outside of the prison checked a computer and learned that Ridley was in the hospital. Rogers later heard from another inmate that Ridley had medical issues.  Rogers never knew Ridley to have any ailments and further stated that he seemed healthy.

This interview concluded at approximately 1258 hours.

A compact disc containing the digitally recorded interview of Rogers and the aforementioned bunk assignment diagram will be maintained as a related item to the case file (INV 97).

277620190211103250

PL000207

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████

██████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, David Mincey, DOC # 522288.

On Tuesday, December 19, 2017, at approximately 1202 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, David Mincey, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

On or about September 7th or 8th of 2017, Mincey was assigned to wing 2 of A Dormitory, specifically, bunk 2109 upper. Mincey was assigned to the chapel and prior to that assignment, the library.

SA Nauss presented a photograph depicting the image of Ridley to Mincey and he stated he knew the person in the photograph as "Ridley".

Mincey described Ridley as easy going, but also stated he wasn't the type of guy to back down. If someone disrespected him he would say something. He knew Ridley to play chess and exercise a lot. He was one of those "fit guys" on the compound and the general consensus among inmates was that he was the healthiest guy in the dormitory. Mincey never saw Ridley exhibit any violent tendencies and he did not have any knowledge of Ridley having any issues with any inmates or any guards.

Mincey advised he had no direct knowledge of the incident that occurred involving Ridley, but heard what transpired second hand. Mincey was aware Ridley had gone to confinement but he was at work when the incident occurred.  Mincey said he was probably not awake when the kitchen staff woke up to begin their shift that morning.

Mincey did not know why Ridley was taken to confinement.  The information provided to him

| Case Number: JA-37-0133 | Serial #: 116 |
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate David Mincey

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000208

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 116 |

was "they're changing shifts on him", which meant one shift beat Ridley up and then the next shift beat him up.  Ridley was getting beat up regularly while in confinement.  Mincey was not aware of anything taking place prior to Ridley being placed in confinement. It was his understanding the physical abuse occurred in Ridley's cell, but he did not know the officers involved.

Mincey made a statement that Ridley was connected to other things that took place at the prison involving certain corrections staff.

Mincey stated there were certain staff on the compound, who if you were to look at directly would become aggressive.  Ridley was not the type to avert his gaze.  Ridley was not disrespectful but he just wasn't "one to back down".

Mincey described the behavior of certain staff to be "predatory" and further stated they would "establish this dominance over you and if you don't display submission then they view you as being aggressive and then they target you".  When inmates were targeted, staff would take them somewhere off camera and threaten them.  They would also place inmates in hand restraints and administer pepper spray into their faces and up their nostrils. Mincey stated once the handcuffs were on the kicking, punching, and stomping of inmates commenced.

Mincey described this to be a systemic problem involving a specific group of staff.  He talked specifically about an inmate named "Glover" who believed he was about to be targeted so he approached an unknown colonel and voiced his concerns about Sgt. Young.  Young observed Glover speaking to the colonel, approached them and told Glover he didn't care about this colonel or this job.  According to Mincey, the colonel laughed in response.

Sometime after the aforementioned interaction, Glover was placed in confinement.  Approximately 3 to 4 weeks post-confinement, Glover went back to the dormitory and was scared to leave his dormitory.  Mincey advised their dormitory was released to go to the recreation yard but Glover refused to come out.  According to Mincey, recreation time was not mandatory. On this particular occasion,  recreation time was made mandatory and when Glover refused to come out,  a corrections officer made him. Sgt. Young and four other corrections officers waited in the spot where they usually placed inmates prior to assaulting them. Glover was then placed against a wall where officers handcuffed, sprayed, kicked and stomped on him.

Mincey advised there were not leaders among the officers, rather instigators who were primarily responsible for the abuse of inmates on the compound.  This group of individuals consisted of the following:  Sgt. Young, who he described as the main instigator, Sgt. McCord, Officer Phillips, Sgt. Hate and Sgt. Hunt. Hunt was assigned to the main unit, but when he came over to the West unit it was usually to assault an inmate.

Mincey advised that prior to departing the dormitory to be interviewed by FDLE personnel, Sgt. Bush told inmates in his dorm "if I hear you mention my name, you know what's going to happen to you." Mincey stated that Bush participated in the abuse, but he was not in good health and his involvement was minimal.

This interview concluded at approximately 1228 hours.

277620190211103250

PL000209

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 116 |

A compact disc containing the digitally recorded interview of Mincey and the diagram of the dormitory will be maintained as a related item to the case file (INV 98).

PL000210

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Dejesus Hernandez Department of Corrections (DOC) # B07550. The interview was sworn to by Inmate Dejuses Hernandez and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Dejesus Hernandez's interview was recorded and placed into the investigative file as related item # 105.

The aforementioned interview with Harris was conducted on December 19, 2017, by FDLE Special Agents Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

Inmate Hernandez was shown a photograph of Ridley for the pupose of identification. Hernandez reported he does not know Ridley and could not provide any information concerning this matter. Hernandez is currently assigned to bed # K3207.

| Case Number: JA-37-0133 | Serial #: 117 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Dejesus Hernandez DOC # B07550

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000211

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels ████████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida.
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Chester Ray Harris Department of Corrections (DOC) # E16587. The interview was sworn to by Inmate Chester Harris and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Chester Harris's interview was recorded and placed into the investigative file as related item # 101.

The aforementioned interview with Harris was conducted on December 19, 2017, by FDLE Special Agents Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

Chester Harris was shown the photograph of Ridley for the purpose of identification. Harris reported he did not know Ridley. Harris reported he doesn't have a work assignment due to his close management status. Harris arrived at RMC in June 2017 from Santa Rosa Correctional Facility and has been a disciplinary problem requiring his close management status. Harris is currently assigned to bed K3203L. Harris reported the only information he has heard was from other inmates concerned an inmate who had hung himself and was assigned to bed # 17 bottom.

The aforementioned interview with Chester Harris began at approximately 11:11 am and ended 11:15 am.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 118 |
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Chester Harris DOC # E16587

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000212

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████

███████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this report is to document the interview of Alan Cannon.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Alan Cannon, who provided the following information:

Cannon was housed in the A1 wing of RMC West for approximately two years and knew Inmate Craig Ridley as either "Ridley" or "███████." Cannon and Ridley had worked in the kitchen together and at one point, Ridley had slept in the bunk behind Cannon prior to Ridley being moved to the A2 wing.  Cannon did not have to report to his kitchen shift until 1100 hours and usually did not wake up until 1030 hours.  Cannon used to work the morning shift, but was moved to the afternoon shift.  Cannon advised the morning kitchen staff wake up around 0230 hours and leave the dorm around 0245 hours.   The dorm SGT., SGT. Nettles, would escort the kitchen crew from the dorms in the morning.

Cannon said he heard rumors of the incident involving Ridley from other inmates, but did not witness any part personally.  The rumor Cannon heard the morning of the incident was that the guards beat Ridley up and took Ridley to the main wing.  While at the main wing, Ridley was beaten up even more.  SGT. Nettles beat Ridley up because the SGT. would not allow Ridley to get his work clothes, which lead to an altercation.  Cannon said he never heard of Ridley punching SGT. Nettles.  Once Ridley was moved to the main wing, Cannon said the guards would take Ridley out to beat him up more.  Cannon added that Ridley's neck was broken over there (main wing).

| Case Number: JA-37-0133 | Serial #: 119 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Alan Cannon

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

Page : 1 of 2                    277620190211103250

PL000213

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 119 |

Cannon advised that it was normal practice for guards to beat up an inmate and utilize (pepper) spray when being counseled.  Cannon added that he had never been counseled by the guards. The most common location to receive counseling and beatings was the barber shop.

When shown pictures of SGT. Nettles and CAPT. Jerrels, Cannon replied that he knew SGT. Nettles as the dorm sergeant and described him as an "asshole."  Cannon believed SGT. Nettles had no history of violence, but said he was quick to utilize spray.  Cannon knew CAPT. Jerrels was a captain, but did not know his name, just face recognition.

A copy of the audio recording will be maintained in this case file as Related Item INV-108.

277620190211103250

PL000214

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████ ████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Jason Wade.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Jason Wade, who provided the following information:

Wade knew Inmate Ridley from working in the kitchen together for three to four months. Wade started working in the kitchen around February 2017 and then changed jobs, leaving the morning kitchen crew around September or October 2017. Wade had always been housed in A1 wing, never A2 and was never a bunk mate of Ridley. Wade knew some personal background information about Ridley from their time spent together; such as he knew Ridley was from Chicago. Wade stated the morning kitchen crew would wake up around 0230 hours and leave the dorm around 0315 or 0330 hours. The kitchen crew was usually escorted by SGT. Nettles, or "Gerber," but there were usually two people who escort the crew; one in the front and one in the back. Wade said a normal route for the kitchen crew to take would be to leave the dorm through the laundry room. One count would occur while the inmates are in the laundry room and a second count would occur outside of the laundry room. Wade said the counseling of inmates always occurs outside of the laundry room towards the recreation yard.

Wade heard rumors about what happened to Ridley mostly from other inmates. He heard that SGT. Nettles tried to put his hands on Ridley and knocked his glasses off. Ridley was physically stomped (a foot striking Ridley's face or head) while on the concrete. Wade said Ridley's glasses were on the ground and smashed. Additionally, Wade heard from guards that an inmate who works the staff canteen at the hospital put his hands on and manipulated Ridley

| Case Number: JA-37-0133 | Serial #: 120 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Jason Wade

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000215

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 120 |

to show or prove that Ridley's neck was not broken.  Wade was still sleeping at the time of the initial incident involving Ridley and did not witness it personally.

When shown the picture of SGT. Nettles and CAPT. Jerrels, Wade said he did not know the Captain, but had seen him before.  Wade said SGT. Nettles is "nasty as fuck" and "they will jump on you."  Ridely was described as not being violent.  Wade has not seen SGT. Nettles since the incident with Ridley and advised that there are no other Sergeants around. He specifically mentioned a SGT. Forbes.

A copy of the audio recording will be maintained in this case file as Related Item INV-109.

Page : 2 of 2                277620190211103250

PL000216

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Jerome English.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Jerome English, who provided the following information:

English knew Inmate Ridley has been around the jail for a few years.  English used to work in food service a few years ago, but was not currently working there in September 2017.  English usually wakes up daily around 0430 to 0500 hours and said he was still asleep at the time of the incident involving Ridley.  All English heard from the guards was that Ridley went to jail and English never saw Ridley again.  English was not told any additional information.

When shown a picture of SGT. Nettles and CAPT. Jerrels, English described SGT. Nettles as being laid back and he used to be the sergeant of his dorm and delta dorm for the laundry crew.  English described CAPT. Jerrels as an "alright guy" who was also laid back.  English did not know the name of either subject, but did recognize them both.

English described Ridley as being very laid back and well-conditioned; Ridley would run miles a day for exercise.  Ridley would stay to himself if he didn't know you.  English heard a rumor that Ridley was not living anymore and heard that Ridley was in K dorm.

A copy of the audio recording will be maintained in this case file as Related Item INV-110.

| Case Number: JA-37-0133 | Serial #: 121 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Jerome English

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000217

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Ridley,Craig was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Johnathan Plant.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMCWest Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Johnathan Plant, who provided the following information:

Plant stated that he was housed in the A dorm and worked in the laundry area. Plant used to work with inmate Craig Ridley, who he referred to as "Old School," in the kitchen area. Due to his job in the laundry, Plant was typically awake around 0215 to 0230 hours each morning and leaves the dorm around 0245 hours daily.

Plant did not witness any of the incident, but did hear rumors from both inmates and guards within the facility. The account Plant described was that "they" came to try to wake Ridley up and Ridley got into an altercation with an officer and Ridley put his hands on the officer. The officer then used force and took Ridley to jail. Plant stated that "they" beat Ridley up bad while he was housed in the main wing. Plant heard a rumor that "they" beat him bad and beat him (Ridely) to death. Plant asked SA Graff if that was true.

When questioned about his own personal experiences with the guards and common practices, Plant stated that he has never been counseled by the guards and was not familiar with the counseling procedures. When shown the picture of SGT. Nettles and CAPT. Jerrels, Plant stated that the SGT. Nettles was the one who Ridley put his hands on and had to respond with force and Plant believed the CAPT. to be a lieutenant who had a familiar face. Plant did not know the names of either of the guards. Plant said he had not seen Ridley since the incident,

| Case Number: JA-37-0133 | Serial #: 122 |
| --- | --- |
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Johnathan Plant

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000218

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 122 |

since Ridley did not go to work that day.

A copy of the audio recording will be maintained in this case file as Related Item INV-111.

277620190211103250

PL000219

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ██████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Terry Rosenow.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Terry Rosenow, who provided the following information:

Rosenow had been housed in the A2 dorm for the last six months and knew that investigators were here about Inmate Ridley and other beatings. Rosenow expressed concerns about speaking on this shift because he doesn't want to end up like Ridley. Rosenow stated he has been housed at RMC West for approximately one year and doesn't like that he has seen since he has been there. Rosenow said his transfer process is underway for good behavior to relocate to Marion where he has family nearby.

Rosenow used to work in the kitchen in September 2017 and said he knows Ridley wouldn't hurt anyone. Rosenow did not witness any of the incident involving Ridley, but heard rumors from inmates and guards that Ridley died from cancer, but Rosenow said no one believed that rumor because Ridley was in such good health. He heard additional rumors that Ridley was high on K2 at the time of the incident, which Rosenow did not believe either since he knew Ridley does not do drugs. Rosenow heard a rumor the day of this interview from other inmates that Ridley had a broken neck.

Rosenow said that on a typical day, he would wake up around 0230 hours and leave the dorm at 0300 hours. They would go through the laundry room where a head count would occur inside the laundry room. He noted that the door to the bathroom would be left open.

| Case Number: JA-37-0133 | Serial #: 123 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Terry Rosenow

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000220

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 123        |

When shown the pictures of SGT. Nettles and CAPT. Jerrels, Rosenow knew SGT. Nettles by face only and never heard of any problems with him.  Rosenow did not recognize CAPT. Jerrels.

A copy of the audio recording will be maintained in this case file as Related Item INV-112.

PL000221

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Vincent Wicker.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Vincent Wicker, who provided the following information:

Wicker was housed in the A2 wing with Inmate Ridley and knew him from the dorm, Wicker has never worked in the kitchen. Wicker described Ridley as being very quiet.

Wicker heard rumors from other inmates about the incident involving Ridley, but did not personally witness any portion. Wicker heard that the guards woke Ridley up for work and Ridley was trying to get his clothes out of the laundry room when Ridley swung at SGT. Nettles. Wicker heard that "it wasn't a situation until Ridley made it a situation." Wicker added that "Inmate Pierre" told Ridley, "you going to let that guy talk to you like that?" This caused Ridley to swing on SGT. Nettles. Wicker described "Inmate Pierre" as a black male, approximately 350 pounds, housed in A1 dorm, and who worked the same food service shift as Ridley.

A copy of the audio recording will be maintained in this case file as Related Item INV-113.

| Case Number: JA-37-0133 | Serial #: 124 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Vincent Wicker

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000222

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the interview of Wayne Stephens.

On December 19, 2017, FDLE conducted a series of interviews at FDC RMC West Unit, located in Lake Butler, FL. The interviews were conducted with inmates that had been housed in A Dorm. The interviews were recorded using a digital recording device.

Special Agent (SA) SA Courtney Harrison and SA Adam Graff conducted a sworn interview with FDC Inmate Wayne Stephens, who provided the following information:

Stephens said he has been housed in the A2 dorm for approximately one year and knew Inmate Ridley as either "Scott" or "Shorty." Stephens believed he was in bunk 22 low (bottom) when Ridley left in September. Stephens worked in the maintenance area and not in food service; he got up each morning around 0500 to 0530 hours.

Stephens heard rumors about the incident involving Ridley from inmates the following day. The inmates told Stephens "they" (guards) woke Ridley up and allegedly Ridley swung on the sergeant. Stephens added that "when you swing on an officer, you get your ass beat." Stephens heard that a red headed guard was holding Ridley upside down while being housed at the main wing and that Ridley was now dead.

When shown the pictures of SGT. Nettles and CAPT. Jerrels, Stephens said that SGT. Nettles is the sergeant here and described him as not aggressive and described both officers as being laid back. Stephens recognized CAPT. Jerrels, but did not know his name, just stated that he works over here.

A copy of the audio recording will be maintained in this case file as Related Item INV-114.

| Case Number: JA-37-0133 | Serial #: 125 |
|---|---|
| Author: Harrison, Courtney | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:01/22/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Wayne Stephens

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000223

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 125 |

277620190211103250

PL000224

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT)  John E. Nettles and Captain (CPT) William Jeffrey Jerrels ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ██████████

███████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate David Lee Huckaba Department of Corrections (DOC) # I15657. The interview was sworn to by Inmate David Huckaba and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of David Huckaba's interview was recorded and placed into the investigative file as related item # 115.

The aforementioned interview with Huckaba was conducted on December 19, 2017, by FDLE Special Agents  Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview.

Huckaba reported he was assigned to bed # A1109U September 8, 2017 but has since been reassigned to bed # A1108U after he finished his time in the confinement unit. Huckaba was shown a photograph of Ridley for the purpose of identification. Huckaba could not identify Ridley. Huckaba  reported he is currently assigned to the kitchen crew and received that assignment about two weeks prior to this interview. Huckaba reported he  heard there had been a fight in the confinement area concerning a dispute over the telephone use but had no direct knowledge of Ridley being involved in any incident. Huckaba reported he worked in the confinement area for about three (3) months but was not sure which months.

Huckaba reported he heard that the inmate died as a result of the aforementioned fight but could not provide any details about the incident. Huckaba could not remember who he had received the information about the fight, and only said he just heard inmates talking.

Huckaba's interview began at approximately 12:31 pm and ended at approximately 12:40 pm.

| Case Number: JA-37-0133 | Serial #: 126 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate David Huckaba DOC # I 15657

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000225

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 126 |

277620190211103250

PL000226

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT)  John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Colby Resha Lester Department of Corrections (DOC) # T307868. The interview was sworn to by Inmate Colby Lester and recorded. This report was written to summarize the interview and is not a verbatim account of the interview. The complete verbatim account of Colby Lester's interview was recorded and placed into the investigative file as related item # 115.


The aforementioned interview with Lester was conducted on December 19, 2017, by FDLE Special Agents  Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview. Lester was shown a photograph of Ridley for the purpose of identification. Lester did not know Ridley.

Lester reported he was not assigned to the confinement area during the month of September 2017. Lester reported he did not specificly remember any incident whereby an inmate was injured while in a fight with guards. Lester repeatedly answered questions by saying that so much shit goes on in the confinement area, he avoids it all by doing his work and staying to himself.

The interview of Colby Lester began at approximately 1:20 pm and ended at approximately 1:30 pm.

| Case Number: JA-37-0133 | Serial #: 127 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Colby Lester DOC # T307868

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103250

PL000227

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ██████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this report is to provide a summarization of the interview of Inmate Brandolen Miller Department of Corrections (DOC) # U21574. The interview was sworn to by Inmate Brandolen Miller and recorded. This report was written to summarize the interview of Miller and is not a verbatim account of the interview.

The complete verbatim account of Brandolen Miller's interview was recorded and placed into the investigative file as related item # 119.

The aforementioned interview with Miller was conducted on December 19, 2017, by FDLE Special Agents Rusty Ray Rodgers and Veronica Benson Edwards at Florida Department of Corrections (FDC) Reception and Medical Center (RMC) Lake Butler, Florida. The chapel area of the prison was used to conduct the interview. Miller was shown a photograph of Ridley for the purpose of identification. Miller did not know Ridley.

Miller reported he had hernia surgery in December 2017 and was not sure of his bed assignments. Miller could only report he was assigned to beds # K3206, # K3209, and # K3218 between the months of September and December 2017. Miller could not provide any information about Ridley or the incident under investigation. Miller reported he has not been influenced or instructed to remain silent by the correctional staff concerning this matter.

The interview of Miller began at approximately 10:40 am and ended at approximately 10:46 am.

| Case Number: JA-37-0133 | Serial #: 128 |
|---|---|
| Author: Rodgers, Rusty Ray | Office: Jacksonville |
| Activity Start Date: 12/19/2017 | Activity End Date:12/19/2017 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Brandolen Miller DOC # U21574

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000228

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ██████████████████ ████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Johnathan Plant.

On January 4, 2018, FDLE Special Agent (SA) George Dandelake and FDLE SA Lonnie Mills conducted a sworn, recorded interview of inmate Johnathan Plant, DOC # J37045. Plant provided the following information, in summary, to SA Dandelake and SA Mills:

SA Dandelake presented a photograph of Craig Ridley. He stated that he knew Ridley, and identified him as "Old School" and "Mr. Willie." He stated he knew Ridley from working the "A.M." or "A" shift in the kitchen. During the month of the September 2017,  Plant was residing in dorm A-1, and Ridley was residing in dorm A-2. Plant knew Ridley only through their working relationship.

Plant described Ridley as "good" and "hardworking." He stated that Ridley was not a discipline problem and did not get into trouble.

Plant described his work day on the A shift kitchen assignment as beginning at approximately 0230 hours. He stated correctional officers wake up the inmates assigned to work on that particular day. They get dressed and wait in the laundry room for another officer to escort them to the cafeteria. They are then escorted by officers to the food service area.

Plant stated that he did not recall the specific date that Ridley was involved in an altercation with officers, but remembered that Ridley did not show up for work and he was surprised that he would have an issue with officers.

Plant heard that Ridley was involved in an incident with a Correctional Officer Sergeant. He described him as a tall "chubby" white male, in his mid-forties. He heard that the incident began with Ridley arguing with the officer when he was awoken, and the alteration became physical.

| Case Number: JA-37-0133 | Serial #: 129 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Johnathan Plant

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000229

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 129 |

He heard the incident escalated and he (Ridley) was beaten by several officers and then transported to K dorm.

Plant stated that inmates are beaten regularly, and it typically occurs at the barber shop. Plant elaborated that there were no cameras in the barber shop, and the employees in the barber shop are escorted out beforehand.   Plant estimated this happens every day. Plant stated that sometimes the beating would occur immediately following an incident, and sometimes it would occur at a later date. Plant stated that he had never been beaten in the barber shop, but it has been threatened towards him.

Plant stated that there are two Correctional Officer Sergeants that most frequently engage in this practice, but he did not feel comfortable providing their names at this time.

Plant stated that it would be unusual for a staff member to wake an inmate up in the middle of the night to punish him. He confirmed that normally an inmate would be punished during daytime hours, and typically if an inmate were to be awoken it would be with a group to report to work.

Plant stated that that the officers sometimes forget to wake up an inmate for work, or wake up inmates on days they are not assigned to work. The officers sometimes get confused about the schedule in regard to which inmates are working on specific days.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-121.

PL000230

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Cornelius Shade.

On January 4, 2018, FDLE Special Agent (SA) George Dandelake and FDLE SA Lonnie Mills conducted a sworn, recorded interview of inmate Cornelius Shade, DOC # I15496. Shade provided the following information, in summary, to SA Dandelake and SA Mills:

Shade confirmed that he resided in dormitory A during the time period of September 7th and 8th of 2017. He recalled that he was in bunk 111 upper on the A-1 side. He stated during this time period he was assigned to work in the kitchen. He explained that the A shift, which serves breakfast, gets up at 0200 hours to start making breakfast and finish at approximately 1000 hours. The B shift gets up at 1030 hours to serve lunch and dinner and usually finish at approximately 2030 hours. Shade was assigned to the B shift.

SA Dandelake presented a photo of Ridley to Shade and he confirmed that he recognized him. Shade knew Ridley from the kitchen, as they worked the same shift and he knew him from the recreation yard. Shade described Ridley as a nice guy and stated that he was not a discipline problem.

Shade explained the process involved in reporting to the kitchen for work. He stated that the officers wake the inmates up so they can brush their teeth and wash their face and get ready for work. The inmates are then lined up on the sidewalk in front of the dorm. The inmates exit the dorm through the laundry room or through the side door, depending on the officer's preference. The inmates are then escorted as a group to the food services area and enter that building via the back gate.

Shade did not see the incident involving Ridley, but heard that he was beat up by the officers. Shade stated that certain guards beat up the inmates at this facility. Shade has been pepper

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 130 |
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Cornelius Shade

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000231

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 130 |

sprayed before while working in the kitchen and as a result, he is no longer assigned to that work assignment.

Shade stated that the inmates have been beat up in the bathroom, barbershop, and kitchen. He stated that there are no cameras in the bathrooms and he has seen inmates get slapped by guards in the bathrooms of the dorms. He stated that "Sgt. Young" has physically beaten inmates at the facility. He described Sgt. Young as a white male, approximately in his mid-forties, and wears glasses and a hat. Shade also stated that there are no cameras in the barbershop, and the officers call the inmates into the barbershop to beat them. This occurs anytime they see fit. The officers instruct the employees in the barbershop to leave if they are present. Shade has witnessed inmates being told to go to the barbershop in the past.

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-122.

277620190211103251

PL000232

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate Matthew Kukulski.

On January 4, 2018, FDLE Special Agent (SA) George Dandelake and FDLE SA Lonnie Mills conducted a sworn, recorded interview of inmate Matthew Kukulski, DOC # I14305. Kukulski provided the following information, in summary, to SA Dandelake and SA Mills:

SA Dandelake presented a photo of Ridley to Kukulski and he confirmed that he recognized him. Kukulski knew Ridley from passing him in the recreation yard and passing him as he was going to work. He was not aware of where Ridley worked in the facility specifically. Kukulski described Ridley as "a nice old guy, like a cool uncle." He never saw Ridley get into trouble and never heard anything about Ridley.

During the time frame of September 7th and 8th of 2017, Kukluski was residing in A dorm, side 1, bunk 26 single. Kukulski still resides in this same place. Kukulski recalled that Ridley lived in the A2 side of the dorm.

Kukulski explained that he is assigned to the maintenance section and works throughout the facility. He works from 0630 hours to approximately 1930 hours in the evening. He gets up with the inmates employed in the laundry section.

Kukulski did not witness the incident involving Ridley, but heard the incident began when Ridley got into an argument with Sgt. Nettles. Kukulski was surprised because Sgt. Nettles is mellow and calm. Kukulski heard the argument was about Ridley going to work. Kukulski thought the incident was unusual since both individuals involved never have any issues.

Kukulski stated he recalled an incident in which Officer Andrews physically beat an inmate who was high from smoking K2. This occurred in the summertime of 2017. Kukulski could not recall

| Case Number: JA-37-0133 | Serial #: 131 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Matthew Kukulski

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000233

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 131 |

the inmate's name, but described him as a Hispanic male who was assigned bunk 27 single. Kukulski stated that the inmate did not provoke the attack by the officers. Kukulski recalled another incident in which officers pepper-sprayed an inmate and tore off some of his clothing to find contraband. The inmate had asthma and required medical attention afterwards. Kukulski also recalled an incident in wich an inmate was brought into the barbershop and beaten by officers. Kukulski did not recall the inmate's name but described him as a young white male. Kukulski explained that the barbershop has no cameras, and inmates are beaten there for disciplinary reasons.

Kukulski stated that different shifts of officers handle inmates differently. He stated that the B shift officers are "heavy handed."

A compact disc containing a digital recording of the referenced interview will be maintained in this case file as related item number INV-123.

PL000234

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Jerimy August Thibideau, DOC # J01393.

On Thursday, January 4, 2018, at approximately 1048 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Jerimy Thibideau, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Jerimy Thibideau was assigned to Dormitory A1, bunk 31 single and had been for approximately ten months. On the date of this interview, Thibideau was assigned as the prison "house man" and had been since October of 2017. Prior to that assignment, he worked in food services.

SA Nauss presented a photograph to Thibideau and he stated he knew the person in the photograph as "Ridley" and "Mr. ████████".

Thibideau described Ridley as a "good dude" who stuck up for other inmates and didn't "take shit" from any officers. He never observed Ridley exhibit any violent tendencies and stated he mostly kept to himself. Ridley got along with other inmates but was not well liked by corrections officers, specifically Sgt. Young and Sgt. Haight.

Thibideau stated Ridley stuck up for him on one occasion when he was assigned to a.m. shift in food services. After trying to defend Thibideau, Ridley was placed in handcuffs and beaten by corrections officers. Thibideau identified Sgt. Young and Sgt. Haight as the officers involved in one altercation with Ridley.

Thibideau did not have any firsthand knowledge of the incident in question involving Ridley. He heard Ridley had asked for a uniform and officers refused to give it to him. Ridley was taken to

| Case Number: JA-37-0133 | Serial #: 132 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Jerimy Thibideau

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000235

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 132 |

the barber shop where he was beaten by corrections officers. Thibideau did not recall if he worked the morning of this incident. Thibideau also could not recall if he was assigned to the a.m. or p.m. food services shift when the incident occurred and further stated he may have been sleeping. This incident was alleged to involve Officer Young and another corrections officer.

Thibideau stated "everyone" (referring to inmates) was scared to talk because there was fear that corrections personnel would retaliate against them.

Thibideau stated that officers took inmates to the barber shop and inmates came out with "black eyes" and "busted heads". Inmates were placed in handcuffs and beat up. There were no cameras located in the barber shop.

Thibideau identified an inmate by the name of "Baker" who was recently released from prison and previously assigned to food services who may have some information of pertinence.

This interview concluded at approximately 1100 hours.

A compact disc containing the digitally recorded interview of Thibideau will be maintained as a related item to the case file (INV 124).

PL000236

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Christopher E. Hartman, DOC # 130594.

On Thursday, January 4, 2018, at approximately 1019 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Christopher Hartman at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Around the date of the incident in question, Hartman was housed in A Dormitory, bunk 23 lower. On the date of this interview, Hartman was assigned to roofing but was previously assigned to food services. His roofing assignment commenced in the summer of 2017.

SA Nauss presented a photograph depicting the image of Ridley to Hartman, whereupon he identified the individual as "Mr. Ridley". Hartman had minimal interaction with Ridley but stated Ridley was quiet and kept to himself. Ridley was assigned to food services and was described as a hard worker. Hartman did not know Ridley to have any issues with other inmates or corrections personnel.

Hartman did not have firsthand knowledge of the incident involving Ridley, but heard what transpired. Hartman heard Ridley tried to obtain clothing for his work shift that morning, but a corrections officer, later identified as Sgt. Nettles, told him he was supposed to have retrieved clothing the night before. When Nettles proceeded to wake other inmates, Ridley went into the laundry room and retrieved clothing. Ridley and Nettles got into an altercation where Ridley slapped Nettles and "they beat him right there". Hartman stated it got worse for Ridley at the main unit, specifically in confinement, where it was commonplace for food trays to be inserted in the flap with no food on them.

Hartman advised his friend, Jason Baker, was at the hospital when Ridley arrived. Ridley was

| Case Number: JA-37-0133 | Serial #: 133 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Christopher Hartman

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000237

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 133 |

on a stretcher and told FDC personnel something was wrong with his neck. They told Ridley nothing was wrong with his neck and proceeded to shake him. Ridley was placed upside down on the stretcher and shaken by an inmate/orderly who worked there. Hartman also advised a younger sergeant with a red beard who worked in confinement was also present when the orderly was shaking Ridley and also engaged in the same behavior. Hartman was unable to provide the sergeant's name but stated it was not Sgt. Yates.

Hartman advised that Nettles and the Captain who he identified as either "Harrell" or "Jerrel" were not bad people. He further stated they did not go around beating up on inmates like other officers did. Hartman stated he had seen that same Captain in other situations where he was supposed to use more force than he actually did and Hartman respected him for his restraint. Hartman asserted that a physical altercation may have occurred at the west unit, but the "bad stuff" occurred at the main unit and continued for days.

Harman later heard Ridley had cancer but he could not tell.

Hartman alleged that officers were really hurting inmates and looked for people to hurt every day. The alleged abuse had been occurring for some time and officers did it for "sport". Hartman stated the main perpetrators consisted of Sgt. Haight, Sgt. Young and that entire shift. Hartman had been beaten three times and his worst transgression was talking during count. He stated "if you fuck up they're going to beat you" and further stated there are use of force reports documenting the abuse.

Hartman also stated K2 was an epidemic within the prison and if inmates were in the middle of a K2 induced seizure, corrections personnel beat them and attributed it to K2.

He stated that there was no reason to be beat uncontrollably when inmates were in restraints and could be placed in confinement or when the officers were armed with mace.

This interview concluded at approximately 1038 hours.

A compact disc containing the digitally recorded interview of Hartman will be maintained as a relayed item to the case file (INV 125).

277620190211103251

PL000238

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Baron Duane Hogan, DOC # V18636.

On Thursday, January 4, 2018, at approximately 1149 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Baron Hogan at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Hogan was housed in Dormitory A1 dormitory, bunk 106 upper and had that assignment since he moved into the dorm on or about September 6th or 7th of 2017.  Hogan was assigned to food services and had been since September of 2017.  On the date of this interview he was assigned to the food services morning shift.

Hogan advised approximately 16-21 inmates worked the food services morning shift.  Inmates were awakened by corrections personnel and the laundry room was opened up. When all of the inmates were accounted for they were escorted from the laundry room through the back door onto the yard.  The escort of inmates was usually facilitated by a dormitory officer and an escort officer.  Hogan advised there was always security standing on the yard.

SA Nauss presented Hogan a photograph depicting the image of Ridley.  Hogan knew Ridley from the dorm and knew he worked in kitchen services. He believed Ridley was called by his last name, but wasn't exactly sure what that name was. Hogan further advised the incident involving Ridley happened during his first week in the dormitory.  Hogan did not recall working any food services shifts with Ridley.

Hogan described Ridley as older, vocal and "no nonsense". Hogan never observed Ridley cause any trouble but stated that Officer Young did not like Ridley. Hogan stated there was a female corrections officer named Ms. Busby who previously worked in the dormitory. If she did

| Case Number: JA-37-0133 | Serial #: 134 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |
| Description:Interview of inmate Baron Hogan | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000239

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 134 |

not "take a liking to you", Young didn't either and those inmates would probably "end up in the barber shop sooner or later".  Inmates were placed in handcuffs and believed they were going to confinement. Instead of being taken to confinement, they were taken to the barber shop where they were beaten.  Hogan stated if the inmate was submissive during the beating and apologized, they would not be taken to confinement. If the inmate was aggressive they were beaten and then taken to confinement.

Hogan did not have any firsthand knowledge of the incident involving Ridley, but heard what happened.  The day after the incident occurred, an inmate known to Hogan as "Dallas" told him Ridley had been killed.  It was also relayed that Ridley had some type of medical condition. Hogan heard Ridley was taken to the main unit and beaten.

An inmate assigned to maintenance, known to Hogan as "Baker", was located at the main unit/confinement when Ridley arrived.  Baker stated that Ridley was tied to a board which was flipped upside down and he was beaten.  Ridley was alleged to have gotten into a confrontation with an officer who hit him, but Hogan heard that Ridley slapped the officer.  It was Hogan's understanding that Ridley was beaten at both the RMC west unit and the main unit by two separate shifts.

Hogan stated there were officers on the compound who were bullies and it was a specific shift which included Young, Haight, and Bush.  Hogan advised the behavior carried over into the night version of that shift. Hogan advised that crew would "show out" for each other and they also liked spraying people.  Hogan watched officers beat an inmate in the kitchen for eating a piece of chicken.  He stated that officers beat a lot of inmates. It was difficult to predict when they were going to do it because inmates thought they were going to confinement, but were then taken to the barber shop and beaten.

This interview concluded at approximately 1208 hours.

A compact disc containing the digitally recorded interview of Hartman will be maintained as a relayed item to the case file (INV 126).

PL000240

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Robert T. Hill, DOC # J44504.

On Thursday, January 4, 2018, at approximately 1126 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Robert Hill, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

In September of 2017, Hill was assigned to A Dormitory, bunk 109 low and had that assignment for approximately eight or nine months.  On the date of this interview, Hill was assigned to bunk 106 low and had that bunk assignment for the past two months. Hill was assigned to the roofing crew.

SA Nauss presented a photograph depicting the image of inmate Ridley. Hill recognized him and knew him as "Mr. Ridley".  He'd seen Ridley around and said he seemed like a nice, older fellow who kept to himself.  He never observed Ridley to have any violent tendencies. Hill also did not know Ridley to have any issues with corrections personnel.

Hill did not have firsthand knowledge of what transpired with Ridley because he was located on the other wing of A dorm. Hill heard that Ridley was sprayed and beaten in confinement.  He also heard that Ridley was dead and either his collar bone or a bone in his neck had been broken.

Hill himself did not have any issues with corrections personnel. He stated that officers did not cause too many problems unless inmates start "bucking" or kicking the door.  If inmates did not comply they would be sprayed with chemical agents.

Hill stated there was sergeant in the dormitory that was an "ass" and "put his hands on

| Case Number: JA-37-0133 | Serial #: 135 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Robert Hill

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000241

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 135 |

everybody".  Hill identified that individual as Sgt. Young.

This interview concluded at 1139 hours.

A compact disc containing the digitally recorded interview of Hill will be maintained as a related item to the case file (INV 127).

277620190211103251

PL000242

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of inmate, Jimmie Edward Keene, DOC # 749396.

On Thursday, January 4, 2018, at approximately 1106 hours, Special Agent (SA) Pete Soulis and SA Keesha Nauss conducted a sworn digitally recorded interview of FDC inmate, Jimmie Keene, at RMC West Unit. The below should be considered only a synopsis of the interview; the audio recording of the interview will serve as the comprehensive record.

Keene was housed in A Dormitory, bunk 1120 lower and had been assigned to that bunk since May of 2017. On the date of this interview, Keene was assigned to maintenance and was previously assigned to food services for a brief period of time.

SA Nauss presented a photograph depicting the image of Ridley to Keene. He recognized the individual in the photograph but did recall his name. He asked if the individual's name was "Riley".

Keene may have spoken to Ridley in passing but had minimal interaction with him. He did not know Ridley to ever exhibit violent tendencies and did not know him to have any issues with other inmates or corrections personnel.

Keene did not have any direct knowledge of the incident involving Ridley but heard that someone killed him. Keene heard Ridley was handcuffed and beaten by corrections officers, but he did not know who the involved officers were.

This interview concluded at approximately 1116 hours.

A compact disc containing the digitally recorded interview of Keene will be maintained as a related item to the case file (INV 128).

| Case Number: JA-37-0133 | Serial #: 136 |
|---|---|
| Author: Nauss, Keesha Marie | Office: Jacksonville |
| Activity Start Date: 01/04/2018 | Activity End Date:01/04/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Jimmie Keene

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000243

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 136 |

277620190211103251

PL000244

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Altus J Lee, DC #H18985von January 4, 2018, at 1128 hours.

This sworn interview was conducted by Special Agents (SA) Lonnie Mills and George Dandelake inside the Classification Building break room of the DOC Reception and Medical Center West Unit (RMCW) located.  The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-130.

**Writers Note:**  For reference during the interview all persons interviewed were told that FDLE was investigating an inmate death.  They were shown a color DOC picture of Ridley and asked how or if they knew Ridley.

Lee said he knew Ridley and they often worked out together.  He referred to Ridley by his last name, "old school", and "the ████████".  He described Ridley as business minded individual and had never witnessed Ridley display any violent behavior.  They were once housed together in RMCW Dormitory A side 1, but Ridley was moved to side 2 after had issues with Sergeant Young.  He knew Sergeant Nettles, but has not had any interaction with him.  He does not know which officers were involved in the altercation with Ridley.

Lee worked in the laundry and was normally scheduled to work from 0600 to 1930 hours.  He had worked in Food Service prior to being assigned to the Laundry.  The process for escorting inmates to their work assignments would vary depending on if it was daylight or dark outside.  If during the day light, inmates would line up outside and then walk without escort to their assignments.  If it was dark outside, inmates would line up in the laundry room and 1 to 2 correctional officers would escort inmates to their assignment.  Lee was not present in the

| Case Number: JA-37-0133 | Serial #: 137 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 09/08/2017 | Activity End Date:02/08/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Altus J. Lee (A Dorm RMCW)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000245

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 137 |

dormitory when Ridley had an altercation with an officer.  He was not aware of anyone that actually witnessed the altercation.  Work schedules for inmates were often confused.  When told to go to work on his off day, Lee said he just went rather than get into a disagreement or have any problems with the officers.

Lee heard rumors the correctional officers (unknown whom) were after Ridley because of his altercation with the officer.  He heard the officers beat Ridley the day of the incident and then later in confinement.  The officers also did not believe Ridley was injured and failed to provide him appropriate medical care.  Lee believed most officer/inmate issues at RMCW were avoidable and usually the result of the officers behaving disrespectful towards the inmates.  If there was an issue officers would handcuff the inmate, spray them with OC or capsicum spray, and physically beat the inmate in an area of the prison not visible on the surveillance cameras. Lee knew some of the places not visible on the surveillance cameras in RMCW were the bathroom area, the yard, the barbershop, and just outside the dormitory doors.  Lee recalled an incident where he was taken into the barbershop by an officer and threatened for taking food from the cafeteria.  It was not uncommon for officers to take inmates into off camera areas to have counseling sessions with them.

The interview was concluded at 1150 hours

277620190211103251

PL000246

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Moise Cherette DC# B06110.

On January 24, 2018, at 1015 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Inmate Cherette at Cross City Correctional Institute in Cross City, Florida. SA Maurer and SA Holycross identified themselves and advised Inmate Cherette the interview would be a sworn voluntary statement. Inmate Cherette understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-132, in the case file:

Inmate Cherette spent time at RMC in September 2017 for a medical procedure. He stated he was in Kilo dormitory around the time of hurricane Irma and remembered being housed in K3114. On the morning of September 8, 2017, Sergeant (Sgt.) John Nyitray and Correctional Officer (CO) Daniel W Greene brought in another inmate into the cell (later identified as Inmate Ridley). He was in a ████████ and Sgt. Nyitray told Inmate Ridley to get up and he replied he could not. Sgt. Nyitray said "your bullshitting, you're just trying to get a law suit". They picked up Inmate Ridley and set him on the toilet which was next to the cell door. They held him on the toilet removed the ████████ and closed the cell door. Immediately, Inmate Ridley fell to the floor and hit his face, causing a large amount of blood to come from his nose. Inmate Cherette started yelling and banging on the cell door. CO Royce Givens came to the door and asked what was going on and Inmate Cherette told him his roommate just fell on the floor and was bleeding. CO Givens walked away and none of the staff returned. Inmate Cherette asked Inmate Ridley what was going on. Inmate Ridley told him he could not move and asked him to turn him over onto him back. Inmate Cherette grabbed a sock and turned Inmate Ridley onto his back. Inmate Ridley told him he could not feel his arms and legs and that he was beaten the night before by some "police". Inmate Ridley told him he was late for work when they woke him

| Case Number: JA-37-0133 | Serial #: 138 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 01/24/2018 | Activity End Date:01/24/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of Inmate Moise Cherette DC# B06110

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000247

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 138 |

up.  Words were exchanged and Inmate Ridley struck the CO in the face.  The CO put Inmate Ridley in a "figure Nelson" (believed to be a full Nelson) and threw him to the ground.  Inmate Ridley told him he was paralyzed.  Inmate Cherette poked Inmate Ridley's foot with his finger and asked if he could feel anything.  Inmate Ridley told him he felt something but could not tell what it was.

Inmate Cherette was upset with the situation and said he was going to get him some help.  He started banging on the cell door and called for a "psychological emergency" for himself to get the COs to come back to the cell.  He told the COs that he could not handle the situation with Inmate Ridley and all the blood on the floor.  He kept yelling that it was unsanitary and he could not handle it.  Inmate Cherette was cuffed up and removed from the cell and placed in the shower.  He then saw Sgt. Nyitray and another CO take the ▮▮▮▮▮▮ back to the cell remove Inmate Ridley and wheel him out of Wing 3.  One of the Orderlies cleaned the blood off the floor and Inmate Cherette was placed back in the cell.  He did not know where they took Inmate Ridley.  An unknown CO told him that he had gotten the "bad end of the stick" and that Inmate Ridley had "gooked out on some K2".  Inmate Cherette did not believe what he was told and wrote down everything that took place.

On September 9, 2017, Inmate Cherette was moved to Wing 2 and was placed in K2218.  While in that cell he heard a nurse say "you're not paralyzed you're playing.  You don't want your medication?".  Inmate Cherette found out from Inmate Shane Griffin DC# G04307 who was working as an Orderly in Confinement that Inmate Ridley was the inmate the nurse was talking to.  Inmate Cherette was told Inmate Ridley had been placed in the cell 2108 and was sitting on his bunk with his legs touching the floor and had not moved from that position.  Inmate Cherette said he was not given any food for several days and no one stopped to check on him.  He again wrote all this down and told SA Maurer that he would give him what he wrote down.  He said he was getting a lot of the information about Inmate Ridley from Inmate Griffin.  SA Maurer told him Inmate Griffin said he passed him a cell phone while in confinement and told him to call someone on the outside to report what was happening to Inmate Ridley.  Inmate Cherette said that if he had a cell phone he would have called outside for help and that Inmate Griffin was caught with a cell phone that he already had by Sgt. Nyitray.  Inmate Griffin told Sgt. Nyitray he got the phone from Inmate Cherette so he would not get in trouble.  Inmate Cherette said Inmate Griffin never got in trouble for having a cell phone, (SA Maurer later confirmed that Inmate Griffin did not receive a disciplinary report for having a cell phone).  Inmate Cherette said Sgt. Nyitray came to him one day in confinement saying he needed to talk to him about something.  Sgt. Nyitray asked him about the cell phone and if he gave it to Inmate Griffin.  Inmate Cherette told Sgt. Nyitray he never had a cell phone.  A few days later Inmate Ridley was removed from his cell and taken out of confinement.  Inmate Cherette never saw him again.

After Inmate Cherette got out of confinement he was transported "I" dormitory before he was sent back to Cross City CI.  He was beaten out of camera view because staff said they found K2 on him.  He said he was coming from confinement and there was no way he had K2 on him when he arrived in "I" dorm.  He feels the beating was in retaliation for him asking too many questions about Inmate Ridley.  There should be handheld video for his post use of force.  He sustained injuries to his eye during the beating, and said the guards tried to remove his eye.

After the interview was concluded Inmate Cherette went back to his dorm and retrieved the one piece of paper with notes he wrote down regarding Inmate Ridley.  The document has writing

PL000248

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 138 |

that appears to be from the time Inmate Ridley was in Wing 2.  He could not find the second document and said the CO was telling him to hurry.  SA Maurer provided Inmate Cherette with his contact information and he said he would mail the second document to SA Maurer.  These documents will be mantained as related item INV-133, in the case file.

The interview of Inmate Cherette concluded at 1059 hours.

PL000249

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████
███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

The purpose of this investigative report is to document the interview of Joseph R Craig, DC #G24187 on January 4, 2018, at 1242 hours.  This sworn interview was conducted by Special Agents (SA) Lonnie Mills and George Dandelake inside the Classification Building break room of the DOC Reception and Medical Center West Unit (RMCW) located.  The following is a brief summary of that sworn interview for a verbatim transcript please refer to the audio recording of the interview attached to this investigative report as Related Item INV-135.

**Writers Note:**  For reference during the interview all persons interviewed were told that FDLE was investigating an inmate death.  They were shown a color DOC picture of Ridley and asked how or if they knew Ridley.

Craig said he knew Ridley by his name and also by his nickname "the ████████"".  He worked with Ridley in the Kitchen.  On September 8, 2017, he was in the laundry room of Dormitory "A" waiting to be escorted to his work assignment.  He saw Sergeant Nettles and Ridley arguing.  Sergeant Nettles was complaining to Ridley about how long it took Ridley to wake for his (Ridley's) work assignment.  More specifically, Sergeant Nettles was arguing with Ridley about having to "go into the wings" three times to wake Ridley.  Ridley argued that Sergeant Nettles only approached him twice.  Sergeant Nettles told Ridley to step outside the laundry room door, which was outside the dormitory and wait.  Several minutes past and Sergeant Nettles also exited out the door, where he had sent Ridley.  When asked if he could hear what was happening outside the door, Craig said there was a large fan in the laundry room that made it difficult to hear.  After approximately 5 minutes had past, Sergeant Nettles re-entered the room alone.  He did not notice any visible injuries to Sergeant Nettles' person.  When they went outside he did not see Ridley and did not know what had happened to Ridley.  He did not suspect that the interaction he witnessed between Ridley and Sergeant Nettles would have resulted in Ridley being sent to confinement.  So he assumed something must have happened

| Case Number: JA-37-0133 | Serial #: 139 |
|---|---|
| Author: Mills, Lonnie Joe | Office: Jacksonville |
| Activity Start Date: 09/08/2017 | Activity End Date:02/15/2018 |
| Approved By: Walsh, Matthew James | |

Description:Interview of inmate Joseph Craig

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000250

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number | 139 |

between Sergeant Nettles and Ridley once they were outside.

Craig said it was normal for Ridley to argue about stuff.  He used the example that Ridley would often argue over chess.  He had only seen Ridley argue with a correctional officer once.  In that situation, Ridley interrupted a correctional sergeant asking about his shorts and the sergeant "locked him up", meaning sent him to confinement.  Craig said Sergeant Nettles was normally calm and he had not witnessed any aggressive behavior directed towards inmates.  He had no personal issues with the correctional officers.  Typically officers will separate an inmate from other inmates to discuss inappropriate conduct.  This was the first time he saw an inmate sent outside for a counseling session and he had never witnessed excessive force by the correctional officers.

Craig said it was normal for them to be awoken by the correctional officers for their work assignments and since it was so early in the morning many people have a hard time waking up.

Interview concluded at 1300 hours.

277620190211103251

PL000251

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the service of subpoenas to AT&T and Verizon wireless.

On January 5, 2018, Special Agent (SA) David Maurer faxed four subpoenas to wireless carriers to obtain subscriber information and call information.  One was sent to Verizon Wireless and three were sent to AT&T.

On January 16, 2018, SA Maurer received the response back from Verizon Wireless.
(352)317-2012 came back to William Jerrels

On January 29, 2018, SA Maurer received the response back from AT&T.
(352)281-0648 came back to Robert Boukri
(352)246-1092 came back to Sonya Raphaelle Gerber
(904)210-1031 came back to a prepaid customer, but is reported to belong to John Nettles

SA Maurer provided the information on CD to Senior Crime Intelligence Analyst I (SCIA) Marissa Delaney for comparison.  The subpoenas will be maintained as related item INV-136, in the case file.

| Case Number: JA-37-0133 | Serial #: 140 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 02/28/2018 | Activity End Date:02/28/2018 |
| Approved By: Walsh, Matthew James | |

Description:Cell Phone Subpoena Information

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000252

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▓▓▓▓▓▓▓▓, Ridley died while being treated at ▓▓▓▓▓▓▓▓▓▓▓▓▓ in Jacksonville, Florida. ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the issuing of a Court Order for Inmate Ridley's jail calls.

On February 7, 2018, Special Agent (SA) David Maurer received a signed copy of a court order to obtain the jail calls from FDC for Inmate Ridley.  The order was signed by Judge David Philip Kreider in the eighth circuit.  On February 8, 2018, SA Maurer served the order by emailing it to Katrina Lynn Seck the Records Manager at FDC.

On February 15, 2018, Ms. Seck emailed SA Maurer a secured link to download the audio files of Inmate Ridley's jail calls.  SA Maurer received 153 audio files which all were approximately 15 minutes in length.  SA Maurer reviewed all the files and out of the 153 files, 6 would be considered pertinent to the investigation.  In these calls Inmate Ridley speaks to his mother, Vera Ridley and his sister, Diane Gatewood.  During these calls he talks about being in confinement at RMC and issues with a Sergeant (Sgt.) Larry T. Young.  Below is a synopsis of what is said in the calls along with the files names and dates of the calls:

**Wav 54 RMC Main, FL 01-15-2017 21:23:02**
In this call Inmate Ridley is speaking to his sister and tells her he had been in confinement for the last two weeks, because an officer he refused to submit to a strip search.

**Wav 55 RMC Main, FL 01-16-2017 13:43:21**
In this call Inmate Ridley is speaking to his mother and tells her a Correctional Officer lied and said he refused to submit to a strip search so he was sent to confinement.  Inmate Ridley stated the CO never told him anything and he was submitting a grievance about the situation.  He said he was supposed to be in confinement for an additional week but was let out early.

**Wav 60 RMC West, FL 02-02-2017 20:34:07**

| Case Number: JA-37-0133 | Serial #: 141 |
| --- | --- |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 02/15/2018 | Activity End Date:02/15/2018 |
| Approved By: Walsh, Matthew James | |

Description:Inmate Ridley's Jail Calls

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000253

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 141 |

In this call Inmate Ridley is speaking to his mother and sister on speaker phone.  At the end of the call he tells them that he submitted a formal grievance to the Warden and was looking into a civil law suit against the CO who lied and got him placed into confinement.

**Wav 61 RMC West, FL 02-05-2017 09:51:56**
In this call Inmate Ridley is speaking to his mother and his sister.  He tells them again that he sent a formal grievance on the CO.  He said he had to wait 10 days for the grievance process before he looks into the civil suit.

**Wav 65 RMC Main, FL 02-23-2017 18:20:05**
In this call Inmate Ridley is speaking to his mother and sister on speaker phone.  He said he was once again put in confinement for disobeying an order from a CO.  He stated that he asked about his property that was not returned from the last time he was in confinement and the CO started yelling at him and put him back in confinement.  He said he spent five days in confinement and then he was put on probation.  He said the paperwork regarding the law suit was in one of his magazines that he did not get back after getting out of confinement. Additionally, he stated he wrote a letter of complaint to the FDLE regarding the situation.

**Wav 66 RMC Main, FL 02-25-2017 09:05:51**
In this call Inmate Ridley is speaking to his mother and sister on speaker phone.  He states that he is being harassed by the CO and gives the name Sgt. Larry Young.  He said Sgt. Young threatened to split his head for asking about his property.  He feels Sgt. Young is trying to create a history by sending him to confinement so many times and is afraid he is going to try and beat him.  His sister told him if Sgt. Young tries to beat him he should ball up in the fetal position and not fight back.  He told her that he did not want to be hit in the head with steel handcuffs and if that happened it would kill him.  His mother told him to stop talking about it because they listen to the phone calls.  His sister stated she would request an inquiry about the incident.

SA Maurer compared the phone calls to the list of toll charges Ms. Gatewood email.  All the calls that she had records of were in the calls sent from the court order.  A CD with the calls, the court order, and print outs of the toll charges will be maintained as related item INV-137, in the case file.

PL000254

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig Ridley was the subject of a use of force by FDC Sergeant (SGT) John Nettles and Captain (CPT) William Jerrels. ██████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████████████████████ ██████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.

On January 11 2018, at approximately 1010 hours, Special Agent Michael Clark (SA) and Special Agent (SA) Yolanda Carbia conducted a follow up interview with Eric Roldan at the Florida Department of Law Enforcement (FDLE) Gainesville Field Office. Roldan was originally interviewed on December 21, 2017, at RMC West Unit. Refer to IR# 102 for details. Roldan's native language was Spanish, and he had limited understanding of the English language. SA Carbia translated for SA Clark during the follow up interview.

Roldan was sworn in by SA Clark and the interview was audio and video recorded. The below information is a summary of the interview.

Roldan stated he was housed in the same dorm as Ridley and slept two beds away from him (Ridley). On the morning in question September 08, 2017, at 0300 hours, a correctional officer came to wake Ridley up for work and Roldan heard Ridley tell the officer it was his day off. Officers lined other inmates up including Roldan in the hallway to go to their work assignments. By that time Ridley was out of bed and in the laundry room. Roldan could not see what happened with Ridley from the hallway. A short time later Roldan was on his work assignment in the kitchen, he saw a gurney being wheeled by outside with Ridley on it. Roldan said while he and other inmates were lined up outside, and prior to going to the kitchen, he heard what sounded like a fight in the laundry room. Roldan could not name the officers that came to get the work crew that morning, but said he could identify the officers if shown pictures.

When asked to describe what he heard coming from the laundry room, Roldan described sounds consistent with a fight or a struggle. The sounds he heard continued for about ten or fifteen minutes. About five minutes after the sounds stopped, the work crew was escorted into the kitchen by officers. About five minutes later Roldan saw the gurney being taken outside with

| Case Number: JA-37-0133 | Serial #: 142 |
|---|---|
| Author: Clark, Michael Stephen | Office: Gainesville |
| Activity Start Date: 01/11/2018 | Activity End Date:01/11/2018 |
| Approved By: Brown, Chadwick Lawrence | |

Description:Follow up Interview of Eric Roldan

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000255

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 142 |

Ridley on it.

According to Roldan, it's common knowledge there is a blind spot for the cameras in the laundry room and the officers inform inmates of the blind spot. Roldan described Ridley as an inmate who got along well with other inmates, and he (Roldan) did not know of a particular officer having a problem with Ridley. The interview with Roldan was concluded.

A compact disc of the recorded interview was made and entered as a related item (INV# 138).

277620190211103251

PL000256

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the issuing of a Court Order for Inmate Ridley's jail calls.

This report will detail the forensic Imaging of 3 ECOR HD 16x1 DVR (digital video recorders) from RMC Main and RMC West.

On December 27, 2017, Special Agent Prendergast received evidence items 1, 2 and 3 which are ECOR HD 16x1 DVR (digital video recorders). The hard drives from Evidence item 1, Evidence item 2 and Evidence item 3 were forensically imaged using DME forensics, DVR Examiner version 2.1.1. The DVR hard drives were preserved in its original state and placed into the Jacksonville Evidence Vault as Evidence item 1.1, Evidence item 2.1, Evidence item 2.2 and Evidence item 3.1.

The images of the DVR hard drives were compressed and copied onto four Seagate 4 terabyte hard drives. The images were placed into the Jacksonville Evidence Vault as Evidence item 1.2, Evidence item 2.3, Evidence item 2.4 and Evidence item 3.2.

SA Prendergast was able to extract videos and access logs from the Evidence Item 2 using the ECOR HD built in software. The videos and access logs were copied onto a Samsung 160 gigabyte hard drive and submitted into the Jacksonville Evidence Vault as Evidence item 2.5. A copy of the Custody Receipt will be maintained as INV-147.

SA Prendergast verified the DVR's time by comparing the systems clock with his agency assigned Verizon Wireless cell phone. SA Prendergast took a picture of the DVR video export screen with his cell phone. The exif data of the picture is consistent with the time reflected in the picture. A copy of the picture will be maintained as related item INV-155.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 143 |
| Author: Prendergast, Roger David | Office: Jacksonville |
| Activity Start Date: 12/27/2017 | Activity End Date:05/08/2018 |
| Approved By: ONeal, Michelle E. | |

Description:DVR Examination

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000257

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 143 |

277620190211103251

PL000258

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ██████████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the review of Kilo wing 2 video for the days Inmate Ridley was housed there.

On April 9, 2018, Special Agent (SA) David Maurer reviewed the video for Kilo dormitory wing 2 for September 8, 2017. This video shows Inmate Ridley being gained. At approximately 1602 hours he is shown in a ████████ and accompanied by four Correctional Officers (COs), being taken to his cell (2108). Due to the angle of the camera and the area were the cell is located, SA Maurer was unable to see where in the cell Inmate Ridley was placed. The following are the times from the video regarding any activity in an around Inmate Ridley's cell on 9/8/2017:

1603 hours - Inmate Ridley is brought to cell 2108.
1613 hours - Two COs walk by cell.
1621 hours - CO and employee walk a cart past cell.
1651 hours - CO walks past door doing checks.
1655 hours - Orderly (Inmate) walks past cell with broom.
1724 hours - Orderly (possibly Inmate Ford) walks by cell and looks in.
1727 hours - Orderly stops at door and looks in window.
1731 hours - Orderly walks past door.
1740 hours - Orderly is sweeping the floor next to cell and looks in window.
1812 hours - CO walks past cell door does not stop.
1930 hours - CO and two Orderlies stop at the cell with food. CO opens the flap and an Orderly puts a tray through the flap.
1958 hours - CO walks past cell and shines a flashlight into the cell and keeps walking.
2008 hours - Orderly pushes a broom past door and looks into cell.
2016 hours - Two COs stop and shine a flashlight in the cell and continue walking.
2021 hours - Two COs walk past cell.
2121 hours - CO walks to cell and shines a flashlight into cell and walks away.

| Case Number: JA-37-0133 | Serial #: 144 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/10/2018 | Activity End Date:05/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Review of Video from Kilo Dormitory 9/8/2017

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000259

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 144 |

2152 hours - CO and three Orderlies are bringing new blankets to each cell.  An Orderly puts a sheet in the flap and CO pushes them into the cell.  They did not retrieve any old sheets from Inmate Ridley.

2205 hours - CO walks by cell and shines a flashlight into the cell and continues walking.

2224 hours - two COs walk and shine flashlights into the cell and keep going.

2316 hours - A CO and an Orderly stop at cell door.  CO looks inside for a second then turns and walks away.

This review shows that on September 8, 2017, someone walked past Inmate Ridley's cell a total of twenty (20) times while he was in confinement.  The only time anyone enters his cell is when he was placed in the cell at 1603 hours.

The video for 9/8/2017 was placed onto a thumb drive and will be maintained as related item INV-148, in the case file.

277620190211103251

PL000260

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the review of Kilo wing 2 video for the days Inmate Ridley was housed there.

On April 14, 2018, Special Agent (SA) David Maurer reviewed the video for Kilo dormitory wing 2 for September 9, 2017. This video is the second day Inmate Ridley was housed in confinement. SA Maurer is reviewing the video to document the number of times someone passes Inmate Ridley's cell (2108) and is able to see inside. The following are the times from the video regarding any activity in an around Inmate Ridley's cell on 9/9/2017:

0123 hours - Corrections Officer (CO) conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0151 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0222 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0251 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0324 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0425 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0506 hours - CO and what appears to be a nurse walk past cell door but do not stop.

0552 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0615 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0652 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0717 hours - CO walks to cell door and opens the flap for breakfast. An Orderly comes by and

| Case Number: JA-37-0133 | Serial #: 145 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/10/2018 | Activity End Date:05/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Review of Video from Kilo Dormitory 9/9/2017

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000261

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 145 |

places a tray on the flap and the CO walks by and pushes the tray into the cell.

0733 hours - CO comes back and opens the flap to retrieve the breakfast tray. A few moments later an Orderly comes by to pick up the tray and there is no tray in Inmate Ridley's flap. CO comes back by and closes the flap.

0807 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0830 hours - An Orderly walks past the cell with a broom.

0833 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0846 hours - An Orderly walks past the cell with a broom.

0849 hours - An Orderly walks past the cell with a broom.

0900 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0903 hours - An Orderly walks past the cell with a broom.

1011 hours - An Orderly is sweeping just outside the cell door and looks inside the cell.

1035 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1103 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1129 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1203 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1240 hours - CO and Orderly are at cell door with lunch. CO opens flap and Orderly put tray on the door. CO waits a few seconds and appears to push tray off the flap and closes the flap and walks away.

1255 hours - CO comes back to the cell and opens the flap to receive the food tray. A few moments later the Orderly walks by and takes two trays from 2109 but no tray from Inmate Ridley's cell. CO comes back by and closes the flap.

1334 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1353 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1448 hours - A nurse and CO come to the cell. They spend approximately 30 seconds at the door and then move on.

1534 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1547 hours - Orderly walks past cell door picking up trash.

1605 hours - CO conducts his checks and walks by Inmate Ridley's cell. CO stopped and looked into cell for a second or two.

1628 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1704 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1740 hours - CO opens the flap on Inmate Ridley's cell door for diner. An Orderly places a Styrofoam tray on the flap. CO stops at cell and looks in. CO appears to push Styrofoam tray into the cell and closes flap.

1801 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1815 hours - Two COs conducting their checks walk by Inmate Ridley's cell.

1936 hours - CO conducts his checks and walks by Inmate Ridley's cell.

2117 hours - CO conducts his checks and walks by Inmate Ridley's cell.

2148 hours - CO conducts his checks and walks by Inmate Ridley's cell.

2256 hours - CO conducts his checks and walks by Inmate Ridley's cell.

2311 hours - An Orderly is in front of the cell with a broom.

2335 hours - An Orderly walks by the cell and looks into the window.

2350 hours - CO conducts his checks and walks by Inmate Ridley's cell.

After reviewing the video SA Maurer counted forty-four (44) times someone walked past Inmate Ridley's cell door. At no time did anyone enter his cell or open the cell door. It should be noted that between approximately 7 and 9 pm showers were provided to several inmates but Inmate

PL000262

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 145 |

Ridley was never taken from his cell.

The video for 9/9/2017 was placed onto a thumb drive and will be maintained as related item INV-149, in the case file.

277620190211103251

PL000263

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ██████████ ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the review of Kilo wing 2 video for the days Inmate Ridley was housed there.

On April 17, 2018, Special Agent (SA) David Maurer reviewed the video for Kilo dormitory wing 2 for September 10, 2017. This video is the third day Inmate Ridley was housed in confinement. SA Maurer is reviewing the video to document the number of times someone passes Inmate Ridley's cell (2108) and is able to see inside. The following are the times from the video regarding any activity in an around Inmate Ridley's cell on 9/10/2017:

0023 hours - Corrections Officer (CO) conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0122 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0149 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0224 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0251 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0320 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0350 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0418 hours - CO conducts his checks and walks by and shines a flashlight into Inmate Ridley's cell.

0446 hours - A CO and two nurses stop at Inmate Ridley's cell door. It appears that some type medication is placed on the flap and the CO closes the flap before they walk away.

| Case Number: JA-37-0133 | Serial #: 146 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/10/2018 | Activity End Date:05/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Review of Video from Kilo Dormitory 9/10/2017

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000264

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 146 |

0550 hours - CO conducts his checks and walks by cell and shines a flashlight into Inmate Ridley's cell.

0617 hours - CO conducts his checks and walks by Inmate Ridley's cell.

 0649 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0721 hours - An Orderly (Inmate) is at Inmate Ridley's cell door with breakfast.  A CO comes to the door and looks into the cell.  The CO opens the flap on the door, but no tray is placed on the flap.  The CO closes the flap without food.

0737 hours - Same CO and Orderly come back to cell to pick up breakfast tray.  No tray picked up from Inmate Ridley's cell.

0844 hours - CO conducts his checks and walks by Inmate Ridley's cell.

0935 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1000 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1026 hours - An Orderly pushes a broom past cell door.

1032 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1104 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1112 hours - An Orderly walks past the cell and looks into the window of Inmate Ridley's cell.

1122 hours - CO and an Orderly are at Inmate Ridley's cell door with lunch.  The CO and Orderly look into the window and do not put a tray on the flap.  This is the same CO that did not put a tray on the flap for breakfast.

1141 hours - CO and the Orderly come back by to pick up trays from lunch.  CO does not open Inmate Ridley's flap, no tray removed.

1239 hours - CO conducts his checks and walks by cell Inmate Ridley's cell.  CO had what appeared to be some dark colored clothing in his hand that he provided to another inmate in cell 2109.

1250 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1331 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1401 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1436 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1503 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1526 hours - CO walks by Inmate Ridley's door opening flaps for diner.  CO does not open Inmate Ridley's flap and no Styrofoam tray is given to Inmate Ridley.

1546 hours - CO conducts his checks and walks by cell Inmate Ridley's cell.  He closes flaps on cell doors around 2108.

1553 hours - An Orderly is outside of cell picking up trash and looks into Inmate Ridley's cell.

1712 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1811 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1819 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1837 hours - CO walks up to the cell door.  It appears that showers are being provided and he is checking with inmates to see if they are in need of one.  Approximately, three minutes later the two inmates in 2109 are taken out of their cell and leave for showers.  Inmate Ridley is not removed.

1910 hours - Three COs bring back both of the inmates from the shower to 2109.

1913 hours - An Orderly brings towels to 2109 but, looks into Inmate Ridley's cell for a few seconds.

1953 hours - CO conducts his checks and walks by Inmate Ridley's cell.

1955 hours - CO conducts his checks and walks by Inmate Ridley's cell.

2010 hours - Another inmate in a ▆▆▆▆▆▆ is brought back to cell 2010.  One of the COs looks into Inmate Ridley's cell for a few seconds.

PL000265

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 146 |

2053 hours - CO conducts his checks and walks by Inmate Ridley's cell.
2101 hours - CO conducts his checks and walks by Inmate Ridley's cell.
2143 hours - CO looks into Inmate Ridley's cell.
2200 hours - CO and Supervisor go to Inmate Ridley's cell and look into the window.  They spend approximately two minutes at the door and even open the flap to look inside then walk away.
2226 hours - CO conducts his checks and walks by Inmate Ridley's cell.
2314 hours - CO conducts his checks and walks by Inmate Ridley's cell.
2344 hours - CO conducts his checks and walks by Inmate Ridley's cell.

After reviewing the video SA Maurer counted forty-eight (48) times someone walked past Inmate Ridley's cell door.  At no time did anyone enter his cell or open the cell door.  It should be noted that showers were provided to several inmates but Inmate Ridley was never taken from his cell and he did not receive any food the entire day.

The video for 9/10/2017 was placed onto a thumb drive and will be maintained as related item INV-150, in the case file.

PL000266

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the review of Kilo wing 2 video for the days Inmate Ridley was housed there.

On April 24, 2018, Special Agent (SA) David Maurer reviewed the video for Kilo dormitory wing 2 for September 11, 2017. This video is the fourth day Inmate Ridley was housed in confinement. SA Maurer is reviewing the video to document the number of times someone passes Inmate Ridley's cell (2108) and is able to see inside. The following are the times from the video regarding any activity in an around Inmate Ridley's cell on 9/11/2017:

0014 hours - Correctional Officer (CO) conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0031 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0053 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0122 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0153 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0219 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0252 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0327 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0353 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0425 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0449 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0522 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell. The CO spends some time at the door and checks under it. It appears there is a large amount of water on the floor due to Hurricane Irma.
0553 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0636 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.
0707 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

| Case Number: JA-37-0133 | Serial #: 147 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/10/2018 | Activity End Date:05/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Review of Video from Kilo Dormitory 9/11/2017

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000267

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 147 |

0734 hours - CO and an Orderly are at cell door with breakfast.  The CO opens the flap on the cell door and the Orderly puts something on the flap and the CO closes it.  Whatever the Orderly put on the flap was not a food tray.

0826 hours - Two COs and a Supervisor are outside Inmate Ridley's cell door and look inside.

0840 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

0904 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

0956 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1102 hours - CO and Nurse are at Inmate Ridley's cell door.  The CO opens the flap on the door and they look inside.  The Nurse walks away and the CO closes the flap.

1130 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1144 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1204 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1212 hours - CO and Orderly are at cell door with mop.  There is a lot of water on the floor due to Hurricane Irma and the Orderly is mopping up the water in the area of 2108 and 2109.  The Orderly mopped up the area all along the side of the dorm where Inmate Ridley was housed.  Almost all the other inmates put items that are wet in their cells outside the door except for Inmate Ridley.

1346 hours - CO and an Orderly are at cell door with lunch.  CO opens flap and the Orderly put what appears to be a wrapped sandwich on the flap before it is closed by the CO.

1506 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1539 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1610 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1700 hours - CO opens flap on cell door for diner.  An Orderly looks into the cell and through the flap but does not put any food on the flap.  A CO comes past and closes the flap.

1834 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1853 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1922 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

1957 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

2023 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

2050 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

2126 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

2249 hours - CO conducts his checks and looks into Inmate Ridley's Cell.

2320 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's Cell.  The CO comes back to the cell and looks into it a second time.

2329 hours - An Orderly walked up to Inmate Ridley's cell door and looks inside.  He spends approximately a minute at the door and then comes back and said something to another Orderly about Inmate Ridley.

2354 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.

After reviewing the video SA Maurer counted forty-one (41) times someone walked past Inmate Ridley's cell door.  At no time did anyone enter his cell or open the cell door.  It should be noted that showers were provided to several inmates but Inmate Ridley was never taken from his cell.

The video for 9/11/2017 was placed onto a thumb drive and will be maintained as related item INV-151, in the case file.

Page : 2 of 2                    277620190211103251

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the review of Kilo wing 2 video for the days Inmate Ridley was housed there.

On May 1, 2018, Special Agent (SA) David Maurer reviewed the video for Kilo dormitory wing 2 for September 12, 2017.  This video is the fifth day Inmate Ridley was housed in confinement. SA Maurer is reviewing the video to document the number of times someone passes Inmate Ridley's cell (2108) and is able to see inside.  The following are the times from the video regarding any activity in an around Inmate Ridley's cell on 9/12/2017:

0028 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0054 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0127 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0152 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0221 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0251 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0329 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0356 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0420 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0449 hours - CO conducts his checks and shines a flashlight into Inmate Ridley's cell.
0528 hours - CO and Nurse walk past Inmate Ridley's cell door; Nurse looks in and continues walking.
0549 hours - CO conducts his checks and looks into Inmate Ridley's cell.
0616 hours - CO conducts his checks and looks into Inmate Ridley's cell.
0634 hours - CO conducts his checks and looks into Inmate Ridley's cell.
0707 hours - CO came by cell door and opened the flap for breakfast.  An Orderly comes by with the food trays and the CO places a tray on the flap.  The CO looks inside the cell and eventually closes the flap.

| Case Number: JA-37-0133 | Serial #: 148 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/10/2018 | Activity End Date:05/10/2018 |
| Approved By: Walsh, Matthew James | |

Description:Review of Video from Kilo Dormitory 9/12/2017

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000269

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 148 |

0724 hours - CO comes back by and opens the flap to retrieve the breakfast tray.  No tray is removed from Inmate Ridley's cell.  CO comes back by the cell and closes the flap.
0808 hours - CO conducts his checks and looks into Inmate Ridley's cell.
0810 hours - CO conducts his checks and looks into Inmate Ridley's cell.
0847 hours - Four (4) COs comes to Inmate Ridley's cell door with a ▓▓▓▓▓▓ and shield. They open the cell door and enter the cell.  As they enter the cell you can see several items being kicked out of the cell that appear to be sandwiches in wrappers.  At 0851, Inmate Ridley is removed from his cell in a ▓▓▓▓▓ and taken from wing 2.
0930 hours - An Orderly goes to Inmate Ridley's cell with a mop and bucket.  The Orderly sweeps what appears to be more wrapped food from cell and puts Styrofoam container outside of cell.

After reviewing the video SA Maurer counted nineteen (19) times someone walked past Inmate Ridley's cell door.  Approximate an hour after breakfast was served; Inmate Ridley was removed from his cell and transported to the medical wing.  The Orderly cleaning his cell removed several items which appear to be wrapped food.  The video ends before any food trays are removed from the cell.

The video for 9/12/2017 was placed onto a thumb drive and will be maintained as related item INV-152, in the case file.

277620190211103251

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the return of evidence to RMC.

On April 6, 2018, Special Agent (SA) David Maurer met with Crime Laboratory Technician (CLT) Bernard Hollis. SA Maurer provided an approved EDAF and removed and transferred the following items of evidence:

Item #01: EDOR HD 16x1 DVR S/N: 1mw265430048
Item #02: EDOR HD 16x1 DVR S/N: 1mw285180079
Item #03: EDOR HD 16x1 DVR S/N: 1mw285180086

These items were transferred to Inspector Kevin Ortiz at the DOC.

A copy of the Custody Receipt will be maintained as related item INV-153, in the case file.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 149 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 04/06/2018 | Activity End Date:04/06/2018 |
| Approved By: Walsh, Matthew James | |
| Description:EDAF of Kilo Dormitory DVRs back to RMC | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000271

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████
█████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this report is to document the submission of evidence.

On May 9, 2018, at 1350 hours SA Maurer met with Crime Laboratory Technician (CLT) Bonnie Cox.  SA Maurer submitted the following from evidence:

Evidence Item 07: Questionable DOC Documents with Inmate Ridley's Signature
Evidence Item 08: Examples of Inmate Ridley's Signature

These Items will be sent to the Pensacola Regional Operations Center for Hand Writing Analysis.

A copy of the FDLE evidence submission form will be maintained as related item INV-154, in the case file.

| Case Number: JA-37-0133 | Serial #: 150 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/09/2018 | Activity End Date:05/09/2018 |
| Approved By: Walsh, Matthew James | |

Description:Submission of Evidence for Hand Writing Analysis

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000272

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### INVESTIGATIVE REPORT

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. █████████████ ██████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Licensed Practical Nurse (LPN) Stephanie Michelle Winningham.

On May 31, 2018, at 0828 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of LPN Winningham at her home, 16211 SW 66th Place, Starke, Florida. The interview was a sworn and recorded interview. The following is not a verbatim account of the interview and should be considered a synopsis; for more detail a CD with the entire interview will be maintained as related item INV-156, in the case file. LPN Winningham advised the following:

She has been a nurse for eight years as a Medication Nurse at RMC. One of her responsibilities at RMC is to distribute single dose medication to inmates in the confinement dormitory (Kilo Dorm). Once an order for medication is processed she brings that medication over to confinement and distributes it. She is not responsible for attending to inmates who need to see a nurse due to an illness, that is the responsibility of the "sick call" nurse in confinement, who at the time of this incident was Nurse Kelly M. Strama. LPN Winningham said she has very little interaction with the Correctional Officers (CO) in confinement. On occasion a CO may tell one of the nurses that certain inmates will spit at them if they get too close to the "flap" on the cell door, but that is about the extent of their conversations. Once medication is distributed to an inmate, it is documented on a Medication and Treatment Record (MAR) form for that specific inmate.

SA Maurer provided the MAR form for Inmate Ridley. LPN Winningham reviewed the form and said she was the nurse who administered Inmate Ridley's medication on 9/10/2017 and 9/11/2017. LPN Winningham was able to confirm this due to her signature and initials on the form for those days. Lpn Winningham explained Inmate Ridley was to receive "Ensure" three times a day by mouth for seven days according to the MAR form. On 9/10/2017, according to

| Case Number: JA-37-0133 | Serial #: 151 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/31/2018 | Activity End Date:05/31/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of LPN Stephanie Winningham

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000273

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 151 |

the MAR form, LPN Winningham administered his "Ensure" at 0600, 1200, and 1800 hours. The MAR form also showed Inmate Ridley refused to take the medication for those times. Lpn Winningham explained if an inmate does not to come to the cell door to accept the medication it is considered a refusal and Inmate Ridley did not come to the door. LPN Winningham said she did not and normally does not look in the window because she is a female and the inmates do nasty things (like masturbate) when females go to the windows. SA Maurer knows this is a common occurrence with the female staffers. On 9/11/2017, according to the MAR form, LPN Winningham administered his "Ensure" at 0600 hours and again Inmate Ridley refused and at 1200 hours with a notation "not in cell". SA Maurer explained to LPN Winningham, witnesses stated Inmate Ridley could not move due to his injuries, and was placed in cell 2108 on 9/8/2017. Additionally, witness stated Inmate Ridley never moved from the position he was placed on his bunk. Inmate Ridley was physically unable to move to come to the cell door to accept his medication, he was not refusing it. LPN Winningham said none of the COs told her Inmate Ridley couldn't move and nothing on the MAR form indicated his condition.

SA Maurer showed her a photo taken from the video cameras on 9/9/2017 at 1449 hours. It appears that she was in front of Inmate Ridley's cell but there was nothing on the MAR form regarding medication. She could not explain why she was there. SA Maurer showed LPN Winningham a photo taken from the video cameras on 9/10/2017 at 0446 hours, of her standing in front of cell 2108. She identified herself in the photo. SA Maurer explained this was the only time she went to the cell on 9/10/2017. SA Maurer reminded her the MAR form showed her administering medication three times that day. SA Maurer showed LPN Winningham another photo of her at the cell on 9/11/2017 at 1103 hours which was the only time she was there, even though she indicted on the MAR form she had administered medication two times that day. LPM Winningham could not explain the discrepancies between the MAR form and the photos shown to her. She said the photos clearly show her going to the cell only two times and not the five times as indicated on the MAR form.

SA Holycross explained to LPN Winningham that falsifying official forms is a criminal offence and she understood that her actions constituted a possible crime. LPN Winningham also understood as a medical professional it is her duty to complete these forms accurately and she did not do that. LPN Winningham stated due to Hurricane Irma on 9/10/2017, all the inmates on the compound were given enough medication to last until the morning of 9/11/2017, when the hurricane was supposed to have past. Multiple doses of narcotics and insulin were not given out to inmates. After the medication was distributed that day, she left RMC at approximately 1000 hours. LPN Winningham said she did falsify the MAR form with regards to the times and the refusals. LPN Winningham could not explain why she didn't make a notation on the MAR form indicating due to Hurricane IRMA three doses of medication where provided to Inmate Ridley. She was again asked if any of the security staff told her to ignore Inmate Ridley and falsify the paperwork. LPN Winningham said an unknown CO told her Inmate Ridley wasn't going to get up for his medication (not to ignore him). Regarding the falsification of the form, no one told her to do that. LPN Winningham was asked if any of the security staff told her Inmate Ridley hadn't moved or eaten in several days and they were concerned about him. LPN Winningham said the only thing the unknown CO told her was Inmate Ridley would not come to the door for his medication. LPN Winningham has not been told anything about Inmate Ridley since his death and did not really know anything about him until SA Maurer and SA Holycross came to interview her.

277620190211103251

PL000274

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 151 |

The interview of LPN Winningham concluded at 0948 hours.  The photos shown to her will be added to related item INV-156, in the case file.

277620190211103251

PL000275

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Registered Nurse (RN) Amanda Marie Corey.

On May 31, 2018, at 1057 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of RN Corey at her home, 5930 NW 31st Terrace, Gainesville, Florida 32653. The interview was a sworn and recorded interview. The following is not a verbatim account of the interview and should be considered a synopsis; for more detail a CD with the entire interview will be maintained as related item INV-157, in the case file. RN Corey advised the following:

RN Corey is a nurse at RMC-West Unit; her shift is from 1900-0700 hours. She was working on September 8, 2017, the evening when Inmate Ridley was brought in for a post use-of-force evaluation. Inmate Ridley was brought to her in a ████████. Inmate Ridley said was unable to move from the ████████ to the stretcher for the evaluation. Inmate Ridley was handcuffed behind his back which made it difficult to examine him. RN Corey was able to obtain his blood pressure and pulse which appeared normal. RN Corey advised Inmate Ridley appeared to be resisting the tests due to him being handcuffed and in the ████████. RN Corey said Inmate Ridley's arms and fingers were moving in a way that she considered resistance, and not unable to move as he reported. Inmate Ridley told RN Corey several times he was unable to move from the neck down. She again stated that he appeared to be resisting because his arms and fingers were moving. However, RN Corey said Inmte Rildey's legs did not move at all during the exam. When the exam was concluded and Inmate Ridley was transported to RMC-Main Unit, RN Corey stated she should have taken his shoes off and conducted a pain test to determine if there was sensation in his legs but she didn't. She said she called over to Urgent Care at RMC Main Unit and spoke to Doctor David E. Rodriguez to tell him she did not conduct any Neurological test and they should conduct those tests there. Dr. Rodriguez told RN Corey ████████████ were conducted on Inmate Ridley and at first he had some ████████ but

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 152 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 05/31/2018 | Activity End Date:05/31/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of RN Amanda Corey

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000276

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 152 |

later got up and walked out of the Urgent Care.

SA Maurer showed RN Corey a copy of the Post-Use-of-Force paperwork which had her signature at the bottom of the page.  RN Corey recognized the form and stated she completed the form and it was in her hand writing.  She again acknowledged Inmate Ridley's complaint of a loss of sensation in his arms and legs and stated he did have some movement in his hands.  She was asked if the movement in his fingers was "spastic" movements, and she said "no" it appeared that he was resisting.  She was asked why the handcuffs were not removed so she could do a more thorough exam of Inmate Ridley.  She said the Security staff would have laughed at her if she asked to remove the handcuffs because Inmate Ridley had just hit a staff member.

SA Maurer showed RN Corey portions of the Post-Use-of-Force video.  She said Inmate Ridley's legs looked "flaccid" (unable to move) and she again stated she should have taken his boots off and checked for stimulus in his legs and feet but did not.  Because she did not check his legs and feet, she called over to Urgent Care to have them conduct the tests.  After reviewing the video and being told Inmate Ridley had a dislocated neck and not a tumor, RN Corey advised she would have handled the situation differently.  RN Corey stated she did not put Inmate Ridley in a C-collar or call for him to be transported by ambulance, because she thought he was faking due to the movement in his arms and fingers.

RN Corey stated during the interview she saw Sgt. Nettles after the incident and she did observe a red mark on his left cheek.  She could not remember if she completed his Post-Use-of-Force paperwork.

The interview of RN Corey concluded at 1201 hours.

277620190211103251

PL000277

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Doctor (Dr.) David E. Rodriguez.

On June 7, 2018, at 0909 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Dr. Rodriguez at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised Dr. Rodriguez the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-158, in the case file:

Dr. Rodriguez has been with RMC for approximately three years and normally works the midnight shift from 1900-0700 hours. He did not remember attending to Inmate Ridley and reviewed the medical file and advised it appeared Dr. Jean Maurice Dure signed off on the paperwork. SA Maurer told Dr. Rodriguez an interview was conducted with Nurse Amanda Marie Corey who was the nurse who initially saw Inmate Ridley at RMC-West. Nurse Corey stated in her interview that she called Dr. Rodriguez on the phone and told him she did not complete the ████████████ on Inmate Ridley and asked Dr. Rodriguez to conduct them. RN Corey then stated Dr. Rodriguez had conducted the tests and told her Inmate Ridley walked out of Urgent Care. Dr. Rodriguez said he did not remember attending to Inmate Ridley and confirmed that with the medical file. Dr. Rodriguez went on to say he did not talk to Nurse Corey on the phone in reference to Inmate Ridley. After reviewing the medical file, Dr. Rodriguez showed SA Maurer where Dr. Dure signed the form and stated the paperwork stated a doctor was never notified. Dr. Rodriguez went on to say, if he had been presented with Inmate Ridley's case and spoken to Nurse Corey regarding Inmate Ridley's complaints, he would have sent Inmate Ridley directly to ████████████. Dr. Rodriguez believed Inmate Ridley's case is the one that changed how trauma or use of force cases are handled at RMC. Prior to Inmate Ridley, if an inmate with any type of trauma or was involved in and use of force

| Case Number: JA-37-0133 | Serial #: 153 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 06/07/2018 | Activity End Date:06/07/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Dr. David Rodriguez

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000278

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 153 |

incident would go directly to confinement and then go to Urgent Care, if needed.  Now any inmate (with trauma or involved if a use of force) coming from an outside facility or RMC-West must be seen by a doctor before heading to confinement.

Dr. Rodriguez continued to review Inmate Ridley's medical file and stated there were forms missing from the file.  There were no encounter forms or ███████████████ which should have been completed if those tests were done in Urgent Care.  He said it appeared Dr. Dure was the attending physician who saw Inmate Ridley.  Additionally, he said the nurses are responsible for completing the forms that were missing and the doctor signs the form stating the test were conducted.  SA Maurer learned after the interview, the encounter forms were completed and transferred to computer but, no ████████████ were ever done.  Dr. Rodriguez again said if he had seen Inmate Ridley on 9/8/2017 he would have sent him to an outside hospital.  Even though there was a pending hurricane, several other inmates were sent to outside hospitals that weekend.  Dr. Rodriguez said the hospital was completely staffed during Hurricane Irma but there is only so much they can do at RMC with a patient complaining of paralysis and he would have wanted to have a ████████ evaluate Inmate Ridley.

The interview of Dr. Rodriguez concluded at 0945 hours.

277620190211103251

PL000279

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Licensed Practical Nurse (LPN) Tiffany Robinson.

On June 7, 2018, at 1023 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of LPN Robinson at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised LPN Robinson the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-159, in the case file:

LPN Robinson is a nurse at RMC and currently works as the "sick call" nurse in confinement. At the time of the incident with Inmate Ridley on September 8, 2017, she was assigned to Urgent Care. LPN Robinson was unfamiliar with Inmate Ridley and did not recognize him from a photo SA Maurer showed her. LPN Robinson's signature was observed on an order sheet from Inmate Ridley's medical file on 9/12/2017 at 1030 hours. SA Maurer showed LPN Robinson the order sheet and she advised it was her signature, but she only signed it to show the procedures were completed. She explained a doctor used the sheets to order medical procedures (in this case an EKG and a CT). Once those procedures were completed and the results are back from the lab, a nurse has to sign the sheet acknowledging it was complete. LPN Robinson said she never saw Inmate Ridley while he was in Urgent Care and that she only signed the sheet because the labs came back while she was in Urgent Care. LPN Robinson said she was only covering a shift in Urgent Care that day because they were short nurses. She had only worked in Urgent Care two or three times, in the two and a half years she has been at RMC.

The interview of LPN Robinson concluded at 1053 hours.

| Case Number: JA-37-0133 | Serial #: 154 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 06/07/2018 | Activity End Date:06/07/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of LPN Tiffany Robinson

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000280

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. █████████ ██████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Registered Nurse (RN) Kelly M. Strama.

On June 13, 2018, at 0916 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of RN Strama at Tomoka Correctional Institute in Daytona Beach, Florida. SA Maurer and SA Holycross identified themselves and advised RN Strama the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-160, in the case file:

RN Strama has been with the FDC for approximately four years and was the nurse in the confinement dormitory in September 2017. The confinement nurse is responsible for seeing inmates in confinement during "sick call" or emergencies. RN Strama's shift was 0800-1630 hours Monday thru Friday. RN Strama said before going to confinement she would gather paperwork from Urgent Care for any inmates being housed in confinement. She would normally arrive in confinement at 0830 hours. On September 8, 2017, she was one of the nurses who saw Inmate Ridley. RN Strama said Sgt. John Nyitray came to her and asked if she would complete the necessary medical paperwork for Inmate Ridley because he came to confinement without it. Normally when an inmate is sent to confinement a DC6-229 (Daily Record of Special Housing), a DC6-221 (Cell Inspection), and CD4-650B (Risk Assessment for the use of Chemical Restraint Agent and Electronic Immobilization Device) forms are completed before the inmate is placed into a cell. None of these forms were brought in with Inmate Ridley. The DC6-229 and DC4-650B are started by medical staff and the DC6-221 is completed by security staff. NR Strama said she did not need to physically see Inmate Ridley, and used his medical file to complete the forms shortly after 0900 hours. SA Maurer showed RN Strama, Inmate Ridley's Medical File. RN Strama confirmed her signature and hand writing on the DC4-650B form; however she did not fill out the top portion of the DC6-229. At 1235 hours, RN Strama

| Case Number: JA-37-0133 | Serial #: 155 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 06/13/2018 | Activity End Date:06/20/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Registered Nurse Kelly Strama

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000281

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 155 |

completed a medical evaluation form after Inmate Ridley fell on his face in his cell. RN Strama said Inmate Ridley was in a ▇▇▇▇▇▇ and she had a difficult time getting vitals. Inmate Ridley complained of a loss of sensation from his neck down. RN Strama said Inmate Ridley was unable to grip her fingers and had pain in the shoulders and abdomen. Additionally, blood was noted around Inmate Ridley nose from the fall in cell. RN Strama sent Inmate Ridley immediately to Urgent Care for further evaluation. Prior to Inmate Ridley being taken to Urgent Care, Sgt. Aaron William Lewis made the comment that he felt Inmate Ridley was faking his paralysis. RN Strama said she felt Inmate Ridley was not faking; she checked for sensation in his legs and arms and got no response so she felt he needed to be seen by a doctor in Urgent Care. RN Strama went off shift prior to Inmate Ridley's return to confinement on September 8, 2017.

Due to Hurricane Irma, RN Strama, was unable work on Monday September 11, 2017. On Tuesday September 12, 2017, at approximately 0850 hours, RN Strama returned to work and Inmate Ridley was brought to her again in a ▇▇▇▇▇▇. It was reported to RN Strama by security staff that Inmate Ridley was in confinement over the weekend and never moved from the bunk where he was placed on September 8, 2017. Inmate Ridley told RN Strama that he was unable to move and had not eaten or drank anything or gone to the restroom all weekend. Inmate Ridley was dehydrated and RN Strama described his voice as "horse", and he was incoherent. RN Strama gave Inmate Ridley water, but had to put the cup to his mouth because he was unable to. RN Strama said Sgt. Lewis was one of the security staff members who brought Inmate Ridley to her on the 12th. Sgt. Lewis stated to RN Strama that Inmate Ridley was in the same position on his bunk that he was placed in on the pervious Friday. Sgt. Lewis also stated that Inmate Ridley's complaint of being unable to move could be "legitimate" and that he may not be faking. RN Strama said she was surprised to see Inmate Ridley was still in confinement and felt he should have been sent to an outside hospital on the previous Friday; or security staff should have kept a closer watch on him over the weekend. After RN Strama's evaluation of Inmate Ridley was completed she once again sent him to Urgent Care to be seen by a doctor. RN Strama did not see Inmate Ridley after he was taken to Urgent Care but later learn he was being sent to an outside hospital for further evaluation.

The interview of RN Strama was concluded at 1055 hours.

277620190211103251

PL000282

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████
████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Doctor (Dr.) Jean Maurice Dure.

On June 22, 2018, at 1340 hours, Special Agent (SA) David Maurer and SA George Dandelake conducted an interview of Dr. Dure at the Duval County Detention Center in Jacksonville, Florida. SA Maurer and SA Dandelake identified themselves and advised Dr. Dure the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-161, in the case file:

Dr. Dure has been a doctor at RMC for six years and in addition to working there, he also works at the Duval County Detention Center as a doctor. Dr. Dure was working the day shift (0700-1900 hours) on September 8, 2017, and was the attending doctor for Inmate Ridley when he was taken to Urgent Care after falling in his cell in confinement. SA Maurer showed Dr. Dure documentation from Inmate Ridley's medical file in which Dr. Dure made notes and signed several forms. Dr. Dure confirmed his hand writing and signature on the forms and began to explain his involvement in the case. SA Maurer explained Inmate Ridley was brought to Urgent Care at approximately 1230 hours and was complaining of a loss of sensation from the neck down from a use of force incident earlier that morning and that he had fallen on his face in his cell in confinement. Dr. Dure said Inmate Ridley was walked into Urgent Care by security staff to be examined. Dr. Dure said Inmate Ridley was not in a ████████. Dr. Dure examined Inmate Ridley and said he was ████████
SA Maurer showed Dr. Dure his notes from the exam. Dr. Dure read his note which stated; a ████████████ male walking to Urgent Care. Complain of ████████████
████████████ Inmate Ridley's upper extremities were ████████████
████. Dr. Dure checked his reflexes and they were ████████. Inmate Ridley was able to ████████. Inmate Ridley's lower extremities had ████████

| Case Number: JA-37-0133 | Serial #: 156 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 06/22/2018 | Activity End Date:06/22/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Doctor Jean Dure

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103251

PL000283

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 156 |

�find▌ Dr. Dure made a note at the bottom of the form, "Patient was noticed walking, when he said he could not walk". SA Maurer asked if Dr. Dure saw Inmate Ridley walk and he stated "yes". SA Maurer attempted to clarify if Dr. Dure saw Inmate Ridley walk into Urgent Care. Dr. Dure changed his statement that he saw Inmate Ridley walk into Urgent Care and referred to the note at the top of the form from Registered Nurse (RN) Crissy Leanne Kirkland. RN Kirkland wrote "Brought from K dorm security for pt alleging unable to move arms & legs - pt walked to cell front cuffed up walked to nurses clinic see DC4701C DC4708 - md to eval". Dr. Dure explained that Inmate Ridley had ▌▌▌▌▌ and was able to perform the entire basic ▌▌▌▌▌ given during the exam, including ▌▌▌▌▌. Dr. Dure ordered a ▌▌▌▌▌. Both the ▌▌▌▌▌. Dr. Dure cleared Inmate Ridley and sent him back to confinement. Dr. Dure ordered a follow-up appointment for September 13, 2017.

On September 12, 2017, at 0850 hours, Inmate Ridley was brought to RN Kelly M Strama who was the nurse in confinement. RN Strama's examination report reads as followed: "▌▌▌▌▌ ▌▌▌▌▌." Inmate Ridley was once again sent to Urgent Care where Dr. Dure was the attending physician. Dr. Dure and RN Bryan Austin Forsyth examined Inmate Ridley and noticed his condition changed from the last time he was in Urgent Care on September 8, 2017. Inmate Ridley was lethargic but able to answer yes/no or A/B questions. Inmate Ridley was unable to touch his nose, squeeze hands, and unable to move his legs. Dr. Dure ▌▌▌▌▌ and decided to send Inmate Ridley to an outside hospital. Inmate Ridley was transported by a prison van to ▌▌▌▌▌ in Jacksonville, Florida later that night at approximately 0100 hours on September 13, 2017. SA Maurer asked Dr. Dure why he did not admit Inmate Ridley to the hospital at RMC or send him to an outside hospital on September 8, 2017. Dr. Dure said Inmate Ridley did not appear to be in an emergency situation on September 8, 2017, because all the tests he conducted ▌▌▌▌▌. Dr. Dure also said he scheduled a follow-up for five days and he felt if Inmate Ridley's condition changed or worsened before that, security staff would bring him back to Urgent Care.

The interview of Dr. Dure concluded at 1446 hours.

PL000284

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Centurion Mortality Coordinator, Latorya A. Jenkins.

On June 27, 2018, at 1010 hours, Special Agent (SA) David Maurer and SA George Dandelake conducted an interview of L. Jenkins in the records section of RMC Hospital. SA Maurer and SA Dandelake identified themselves and advised L. Jenkins the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-162, in the case file:

In addition to being the records clerk at RMC, Jenkins is also the Mortality Coordinator for Centurion LLC., the contract medical provider for the FDC and has been with FDC for fifteen years. As the Mortality Coordinator, Jenkins is responsible for reviewing the medical files of inmates who die while at RMC. Jenkins conducted a review of Inmate Ridley's medical file after he died. After reviewing Inmate Ridley's medical file, Jenkins spoke to Registered Nurse (RN) Crissy Leanne Kirkland. Jenkins asked RN Kirkland why the Neurological Changes/Deficits Protocol (DC4-683DD) form was not completed when he came to Urgent Care on September 8, 2017. Jenkins said nurses are responsible for filling out the protocol forms and RN Kirkland's response to Jenkins' question was "Jenkins he was going to die anyway, from the cancer in his neck". Jenkins said she was unable to ascertain any other reason why the DC4-683DD was not completed for Inmate Ridley other than RN Kirkland's statement to her. Jenkins said she felt RN Kirkland "messed up, moved too quick and just didn't do everything she was supposed to do".

Jenkins advised there were procedural and personnel changes made at RMC in Urgent Care after Inmate Ridley's death regarding how inmates are seen after a use of force. When an inmate is involved in a use of force situation they must be seen by a doctor in Urgent Care for

| Case Number: JA-37-0133 | Serial #: 157 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 06/27/2018 | Activity End Date:06/27/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Mortality Coordinator Latorya Jenkins

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000285

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 157 |

evaluation. Additionally, Doctor Jean Maurice Dure and RN Kirkland were transferred out of Urgent Care.   Jenkins was unsure if the changes happened because of the death of Inmate Ridley but felt that they were.

The interview of L. Jenkins concluded at 1026 hours.  In addition to the CD with L. Jenkins' interview, blank copy of the DC4-683DD form and a list of the other protocol forms will be added to INV-162, in the case file.

PL000286

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Inmate Lascelles Ford DC# 817749.

On July 18, 2018, at 0918 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Inmate Ford at Columbia Correctional Institute in Lake City, Florida. SA Maurer and SA Holycross identified themselves and advised Inmate Ford the interview would be a sworn voluntary statement. Inmate Ford understood and agreed to make a statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-163, in the case file:

Inmate Ford was working as a Permanent (Inmate who has a job in prison), in the confinement dormitory during the time Inmate Ridley was being housed in cell 2108. Inmate Ford stated he knew Inmate Ridley from the RMC West Unit and that he and Ridley played chess together on several occasions. Inmate Ford could not remember the dates Inmate Ridley was in confinement, but did remember it was the weekend of Hurricane Irma. Inmate Ford remembered Inmate Ridley was being housed on Wing 2 on the lower level. He stated he looked in Inmate Ridley's cell and saw him sitting on the bottom bunk with his head against the wall and his legs hanging off the bunk and his feet on the floor. Inmate Ford said he walked by Inmate Ridley's door on several occasions and he was in the same position every time Inmate Ridley never said anything to him. Inmate Ford did not talk to Inmate Ridley and said the "Inmate 411" (rumors) were that Inmate Ridley was jumped by guards at the West Unit and sent to confinement. Inmate Ford did not talk to the correctional officers about Inmate Ridley and did not know how long he was in confinement. Inmate Ford said on one occasion he wheeled Inmate Ridley to Urgent Care but was not did not help him into the ███████. He believed it was after he fell on his cell (September 8, 2017), he was unable to speak to Inmate Ridley about was happened because Sgt. Aaron William Lewis was with them. Inmate Ford said when

| Case Number: JA-37-0133 | Serial #: 158 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 07/19/2018 | Activity End Date:07/19/2018 |
| Approved By: Mead, Josh Carlton | |
| Description:Interview of Inmate Lascelles Ford | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000287

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 158 |

he brougth Inmate Ridley to Urgent care he dropped him off and returned to confinement. Inmate Ford was not present when Inmate Ridley was seen by medical staff.

The interview with Inmate Ford concluded at 1010 hours.

277620190211103252

PL000288

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Licensed Practical Nurse (LPN) Crissy Leanne Kirkland.

On July 18, 2018, at 1157 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of LPN Kirkland in the parking lot of "Beef 'O' Bradys" restaurant in Lake City, Florida. The interview took place in SA Maurer's vehicle. The interview was a sworn voluntary statement which was recorded. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-164, in the case file:

Kirkland has been a nurse in the prison system since 2003 and was at RMC in Urgent Care from August 2014 to late 2017. She was a Lead Nurse while at RMC and helped with ordering supplies as well as assisting with patients. Kirkland was working day shift on September 8, 2017, and was the nurse assisting Doctor Jean Maurice Dure when Inmate Ridley was brought to Urgent Care. SA Maurer showed Kirkland a picture of Inmate Ridley and copies of the medical file for Inmate Ridley. Kirkland stated she remembered Inmate Ridley when he came into Urgent Care on September 8, 2017.

Kirkland remembered Inmate Ridley came to Urgent Care because he fell in his cell while in confinement. Kirkland questioned security when Inmate Ridley came into Urgent Care about what happened. Kirkland was told by an unknown security member; Inmate Ridley had been involved in a use of force incident and was in confinement. Kirkland asked why there wasn't a hand held camera for Inmate Ridley (because there is normally one post use of force). It was determined the use of force occurred earlier that day and Inmate Ridley was in Urgent Care due to falling in his cell. Kirkland said Inmate Ridley arrived in Urgent Care at approximately 1330 hours in a ████████. Inmate Ridley was not complaining of pain but told Kirkland he could not stand up and was hungry. Kirkland said Inmate Ridley was moving his neck and she noticed

| Case Number: JA-37-0133 | Serial #: 159 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 07/19/2018 | Activity End Date:07/19/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of RN Crissy Kirkland

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000289

| Case Number | JA-37-0133 |
|-------------|-----------|
| IR Number | 159 |

movement in his hands while they were cuffed and in his lap.  Kirkland reviewed her notes from the medical file which stated the following:  "Brought from K dorm security for PT alleging unable to move arms & legs - PT walked to cell front cuffed up walked to nurse's clinic see DC 4701C/DC4708 - MD to eval".  Kirkland said Inmate Ridley was in a ███████ and did not walk into Urgent Care.  Kirkland was told by an unknown security staff member that Inmate Ridley walked while in confinement and that is why she wrote it in her notes.  Kirkland was able to get a medical history and checked Inmate Ridley's vitals, which appeared █████.  Dr. Dure then examined Inmate Ridley.  Kirkland said she was not present while Dr. Dure conducted his exam, so she could not advise if he did any ███████████.  However, according to Dr. Dure's notes he did conduct █████████ test on Inmate Ridley and found them to be ██████.  SA Maurer asked why the ██████████ Protocol from was not completed if those tests were conducted.  Kirkland said that form is only utilized if the patient had ██████████████ ████████████.  Kirkland said due to Inmate Ridley's complaint of a loss of sensation in his arms and legs, Dr. Dure ordered an ████████████████ be conducted. Kirkland placed Inmate Ridley on a back board and placed a C-collar on his neck.  She stated that was protocol for those tests.  Kirkland was not in Urgent Care when the test came back for Inmate Ridley.  Kirkland reviewed the medical file again and stated the ███████████ for Inmate Ridley were normal.  Dr. Dure ordered a follow-up exam for Inmate Ridley on September 13, 2017.  Inmate Ridley was sent back to confinement and Kirkland never saw him again.

Kirkland stated she learn about Inmate Ridley's death from Dr. Dure.  She was told that ███████████████ of Jacksonville found a █████ on Inmate Ridley's █████ and he died prior to removing it.  SA Maurer informed Kirkland that Inmate Ridley did not have a █████; instead he suffered a ███████████████ which would have left him ████████████████████. Kirkland was shocked to hear this news and stated when she saw Inmate Ridley on September 8, 2017, everything appeared to be ██████.

The interview of LPN Kirkland concluded at 1351 hours.

PL000290

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Licensed Practical Nurse (LPN) Bryan Austin Forsyth.

On July 18, 2018, at 1902 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of LPN Forsyth in the lobby of the Hampton Inn in Ybor City, Florida. RN Forsyth was accompanied by his Attorney, Donald A. Harrison. The interview was a sworn voluntary statement which was recorded.  The following is a synopsis of the interview and should not be considered a verbatim statement.  A CD with the entire interview will be maintained as related item INV-165, in the case file:

Forsyth was an agency nurse for RMC (meaning he did not work at the facility full time). Forsyth advised he was working on September 12, 2017, and he was shown a photo of Inmate Ridley and he did not remember him.  Forsyth reviewed the medical file for Inmate Ridley and recognized his hand writing and signature on several of the documents.  Forsyth said he reviewed Inmate Ridley's file before attending to him and performing any tests.  At 1500 hours on September 12, 2017, Forsyth wrote the following note in Inmate Ridley's file: "Head CT completed & not remarkable findings, PT lethargic, able to alert to stimulus and answer yes no & A&B questions person place true.  PT is unable to touch nose, squeeze hands, unable to move legs, mental status change from 9/8/17".  An additional note at 1900 hours states the following: "Dr. Dure assessment upon arrival decision to transfer to MMCJ report to night shift & and left in their care".  Forsyth said that Inmate Ridley was unable to complete any of the neurological tests given to him.  After comparing the notes from Inmate Ridley's medical file from September 8, 2017, Forsyth noted the mental status change and reported his findings to Dr. Jean Maurice Dure.  Dr. Dure made the decision to send Inmate Ridley the ████████ ████ in Jacksonville, Florida because of the mental status changes.  Forsyth said his shift was ending and he passed Inmate Ridley's care to the oncoming shift.  Forsyth never saw Inmate Ridley after that day and could only recall what occurred from the notes he wrote in

| Case Number: JA-37-0133 | Serial #: 160 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 07/19/2018 | Activity End Date:07/19/2018 |
| Approved By: Mead, Josh Carlton | |
| Description:Interview of RN Bryan Forsyth | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000291

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 160 |

Inmate Ridley's file.

The interview of LPN Forsyth concluded at 1939 hours.

277620190211103252

PL000292

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Roy D Finch.

On August 7, 2018, at 1622 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Finch at RMC Main Unit in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Finch the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-166, in the case file:

Sgt. Finch has been with the FDC for four years and has always worked at RMC. He is now assigned to confinement dormitory but was the yard sergeant in September 2017 at the Main Unit. Sgt. Finch was one of three security staff members who transported Inmate Ridley from RMC West Unit to RMC Main Unit on September 8, 2017 in the early morning hours. The two other security staff members were Captain Jacob Anderson and Sgt. Samuel Velez-Ortiz. SA Maurer showed Sgt. Finch a photo of Inmate Ridley and he said that he remembered going over to the West Unit to transport him that night. Sgt. Finch said Inmate Ridley was in a ███████ and was cleared by medical personnel to be transported to confinement. Sgt. Finch said Inmate Ridley appeared to be under the influence of something (he could not advise what) and either could not or would stand. Sgt. Finch described Inmate Ridley as being passively resistant (meaning he would not stand up) so they had to remove him from the ███████ to place him in the van. Sgt. Finch remembered Inmate Ridley's feet getting caught on the ██████ foot rests when he was being placed into the van, to the point he had to untangle Inmate Ridley's feet in order to get him in the van. Inmate Ridley never told Sgt. Finch that he could not stand and Sgt. Finch was never told that Inmate Ridley was complaining of a loss in sensation in his arms or legs. Sgt. Finch initially sat behind Inmate Ridley after he was placed into the van but later exited the van after Cpt. Anderson told him to get out. Sgt. Finch explained he was in the

| Case Number: JA-37-0133 | Serial #: 161 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/14/2018 | Activity End Date:08/14/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Roy Finch

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000293

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 161        |

back of the van when they came over from the Main Unit and thought he was going to go back to the Main Unit in the back of the van. However, Cpt. Anderson did not return with Sgt. Finch and Sgt. Velez in the van, instead he caught another ride back to the Main Unit.

Sgt. Finch said once Inmate Ridley arrived at the Main Unit he was removed from the van but could not remember if he was brought to Urgent Care or directly to confinement. Sgt. Finch could not remember if Inmate Ridley was put back on handheld camera again or not. He said if he did go back on camera it would have been the camera from the main control room. Sgt. Finch was unsure if he had anymore interaction with Inmate Ridley or not. Sgt. Finch said he could not remember if he and Sgt. Velez brought Inmate Ridley to confinement or if other security staff members transported him.

The interview of Sgt. Finch concluded at 1706 hours.

PL000294

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Carl John Olin.

On August 7, 2018, at 1807 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Olin at RMC Work Camp in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Olin the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-167, in the case file:

Sgt. Olin has been with the FDC since July 2004 and with RMC March of 2012. On September 8, 2017 he was working at RMC West Unit on the evening shift 1800-0600 hours. Sgt. Olin was shown a photo of Inmate Ridley but did not recognize him. Sgt. Olin never had any contact with Inmate Ridley while working at RMC West Unit. Sgt. Olin was not involved in the use of force incident but was called to assist with the transport of Inmate Ridley to the medical clinic at RMC West. Sgt. Olin was told, Inmate Ridley struck Sgt. Nettles in the face and was taken into custody. Sgt. Olin observed a mark on Sgt. Nettles face but could not remember which side. Inmate Ridley was placed in a ██████████ and was brought from outside of A Dormitory to the clinic. However, Sgt. Olin could not remember if he assisted Inmate Ridley into the ███████ or not. SA Maurer asked if Sgt. Olin remembered having to hold Inmate Ridley's shirt so he did not fall out of the ██████████ and Sgt. Olin said he could not remember. Inmate Ridley did not speak to Sgt. Olin during the transport. Inmate Ridley said while being brought inside the clinic "my neck is broke", Sgt. Olin stated that he never heard Inmate Ridley say anything. Once Inmate Ridley was in the clinic Sgt. Olin returned to his dormitory. Sgt. Olin never saw Inmate Ridley again.

It should be noted that Sgt. Olin had no independent recollection of the incident, even after SA

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 162 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/07/2018 | Activity End Date:08/07/2018 |
| Approved By: Mead, Josh Carlton | |
| Description:Interview of Sgt. Carl Olin | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000295

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 162 |

Maurer and SA Meacham revisited his actions as seen on the post use of force video.

The interview of Sgt. Olin concluded at 1826 hours.

277620190211103252

PL000296

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Samuel Velez-Ortiz.

On August 8, 2018, at 1919 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Velez at RMC West Unit in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Velez the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-168, in the case file:

Sgt. Velez has been with the FDC for approximately five years and was working at RMC Main Unit on September 8, 2017. Sgt. Velez, Sgt. Roy D. Finch and Captain Jacob Anderson assisted RMC West Unit with the transport of Inmate Ridley from the clinic to RMC Main Unit. SA Meacham showed Sgt. Velez a photo of Inmate Ridley and he remembered him from the photo. Sgt. Velez and Sgt. Finch took Inmate Ridley from the ████████ and placed him in the van. Sgt. Velez said Inmate Ridley put his foot down on the ground when he was being placed into the van but he did not put any weight on it. Inmate Ridley was placed in the van and Sgt. Finch sat down behind him. Cpt. Anderson told Sgt. Finch to get out of the van and he did. Sgt. Velez and Sgt. Finch drove the van to the Main Unit and Cpt. Anderson stayed at the West Unit. Inmate Ridley was brought to the receiving area at the Main Unit. A ████████ was waiting for Inmate Ridley in receiving. Sgt. Velez unlocked the door to the van and Inmate Ridley was taken out of the van by unknown security staff members. Sgt. Velez said he did not have any other interaction with Inmate Ridley after dropping him off at the Main Unit.

The interview of Sgt. Velez concluded at 1945 hours.

| Case Number: JA-37-0133 | Serial #: 163 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/14/2018 | Activity End Date:08/14/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Samuel Velez Ortiz

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000297

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Leroy Lynn Scott.

On August 8, 2018, at 2056 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Scott at RMC West Unit in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Scott the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-169, in the case file:

Sgt. Scott has been with the FDC for twenty-one years and all that time is at RMC. He was working at RMC West Unit on the evening of September 8, 2017. Sgt. Scott was shown a photo of Inmate Ridley and he remembered him and stated he was a permanent (inmate who had a job) at the West Unit. Sgt. Scott did not remember the use of force incident between Inmate Ridley and Sgt. Nettles nor did he remember transporting Inmate Ridley to the medical clinic. SA Maurer told Sgt. Scott that he, Sgt. Gerrie Jean Guy and Sgt. Carl John Olin assisted Inmate Ridley to the clinic after the use of force incident. Sgt. Scott's response was if it was on video it probably happened but he could not remember. Sgt. Scott stated he transports inmates to the clinic all the time and to pick out one incident where he transported an inmate was difficult for him.

The interview of Sgt. Scott concluded at 2107 hours.

| Case Number: JA-37-0133 | Serial #: 164 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/14/2018 | Activity End Date:08/14/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Leroy Scott

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000298

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████████████  Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sgt. Nettles.

On August 8, 2018, at 2005 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Nettles at RMC West Unit in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Nettles the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-170, in the case file:

Sgt. Nettles has been with the FDC for approximately ten years and has been at RMC the entire time. Sgt. Nettles was working the evening shift at RMC West Unit on September 8, 2017. SA Maurer showed Sgt. Nettles a photo of Inmate Ridley and he stated he recognized Inmate Ridley. Sgt. Nettles was working in "A" dormitory that evening and was waking up (approximately 0230 hours) the permeants (inmates who have a job) who worked in the kitchen. Sgt. Nettles went back to the officer's station and waited for the inmates to gather in the laundry room so they could be escorted to the kitchen. Sgt. Nettles said Inmate Ridley was being disrespectful and mumbling something under his breath. Sgt. Nettles brought Inmate Ridley from the laundry room to the back side of "A" dorm. Sgt. Nettles said he had never had a problem with Inmate Ridley and began counseling him about being disrespectful. Sgt. Nettles said Inmate Ridley punched him on the left side of his face with a closed fist. After Inmate Ridley hit Sgt. Nettles, Sgt. Nettles closed the gap between them and "bear hugged" Inmate Ridley around his chest. Sgt. Nettles said they were not belly to belly; Inmate Ridley's side was to Sgt. Nettles' belly and he had one of Inmate Ridley's arms pinned and Sgt. Nettles' arms wrapped around Inmate Ridley's other arm so he could not punch him again. Sgt. Nettles said the next thing he saw was Inmate Ridley on the ground and he was handcuffed. Sgt. Nettles could not remember if he put Inmate Ridley on the ground or if he handcuffed him. Sgt. Nettles

| Case Number: JA-37-0133 | Serial #: 165 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/08/2018 | Activity End Date:08/08/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. John Nettles

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000299

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 165 |

said it all happened so fast and took him off guard it was a blur.  Sgt. Nettles remembers Cpt. Jerrels being there but does not remember him assisting him.

Sgt. Nettles said he stayed behind "A" dorm until Inmate Ridley was transported to the medical clinic by Sgt. Carl John Olin and a few other Sergeants.  Sgt. Nettles had never been assaulted by an inmate prior to this incident.  Sgt. Nettles stayed at his post in "A" dorm until the end of his shift and then he went to the medical clinic to be checked out.  Sgt. Nettles completed an incident report and his injury was photographed.  SA Maurer again asked Sgt. Nettles how Inmate Ridley got to the ground. Sgt. Nettles again said he did not know how Inmate Ridley got to the ground or who handcuffed him.  Sgt. Nettles felt, given the opportunity, Inmate Ridley could have hit him again but he was not going to let that happen and that is why he wrapped up Inmate Ridley's arms.  Sgt. Nettles did not have any other interaction with Inmate Ridley after the incident; he did hear Inmate Ridley was dead but was unclear of the circumstances surrounding his death.

The interview of Sgt. Nettles concluded at 2034 hours.

277620190211103252

PL000300

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ██████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Cpt. Jerrels.

On August 8, 2018, at 2139 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Cpt. Jerrels at his residence, 27504 NW CR 239 Alachua, Florida, 32615. SA Maurer and SA Meacham identified themselves and advised Cpt. Jerrels the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-171, in the case file:

Cpt. Jerrels had been employed with the FDC for approximately twenty years and has been at RMC West Unit since March 2016. Cpt. Jerrels was the Officer in Charge (OIC) on the evening of September 8, 2017. SA Maurer showed Cpt. Jerrels a photo of Inmate Ridley and he recognized him. Cpt. Jerrels said he was outside on the side walk of the Captain's Office which was approximately 30 yards from the back door of "A" dormitory. Cpt. Jerrels saw Sgt. Nettles was involved in a physical altercation with an inmate (later identified as Inmate Ridley). Cpt. Jerrels ran over to assist Sgt. Nettles. Cpt. Jerrels did not see the first punch and said Sgt. Nettles had Inmate Ridley in a bear hug but Inmate Ridley's right arm was free and it appeared like he was trying to strike Sgt. Nettles. Cpt. Jerrels told Inmate Ridley to stop and let go of Sgt. Nettles, "let go of sarge let go of sarge"(sic); he then attempted to pull Inmate Ridley away from Sgt. Nettles. However, Inmate Ridley had his arms wrapped around Sgt. Nettles. Cpt. Jerrels said he grabbed Inmate Ridley's shirt at the shoulders and yelled to Sgt. Nettles "to the ground to the ground". Cpt. Jerrels said he took Inmate Ridley to the ground and could not remember if Sgt. Nettles went to the ground as well. Cpt. Jerrels removed his handcuffs from his belt and secured Inmate Ridley. Cpt. Jerrels said when he grabbed Inmate Ridley and forced him to the ground he used all his strength. Cpt. Jerrels said Inmate Ridley hit the ground face first and had grass on his forehead at the hairline and his left ear. Inmate Ridley never said anything during

| Case Number: JA-37-0133 | Serial #: 166 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/08/2018 | Activity End Date:08/08/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Cpt. William Jerrells

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 166 |

the altercation.  Cpt. Jerrels called for a ▮▮▮▮▮▮ because Inmate Ridley said he could not stand up so he could be taken to the medical clinic.  Sgt. Carl John Olin and Sgt. Leroy Lynn Scott picked Inmate Ridley off the ground and placed him into a ▮▮▮▮▮▮ to escort him to the clinic.  Additionally, a handheld camera was started to document the post use of force.

Cpt. Jerrels went to the medical clinic with Inmate Ridley.  Inmate Ridley had a post use of force/pre-confinement medical evaluation and was cleared to be transported to the RMC Main Unit to be placed in confinement.  Cpt. Jerrels said at the time Inmate Ridley was being medically evaluated he had to step away due to another use of force incident where a different inmate was sprayed with a chemical agent.  Due to that situation, Cpt. Jerrels called the Main Unit and requested assistance for the transport of Inmate Ridley.  Cpt. Jacob Anderson arrived with two unidentified sergeants.  Cpt. Jerrels met with Cpt. Anderson and informed him of the situation and Cpt. Anderson took custody of Inmate Ridley.

Cpt. Jerrels did not remember Inmate Ridley complaining of a loss of sensation in his arms and legs.  He thought Inmate Ridley may have said something about a broken back but was unsure.  Cpt. Jerrels did not remember being in the evaluation room with Inmate Ridley but remembered him being cleared to be transported to RMC Main Unit.

The interview of Cpt. Jerrels concluded at 2215 hours.

277620190211103252

PL000302

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Jessie Dillon Mallard.

On August 22, 2018, at 1528 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of CO Mallard at 9992 SW 151st Place Lake Butler, Florida (CO Mallard's residence). SA Maurer and SA Meacham identified themselves and advised CO Mallard the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-172, in the case file:

CO Mallard has been with the FDC since February 2014 and was working at RMC on Tuesday September 12, 2017, in confinement. CO Mallard was shown a photo of Inmate Ridley and he recognized him. CO Mallard stated that he did not know Inmate Ridley prior to dealing with him on September 12th. CO Mallard was working the day shift (0600-1800) and remembered Inmate Ridley was wearing a white uniform (indicating he worked somewhere at RMC). Inmate Ridley was observed siting on his bunk with his legs off the bunk and his feet on the ground. Inmate Ridley was talking to CO Mallard, but CO Mallard could not understand what Inmate Ridley was saying. Inmate Ridley was responsive and talking but did not move from his position on the bunk. While serving breakfast, CO Mallard said Inmate Ridley would not get off his bunk to receive his food tray. CO Mallard stated that it seemed odd and he noticed a full cup of juice siting on a food tray just above Inmate Ridley on the top bunk. CO Mallard believed at some point in the last day or so Inmate Ridley must have gotten up to receive that tray and juice because you can't put a juice on the flap (on the cell door) and close it without spilling. However, Inmate Ridley did not get off his bunk to retrieve breakfast that morning. CO Mallard said Inmate Ridley continued to try and talk to him (described as week and mumbled) but he could not understand what he was saying. CO Mallard said he checked on Inmate Ridley a couple of times (he could not remember how many) and Inmate Ridley was still in the same

| Case Number: JA-37-0133 | Serial #: 167 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/22/2018 | Activity End Date:08/22/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Jessie Mallard

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000303

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 167        |

position on him bunk and was not moving.  CO Mallard stated something did not feel right with how Inmate Ridley was acting and he decided to contact the Administrative Sergeant Aaron William Lewis about pulling Inmate Ridley from the cell and getting him checked out by medical.

Sgt. Lewis came down to Inmate Ridley's cell with CO Mallard.  Sgt. Lewis told CO Mallard that Inmate Ridley had been involved in a use of force incident at the West Unit and was brought to confinement prior to Hurricane Irma.  Inmate Ridley's cell door was opened and Inmate Ridley was placed in a ▒▒▒▒▒▒▒ and brought to the medical unit in confinement.  Inmate Ridley was seen by nurse Kelly M Strama and was later sent to Urgent Care.  Before going to Urgent Care, CO Mallard remembered being in medical with Inmate Ridley.  CO Mallard said there were other security staff members there but he could not remember who all was there.  CO Mallard never saw Inmate Ridley again after he went to Urgent Care.  CO Mallard documented the fact Inmate Ridley was brought to Urgent Care on Inmate Ridley's DC 229 form.  The DC 229 form is kept for every inmate who is in confinement and is used to document if an inmate eats, is provided a shower, has a haircut, or goes to medical for any reason.  CO Mallard said he had heard sometime later that Inmate Ridley died but did not know the cause of death.

The interview with CO Mallard concluded at 1603 hours.

277620190211103252

PL000304

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Bobby Dale Reeves.

On August 22, 2018, at 1630 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of CO Reeves at 11922 SW 35th Street Lake Butler, Florida (CO Reeves' residence). SA Maurer and SA Meacham identified themselves and advised CO Reeves the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-173, in the case file:

CO Reeves has been with the FDC since June 2015 and at RMC that entire time. He is assigned to the confinement dormitory and was working night shift (1800-0600) on September 11 and 12, 2017. CO Reeves was shown a photo of Inmate Ridley and said he remembered him. He said the shift he was working after Hurricane Irma was a short shift meaning it was Sergeant Steven Potosky, CO Thomas Welsh and himself. Sgt. Potosky was working one of the wings in confinement. CO Reeves explained many aspects of the paperwork necessary for inmates when housed in confinement. He stated in order to be "gained" (brought into confinement) an inmate would have to have a DC 229 (Daily Record of Special Housing form), DC 221 (Confinement Housing Unit Instructions form), and a DC 650B (Risk Assessment or "spray" form) completed. He went on to state the DC 229 form is a daily record of an inmate being feed, taking a shower, getting a haircut, going to medical, or being issued supplies. This form allows other shifts to know if an inmate refuses to eat or take a shower. The night shift does not feed inmates but is responsible for providing showers. CO Reeves was shown Inmate Ridley's DC 229. CO Reeves said it appeared as if Inmate Ridley was provided meals and showers because there were no refusals on the DC 229 form.

According to the fixed wing video that SA Maurer reviewed, CO Reeves was only shown

| Case Number: JA-37-0133 | Serial #: 168 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/22/2018 | Activity End Date:08/22/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Bobby Reeves

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000305

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 168 |

walking by Inmate Ridley's cell door once: September 12, 2017, at 0528 hours with nurse Stephanie Michelle Winningham. SA Maurer showed CO Reeves that portion of the video. CO Reeves could not remember Inmate Ridley or Winningham saying anything. He also could not remember if Inmate Ridley's medication was provided. CO Reeves stated he was just there to provide security for the medical staff.

During the course to the interview SA Maurer realized CO Reeves would have been working the night shift on September 8, 2017, when Inmate Ridley was brought from the West Unit to confinement. CO Reeves said that Sgt. Roy D. Finch and Sgt. Samuel Velez-Ortiz did bring an inmate into confinement in a ██████. He could not remember if it was Inmate Ridley or not but it was a ████ inmate. CO Reeves did not know what time the inmate was brought in but thought it was earlier in the shift and not after 0400 hours. The inmate was taken to a holding cell on one of the wings by Sgt. Finch and Sgt. Velez, but CO Reeves could not remember what wing. CO Reeves was told by Sgt. Finch the inmate came from the West Unit. CO Reeves later remembered it must have been closer to the end of his shift when this inmate was brought in because the inmate was still in the holding cell when his shift ended. CO Reeves worked extra shifts during Hurricane Irma but not in confinement. He heard Inmate Ridley had passed away but did not know the circumstances.

The interview of CO Reeves concluded at 1800 hours.

PL000306

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Gerrie Jean Guy.

On August 22, 2018, at 1838 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Guy at RMC West Unit in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Guy the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-174, in the case file:

Sgt. Guy has been with the FDC for approximately twenty years and was working the night of September 8, 2017 at RMC West Unit. Sgt. Guy was shown a photo of Inmate Ridley in which she said she did not recall him. SA Maurer began showing Sgt. Guy the handheld post use of force video. Sgt. Guy stated she was still having trouble remembering what took place but confirmed she assisted because she was watching herself on the video. She did not remember having to hold Inmate Ridley's shirt to keep him in the ██████ during the transport from the scene to the medical clinic. Sgt. Guy never heard Inmate Ridley say anything during the transport and when shown the portion of the video where Inmate Ridley said "my neck is broke", Sgt. Guy said she did not hear that at the time and had trouble hearing it on the video. While in the medical clinic, Sgt. Guy was in the exam room with Inmate Ridley. Sgt. Guy said she did not remember Inmate Ridley telling Nurse Amanda Marie Corey that Inmate Ridley had a loss in sensation in his arms and legs. Sgt. Guy said Inmate Ridley was moving his neck around but admitted she did not see him moving his arms or legs. After the medical exam was competed, Sgt. Guy moved Inmate Ridley into the hallway. Sgt. Guy stayed with Inmate Ridley while they waited for his transportation to the Main Unit. Sgt. Guy attempted to move Inmate Ridley's handcuff from behind his back to in front of him which was normal procedure for transport. Inmate Ridley could not bend over enough to unlock the handcuffs so

| Case Number: JA-37-0133 | Serial #: 169 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/22/2018 | Activity End Date:08/22/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Gerrie Guy

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000307

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 169 |

Sgt. Guy told him he would have to wait until another security staff member could help her.  At one point of the video Inmate Ridley asked Sgt. Guy if she could move his head to the left.  Sgt. Guy places her hands on either side of Inmate Ridley's head and moves his head slightly to the left.  After Sgt. Guy does this she is shown on the video with her hands in the air and what could be described as an expression of disbelief consistant with her testimony.  SA Maurer asked Sgt. Guy what she was thinking at that time.  Sgt. Guy explained inmates are always asking for help with something they can do themselves.  Sgt. Guy said Inmate Ridley had been moving his head around while sitting in the hallway and she felt he was faking with regard to being unable to move.  At no point in the video does Inmate Ridley move his arms or legs nor does he complain of the handcuffs being too tight.  The only time Inmate Ridley made a noise like he was in pain was when he was bent over to move the handcuffs from back to front.  Sgt. Guy stated medical personnel never said anything to her to indicate Inmate Ridley had any injuries that would prevent him from moving.

Captain Jacob Anderson and Sgt. Roy D. Finch arrived to transport Inmate Ridley to the Main Unit.  Inmate Ridley's handcuffs were moved from back to front.  Inmate Ridley appeared to be in pain when this occurred and could be heard on the video to be moaning.  Inmate Ridley did not assist with the movement of his arms and Sgt. Finch had to move Inmate Ridley's left arm from behind his back to in front of him so the handcuffs could be secured.  Sgt. Guy was made aware of this and she stated in her experience inmates did that all the time; inmates want security to do all the work and it was normal for them to just sit there.  Sgt. Guy was released from her duties of watching Inmate Ridley at that time and Inmate Ridley was taken from RMC West Unit to the Main Unit within RMC.  Sgt. Guy never saw Inmate Ridley again and did not know he had died.

The interview of Sgt. Guy concluded at 1923 hours.

277620190211103252

PL000308

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Captain (Cpt.) Jason Livingston.

On August 28, 2018, at 1339 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Cpt. Livingston at RMC in Lake Butler, Florida.  SA Maurer and SA Holycross identified themselves and advised Cpt. Livingston the interview would be a sworn voluntary statement.  The following is a synopsis of the interview and should not be considered a verbatim statement.  A DVD with the entire interview and the interview packet will be maintained as related item INV-175, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory.  Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form.  Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet.  Items from this packet of information were referenced as needed during this interview.

Cpt. Livingston has been with the FDC for approximately twenty-seven years.  At the time of this incident he was a lieutenant over the confinement dormitory.  Cpt. Livingston was shown a photo of Inmate Ridley and stated he did not remember or know the inmate.  Cpt. Livingston was also shown the contents of the interview packet and asked to explain the process of bringing an inmate into confinement.  Cpt. Livingston reviewed the interview packet and said the only additional form an inmate would need to be housed in confinement was a DC-233.  He said

| Case Number: JA-37-0133 | Serial #: 170 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Captain Jason Livingston

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000309

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 170 |

the DC-233 form with a brief synopsis of why the inmate was sent to confinement. Cpt. Livingston said all the forms above would be filled out by either security or medical staff prior to an inmate being housed in confinement. He stated the forms would be kept in a folder and left at the desk in the wing the inmate was housed in. The DC-229 was used to document the daily activities of an inmate to include receiving meals or not, provided a shower or not, being seen by medical or getting a haircut, and receiving supplies. Cpt. Livingston said if an inmate refuses any of the above it should be documented on the DC-229. He went on to say, if an inmate refused more than nine meals it is considered a hunger strike and medical in notified. Additionally, a supervisor should be notified prior to an inmate refusing nine meals. Cpt. Livingston said he liked to know after two or three refusals of meals, so he could speak to the inmate and determine why they were not eating. Cpt. Livingston said the DC-229 should be completed at least by the end of shift if not directly after a refusal of a meal or any of the other categories.

Cpt. Livingston was on the fixed wing video one time while Inmate Ridley's was housed in confinement. On September 11, 2017, at approximately 0826 hours, Cpt. Livingston was shown in front of Inmate Ridley's cell (2108). There appeared to be a large amount of water on the floor due to flooding from Hurricane Irma. Cpt. Livingston was shown this portion of the video and said he could not remember why he was in confinement on that date but it was most likely due to the flooding. Again, Cpt. Livingston stated he was unaware of Inmate Ridley and was not in confinement because of any issues with Inmate Ridley. Cpt. Livingston agreed it was him on the video and signed the reference list acknowledging it was him on the video. Cpt. Livingston was also shown a copy of an incident report authored by Sgt. Aaron William Lewis regarding the use of an "assisted touch" when Sgt. Lewis moved Inmate Ridley from his ████ to his bunk in cell 2108. Cpt. Livingston acknowledged his signature on the incident report and said Sgt. Lewis was very detail oriented and wrote this report because he had just brought Inmate Ridley back from Urgent Care. Cpt. Livingston said Sgt. Lewis did not want Inmate Ridley to say at a later date that he was injured by Sgt. Lewis when he was moved to the bunk. Cpt. Livingston said it was a common occurrence for an inmate to allege they were injured by security during transport and Sgt. Lewis documented the incident of "assisted touch" to cover himself from any such allegation.

Cpt. Livingston reviewed a copy of Inmate Ridley's DC-229. He said it should have been documented if Inmate Ridley received or refused his meals and it was not and it should have been documented if he received or refused a shower and it was not. Cpt. Livingston said the only thing documented properly was Inmate Ridley was issued supplies when he arrived in confinement and that he was taken to Urgent Care on September 12, 2017. Cpt. Livingston could not explain why Inmate Ridley's DC-229 was not documented properly. Cpt. Livingston did say he was never made aware of any issues with Inmate Ridley.

The interview of Cpt. Livingston concluded at 1419 hours.

277620190211103252

PL000310

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
███████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Dwight Mallard.

On August 28, 2018, at 1451 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of CO Mallard at RMC in Lake Butler, Florida.  SA Maurer and SA Holycross identified themselves and advised CO Mallard the interview would be a sworn voluntary statement.  The following is a synopsis of the interview and should not be considered a verbatim statement.  A DVD with the entire interview and the interview packet will be maintained as related item INV-176, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory.  Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form.  Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet.  Items from this packet of information were referenced as needed during this interview.

CO Mallard has been with the FDC for approximately thirty years and is currently the Use of Force Coordinator at RMC.  He is responsible for gathering all the incident reports and videos after a use of force at RMC Main Unit or RMC West Unit.  He gathers that information and sends it to the Use of Force Board in Tallahassee, Florida.  During the time Inmate Ridley was in confinement CO Mallard covered a day shift in confinement on September 10, 2017 because of Hurricane Irma.  He was working in the control room but did conduct one security check in

| Case Number: JA-37-0133 | Serial #: 171 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Dwight Mallard

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000311

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 171 |

Wing 2 where Inmate Ridley was housed.  CO Mallard was shown a photo of Inmate Ridley and said he only knew him from his use of force file.

CO Mallard said he knew the process of housing an inmate in confinement and advised the documents in the interview packet were the documents needed to house an inmate in confinement.  CO Mallard said he was not responsible for filing out these forms but had completed them in the past when he worked in confinement.  CO Mallard reviewed the copy of Inmate Ridley's confinement paperwork and said it appeared they were not complete.  CO Mallard advised there was no documentation stating if Inmate Ridley was provided or refused a meal or a shower.  Additionally, there was only one cell inspection conducted and if Inmate Ridley was moved from cell 3114 to 2108 there should have been a new cell inspection completed and there was not.  CO Mallard advised the correctional officers are responsible for their wing and should complete the paperwork for every inmate on that wing by the end of shift.  However, CO Mallard said it was not uncommon for paperwork to be incomplete.  The shift supervisor should review paperwork periodically to insure they are completed but CO Mallard was not sure how often that occurred.  CO Mallard said Sgt. John Nyitray was the supervisor during the weekend of Hurricane Irma and he was pretty good about staying on his guys when it came to paperwork.

CO Mallard was shown the portion of the fixed wing video where he did his security check on September 10, 2017, at approximately 0935 hours.  CO Mallard identified himself on the video and said he could not remember anything particular about Inmate Ridley.  CO Mallard could not recall the position Inmate Ridley was in the cell and stated he only did one security check that day.  CO Mallard said because of his new position as the Use of Force Coordinator he now knows more about Inmate Ridley's incident than he did at the time he worked in the confinement dormitory.

Prior to this interview SA Maurer had met with CO Mallard to check Inmate Ridley's use of force file.  One reason for checking the file was to determine if there was more than one handheld post use of force video.  CO Mallard was able to determine the only video in the file was from RMC West Unit.  Additionally, CO Mallard provided SA Maurer with copies of photos taken of Sgt. Nettles' injuries after the incident.  These photos will be added to related item INV-176.

The interview of CO Mallard concluded at 1525 hours.

PL000312

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████
████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Jonathan R. Eberlein.

On August 28, 2018, at 1554 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Sgt. Eberlein at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised Sgt. Eberlein the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-177, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

Sgt. Eberlein has been with the FDC for approximately thirteen years and in September 2017 was the Yard Sergeant at RMC. Part of his duties at that time was to assist with transportation of inmate from Urgent Care back to their dormitory. Sgt. Eberlein was asked if he remembered Inmate Ridley and he stated he did not. Sgt. Eberlein was shown a portion of the fixed wing video from September 8, 2017 at approximately 1600 hours. In the video Inmate Ridley is shown in a ██████████ and a security staff member is standing behind him. Sgt. Eberlein

| Case Number: JA-37-0133 | Serial #: 172 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Jon Eberlein

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000313

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 172 |

agreed he was the one standing behind Inmate Ridley.  Sgt. Eberlein remembered he and Sgt. Aaron William Lewis escorted Inmate Ridley from Urgent Care to confinement and Sgt. Eberlein was pushing the ███████.  Sgt. Eberlein said once Inmate Ridley's cell was ready he pushed him into the cell and assisted Sgt. Lewis move Inmate Ridley from the ███████ to the bottom bunk.  Sgt. Eberlein said they removed Inmate Ridley's handcuffs while he was in the ███████ and then placed him in a seated position on the bunk.  Inmate Ridley's leg shackles were removed and Sgt. Eberlein left the cell.  Sgt. Eberlein said when he left the cell Inmate Ridley was sitting on the bottom bunk with his legs off the bunk and his feet on the floor that was the last position he remembered seeing him in.  Sgt. Eberlein never interacted with Inmate Ridley again.

Sgt. Eberlein said he had worked in the confinement dormitory prior to being promoted.  He was shown the copy of Inmate Ridley's DC-229 and he was asked if it looked complete.  Sgt. Eberlein said it appeared that Inmate Ridley's DC-229 was not filed out correctly because there was no indication that Inmate Ridley received a meal or shower.  He said it appeared Inmate Ridley was issued supplies and it was documented when he was taken to Urgent Care on September 12, 2017.  Sgt. Eberlein said when he worked on confinement he was required to document when an inmate was feed or refused to eat and if they were provided a shower or refused one.

The interview of Sgt. Eberlein concluded at 1620 hours.

PL000314

# FLORIDA DEPARTMENT OF LAW ENFORCEMENT
## *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Lonnie Frank Underwood, Jr.

On August 28, 2018, at 1655 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of CO Underwood at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised CO Underwood the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-178, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

CO Underwood has been with the FDC since December 2016. He is currently assigned to "Inside Grounds" at RMC and in the past has worked on confinement for a short time. He has some experience with confinement paperwork but spent very little time in confinement. During Hurricane Irma, CO Underwood was assigned on day shift in confinement (September 9, 2017). According to the fixed wing video CO Underwood conducted seven security checks in wing 2 where Inmate Ridley was being housed. CO Underwood was shown a photo of Inmate

| Case Number: JA-37-0133 | Serial #: 173 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Lonnie Underwood

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000315

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 173 |

Ridley and said he did not remember him.  CO Underwood was shown portions of the fixed wing video and agreed it was him on the video conducting the checks.  CO Underwood said while conducting his security checks he would look in the windows of the cell doors and make sure the inmates were in the cell, breathing, and not doing anything they weren't supposed to be doing.  If an inmate was covered up in their bedding CO Underwood said he would normally tap on the glass to get their attention.  CO Underwood said he did not remember Inmate Ridley and did not know what cell he was in until SA Maurer told him and showed him the video.  CO Underwood did not remember anything out of ordinary with regards to Inmate Ridley and could not comment if he was sitting on his bunk or not.

On September 9, 2017, at 1448 hours, CO Underwood and Nurse Stephanie Michelle Winningham are on the video at Inmate Ridley's cell door and spend approximately thirty seconds in front of his door.  CO Underwood was shown this portion of the video and could not remember if Inmate Ridley was provided any medication or not nor could he remember if Inmate Ridley spoke to them.  Additionally, CO Underwood said he did not say anything to Nurse Winningham about Inmate Ridley because he knew nothing about him.  SA Holycross stated he had a difficult time with the fact CO Underwood could not remember anything after watching the video.  CO Underwood responded saying it was a long time ago and he just could not remember.  In total CO Underwood conducted seven security checks during his shift and did not assist with the meal service.

The interview with CO Underwood concluded at 1734 hours.

PL000316

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. █████████
████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) William Kyle Combee.

On August 29, 2018, at 1211 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of CO Combee at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised CO Combee the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-179, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

CO Combee has been with the FDC for approximately two years and is assigned to the administration shift at RMC. During Hurricane Irma CO Combee was assigned to confinement dormitory on September 11, 2017, on day shift. This was not his regular assignment but he was asked to cover a shift. CO Combee said he previously worked in the confinement dormitory for approximately two years and knew the paperwork an inmate needed to be housed in confinement. He said the above listed paperwork had to be completed and additionally a DC-

| Case Number: JA-37-0133 | Serial #: 174 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO William Combee

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000317

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 174 |

233 form would also be included. The DC-233 is a form which stated the reason the inmate was being housed in confinement. The DC-229 was used to track an inmate's daily actions while in confinement. This included meals, shower, haircut, supplies issued, and the inmate's overall attitude. CO Combee said when he was working in confinement the DC-229 had to be completed by the end of shift and needed to be initialed by the CO. He gave an example and said on a given day "meal received" and then the CO initials next to the entry. CO Combee was shown a copy of Inmate Ridley's confinement paperwork. He reviewed all the paperwork and was asked if he noticed anything missing. CO Combee said Inmate Ridley's DC-229 did not have any notations in reference to him receiving/refusing a meal or shower. Additionally, Inmate Ridley's cell inspection should have been closed out when he left cell 3114 and a new cell inspection should have been conducted for cell 2108. CO Combee was asked if it was normal for paperwork to be incomplete such as Inmate Ridley's and he said he never had incomplete paperwork like that when he was working in confinement.

CO Combee was shown a photo of Inmate Ridley and did not recognize him. CO Combee was shown portions of the fixed wing video on September 11, 2017. It was believed that CO Combee was seen on video four times conducting security checks. CO Combee reviewed the video and advised it was not him in the portions of the video shown to him. CO Combee said he did not remember ever going into wing 2 during the shift. At 1102 hours, an unknown CO and Nurse Stephanie Michelle Winningham are in front of Inmate Ridley's cell (2108). CO Combee said he was not the CO with Nurse Winningham and he did not recognize the CO on the video. Additionally, he said the CO on the video was wearing the white (orderly) gloves which he never used. He used either the black or purple gloves from the medical office when he walked around with any of the nurses. Also, the unknown CO in the Video wore his ID on his shirt and CO Combee said he never wore his ID while working in confinement. After watching the video CO Combee stated he did not know the CO in the video. CO Combee said he did not remember having any interaction with Inmate Ridley.

The interview of CO Combee concluded at 1308 hours.

277620190211103252

PL000318

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) William L. Jones.

On August 29, 2018, at 1405 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of CO Jones at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised CO Jones the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-180, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

CO Jones has been working for the FDC since May 1997 and is assigned to the control room in the confinement dormitory. He works an administrative shift Monday through Thursday 0600-1500 hours. He is responsible for opening and closing the secured doors leading into the confinement dormitory and the wings inside it. He also had control over opening and closing the cell doors in all the wings. CO Jones did not have anything to do with completing any paperwork in confinement except for the control room log. CO Jones was working on

| Case Number: JA-37-0133 | Serial #: 175 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO William Jones

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000319

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 175 |

September 12, 2017, when Inmate Ridley was taken out of cell 2108 and transported to Urgent Care. He was shown a photo of Inmate Ridley and said he did not remember him. He was shown the video of Inmate Ridley being removed from his cell on the 12th but said he "rolls" so many doors while working his shifts he does not remember individual inmate. CO Jones was asked if he had heard what happened to Inmate Ridley and he responded "no".

The interview of CO Jones concluded at approximately 1435 hours.

277620190211103252

PL000320

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▬▬▬▬▬▬▬, Ridley died while being treated at ▬▬▬▬▬▬▬▬▬▬ in Jacksonville, Florida. ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Austin Lorn Everhart.

On August 29, 2018, at 1524 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Sgt. Everhart at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised Sgt. Everhart the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-181, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

Sgt. Everhart has been with RMC for approximately four and a half years and was recently promoted to Sergeant. He was assigned to "I" dormitory but worked in confinement on September 12, 2017, on day shift. Sgt. Everhart knew Inmate Ridley from RMC West Unit. Sgt. Everhart said he had worked in a dormitory at the West Unit and Inmate Ridley was housed in that dorm. Sgt. Everhart said he never had any issues with Inmate Ridley and he always appeared to be a model inmate. Sgt. Everhart had worked in the confinement dormitory in the

| Case Number: JA-37-0133 | Serial #: 176 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Austin Everhart

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000321

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 176 |

past and knew the paperwork needed to gain an inmate. Sgt. Everhart reviewed the above forms and stated they were the forms need for an inmate to be housed in confinement. He said the DC-229 and DC-221 were completed by security staff and the DC-650B was completed by medical staff. The DC-229 was used to document the daily interactions between an inmate and staff. Sgt. Everhart said when he was working confinement the protocol was to only document if an inmate refused a meal or shower, not if they received one. Sgt. Everhart explained the protocols changed from time to time depending on the command staff. He knew at one point in time the DC-229 documented both meals received and refused but that was not the circumstances when he was there. Sgt. Everhart reviewed Inmate Ridley's confinement paperwork. Sgt. Everhart said he could not speculate if Inmate Ridley was provided meals or showers while in confinement because nothing was marked and he was unsure how the DC-229s were filed out during this time period. Additionally, he said the newer DC-229 be used currently with boxes for all three meals so staff can check meal provided or meal refused.

Sgt. Everhart did not remember seeing Inmate Ridley in confinement on September 12, 2017. SA Maurer showed Sgt. Everhart a portion of video from the fixed wing video from September 12, 2017, at 0808 hours. There was an unidentified security staff member (believed to be Everhart) on the video. After reviewing the video Sgt. Everhart could not confirm he was the officer on the video and said he normally wore a hat and the officer in the video did not have one on. Sgt. Everhart said it could be him on the video but was unsure. This was the only time this officer was shown on video. Sgt. Everhart heard Inmate Ridley had died and heard one rumor it was caused by complications during surgery for a tumor on his neck. He also heard another rumor saying Inmate Ridley had a broken back or broken neck because of the use of force incident but had no other details pertaining to this rumor. Sgt. Everhart said he did not know the actual cause but believed it was due to complications during surgery.

The interview with Sgt. Everhart concluded at 1602 hours.

277620190211103252

PL000322

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Daniel W. Greene.

On August 29, 2018, at 1632 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Greene at RMC in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Greene the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-182, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

Sgt. Greene has been with the FDC at RMC since March 2016. He was recently promoted to the rank of Sergeant but during the time of this incident he was a Correctional Officer and assigned to the confinement dormitory on day shift. He stated he was normally assigned to Wing 3 in confinement which was the first wing Inmate Ridley was assigned to on September 8, 2017. Sgt. Greene was shown a photo of Inmate Ridley and asked if he remembered him. Sgt. Greene said he vaguely remembered Inmate Ridley. Sgt. Greene was shown the contents of

| Case Number: JA-37-0133 | Serial #: 177 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. Daniel Greene

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000323

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 177 |

the "interview packet". Sgt. Greene explained the forms contained in the "interview packet" would be filled out either by medical staff or security staff prior to an inmate being placed in a cell in confinement. He went on to explain that the DC-229 is a daily record of an inmate's behavior while in confinement and also noted if an inmate received or refused a meal or shower. The DC-229 is filled out so different shifts could see if an inmate was not complying with the confinement rules, eating or not, or taking a shower. Sgt. Greene was shown a copy of Inmate Ridley's DC-229 and asked if he noticed anything out of the ordinary. Sgt. Greene said after reviewing Inmate Ridley's DC-229 it appeared Inmate Ridley did not have any issues for the time he spent in confinement. Inmate Ridley did not have any disciplinary issues, did not refuse a meal or shower, and was issued supplies. Inmate Ridley's DC-221 appeared to be complete and Sgt. Greene indicated it was not his signatures or initials on the form. Additionally, Sgt. Greene could not identify the signatures or initials on the DC-221.

Sgt. Greene was shown portions of video from confinement dormitory Wing 2 to determine if he was one of the security staff members who conducted security checks. Sgt. Greene was shown a portion of video on September 8, 2017, at 1603 hours. Sgt. Greene confirmed he was in the video and advised he did not remember assisting Inmate Ridley into the cell after he came back from Urgent Care. However, Sgt. Greene recalled Inmate Ridley from earlier that day in Wing 3. Sgt. Greene said when he began his shift on September 8, 2017, at approximately 0600 hours; Inmate Ridley was already in confinement sitting in a holding cell on Wing 3. Once his paperwork was complete, Sgt. Greene and Sgt. John Nyitray moved Inmate Ridley from the holding cell to cell 3114. Inmate Ridley was in a ▮▮▮▮▮▮▮ and was handcuffed. Inmate Ridley was removed from the ▮▮▮▮▮▮ and place on the toilet next to the cell door, his handcuffs were removed and Sgt. Greene and Sgt. Nyitray left the area. Later that day Sgt. Greene was serving food (believed to be lunch) and when he got to cell 3114 Inmate Ridley was on the floor. Sgt. Greene said there was a small amount of blood on the floor and he was going to finish serving food because he only had a few more cells before he was finished. However, Inmate Ridley's cellmate started yelling about the blood and Inmate Ridley being on the floor so Sgt. Greene stopped what he was doing and he and Sgt. Nyitray opened the cell, put Inmate Ridley in a ▮▮▮▮▮▮ and brought him to the nurse's office in confinement. After Inmate Ridley was brought to Urgent Care. Sgt. Greene had to bring a set of keys to remove Inmate Ridley's restraints so he could be X-rayed.

SA Maurer showed Sgt. Greene several other portions of video where it was believed he was conducting security checks in Wing 2. On September 9, 2017, Sgt. Greene confirmed he walked past Inmate Ridley's cell eight (8) times and on Sept 10, 2017, he conducted five (5) additional security checks. Sgt. Greene said when he conducts security check he looks in the cell to make sure the inmate is breathing and not misbehaving. Sgt. Green could not remember any issues with Inmate Ridley on the 9th or 10th. Sgt. Greene was asked if he remembered where Inmate Ridley was in the cell and he said he believed he was sitting on his bunk but was unsure. Sgt. Greene was asked if it would be unusual for an inmate to sit on a bunk for an entire weekend and not move. Sgt. Greene replied "no" and said he was told Inmate Ridley was involved in a use of force and was under the influence of "K2" (synthetic marijuana). In Sgt. Greene's experience it was not unusual for an inmate coming down off "K2" to just sit in their cell doing nothing. Sgt. Greene also said Inmate Ridley had been to Urgent Care and cleared by medical staff so it was believed that nothing was wrong with him. Sgt. Greene said nothing appeared to be out of the ordinary with Inmate Ridley, in his opinion.

277620190211103252

PL000324

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 177 |

The interview with Sgt. Greene concluded at 1742 hours.

PL000325

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▮▮▮▮▮▮▮▮▮▮, Ridley died while being treated at ▮▮▮▮▮▮▮▮▮▮▮▮▮ in Jacksonville, Florida. ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Roy Lee Harden, III.

On August 29, 2018, at 2113 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of CO Harden at RMC in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised CO Harden the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A DVD with the entire interview and the interview packet will be maintained as related item INV-183, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

CO Harden has been with the FDC at RMC for approximately four (4) years and was assigned to confinement dormitory during the weekend of September 8, 2017, on the night shift from 1800-0600 hours. The primary duties on night shift are to conduct security checks and provide showers to the inmates housed in confinement. On occasion the night shift will provide the last meal of the day if the day shift was unable to provide this meal during their shift. CO Harden was shown a photo of Inmate Ridley and said he did not recognize him. CO Harden knew the

| Case Number: JA-37-0133 | Serial #: 178 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Roy Harden

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000326

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 178 |

paperwork needed to house an inmate in confinement and reviewed the "interview packet". He said the night shift did not normally fill out these forms unless an inmate is brought to confinement at night. CO Harden reviewed Inmate Ridley's paperwork and said the DC-229 did not show Inmate Ridley receiving a shower on Friday September 8, 2017. CO Harden said the lower level cells normally shower on Fridays and Mondays, however, there were no checks on Inmate Ridley's DC-229 indicating he was provided a shower. Additionally, Inmate Ridley should have been provided new linens and uniforms on those days and that was also not indicated on his DC-229. Inmate Ridley's DC-229 also did not indicate that he refused his showers or that he received a meal or refused a meal. CO Harden said he would assume by looking at Inmate Ridley's DC-229 that he received his meals because nothing was marked.

CO Harden was shown portions of video from the fixed wing camera in Wing 2. It appeared CO Harden was seen on the video five (5) times on September 8, 2017 and one (1) time on September 9, 2017. After reviewing the video CO Harden confirmed he was the person on the video and identified the other Correctional Officer seen on these two date to be CO William Austin Matchett. During the review of the video CO Harden mentioned that he would be seen going into cell 2108, which was Inmate Ridley's cell. On the video from September 8, 2017, at 1930 hours, CO Harden and CO Matchett are at Inmate Ridley's cell. They are delivering food to all the inmates because the day shift was not able to feed. A food tray was placed on Inmate Ridley's flap but he did not come to the door and take the tray so it was removed. At 2021 hours, CO Harden and CO Matchett are at Inmate Ridley's cell. CO Harden said he opened Inmate Ridley's door and placed a Styrofoam tray of food on the bunk above Inmate Ridley along with a cup of juice. CO Harden said Inmate Ridley was lying on his bunk with his eyes open but did not say anything to CO Harden. CO Harden did not explain why he brought the food tray to Inmate Ridley's cell. CO Harden said while doing additional security checks on Saturday and Sunday night he noticed the Styrofoam tray and juice were still in the same position he placed it in on Friday night. On September 10, 2017, at 2200 hours CO Harden and Captain Dwight Carter are shown at Inmate Ridley's cell door looking inside the cell. CO Harden explained he told Cpt. Carter Inmate Ridley appeared to be in the same position he was in from Friday night and that the food he placed in the cell was still on the bunk above Inmate Ridley. CO Harden then walks away from the cell and Cpt. Carter stays for a few moments and appears to speak to Inmate Ridley through the door. However, Cpt. Carter does not open or go into the cell and does not come back to the cell during that shift. CO Harden said every time he went by Inmate Ridley's cell he was breathing and other than speaking to Cpt. Carter that one time he believed Inmate Ridley was not in any distress.

The interview of CO Harden concluded at 2232 hours.

277620190211103252

PL000327

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Officer Jeremy Michael Yates.

On Tuesday, August 28, 2018, at 1323 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Officer Jeremy Yates outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On October 4, 2018, the recorded interview was reviewed by SA Meacham. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-184.

Yates provided background information advising he had worked for the FDC for approximately twelve (12) years and that he was currently assigned as an escort officer in Kilo Dorm (confinement). Yates advised he had previously worked as a dorm officer in confinement.

| Case Number: JA-37-0133 | Serial #: 179 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- C.O. Jeremy Yates (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000328

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 179 |

Yates described the job functions of a dorm officer working in confinement. He advised the dorm officer's main job was security. Yates explained security checks were conducted every thirty minutes and that the observations of the corrections officer could dictate other actions which could be required; to include summoning medical personnel, or entering the cell if needed to under certain circumstances. Yates explained a cell would be entered only after there were enough officers present to safely do so.

Yates was asked to explain the process of "gaining an inmate" into confinement.

Yates advised prior to being placed in confinement, all inmates must be examined by the medical staff for a "Pre-Confinement" physical. This exam includes both physical and mental evaluations, as well as a review of the inmate's medical file.

SA Meacham utilized the blank forms included in the "Interview Packet" to have Yates explain the process. Yates explained how each form was completed and how an inmate's compliance with rules, acceptance of meals, and behavior were documented. Specifically with regard to the DC-229, Yates described how there were no marks made on the form when an inmate was compliant, followed the rules, and accepted his meals. Yates advised the form was utilized to document disruptive activities, refusal of meals, or refusal to follow the rules.

Yates was asked what constituted a refusal to accept a meal. He described a failure on the part of the inmate to come to the flap in the door and physically take possession of the meal tray was considered a refusal to accept a meal. Yates indicated this refusal should be documented on the DC-229 in the same manner as if the inmate verbally told an officer he wasn't hungry and didn't want a meal.

Yates was shown copies of the DC-229 and the DC-221 for inmate Ridley. Yates agreed the forms provided no information indicating Ridley refused any meals, failed to comply with the dorm rules, or presented an attitude problem during his time housed there.

Yates was asked how he would address a situation where an inmate refused to sign required paperwork. Yates advised the refusal to sign was in fact a disciplinary issue which could be addressed. Further he stated if the inmate continued to refuse to sign a document, he (Yates) would write "Refused" in the area asking for the inmate's signature. Yates was asked if he signed Ridley's name on any form. Yates advised he did not sign Ridley's name on any form.

A video clip from September 11, 2017 at 0826 hours was shown to Yates. The clip contained three officers. Yates was asked if he was one of the officers. Yates advised he was not pictured but tentatively identified the officers as: Combee, Livingston, and Norcross (no other information).

Finally, Yates was asked a series of questions regarding the duty of an officer working in confinement beyond just "security." Yates was specifically asked about an inmate laying on a bed unresponsive, unmoving, and unable to communicate clearly for a period of hours to days. Yates indicated if the inmate did not appear to move and could not clearly communicate he would be inclined to enter the cell (in accordance with policy) to check on the inmate's wellbeing after only several hours.

277620190211103252

PL000329

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 179 |

Yates was asked if he was aware of changes in the practices, policies, or procedures at RMC regarding the handling of inmates in confinement as a result of Ridley's death.  Yates advised he was unaware of any changes.

277620190211103252

PL000330

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. █████████████
████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Officer Gregory Deon Wright.

On Tuesday, August 28, 2018, at 1504 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Officer Gregory Wright outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On October 22, 2018, the recorded interview was reviewed by SA Meacham. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-185.

Wright provided background information advising he had worked for the FDC for approximately eight (8) years and that he had been assigned as an escort officer in Kilo Dorm (confinement) for the past three (3) years, working from 8am-5pm Monday-Friday. Wright advised he had previously worked in the hospital and as a dorm officer in confinement.

| Case Number: JA-37-0133 | Serial #: 180 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- C.O. Gregory Wright(RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000331

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 180 |

As an escort officer, Wright advised his primary duty was to provide security while escorting inmates from confinement to medical appointments in the hospital and at times to remain with those inmates while awaiting treatment.

Wright was asked if he would be one of the responding officers to confinement if there was an inmate needing assistance which would require a cell entry. Wright advised the dorm officers would usually handle those incidents, but he could be sent to assist if there was a need for additional personnel. Wright advised if he was available as an escort an inmate could be handed off to him to be taken from a cell to the hospital for examination.

The requirements of a dorm officer in confinement were discussed to include the safety and security of the inmates in confinement and necessary paperwork which would be required to include the DC-229, DC-221, and DC-650B forms.

Wright was asked to explain the process of properly completing the DC-229 form. Wright acknowledged the form was used to document all of the actions of the inmate, good and bad. Wright advised the guards were "supposed" to write down everything, but indicated that may or may not happen. Wright further explained during peak times when there wasn't enough staff it would be possible to not properly document all of the guard's observations on the forms.

When asked about proper paperwork completion during an otherwise quiet shift, Wright advised the DC-229 should be completed.

Wright advised prior to being placed in confinement, all inmates must have a DC-229, a Risk Assessment (DC-650B), and a Cell Inspection form (DC-221). Additionally, Wright advised an inmate should be taken to Medical for an assessment prior to being received into confinement. Wright was shown a photograph of Craig Ridley and was asked if he recalled having contact with him. Wright stated Ridley was a permanent inmate (he observed inmate Ridley was wearing a white uniform which was issued to inmates permanently housed at RMC) who was transferred to confinement from a different unit. Wright said he knew Ridley had died and that staff members and other inmates had talked about him after Ridley's death. Wright did not know any specific details regarding Ridley's death.

Wright was asked if he was working when Ridley was received into confinement. Wright could not recall having contact with Ridley.

Wright was shown a copy of Ridley's DC-229 form documenting his receipt into confinement along with the DC-221 and the DC-650B.

Wright could not state whether Ridley was seen by the West Unit or the Main Unit medical staff. Wright indicated it could be possible that Ridley was seen by the West Unit medical staff and taken straight to confinement, but he did not have any specific information indicating that was what occurred.

Wright was asked specific questions regarding the completion of the DC-229 documenting a refusal to eat. Wright indicated he did not mark the form indicating a refusal unless the inmate stated he did not want to eat. Wright was shown the DC-229 utilized for inmate Ridley. Wright

PL000332

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 180 |

agreed Ridley's DC-229 did not have any indication Ridley refused any meals or behaved in any manner indicating he was anything other than a cooperative inmate.

Wright was asked about transporting Ridley from his cell on Friday, September 8, 2017 around noon when he was found face down in his cell.  Wright advised he did not take part in the removal of Ridley from his cell or the transport of Ridley to Urgent Care.  Wright did not recall taking Ridley back to his cell, but explained he transports hundreds of people a week.

Wright was asked his opinion on what an acceptable timeframe was regarding observing an inmate unresponsive in his cell and conducting a check on that inmate's wellbeing.  Wright explained it was common for inmates to try to play games with the guards to get the guards to enter the cell to check on the inmate.  Wright was asked if an inmate was laying half on and half off the bed, would that cause him to check on the inmate's wellbeing.  Wright said it was not unusual for an inmate to lie on his bunk all day.  Wright was asked how long he would wait to check the status of an inmate if he perceived no movement by inmate, other than breathing. Wright was asked if he would check after one day, two days, or three days.  Wright indicated he would likely check, or have medical check, after one day of no perceived movement by the inmate.

Wright was asked if he was aware of changes in the practices, policies, or procedures at RMC regarding the handling of inmates in confinement as a result of Ridley's death.  Wright advised he was unaware of any changes.

277620190211103252

PL000333

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ████████████, Ridley died while being treated at █████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Officer Stevie Williams.

On Tuesday, August 28, 2018, at 1602 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Officer Stevie Williams outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On November 2, 2018, the recorded interview was reviewed by SA Dandelake. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-186.

Williams stated that he has been employed with the Department of Corrections for eighteen years. He has been assigned to the Reception and Medical Center (RMC) Main Unit for a total of sixteen years. He was assigned to the RMC work camp for a total of two years. Williams is currently assigned to the Inside Grounds detail. He manages a work crew that is responsible for cutting grass, pressure washing buildings, painting, and other functions related to maintaining

| Case Number: JA-37-0133 | Serial #: 181 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- C.O. Stevie Williams (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000334

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 181 |

the institution. Williams was a dorm officer assigned to the RMC work camp before his current assignment.

Williams has previously worked in the confinement section during his employment at RMC. He stated that his main role in the confinement section was to make sure that everyone was "alive and present." Williams elaborated that the document known as a DOC 229 form is used to document all activities and issues for each inmate within the dormitory. The DOC 229 form is initiated by a medical practitioner at the prison. If an inmate is received in the confinement section without the DOC 229 form, then the officer is supposed to escort the inmate to the appropriate entity to complete the form. It is not uncommon to temporarily place a newly received inmate into a holding cell until the DOC 229 form is completed.

Williams stated that an additional form, known as the DOC 233 form, will also accompany an inmate when the inmate is received in the confinement section. This form summarizes the reasons the inmate is in confinement.

SA Meacham presented a copy of a DOC 229 form to Williams and Williams explained the form to SA Meacham. He reviewed the form with SA Meacham and commented that the activity on the form appeared to be uneventful. Williams explained that if an inmate were to refuse a certain number of meals, then the officer in charge must be notified. Additionally, the refusal of any meals would be noted on the DOC 229 form. Williams explained that he interpreted the refusal of a meal as the inmate consciously stating he is not going to eat a meal, assuming the inmate in conscious.

He further explained that in addition to the completion of the referenced forms, the officer also inspects the cell in which the inmate is housed and documents any issues in the cell if applicable.

SA Meacham presented Williams with surveillance video related to this investigation.  Williams stated that he was not in the video and does not recall the incident.

PL000335

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Sergeant (Sgt.) Mickey White.

On Tuesday, August 28, 2018, at 1658 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Sgt. Mickey White outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On November 15, 2018, the recorded interview was reviewed by SA Dandelake. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-187.

White stated that he has been employed with the Department of Corrections for approximately (10) ten years. He has worked at several FDC facilities, including Hamilton Correctional Institution, Reception and Medical Center (RMC) Work Camp, and Reception and Medical Center (RMC) Main Unit.

| Case Number: JA-37-0133 | Serial #: 182 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- Sgt. Mickey White (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000336

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 182 |

White stated that during the time period of the incident, he was assigned to K dorm. His responsibilities include assuring the officers are "staying on track, doing their jobs, and doing their paperwork and everything." He stated that his shift in K dorm at that time was 6:00 PM to 6:00 AM.

White confirmed that when an inmate is gained in the dorm, specific paperwork is required. He further confirmed that these forms include a DOC 229 form, a risk assessment sheet, and a copy of the rules. He further stated that the inmate arrives with the paperwork. If the inmate does not have the required paperwork, he is sent back to his prior location to retrieve it.

SA Meacham presented a video to White. He confirmed that an individual in video was him. White did not recall inmate Ridley specifically. He stated he heard stories regarding an inmate who had been to the medical section twice, but he was not sure if the stories he heard were in reference to Ridley. White stated that it is not unusual for inmates to lie on their beds in their cell during the day.

White did not recall any details regarding Ridley or his movements within the facility.

PL000337

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ██████████████ ████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Sergeant Richard Keith Flynn.

On Tuesday, August 28, 2018, at 1822 hours, SA David Meacham and SA David Maurer conducted a sworn digitally recorded interview of FDC Sergeant Richard Flynn outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On 10-24-2018, the recorded interview was reviewed by SA Meacham. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-188.

Sergeant Flynn advised he had worked for the FDC for twenty-five (25) years, the majority of which time he spent at RMC in the medical area. Flynn advised he had also worked in the confinement dorm for approximately six (6) months, which fell during the time of this incident.

| Case Number: JA-37-0133 | Serial #: 183 |
| --- | --- |
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 08/28/2018 | Activity End Date:08/28/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- Sgt. Richard Flynn (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000338

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 183 |

Flynn explained his primary job responsibilities included the security of the inmates and their wellbeing and the supervision of the correctional staff under his control.

SA Meacham asked Flynn to review the process of "gaining" an inmate, indicating an inmate had been added to the confinement dorm.  Flynn advised the admission of a new inmate to the confinement dorm required certain documentation, to include the DC-229, DC-221, and DC-650B, in addition to the requirement a pre-confinement medical evaluation be conducted by medical staff.  Flynn was asked if the medical staff at RMC-West Unit could conduct the evaluation or if the evaluation had to be completed by the medical staff at RMC Main Unit in Urgent Care.  Flynn replied by saying he assumed it could be performed by any medical staff; however, he could not specifically recall any time where the evaluation was performed by anyone other than the medical staff at the Main Unit.

Flynn was asked if he was responsible for completing the DC-229 (Daly Record of Special Housing).  Flynn advised it was the responsibility of the Wing Officer to complete the required paperwork for each inmate during the course of their shift.

SA Meacham asked Flynn what the general duties were of the confinement officers during both the day shift and the evening shift.  Flynn advised all of the FDC personnel were responsible for the safety and security of the inmates.  Additionally, Flynn advised the day shift was generally responsible for the movement of inmates to and from their cells for medical appointments and they were responsible for the delivery of the inmates' three (3) daily meals.  Flynn advised the night shift personnel were responsible for the movement of inmates to and from their cells for the purpose of allowing them to shower.

Flynn was asked if the FDC staff assigned to the confinement dorm escorted the inmates from the dorm to their medical appointments.  Flynn advised there were personnel specifically assigned to escort the inmates to and from their appointments and that the staff assigned to the confinement dorm did not leave the dorm, except potentially during a medical emergency.

Flynn was asked to explain the process of providing the inmates with their meals.  Flynn advised a FDC staff member would walk along with inmates assigned to pass out the meals to the other confined inmates.  The staff member would open a flap on the cell door to provide the meal to the inmate inside the cell.  The inmate would take the food, which could be either on a tray, in a Styrofoam container, a bag, or wrapped in cellophane, after which the flap was secured.

Flynn was asked what constituted a refusal to accept a meal.  Flynn stated his opinion was a refusal included an inmate either verbally stating he didn't want a meal or refusing to come to the flap to physically take possession of the meal as it was being served.  In either case, the DC-229 should be filled out to reflect the refusal.  Flynn elaborated that a refusal of nine (9) consecutive meals by an inmate required the medical staff be notified.

*Note- Flynn advised at the time of the incident, an inmate's refusal to accept a meal was supposed to be documented and no notation was made if the inmate accepted a meal. He advised since that time the practice had been amended to requiring the inmate's DC-229 to indicate both when a meal was accepted and when it was refused.

277620190211103252

PL000339

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 183 |

Flynn was asked who filled out the DC-229.  Flynn advised a single DC-229 form covered one (1) week.  He said the first DC-229 was started by the medical staff when the inmate was receiving the pre-confinement physical and the remainder of the form was completed by FDC staff in the confinement dorm.  Any additional DC-229 forms required after the first week in confinement were completed in their entirety by the confinement dorm staff.

SA Meacham and Flynn discussed the information contained on the DC-229 to include the documentation of the inmate's attitude, compliance with rules, acceptance of meals, showers, and receipt of toiletry items and linens.  Flynn advised the inmate's attitude and compliance with rules were documented twice daily and would be documented by an "S", indicating Satisfactory, or a "U", indicating Unsatisfactory.  The remaining blocks would be notated by a checkmark and a date/time, or a handwritten notation explaining the entry.  Flynn stated specific medical treatment would not be noted on the DC-229, but would be maintained in the inmate's medical file.

Flynn was asked if a nurse was assigned to the confinement dorm.  He advised a nurse was assigned to the dorm during the day from Monday-Friday, but not on the weekend.

Sergeant Flynn was shown a photograph of inmate Ridley.  Flynn stated he did not recognize Ridley, but he indicated he was a permanent inmate (sentenced to RMC) based on the fact Ridley was wearing a uniform that was all white.

SA Meacham then reviewed the copy of Ridley's DC-229 forms with Flynn.  Flynn agreed the forms indicated Ridley had been "gained" to the confinement dorm on September 8, 2017 and had remained in the unit until the morning of September 12, 2017 when he was taken to Urgent Care.  Flynn also agreed there was no indication Ridley had been anything other than a cooperative inmate who received all of his meals, as there were no items marked as "Unacceptable" and there were no notations made indicating Ridley had refused even a single meal.

Flynn was asked if an inmate could be "gained" into confinement without the proper paperwork being with him at the time of his arrival.  Flynn advised an inmate could be placed into a holding cell inside the confinement dorm while an escorting officer left the dorm to retrieve any missing paperwork from the medical unit.  Flynn further stated he had never personally seen this happen, but he had knowledge of it occurring in the past.

SA Meacham then spoke with Flynn about the security camera video obtained from the confinement area where Ridley was housed.   Flynn was told there were fourteen (14) instances on September 11, 2017 and two (2) instances on September 12, 2017 when he (Flynn) was observed on video looking into Ridley's cell.  SA Meacham then utilized a laptop computer to show Flynn those segments of the video.  SA Meacham told Flynn he understood the majority of the times he was observed were while Flynn was conducting "Security Checks."  SA Meacham asked Flynn what he was looking for in the cell during the security checks.  Flynn advised, "If I see them breathing...that's fine."

SA Meacham asked Flynn what actions or lack of movement would raise his level of concern for the inmate's wellbeing to the point that you either make entry to the cell or call medical personnel to respond to check on the inmate?  Flynn advised he would act if he saw some sort

277620190211103252

PL000340

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 183        |

of sign the inmate was in distress or wasn't breathing.

A review of the fourteen (14) times Flynn looked into Ridley's cell on September 11, 2017 was conducted.  Three (3) of the times Flynn looked into Ridley's cell were prior to the door flap being opened for breakfast, lunch, and dinner.  At approximately 0734 hours, Flynn opened the flap and the orderly placed an item on the flap before the flap was closed by Flynn.  At approximately 1346 hours, Flynn opened the flap and the order placed what is believed to be a wrapped sandwich on the flap before the flap was closed by Flynn.  At approximately 1700 hours, Flynn and Correctional Officer Combee (no other information) are seen at Ridley's cell. The flap was opened, but no food item was delivered and the flap was closed.

During each of these instances, Flynn could not advise if Ridley accepted or refused a meal.

A review of the two (2) times Flynn looked into Ridley's cell on September 12, 2017 was conducted.  At approximately 0634 hours, Flynn could be seen conducting a security check.  At approximately 0847 hours, Flynn returned to the cell along with three other correctional personnel.  At that time, one of the officers was carrying a clear shield and another was pushing a ▮▮▮▮▮.

Flynn was asked what the shield signified to him. Flynn advised it meant they were going to conduct a cell extraction, indicating they would enter the cell.  Flynn was asked if a ▮▮▮▮▮ was brought to all cell extractions or if they brought it because they knew they needed one. Flynn stated, "Honestly, they told us that we needed to go in there and get him out for medical. So that's when we went in, got him, and were going to take him to medical."  When asked, Flynn could not advise who directed them to enter the cell to take Ridley to medical.

Flynn was asked directly about why 20-25 different FDC staff members had observed Ridley in confinement between September 8, 2017 and September 12, 207 and yet no one either observed or cared about Ridley's apparent lack of movement; yet Officer Jessie Dillon Mallard reported for his first shift with Ridley in the confinement dorm and after only two hours had become concerned enough about what he observed to initiate entry into the cell.  Flynn had no response to this inquiry.

Flynn was asked if Mallard was a good officer and if he would trust Mallard's judgement about needing to make entry into a cell to check on an inmate.  Flynn advised Mallard was a good officer and he would not second guess him if he said a cell needed to be entered.

After completing the review of the video, Flynn was asked if he recalled any of the staff members talking about Ridley either not being injured, or faking his condition.  Flynn advised he was not aware of anyone who may have made such a statement.

Flynn was asked if he recalled what position Ridley was in when he (Flynn) entered the cell at the time of the extraction.  Flynn advised he did not know.

With regard to the position Ridley was in upon being placed in the cell, Flynn was asked about the process of removing restraints from a subject who was not able to assist the staff.  Flynn advised the inmate would be wheeled into the cell in the ▮▮▮▮▮ and he would be placed on the bed with his feet on the floor.  The FDC staff member would then remove the leg restraints,

PL000341

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 183 |

then remove the hand restraints before exited the cell.

Flynn was told Ridley was discovered in his cell on the edge of the bunk with his feet on the floor and he upper body lying across the bunk.  SA Meacham pointed out this was the same position Flynn described being used when restraints were removed from an inmate upon being placed in the cell and having his restraints removed.

Flynn was asked if it was common for FDC staff to write a report each time they physically assisted an inmate when moving from a bed to a ███████ or from a ███████ to a bed. Flynn advised due to the facility handling all of the hospital patients, they were constantly assisting patients and that it was actually not common for a report to be written in that circumstance.

277620190211103252

PL000342

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Captain Nathan Thornton.

On Tuesday, August 29, 2018, at 1234 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Captain Nathan Thornton outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On November 19, 2018, the recorded interview was reviewed by SA Dandelake. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-189.

Thornton stated that he has been employed with the Department of Corrections for approximately twenty-six (26) years. Thornton stated that as a Captain, he is responsible for the entire compound when he is present at the prison.

Thornton was presented with a picture of Craig Ridley and did not recognize him.

| Case Number: JA-37-0133 | Serial #: 184 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- Captain Nathan Thornton (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000343

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 184        |

Thornton was asked to explain the process in which an inmate would be transported from the RMC West Unit to the RMC Main Unit. Thornton explained that the old policy allowed officers to transport an inmate who was involved in a use of force incident at the RMC West Unit directly to RMC Main Unit after being cleared by medical staff at the RMC West Unit. He explained that the new policy requires that an inmate involved in a use of force incident at the RMC West Unit must be cleared by medical staff at RMC West Unit, and if the inmate if transported to the RMC Main Unit afterwards, he must then must be seen again by medical staff at the RMC Main Unit upon arrival. Thornton clarified that this practice was not a policy, but was a directive communicated to the officers.

Thornton explained that when an inmate arrives at the RMC Main Unit, he should have all of the required paperwork with him, including the DOC 229 form and other required documents. If the inmate does not have the required paperwork completed, he will not be accepted into the institution. If the originating institution did not have time to complete the paperwork, RMC Main Unit staff will call the originating institution to coordinate the completion of the required paperwork.

Thornton was asked to explain when he would be notified if an inmate was not eating or causing a problem. Thornton explained that he would be notified after an inmate missed approximately five or six meals and his subordinates brought it to his attention. He stated that this would be considered a hunger strike. Thornton stated that if an inmate was actively causing a problem, such as "kicking a door," then he would be notified immediately. Thornton stated that if an inmate did not retrieve his food from the cell flap, then Thornton would consider that a meal refusal and it would document it.

SA Meacham presented Thornton with a DOC 229 from related to the incident. Thornton confirmed that the forms did not indicate any issues with the involved inmate and it appeared that the inmate ate every meal he was provided.

277620190211103252

PL000344

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ███████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Captain Daniel Klein.

On Tuesday, August 29, 2018, at 1400 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Captain Daniel Klein outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On 10-24-2018, the recorded interview was reviewed by SA Meacham. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-190.

Captain Klein advised he had worked for the FDC for thirteen (13) years and that he had been assigned to the RMC Main Unit since November 2016. Klein advised he was a shift supervisor charged with overseeing the perimeter of the entire compound, the Transient Dorms, Permanent Dorms, Confinement Dorm, and I-Block. Klein advised there are numerous

| Case Number: JA-37-0133 | Serial #: 185 |
|---|---|
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- Captain Daniel Klein (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

PL000345

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 185 |

Lieutenants and Sergeants who oversee the correctional officers assigned to work in each of the areas for which he is responsible.  Klein advised he has little to no direct contact with the inmates during their daily activity unless they become involved in an incident which is brought to his attention by his subordinate staff and his involvement is necessary.  Examples of incidents which may require Klein's direct involvement include responding to an incident where a staff member or inmate was injured, fights between inmates, or weapons seized from inmates.

Captain Klein was asked if he recalled the weekend of September 9th, 2017 when Hurricane Irma impacted the area.  Klein advised he did recall that period of time and that he worked Friday, September 8th, 2017 through the end of the weekend on September 10th, 2017.  Klein was asked about staffing levels at that time.  Klein advised due to the expected impact of the storm, additional staff had been required to work in case there was physical damage to the facility which would require the additional personnel.

Captain Klein was asked about what constituted a refusal by an inmate to eat and the proper procedure to document that refusal by the inmate.  Klein advised he considered either a verbal statement by the inmate that he didn't want any food or the failure of the inmate to come to the flap to take possession of the food a refusal.  Klein advised in either case the refusal should be documented on the DC-229.  Klein was asked how many meals an inmate could refuse before action was taken by the FDC.  Klein stated an inmate had to refuse nine (9) consecutive meals before the inmate was considered to be on a "hunger strike."  Klein advised if an inmate went on a "hunger strike" the warden would be notified along with medical personnel and the inmate would be referred for a mental health evaluation.

SA Meacham showed Captain Klein a copy of Ridley's DC-229 forms from September 8, 2017 to September 12, 2017.  Klein agreed the forms did not have any notations indicating Ridley had a bad attitude, violated any rules, or refused any meals.

Captain Klein also reviewed the Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) forms included in the "interview packet."  Klein advised one of the forms appeared to have been completed at RMC-West.  This form had a sticker with Ridley's information on it which would have come from his FDC medical file, which is maintained at the facility where Ridley was housed and had initially been examined by the nurse.  The second form did not have the sticker affixed to it and had been filled out by hand. Klein believed the second form was likely completed upon arrival to the confinement unit by the nurse assigned to that unit.  Klein advised the second form may have been completed due to the first form not arriving in the confinement unit with Ridley.

The completion of a report to document a "Custodial Touch" was discussed.  Captain Klein advised a report was not frequently completed to document this, but should be completed during a post use of force encounter where an inmate may have to be assisted to or from a bed and documentation would be helpful to show although a FDC staff member may have physically touched an inmate, there was no force used and any injuries observed were not a result of that "Custodial Touch."  Klein advised a report completed under those circumstances should include the names of the FDC staff who physically touched the inmate, the FDC staff who witnessed the contact, and a statement saying there was no force used while assisting the inmate.

Finally, Captain Klein was advised of the circumstances surrounding Ridley's removal from the

PL000346

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 185 |

cell.  Specifically Klein was told that the correctional officer who initiated Ridley's removal from the cell had been on duty only a few hours and that this was the first time he had worked in confinement since Ridley had been placed there.  With that information in mind, SA Meacham asked Klein if it troubled him that several officers working over the course of the previous 72 hours who had checked on Ridley many more times failed to observe he needed assistance. Klein indicated that with the information he had been provided regarding Ridley's condition, it was a difficult question to answer.

277620190211103252

PL000347

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels.  On ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida.  ██████████████ ██████████████████████████████████████████████████████.  Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death.  The purpose of this investigative report is to document the interview of FDC Officer Royce Givens.

On Tuesday, August 29, 2018, at 1905 hours, Special Agent (SA) David Meacham and SA David Maurer conducted a sworn digitally recorded interview of FDC Officer Royce Givens outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory.  Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form.  Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet.  Items from this packet of information were referenced as needed during this interview.

On October 30, 2018, the recorded interview was reviewed by SA Meacham.  The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record.  The recording (on DVD) and the "interview packet" will be submitted as related item INV-191.

Correctional Officer Givens advised he had worked for the FDC for approximately two (2) years.  Givens advised he worked in the confinement dorm for about a year, which included the time of this incident in September 2017, during Hurricane Irma.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 186 |
| Author: Meacham, David Edward | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- C.O. Royce Givens (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103252

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

Givens was asked to review the paperwork required to accept an inmate into the confinement dorm.  Givens advised the admission of a new inmate to the dorm required the DC-229, DC-221 be completed.  Givens was asked to explain the purpose of the DC-229.  Givens advised the purpose of the DC-229 was to document an inmate's daily activity to include the date the inmate was gained into confinement, the issuance of linens, whether the inmate received meals, the inmate's attitude, the inmates adherence to the rules, and if the inmate had taken a shower.  Givens was asked if the DC-229 acted as a pass-down log of sorts for the other FDC staff to review in lieu of the staff verbally passing down information that needed to be shared, such as an inmate refusing to eat.  Givens advised most of the information was passed down from one employee to another during shift change, but admitted that may not occur if the dorm was extremely busy.

SA Maurer showed Givens a photograph of Ridley and asked if he recognized him.  Givens looked at the photograph and said, "No. Not really."  "He's kind of familiar."

SA Maurer then explained the sequence of events starting on September 8, 2017, when Ridley was received in confinement.  SA Maurer described Ridley being gained to the dorm, then falling and injuring himself in a cell on wing 3 which caused him to be transported to Urgent Care to be checked.  SA Maurer then explained Ridley was ultimately seen by the medical staff before being returned to confinement in a ▓▓▓▓▓▓▓ and placed in cell 2108.  Givens was asked if he remembered Ridley being brought to confinement.  Givens stated, "Yeah, yeah, yeah; I remember that yeah."

SA Maurer asked Givens what he remembered.  Givens advised he remembered the inmate went to medical for something, but stated he wasn't over there (on Wing 3) for that, but recalled him coming back to wing 2.

Givens was asked if he always worked on Wing 2.  Givens advised he usually worked on Wing 2, but they moved around as needed.

SA Maurer showed Ridley's DC229 and cell inspection forms to Givens.  Givens reviewed both documents, noting the only information contained on the DC-229 was that Ridley was received, was provided linens, maintained a satisfactory attitude, and was removed from the cell and transported to Urgent Care.

SA Maurer asked if there was anything abnormal about the forms that stood out to Givens.  Givens indicated he didn't think he completed the forms stating, "This doesn't look like any of my handwriting.  This doesn't look nothing like my paperwork."

SA Meacham asked if Givens completed all of the paperwork for the inmates on the wing he was working or if the FDC staff sat down and completed all the paperwork together without regard for the inmate's wing assignment.  While looking at the DC-229 Given's said, "We do our own paperwork.  But this is not mine.  I do no scribble.  I just put an "RG."

SA Meacham directed Givens to look at the paperwork and asked what the paperwork says to him.  Givens advised the form was not fully completed and did not include information indicating if Ridley ate or showered or if he refused either or both.  Givens was asked how he indicated on the form if an inmate either ate or refused to eat.  Givens pointed at the form and said he would

PL000349

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

write it in the remarks section.  Givens indicated he generally made notes to indicate if an inmate ate or didn't eat.  SA Meacham asked if he did that on the forms for every inmate.  Givens replied, "You should."  When pressed, Givens advised he always made the notations on the forms after serving meals.

SA Maurer showed Givens the Housing Confinement Form for Ridley and asked if he (Givens) had signed the form.  Givens advised he did not sign the form.

Givens was then asked why there were two pre-confinement medical evaluation forms for Ridley which were completed by different medical personnel.  Givens advised if it was possible that an inmate could be brought to confinement without the proper paperwork and that a second form could be completed.  Givens then said when an inmate arrived without the proper paperwork, the inmate would not be accepted into confinement and the escorting officer would have to go back to get the proper paperwork, taking the inmate with him.  Givens was asked if that always occurred, or if the escorting officer could leave the inmate in the confinement dorm while going to retrieve the paperwork.  Givens could not advise if that had occurred in the past, but stated he had never personally seen it occur.

SA Maurer explained to Givens that the video from the fixed wing cameras in confinement had been reviewed and that the video included numerous instances where Given's had been observed conducting security checks and assisting with the distribution of meals from September 8, 2017 through September 10, 2017.  The video was then shown to Givens with the following results:

Video Review:

September 8, 2017:
1603: Givens viewed the video showing an inmate moved from cell 2108.  Ridley wheeled into cell.  Givens was asked if he knew what was wrong with Ridley.  Givens said medical sent him (Ridley) back and said nothing was wrong with him.
Givens was asked to identify the other FDC staff. Givens identified either himself or Greene as being there but was not sure.

1613: Givens was hesitant to agree it was more likely that he was walking with Greene doing checks than to have Wright walking with Greene doing checks because Wright was assigned as an escort officer, not assigned to confinement as a wing officer.

1651: Givens viewed the video and identified himself as walking by the cell doing security checks.

Givens was asked to sign and date the reference list for September 8, 2017 created by SA Maurer listing the times just discussed with Givens.  Givens signed and dated the reference list which had three (3) time entries highlighted.

September 9, 2017:
0615: Givens viewed the video and identified himself as walking by Ridley's cell doing security checks.
Givens was asked what he was looking for when conducting security checks.  Givens agreed

277620190211103252

PL000350

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

when conducting security checks he was looking to ensure the inmate was in his cell and he was breathing.

0717:  Givens viewed the video and identified himself as opening the flap to Ridley's cell so breakfast could be served.  A short time later the flap is closed.  When asked if he recalled if Ridley received the tray, Givens stated he did not believe Ridley accepted the tray.

0733:  Givens viewed the video and identified himself as opening the flap to Ridley's cell so the orderly could pick up the tray.  Givens agreed no tray was picked up by the orderly.

*Givens agreed that Ridley did not received breakfast on the morning of September 9, 2017.

1035:  Givens viewed the video and identified himself as conducting a security check at Ridley's cell.

1240:  Givens viewed the video and identified himself as opening the flap to Ridley's cell so lunch could be served.

Givens was asked if he remembered if Ridley accepted a tray.  He was also asked if he recalled Ridley saying anything.  Givens did not think Ridley accepted a tray and he did not think Ridley said anything.

1255:  Givens viewed the video and identified himself as opening the flap to Ridley's cell, looking into the cell, and immediately closing the flap.  Givens agreed Ridley did not receive lunch.

1740:  Givens viewed the video and identified himself as being in the process of opening flaps on the cell doors so dinner could be provided.  Givens agreed it appeared he spoke to Ridley while standing at the flap.  SA Meacham pointed out that the flap to Ridley's cell did not appear to have been opened, to which Givens said, "He must have said no then" (referring to receiving dinner).  Givens was asked if he recalled where Ridley was located in the cell.  Givens said he thought Ridley was lying on his bunk, possibly straight on the bunk, but Givens was not sure.

Givens was asked to sign and date the reference list for September 9, 2017 created by SA Maurer listing the times just discussed with Givens.  Givens signed and dated the reference list which had seven (7) time entries highlighted.

September 10, 2017:
0617:  Givens viewed the video and identified himself as conducting his first security check at Ridley's cell at the beginning of his shift.

0721:  Givens viewed the video and identified himself as being in the process of opening flaps on the cell doors so breakfast could be served.  The meals were being delivered on brown trays instead of Styrofoam trays.  Givens agreed the flap to Ridley's door was opened but no food was placed on the flap.  SA Maurer asked Givens if he remembered what Ridley said.  Givens thought Ridley probably said he did not want to eat.  Givens continued by saying he knew it had probably been a couple of days since he (Ridley) had eaten.  Givens was asked if he recalled where Ridley was at in the cell.  Givens said he believed Ridley was still lying on his bunk.

277620190211103252

PL000351

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

0737:  Givens viewed the video and identified himself as being in the process of opening cell flaps so the trays from breakfast could be collected.  Givens agreed the flap to Ridley's cell was not opened.  He also agreed this indicated Ridley did not received breakfast, as the tray would not be left in the cell.

0844:  Givens viewed the video and identified himself as conducting a security check at Ridley's cell.

1032:  Givens viewed the video and identified himself as conducting a security check at Ridley's cell.

1122:  Givens viewed the video and identified himself as being in the process of opening flaps on the cell doors so lunch could be served.  Givens agreed both he and an orderly look into Ridley's cell, but the flap was not opened and Ridley did not receive any food.

1141:  Givens viewed the video and identified himself as being in the process of opening cell flaps so the trays from lunch could be collected.  Givens agreed no tray was removed from Ridley's cell.

When asked if he recalled Ridley's position at that time, Givens stated, "He was probably still lying down."

1239:  Givens viewed the video and identified himself as walking past Ridley's cell carrying an item to the cell adjacent to Ridley's.  Givens agreed he did not make contact with Ridley at that time.

1250:  Givens viewed the video and identified himself as conducting a security check at Ridley's cell.

1436:  Givens viewed the video and identified himself as conducting a security check at Ridley's cell.

1526:  Givens viewed the video and identified himself as being in the process of opening flaps on the cell doors so dinner could be served.  Givens agreed the flap to Ridley's cell was not opened and he was not given any food.

1546:  Givens viewed the video and identified himself as being in the process of opening cell flaps so the Styrofoam trays from dinner could be collected.  Givens agreed the flap to Ridley's cell door was not opened and nothing was collected.

Givens was asked to sign and date the reference list for September 10, 2017 created by SA Maurer listing the times just discussed with Givens.  Givens signed and dated the reference list which had twelve (12) time entries highlighted.

*Note- The review of the video footage was concluded.  Givens agreed the twenty-two (22) video clips discussed showed him at the door to Ridley's cell over a 48 hour time period during which time six (6) meals were brought into the confinement dorm, of which Ridley received zero

PL000352

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

(0) meals.

Givens was challenged about his statement that he *always* completed the DC-229, and that he was adamant about that.  SA Meacham reminded Givens that prior to watching the video clips, he had reviewed the DC-229 for Ridley and that Givens stated the DC-229 he was shown was not the one completed by him.

SA Meacham asked Givens where the form was that he completed. Givens could not give an answer.

Givens was also asked how many DC-229 forms were completed.  Givens advised he did not know.

SA Meacham asked if every guard filled out his own DC-229.  Givens replied, "They should." SA Meacham then interjected that based on all of the interviews conducted, different guards filled out only the portion of the forms applicable to them on the dates and times they were working.   Givens was asked where his signatures were.  Givens said his signature was not on the forms.

Givens said the form was filled out each time an action was taken.  SA Meacham confronted that answer by stating no one was observed filling out any paperwork after each action was taken.  SA Meacham asked where the signing of the forms occurred.  Givens replied, "In the bubble" (referring to the control room in the dorm).  SA Meacham asked if the DC-229 was kept in the "bubble."  Givens replied, "No.  Most times on the wings we do it early in the morning." Givens explained the forms are marked after the first security check.  Givens went on to say the forms would be marked if a meal was refused, and the final check of the day would be documented by the next shift.  SA Meacham asked Givens if that process took place on Ridley's form.  Givens said, "Yes" and pointed out the time blocks marked on the form showing Ridley's attitude and behavior were marked "S" for satisfactory.

SA Meacham told Givens that information had been received from other FDC staff that the forms were often completed by the guards in a group format, where the guards all sat down together and filled in all of the paperwork for all of the inmates at the same time, without regard for which guards were working which wings.  Givens adamantly denied ever having participated in that process.  Givens stated he always completed the forms for the inmates he was overseeing.

SA Meacham confronted Givens on the discrepancy between the DC-229 for Ridley, which does not indicate he ever refused a meal, and the review of the video which clearly showed Ridley never received a meal while Givens was working on Saturday September 9, 2017 or Sunday September 10, 2017.  Givens agreed Ridley did not receive the six meals over the weekend and that the DC-229 did not reflect that.  SA Meacham started to ask Givens how many meals had to be refused (before action was taken) during which time Givens interjected, "nine."  SA Meacham asked Givens if there would be a problem if Ridley didn't receive a meal on Friday.  Given replied that would be a problem.

SA Meacham pointed out that there were no indications Ridley refused a single meal, let alone nine (9) consecutive meals.

PL000353

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 186 |

SA Meacham then talked about Givens having said he observed Ridley lying on the bed in the cell over the course of the weekend.  SA Meacham told Givens the reason Ridley did not move was because he was paralyzed and was not able to move.  SA Meacham asked Givens if looking into the cell to see if he was "present and breathing" was acceptable.

SA Meacham told Givens there was a problem that he (Givens) walked by the cell so many times and did not provide food to Ridley but the paperwork does not reflect it.  Givens was confronted by the fact that other FDC staff had already reviewed the paperwork and pointed out the portions they completed, making it difficult to believe the paperwork submitted and retained by FDC as the original documents for Ridley had been lost and replaced omitting only Givens' signature.

Given's was confronted with the fact that his version of all of the paperwork being replaced by different forms was difficult to believe.  That two complete DC-229's had been swapped for forms not signed by Givens was a stretch.  Givens agreed that put him in a difficult position.

SA Meacham told Givens his version of events left a difficult decision to be made by the State Attorney regarding what actually occurred.

Givens agreed the folder containing Ridley's paperwork should have left with Ridley when he was transported from confinement.  SA Meacham pointed out that would require one to believe that sometime between when Givens left on Sunday evening and Tuesday morning, when Ridley was transported from the wing, someone threw away all of the original paperwork, replicated everything needed, omitted Givens' notations and handwriting, and turned in the forms purporting them to be the original documents when Ridley was removed from the cell to be taken to Urgent Care because he couldn't move.  Givens replied, "That's what it looks like."  SA Meacham then told Givens the other option was that Givens just didn't fill out any of the paperwork, to which Givens replied, "I doubt that.  I highly doubt that."  Givens was told the problem with his story was that the existing reports did not back up his story.

SA Meacham asked if Givens knew why Ridley had been sent to confinement.  Givens advised he didn't know.  SA Meacham told Givens Ridley was sent to confinement for punching a Sergeant in the face.
SA Meacham asked if the guards were just screwing with Ridley because he punched a guard.  Givens replied, "No."  He further stated he did not know Ridley.

 SA Meacham asked if the paperwork that came with Ridley would explain why he was in confinement.  Givens acknowledged the paperwork would include an explanation of what Ridley had done to be sent to confinement.

SA Meacham asked Givens if Ridley was intentionally ignored.  Givens said Ridley was not intentionally ignored.

SA Meacham again expressed disbelief that due to some conspiracy against Givens, an unknown actor broke into the prison, discarded the original paperwork for Ridley and replaced it with fraudulent paperwork.  SA Meacham expressed there was no evidence to back the story provided by Givens that there the original paperwork submitted had since been replaced with

277620190211103252

PL000354

| Case Number | JA-37-0133 |
| --- | --- |
| IR Number | 186 |

incorrect duplicate paperwork.

SA Meacham and SA Maurer expressed to Givens that if he had information that he was withholding, he needed to be forthright about it now. Givens said, "I don't know what to say" and made no changes to his statement.

Givens again stated the paperwork he had been shown was not the paperwork he had completed for Ridley. Givens stated he was the guard who filled out the DC-229 for Ridley which started on September 10, 2017.

SA Meacham asked Givens how comfortable he was with an inmate skipping meals. Givens stated he wasn't comfortable at all having inmates skip meals. SA Meacham asked what he would do about it. Givens stated he would inform his supervisor.

Givens was then confronted with the fact that Ridley was initially placed in the cell, sitting on the bunk with his feet on the floor and his torso leaned back across the bunk and his head and shoulders against the wall; and was described as being in this exact position when he was removed from the cell. Givens was then asked how Ridley could remain in this position the entire time without anyone doing anything. Givens gave no answer.

Givens was asked about why a tray would remain in the cell throughout the entire weekend while he was working without it being removed by the staff. Givens did not remember a tray being in the cell. Givens was confronted about the fact that food, to include wrapped sandwiches, was pushed out of the cell on the floor when Ridley was removed on Tuesday. Givens could not advise how the food items got into the cell.

Givens was asked about just being happy an inmate was in his cell being quiet and not really caring about anything else with regard to that inmate. Givens was asked if he did not notice anything or if he just did not really care. Givens stated he didn't notice anything.

In closing, Givens was asked to contact FDLE if he remembered any information he had not been asked about during the interview.

PL000355

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. On ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of FDC Captain Dwight Carter.

On Tuesday, August 28, 2018, at 1234 hours, SA David Meacham and SA George Dandelake conducted a sworn digitally recorded interview of FDC Captain Dwight Carter outside the Reception and Medical Center (RMC) facility in Lake Butler, Florida.

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

On November 19, 2018, the recorded interview was reviewed by SA Dandelake. The following should be considered only a summary of the interview; the audio/video recording will serve as the comprehensive record. The recording (on DVD) and the "interview packet" will be submitted as related item INV-192.

Carter stated that he has been employed with the Department of Corrections for approximately twenty-eight (28) years.

Carter stated that he has not reviewed any video related to this incident and is vaguely familiar with the incident. Carter stated that he recognized Inmate Ridley and remembered him working

| Case Number: JA-37-0133 | Serial #: 187 |
|---|---|
| Author: Dandelake, George Walter | Office: Jacksonville |
| Activity Start Date: 08/29/2018 | Activity End Date:08/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview- Captain Dwight Carter (RMC)

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000356

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 187 |

in the kitchen in food service.

Carter stated that he was a Relief Captain and would rotate between RMC Main Unit and RMC West Unit. As a Captain, he was the Officer in Charge (OIC) and would keep the warden apprised of significant events at the prison including use of force incidents.

SA Dandelake presented Carter with a video which included coverage of a portion of Ridley's cell. Carter confirmed he was in the video with other officers near Ridley's cell, but he could not recall why he was there. Carter stated that he does recall Ridley smoking "K-2" in the past and Carter responding to his cell in a previous incident. Carter stated that he talks to a lot of inmates and will talk to them if they have an issue.

Carter did not have any specific information regarding the incident involving Ridley. Carter heard that Ridley's family was requesting an investigation regarding the circumstances of his death.

PL000357

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ██████████████
████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the Imaging, Processing and Review of the external hard drive given to Special Agent (SA) Maurer of the Jacksonville Regional Operations Center (JROC).

On Friday, September 7, 2018, SA Maurer requested that SA Taylor conduct a forensic exam on an external hard drive that he was provided at RMC. The drive contained photographs, videos and other media that had been taken by members of RMC.

The device was a Western Digital "Elements" 1 Terabyte External Enclosed Hard Drive that was black in color. It's serial number was WXN1A9723PCT. Using Access Data's Forensic Tool Kit (FTK) Imaging software version 4.1.1, EnCase Image files were created of the external hard drive. The drive was attached to the Examination Computer using a Tableau Forensic Write Blocker, which ensures that no data is modified from the source drive.

Once the images were created they were reverified by HASH algorithm to make sure no data had been modified.

On Monday, September 10, 2018 SA Taylor used Access Data's FTK Examiner software version 6.2.1.1 to process the EnCase Image Files. SA Maurer was looking for any and all files that could be found in allocated or unallocated space for September 8, 2017.

On Tuesday, September 11, 2018, SA Maurer and SA Taylor reviewed the processed files and determined that files from September 8, 2017 had either been over written or permanently deleted. No files prior to November 2017 existed on the drive.

SA Maurer requested that the EnCase files be maintained as a related item (INV-193).

| Case Number: JA-37-0133 | Serial #: 188 |
|---|---|
| Author: Taylor, Herbert Corder | Office: Jacksonville |
| Activity Start Date: 10/08/2018 | Activity End Date:10/08/2018 |
| Approved By: ONeal, Michelle E. | |

Description:Imaging, Process and Review of External Hard Drive

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000358

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████ in Jacksonville, Florida. ███████████
███████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) John Nyitray.

On September 4, 2018, at 1001 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Nyitray at his residence 6947 SW 36th Avenue, Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Nyitray the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview and the interview packet will be maintained as related item INV-194, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

Sgt. Nyitray was at RMC during the time Inmate Ridley was in confinement. He was the Sergeant in confinement and was with the FDC for approximately eleven (11) years. He resigned from the FDC in May of 2018 to pursue an electrical carrier as a "Lineman". Nyitray was shown a photo of Inmate Ridley and stated he knew him from RMC West Unit. Nyitray said he was a dorm supervisor at RMC West Unit in Dormitory "A" and Inmate Ridley was housed in that dorm. Inmate Ridley was a "Permanent" at that time meaning he held a job. Nyitray said

| Case Number: JA-37-0133 | Serial #: 189 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/04/2018 | Activity End Date:09/04/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sgt. John Nyitray

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000359

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 189 |

he never had any issues with Inmate Ridley.  Nyitray said he remembered seeing Inmate Ridley in confinement sometime around the weekend of Hurricane Irma (September 8, 2017).  Nyitray was the supervisor in confinement during that time.

Nyitray was familiar with the paperwork needed to house an inmate in confinement and he reviewed the documentation in the "Interview Packet" and confirmed those forms were the ones needed.  Nyitray reviewed Inmate Ridley's confinement paperwork and said he did not recognize any of the signatures of initials written on them.  Nyitray was asked if Inmate Ridley had all his paperwork was brought to confinement on September 8, 2017.  Nyitray said Inmate Ridley was in a holding cell in a ███████ but he could not remember if he had his paperwork or not.  Nyitray said he and Correctional Officer (CO) Daniel W. Greene moved Inmate Ridley from the holding cell to a cell in Wing 3 (3114).  Inmate Ridley was removed from the ███████ and placed on the toilet next to the cell door.  Nyitray said Inmate Ridley told him that he could not walk and that was the reason he was in a ███████.  Later that morning Nyitray again assisted CO Greene with Inmate Ridley; CO Greene told him Inmate Ridley had fallen in the cell and struck his nose on the ground.  Inmate Ridley was placed in a ███████ and brought to Nurse Kelly M Strama in confinement.  Inmate Ridley was then brought to Urgent Care.  Nyitray did not remember seeing Inmate Ridley when he returned from Urgent Care on September 8, 2017, at 1603 hours.

Nyitray reviewed portions of video with SA Maurer from Wing 2 on September 9, 2017 and September 10, 2017.  On the 9th Nyitray conducted a security check one (1) time at 1129 hours and on the 10th he conducted two (2) security checks at 0649 and 1331 hours.  Nyitray confirmed it was him on the video and said when he conducted security checks he would look to make sure the inmate was in the cell and breathing.  Nyitray did not remember anything out of the ordinary with Inmate Ridley during those checks.

Nyitray was asked if he reviewed any paperwork as part of his duties as a supervisor in confinement.  Nyitray said he would review the housing logs but not the DC-229.  He said he relied on his subordinates complete the DC-229s and took their word they were completed.  Nyitray again reviewed Inmate Ridley's DC-229.  He was asked if there was any notations regarding Inmate Ridley receiving or refusing meals; Nyitray responded "no".  Nyitray was asked if any of the correctional officers working for him on the weekend of Hurricane Irma told him Inmate Ridley had not accepted a meal for two (2) days.  Nyitray stated he could not remember and was then asked if one of his officers would have told him Inmate Ridley had not eaten what would he have done.  Nyitray responded "I would have told them to document it".  Additionally, Nyitray said if an inmate refuses to eat more than nine (9) meals it was considered a hunger strike and medical personnel had to be notified.  Prior to an inmate refusing nine times Nyitray would inform his chain of command.  Nyitray said that never happened with regards to Inmate Ridley.  SA Maurer asked if CO Royce Givens came to Nyitray and told him Inmate Ridley had not for two (2) days.  Nyitray said CO Givens normally filled out his paperwork correctly but he could not remember him saying anything about Inmate Ridley not eating.

The interview with Nyitray concluded at 1050 hours.

277620190211103253

PL000360

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████████
███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Captain (Cpt.) Jacob Anderson.

On September 4, 2018, at 1125 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Cpt. Anderson at Columbia Correctional Institute in the Inspector's office. SA Maurer and SA Meacham identified themselves and advised Cpt. Anderson the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview and the interview packet will be maintained as related item INV-195, in the case file:

Anderson has been with the FDC for approximately ten (10) years and is now a Research and Training Specialist for the FDC, however at the time of the incident he was a Captain at RMC Main Unit. Anderson was familiar with Inmate Ridley and the use of force incident due to the fact that it was unusual for him to go to the RMC West Unit to transport an inmate back to the Main Unit. Anderson said that Cpt. Jerrels requested his assistance with the transport of Inmate Ridley because they were busy with multiple incidents and had no one to transport Inmate Ridley to confinement.

Anderson said Sgt. Roy D. Finch, Sgt. Samuel Velez-Ortiz and himself took a van over to the West Unit and took over custody of Inmate Ridley. Inmate Ridley was in the medical clinic and Anderson was told by medical staff that Inmate Ridley was safe to be transported to the Main Unit. Anderson was told by medical staff and Cpt. Jerrels that Inmate Ridley was complaining he could not walk and was in a ███████. Anderson announced on the post use of force video he was taking command and Inmate Ridley was secured with leg shackles and hand restraints. Inmate Ridley was escorted to the van. Inmate Ridley was assisted into the back of the van and transported to the Main Unit. Because security staff is not allowed to ride in the back of the van with inmates, Anderson stayed behind at the West Unit until he could get a ride back to the

| Case Number: JA-37-0133 | Serial #: 190 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/04/2018 | Activity End Date:09/04/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Captain Jacob Anderson

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000361

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 190 |

Main Unit.  Anderson said he called Sgt. Ernie L. Elixson at the Main Unit and advised him to meet the van with a video camera.  Sgt. Elixson was told to escort Inmate Ridley to Urgent Care and have him seen once again by medical staff before bringing him to confinement.  Anderson said once he returned to the Main Unit he met Sgt. Finch and Sgt. Velez-Ortiz in Urgent Care and Inmate Ridley was cleared by Doctor David E. Rodriguez to be placed in confinement. Inmate Ridley was escorted in the ██████ by Sgt. Finch, Sgt. Velez-Ortiz, and Anderson to confinement and placed in a cell on Wing 3.  Once placed in a cell Anderson concluded the camera and left confinement.  Anderson said the camera would have been placed in the control unit so the Use of Force Coordinator could download it the following day.

SA Maurer advised Anderson there were some inconsistency with statements made during other witness interviews.  Dr. Rodriguez stated he never saw Inmate Ridley in Urgent Care on the night of September 8, 2017 and there was no medical paperwork indicating Inmate Ridley was in Urgent Care until approximately noon after he fell in his cell.  Both Sgt. Finch and Sgt. Velez-Ortiz stated they did not escort Inmate Ridley to confinement. Additionally, according to the Use of Force file for Inmate Ridley the only handheld video for September 8, 2017, was the post use of force video from RMC West Unit.  Anderson said Inmate Ridley was seen by Dr. Rodriguez in Urgent Care before going to confinement.  Regarding Sgt. Finch and Sgt. Velez-Ortiz escorting Inmate Ridley to confinement, Anderson said his recollection was a little "fuzzy" but he believed they were the two that escorted Inmate Ridley.  Anderson said there was a handheld video camera running from the time Inmate Ridley got to the Main Unit until he was placed in confinement.  Anderson could not explain why there was not a second video in Inmate Ridley's file.  Anderson said it was normal practice for him to have handheld video be started when an inmate came over from the West Unit.

Anderson did not work the weekend of Hurricane Irma and returned to work on the evening of September 11, 2017.  Anderson was the Officer in Charge that evening and said he was never informed of any other issues regarding Inmate Ridley.

The interview of Anderson concluded at 1154 hours.

277620190211103253

PL000362

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ▓▓▓▓▓▓▓▓, Ridley died while being treated at ▓▓▓▓▓▓▓▓▓▓▓▓ in Jacksonville, Florida. ▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Captain (Cpt.) Aaron William Lewis.

On September 5, 2018, at 1519 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Cpt. Lewis at his residence 22111 NW 70th Avenue Stark, Florida. SA Maurer and SA Meacham identified themselves and advised Cpt. Lewis the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview and the interview packet will be maintained as related item INV-196, in the case file:

For the purpose of this interview SA Maurer and SA Meacham created an "interview packet" which contained blank copies of the FDC paperwork required to be completed prior to an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list created by SA Maurer with the dates and times the interviewee was seen on fixed wing video were included in this packet.

Cpt. Lewis has been with the FDC for approximately eight (8) years and is currently assigned to Columbia Correctional Institute. At the time of this incident Cpt. Lewis was the Administrative Sergeant in confinement at RMC. Cpt. Lewis explained the Administrative Sergeant is responsible for making sure the paperwork for inmates housed in confinement was complete and assist with movements of the inmates to medical at RMC or at an outside facility. While working in that capacity Cpt. Lewis' schedule was Monday through Friday on day shift.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 191 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/05/2018 | Activity End Date:09/05/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Captain Aaron Lewis

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000363

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 191 |

Cpt. Lewis was shown a photo of Inmate Ridley and said he remembered dealing with him in confinement during the weekend of Hurricane Irma.  Cpt. Lewis understood Inmate Ridley was in confinement due to a use of force incident and remembered taking him to Urgent Care on two (2) occasions.  The first time was after Inmate Ridley had fallen in his cell on September 8, 2017, at approximately 1200 hours.  Cpt. Lewis escorted Inmate Ridley to Urgent Care and was with him until he was brought back to confinement at approximately 1600 hours.  Cpt. Lewis was with Inmate Ridley when he was placed in cell 2108 and remembered placing Inmate Ridley on his bunk and removing his leg restrains with the assistance of Sgt. Jonathan R. Eberlein.  Cpt. Lewis ended his shift on that Friday and did not return to work until Tuesday September 12, 2017.  On that morning, Cpt. Lewis was informed by Correctional Officer (CO) Jesse Dillon Mallard there was an issue with Inmate Ridley and it was determined he would be removed from his cell and transported to Urgent Care once again.  Cpt. Lewis could not remember exactly what the issue was with Inmate Ridley but could remember Inmate Ridley said he could not walk.  Inmate Ridley appeared to be sitting on his bunk in the same position Cpt. Lewis left him in on September 8th.  Both times Inmate Ridley was brought to Nurse Kelly M Strama before being taken to Urgent Care.  Cpt. Lewis was asked if he thought Inmate Ridley was faking with regards to not being able to walk.  Cpt. Lewis said he was unsure if Inmate Ridley was not being truthful about not being able to walk or not but he was not medial staff and could not make that call so Inmate Ridley was taken to Urgent Care.  Additionally, Cpt. Lewis was shown portions of the fixed wing video from confinement and he acknowledged he was in the video when Inmate Ridley was placed in cell 2018 on September 8, 2017 and when he was removed on September 12, 2017.

Cpt. Lewis was shown Inmate Ridley's confinement paperwork.  He reviewed the Inmate Ridley's paperwork and stated it looked complete.  Cpt. Lewis was asked if he could determine Inmate Ridley had eaten or taken a shower while in confinement.  Cpt. Lewis responded "no" and stated historically the confinement paperwork was incomplete and during his time as the Administrative Sergeant he stressed the importance of completing paperwork.  Cpt. Lewis added RMC was down over 200 employees and with the influx of young inexperienced security staff members it was a constant battle to get paperwork completed properly and in a timely manner.  Cpt. Lewis said it was not unusual to have paperwork go missing several days after an inmate was brought to confinement and have to start new forms if it could not be found.  Cpt. Lewis was asked if he recognized any of the signatures on Inmate Ridley's forms.  Cpt. Lewis did not know any of the signatures.  Cpt. Lewis said after looking at Inmate Ridley's DC-229 that the handwriting at the top of the form was his.  Regarding the cell inspection form (DC-221) the DC number and the dates on form were also Cpt. Lewis' but he stated he did not sign the form and could not say who did.  Cpt. Lewis said he signed his forms with his initials and not his signatures.

The interview of Cpt. Lewis concluded at 1702 hours.

277620190211103253

PL000364

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ████████████ in Jacksonville, Florida. ████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Correctional Officer (CO) Thomas Welsh.

On September 5, 2018, at 1801 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of CO Welsh at RMC in Lake Butler, Florida. SA Maurer and SA Meacham identified themselves and advised CO Welsh the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview and the interview packet will be maintained as related item INV-197, in the case file:

*Note- For the purpose of this interview SA Maurer and SA David Meacham created an "Interview Packet" which contained blank copies of the FDC paperwork required to be completed before an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list, created by SA Maurer, listing the dates and times correctional staff members were seen on fixed wing video at Ridley's cell were included in this packet. Items from this packet of information were referenced as needed during this interview.

CO Welsh has been with the FDC for four (4) years and was assigned to the main control room during the time Inmate Ridley was in confinement. However, because of Hurricane Irma CO Welsh was assigned to work on the evening shift in confinement on September 11, 2017. CO Welsh had worked in confinement previously and had knowledge of the forms in the "Interview Packet". CO Welsh was shown a photo of Inmate Ridley and he remembered him. CO Welsh said on September 8, 2017, the Main Unit sent staff to the West Unit to bring Inmate Ridley to

| Case Number: JA-37-0133 | Serial #: 192 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/05/2018 | Activity End Date:09/05/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of CO Thomas Welsh

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000365

| Case Number | JA-37-0133 |
| IR Number | 192 |

confinement.  CO Welsh could not remember what staff members escorted Inmate Ridley to the Main Unit nor could he remember if a handheld video was utilized once Inmate Ridley arrived at the Main Unit.  CO Welsh said if a handheld camera was used he would have removed it from the main control room and there should be a log for the date and time.  CO Welsh did not know where the logs for the cameras were kept and suggested SA Maurer speak to the Sergeant in the control room.  CO Welsh did not know if Inmate Ridley was taken to Urgent Care prior to being escorted to confinement.

CO Welsh reviewed Inmate Ridley's DC-229.  CO Welsh was asked if he could determine if Inmate Ridley received a meal or was provided a shower during his time in confinement.  CO Welsh stated he would assume Inmate Ridley had eaten and was provided a shower because there were no notations on Inmate Ridley's DC-229 to indicate he refused either.

CO Welsh reviewed the fixed wing video for September 11, 2017 during the evening shift when he was working.  CO Welsh identified himself on nine (9) different occasions between September 11 and 12, 2017.  CO Welsh said he conducted security checks during the course of his shift and the video showed him conducting these checks. CO Welsh said when he conducts security checks he looks into the cells and makes sure the inmates are breathing and there isn't any blood in the cell.  CO Welsh indicated nothing appeared out of the ordinary with regards to Inmate Ridley.  He remembered Inmate Ridley was sitting on his bunk and was not causing any problems.  Because CO Welsh was working the evening shift he did not participate in feeding the inmates and stated he did not remember seeing any food in Inmate Ridley's cell while conducting his checks.  CO Welsh heard Inmate Ridley had died but did not know the circumstances surrounding it.

The interview with CO Welsh concluded at 1832 hours.

277620190211103253

PL000366

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Steven Potosky.

On September 5, 2018, at approximately 1840 hours, Special Agent (SA) David Maurer and SA David Meacham attempted to conduct an interview of Sgt. Potosky at RMC in Lake Butler, Florida.  Sgt. Potosky advised he had an attorney provided by the Police Benevolent Association (PBA).  He was advised by Attorney Bobi J. Frank not to speak to any law enforcement officer unless she was present.  Sgt. Potosky said he was willing to cooperate with this investigation but was not willing to be interviewed on this date without his attorney.

SA Maurer called the number provided regarding Attorney Frank and left a message for her to contact him to schedule an interview.  On September 6, 2018, Frank called SA Maurer and was informed what the interview was in reference to.  Frank stated she would be willing to meet with SA Maurer and SA Meacham so Sgt. Potosky could be interviewed.  Several attempts were made to reschedule the interview with Sgt. Potosky and Frank and both parties were unavailable when SA Maurer was at RMC conducting additional staff interviews.  SA Maurer advised Frank after several attempts to schedule an interview with Sgt. Potosky that if he was willing to provide a voluntary statement Sgt. Potosky could come to the FDLE Jacksonville Operations Center at his convenience.  Frank said she would speak with her client and to determine if he was willing to be interviewed.  Frank has not been in contact with SA Maurer since September 21, 2018.

 A CD with the Sgt. Potosky's request for counsel will be maintained as related item INV-198, in the case file:

| Case Number: JA-37-0133 | Serial #: 193 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/05/2018 | Activity End Date:09/05/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Attempted Interview of Sgt. Steven Potosky

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000367

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ████████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Jeremy Kyle Bennett.

On September 5, 2018, at 1937 hours, Special Agent (SA) David Maurer and SA David Meacham conducted an interview of Sgt. Bennett at Florida State Prison (FSP) in Stark, Florida. SA Maurer and SA Meacham identified themselves and advised Sgt. Bennett the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview and the interview packet will be maintained as related item INV-199, in the case file:

For the purpose of this interview SA Maurer and SA Meacham created an "interview packet" which contained blank copies of the FDC paperwork required to be completed prior to an inmate is housed in a cell in the confinement dormitory. Included in the packet were a Daily Record of Special Housing (DC-229) form, a Confinement Housing Unit Instructions/Cell Inspection (DC-221) form, and a Risk Assessment for the use of Chemical Restraint Agents and Electronic Immobilization Device (DC-650B) form. Additionally, a copy of Inmate Ridley's completed confinement paperwork (DC-229, DC-221, and DC-650B) and a reference list created by SA Maurer with the dates and times the interviewee was seen on fixed wing video were included in this packet.

Bennett has been with the FDC for four (4) years and is currently a Sergeant at FSP. During the time of this incident Bennett was a Correctional Officer at RMC and was assigned to Transfer and Receiving. However, because of Hurricane Irma he was asked to work the day shift on September 8, 2017, in confinement. From what Bennett could recall he was assigned to Wing 1 in the confinement dormitory. Bennett was shown a photo of Inmate Ridley and said he did not remember the inmate. Bennett said he worked in confinement for approximately two (2) years and was familiar with the documents in the "Interview Packet".

| Case Number: JA-37-0133 | Serial #: 194 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/05/2018 | Activity End Date:09/05/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sergeant Jeremy Bennett

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000368

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 194 |

SA Maurer showed Bennett Inmate Ridley's DC-221 form.  Bennett was asked if he recognized any of the signatures or initials on the form and he was asked if his signatures were on the form.  Bennett advised he did not recognize the signatures on the DC-221 and he did not sign the form and the signature did not look like his.  Additionally, Bennett remembered that SA Maurer had him fill out a hand writing analysis form previously and told SA Maurer "you have my hand writing".  The signature in question was at the bottom of the DC-221 and was signed "Craig Ridley".  SA Maurer told Bennett that he was not a hand writing expert but the "Craig Ridley" signature at the bottom of the DC-221 resembled how Bennett signed "Craig Ridley" on the analysis form.  Bennett replied "no, to me it doesn't" "I don't remember signing anything. Especially, what is that, the housing rules".  Bennett was shown the signature again and said "it could be mine, but I don't remember signing anything".  Bennett said he would have filled out the DC-221 if Inmate Ridley was housed on Wing 1 but because he was housed on Wing 3 he did not know why he would have been asked complete his DC-221.  Bennett said he does not remember ever signing an inmate's name on a form and if the inmate would not sign or could not sign a form he would write "refused".  Bennett said the signature on the "officers" line could be his but he did not sign for "Craig Ridley".

The interview of Sgt. Bennett concluded at 2019 hours.

277620190211103253

PL000369

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ████████████
████████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Ernie L. Elixon.

On September 13, 2018, at 1621 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Sgt. Elixon at RMC in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised Sgt. Elixon the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-200, in the case file:

Sgt. Elixon has been with FDC for eight and a half years and works the receiving area of the Main Unit. Sgt. Elixon's name was provided to SA Maurer during an interview of Captain Jacob Anderson. In that interview Cpt. Anderson advised Sgt. Elixon was told to start a handheld video in the early morning hours of September 8, 2017. Inmate Ridley was being transported to the Main Unit from the West Unit and was being brought to confinement. Inmate Ridley was involved in a use of force and the West Unit and Cpt. Anderson wanted Sgt. Elixon to go back on camera at the Main Unit. Sgt. Elixon was asked if he remembered starting a handheld camera for Inmate Ridley. Sgt. Elixon stated he did not remember Inmate Ridley or going on camera with him but if Cpt. Anderson told him to go on camera he would have. Sgt. Elixon was shown a photo of Inmate Ridley and he said he knew the name because there was a lot of recent conversation regarding FDLE's investigation into his death. Sgt. Elixon stated he had no independent recollection of Inmate Ridley or his transport to the Main Unit. Sgt. Elixon was informed Inmate Ridley would have been in a ████████ and would have needed assistance being removed from the van. Again Sgt. Elixon said he could not remember Inmate Ridley. Sgt. Elixon said if he did start a handheld video on that date the camera would have been turned over to the Use of Force Coordinator in the morning to be added to Inmate Ridley's file.

| | |
|---|---|
| Case Number: JA-37-0133 | Serial #: 195 |
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/13/2018 | Activity End Date:09/13/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sergeant Ernie Elixon

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000370

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 195 |

The interview of Sgt. Elixon concluded at 1652 hours.

277620190211103253

PL000371

**FLORIDA DEPARTMENT OF LAW ENFORCEMENT**
*INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ██████████ ███████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the interview of Sergeant (Sgt.) Kori Reed.

On September 13, 2018, at 1724 hours, Special Agent (SA) David Maurer and SA Greg Holycross conducted an interview of Sgt. Reed in the parking lot of RMC West Unit in Lake Butler, Florida. SA Maurer and SA Holycross identified themselves and advised Sgt. Reed the interview would be a sworn voluntary statement. The following is a synopsis of the interview and should not be considered a verbatim statement. A CD with the entire interview will be maintained as related item INV-201, in the case file:

Reed has been with the FDC for eight (8) years with the majority of that time at RMC. During the time of this incident she was the Use of Force Coordinator for RMC. Reed stated she was responsible for gathering the use of force reports and any video of the incident. Once Reed has all the documentation and video she sends it to the Use of Force Board in Tallahassee and files a copy at RMC. Reed remembered Inmate Ridley and was the person who handled the documentation for his use of force. Reed said there was only one video (post use of force handheld) for Inmate Ridley's case. Reed could not remember if Inmate Ridley was taken to Urgent Care at RMC Main Unit once he was brought over from the West Unit. SA Maurer advised Reed that during an interview with Captain Jacob Anderson there was a report of a second handheld video. Cpt. Anderson told SA Maurer once Inmate Ridley was transported to the Main Unit a handheld camera was utilized while Inmate Ridley was escorted to Urgent Care and then to confinement. Cpt. Anderson stated he ended the video after Inmate Ridley was placed in a holding cell in confinement and the handheld camera was placed back into the main control room for Reed to download in the morning. Reed stated the only video she knew of was the post use of force handheld video from the West Unit. Additionally, Reed stated if no additional force was used on Inmate Ridley while at the Main Unit she would not have been told to download the video.

| Case Number: JA-37-0133 | Serial #: 196 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/13/2018 | Activity End Date:09/13/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Interview of Sergeant Kori Reed

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000372

| Case Number | JA-37-0133 |
|-------------|------------|
| IR Number   | 196        |

SA Maurer told Reed he had checked Inmate Ridley's Use of Force file and it contained only one video.  SA Maurer also obtained the computer hard drive from the current Use of Force Coordinator, Correctional Officer (CO) Dwight Mallard.  This hard drive was the same one Reed utilized to file Inmate Ridley's case.  Reed stated that hard drive "crashed" sometime in October 2017, but was backed up prior to it failing.  This hard drive was forensically analyzed by FDLE and no additionally videos of Inmate Ridley were found.  Reed repeated she was not told about the second handheld video because no force was used on Inmate Ridley at the Main Unit. Reed said the camera would not have been downloaded and she was only aware of the one video from the West Unit.  Additionally, there were no handheld camera logs showing a camera was removed from the main control room on September 8, 2017.

The interview of Sgt. Reed concluded at 1800 hours.

PL000373

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ███████████, Ridley died while being treated at ███████████████ in Jacksonville, Florida. ███████████ ████████████████████████████████████████████████. Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the attempted interview of William Austin Matchett.

On September 26, 2018, Special Agents (SA) David Maurer and David Meacham traveled to Williston, North Dakota to interview William Matchett. Matchett was a Correctional Officer (CO) at RMC and worked in confinement during the weekend of September 8, 2017. Matchett was one of the correctional officers who placed a food tray and juice in Inmate Ridley's cell on the evening of September 8th. During the course of the weekend Matchett conducted forty-one (41) security checks in Wing 2 of confinement where Inmate Ridley was housed. SA Maurer knew from previous witness testimony that Inmate Ridley never moved from his seated position on the bunk during the course of the four days he was in confinement.

SA Maurer spoke to Matchett on the phone several times before traveling to North Dakota and Matchett agreed to be interviewed. SA Maurer hoped Matchett could confirm Inmate Ridley's position of the bunk and possibly provide any conversation he had with Inmate Ridley. SA Maurer learned Matchett was treminated from the FDC during a conversation with Colonel Swan at RMC. SA Maurer was told Matchett was found sleeping while guarding an inmate at Shands Hospital in Gainesville, Florida. Matchett's feet where on the inmate's bed and Matchett was armed. During telephone conversations with Matchett, he eluded to his termination and stated North Dakota was a fresh start for him.

Once in North Dakota Matchett refused to be interviewed without an attorney present. SA Maurer advised Matchett he and SA Meacham would be in North Dakota until September 29, 2018, and Matchett's attorney could be present during the interview. Matchett advised he would speak to an attorney and contact SA Maurer prior to leaving the state. SA Maurer was never contacted by Matchett or his attorney.

| Case Number: JA-37-0133 | Serial #: 197 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 09/26/2018 | Activity End Date:09/29/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Attempted Interview of William Matchett

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

277620190211103253

PL000374

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 197 |

An interview packet was perpared to discuss with Matchett and it will be maintained as related item INV-202, in the case file.

PL000375

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

On September 8, 2017, Florida Department of Corrections (FDC) Reception and Medical Center (RMC) West Unit inmate Craig A. Ridley was the subject of a use of force by FDC Sergeant (SGT) John E. Nettles and Captain (CPT) William Jeffrey Jerrels. ████████████, Ridley died while being treated at ██████████████ in Jacksonville, Florida. ████████████ ████████████████████████████████████████████████ Subsequently on October 13, 2017, per a Memorandum of Understanding (MOU), FDC requested that FDLE investigate the circumstances surrounding Ridley's death. The purpose of this investigative report is to document the submission of handwriting exemplars into evidence and the laboratory results.

On August 7-8, 2018, Special Agents (SA) David Maurer and David Meacham met with the following security staff at RMC Main Unit to obtain handwriting exemplars:

Captain Daniel Klein
Captain Jason Livingston
Sergeant Daniel W Greene
Sergeant Jeremy Kyle Bennett
Correctional Officer Royce Givens

These officers were working on September 8, 2017, when Inmate Ridley was gained into confinement.  On Inmate Ridley's DC-221 Cell Inspection/Housing Rules form the signature of Inmate Ridley appears on the bottom of the form.  Based on the facts presented by Dr. Pfalzgraf after he conducted his post morterm examination; Inmate Ridley would not have been able to sign this form due to his injuries.  It was believed one of the above may have fraudulently signed the form and this is the reason for the exemplars.  Additionally, there is an unrecognizable officer's signature at the bottom of the form as well.

On August 10, 2018, at 1335 hours, SA Maurer met with Crime Laboratory Analyst (CLA) Bonnie Cox to submit these handwriting exemplars into evidence.  These exemplars were submitted as Items 09 through 13.  Sgt. Greene's and Sgt. Bennett's exemplars were sent to the FDLE Pensacola Regional Operations Center (PROC) on August 13, 2018 for analysis.
On August 16, 2018, CLA Bonnie Bell from the PROC Questioned Documents Section authored a report.  Below is a synopsis of the finding:

| Case Number: JA-37-0133 | Serial #: 198 |
|---|---|
| Author: Maurer, David | Office: Jacksonville |
| Activity Start Date: 08/07/2018 | Activity End Date:08/16/2018 |
| Approved By: Mead, Josh Carlton | |

Description:Results of Hand Writing Analysis

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

PL000376

| Case Number | JA-37-0133 |
|---|---|
| IR Number | 198 |

There were limitations in the examination because SA Maurer was unable to obtain the original DC-221 document and was only provided a photocopy. The photocopy was of poor quality and the original was destroyed after it was digitally scanned. Additionally, there was an insufficient amount of comparable known writings from Inmate Ridley.

However, there were indications the writer of the questioned Craig Ridley signature may have been written by Sgt. Bennett when compared to the example but the evidence fell short of that necessary to support a conclusive opinion. With regards to Sgt. Bennett's signature there were indications that he may have been the officer who signed the form but again the evidence fell short to make a conclusive opinion.

With regard to Sgt. Greene, both the questioned Craig Ridley signature and the officer's signature comparisons fell short of the evidence needed to make a conclusive opinion.

It was suggested that SA Maurer obtain the original DC 221 form. However, due to the destruction of the original form it is impossible to obtain the original.

Copies of the evidence submittal and the Laboratory Report authored by CLA Bell will be maintained as related Item INV-203, in the case file.

277620190211103253

PL000377